IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IRONBOUND PARTNERS, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SOURCE INTERLINK COMPANIES, INC., ) <br> ) <br> Defendant. ) <br> ) | Case No. 1:05CV01039 (JGP) |

**DECLARATION OF DOUGLAS J. BATES, ESQ.,
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION AND IMPROPER VENUE OR,
ALTERNATIVELY, TO TRANSFER VENUE**

DOUGLAS J. BATES, Esq., being duly sworn, deposes and says:

1. I am the General Counsel for Defendant Source Interlink Companies, Inc. ("Source"). I submit this declaration, based upon my personal knowledge, in support of Source's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, alternatively, to Transfer Venue.

2. Source is a Delaware corporation with its principal place of business located in Bonita Springs, Florida. Source is a marketing, merchandising and fulfillment company of entertainment products, including DVDs, music CDs, magazines, books and related in-store services.

3. Source is not registered to do business in the District of Columbia. It has no employees, agents or offices located in the District of Columbia.

4. Source has no customers who are headquartered in the District of Columbia and does not solicit customers in the District of Columbia.

5. Source does not own any real property or maintain any bank accounts in the District of Columbia.

6. Source has never paid income, property or sales taxes in the District of Columbia.

7. I have reviewed the Complaint dated May 23, 2005 (the "Complaint") filed in this lawsuit by plaintiff Ironbound Partners, LLC ("Ironbound"). I was the principal negotiator on Source's behalf of the Referral Agreement dated April 26, 2004 (the "Agreement") that is the subject of this lawsuit. A copy of the Agreement is attached hereto as **Exhibit A.**

8. I negotiated the Agreement with Ironbound's owner, Jonathan Ledecky. Our negotiations were conducted over the telephone and by e-mails and faxes while I was in Florida. None of the negotiations concerning the Agreement in which I participated took place in the District of Columbia. I executed the Agreement on Source's behalf in Florida.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 23, 2005

                                                     Douglas J. Bates

# EXHIBIT A

## REFERRAL AGREEMENT

This **Referral Agreement** is made and entered into as of April 26, 2004 by and between Source Interlink Companies, Inc., a Missouri corporation ("Source") and Ironbound Partners, LLC, a Delaware limited liability company ("Ironbound").

WHEREAS, Source is engaged in, among other things, the distribution and fulfillment of magazines, confections and other non-perishable merchandise to grocers, specialty retailers and mass merchandisers (collectively, the "Retailers"); and

WHEREAS, Ironbound has a pre-existing relationship with an entity (the "Client") that desires to establish a business relationship with Source, the name of which shall be disclosed to Source in writing immediately following execution of this Agreement; and

WHEREAS, Source desires to arrange for Ironbound to introduce it to the Client and to assist Source in evaluating and negotiating any proposed business relationship with the Client, and Ironbound is willing to so introduce and assist Source, upon the terms and conditions set forth in this Agreement.

NOW THEREFORE, in consideration of the payments to be made by Source to Ironbound hereunder and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. **Introduction by Ironbound.** Promptly after execution of this Agreement, Ironbound shall arrange a preliminary telephone conference between Source and representatives of the Client. Thereafter, upon the reasonable request of Source, Ironbound shall assist Source with its evaluation and negotiation of any proposed business venture between Client and Source. Ironbound shall not make any representations or warranties to the Client regarding Source or its business. Source shall have the unfettered discretion to accept or reject any proposed business relationship with Client without liability to Ironbound. Acceptance shall be manifest only by execution of a written agreement between Source and the Client. Ironbound shall use its best efforts to furnish to Source any information in its possession or control that a reasonable person would consider important in reaching a decision to establish a business relationship with Client.

2. **Compensation.** As compensation for Ironbound's services hereunder, Source shall pay to Ironbound, and Ironbound shall accept, compensation equal to 5% of the net income recorded by Source as a result of its relationship with Client during the five—year period following the date (the "Establishment Date") on which the business relationship is established between Source and Client. As used herein, "net income" shall be calculated in accordance with generally accepted accounting principles on a basis consistent with the financial statements of Source and after full allocation of all costs and expenses in accordance with Source's then current policy.

Compensation due to Ironbound under this Section 2 shall be payable to Ironbound on or before the last day of April of each fiscal year with respect to which any Compensation is payable.

4.  **Reporting by Source**. Not later than April 30 of each year, Source shall provide Ironbound with an accounting of the net income earned by it during the then immediately proceeding fiscal year attributable to its business relationship with Client.

5.  **General Provisions**

    (a)  The waiver by either party of a breach or violation of any provision of this Agreement shall not operate as or be construed to be a waiver of any subsequent breach hereof.

    (b)  Should any one or more sections of this Agreement be found to be invalid, illegal, or unenforceable in any respect, the validity, legality and enforceability of the remaining sections contained herein shall not in any way be affected or impaired thereby. In addition, if any section hereof is found to be partially enforceable, then it shall be enforced to that extent.

    (c)  Any and all notices required or permitted to be given under this Agreement shall be sufficient if furnished in writing and personally delivered or sent by registered or certified mail to Ironbound at 1400 34th Street NW Washington DC 20007 and to Source, c/o General Counsel, Source Interlink Companies, Inc. 27500 Riverview Center Blvd., Suite 400, Bonita Springs, Florida 34134 or such other place as it may subsequently designate in writing.

    (d)  The rights and obligations of each of the parties to this Agreement shall be governed by and interpreted and determined in accordance with the internal laws of the State of Florida excluding any principles of conflicts of law or other rule of law that would cause the application of the law of any jurisdiction other than the laws of the State of Florida.

    (e)  The section headings contained in this Agreement are for convenience only and shall in no manner be construed to limit or define the terms of this Agreement.

    (f)  This Agreement shall be executed in two or more counterparts, each of which shall be deemed an original and together they shall constitute one and the same Agreement, with at least one counterpart being delivered to each party hereto.

    (g)  Source shall have the right to assign this Agreement to a third party which purchases substantially all of the stock, or substantially all of the assets of Source, a subsidiary or affiliated entity of Source, or the surviving entity in a merger or similar corporate event. The Agreement may not be assigned by Ironbound without the prior written consent of Source. Whenever the consent of a party is needed it shall not be unreasonably withheld or delayed.

    (h)  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and assigns.

    (i)  This is the entire and only Agreement between the parties respecting the subject matter hereof, and supercedes all prior agreements. This Agreement may be modified only by a written instrument executed by all parties hereto.

(j)   Source shall have the right to control and direct Ironbound only as to the result of the services to be performed for Source under this Agreement. Ironbound may perform its services at such places and in such manner as it determines are reasonably necessary for the performance of its obligations under this Agreement.

(k)   Source and Ironbound intend and agree that the relationship between the Source and Ironbound created by this Agreement is that of an independent contractor. Ironbound is not and shall not be deemed to be an employee of Source for any purpose and Source is not an agent, servant or employee of Ironbound, and Source has no authority to bind Ironbound to any agreement, or liability or obligation. Nothing contained in this Agreement shall be construed to constitute Source or Ironbound as a partner or joint venturer of the other, it being intended that Ironbound and Source shall each remain an independent contractor and each shall be responsible for its actions and those of its respective agents, employees, and servants. Source may engage others to perform services similar to those which Ironbound is to perform under this Agreement.

(l)   Ironbound agrees that it shall be responsible for and pay all of its own (i) taxes of all kinds (including, without limitation, employment and unemployment taxes), and (ii) expenses incurred by it in connection with the services it is to perform under this Agreement (including, without limitation, business travel and entertainment expenses). Ironbound shall indemnify and hold Source, and each of its affiliates, harmless from and against any claim, loss, damage, liability, cost or expense, including, without limitation, reasonable attorney's fees, by reason of Source alleged breach or violation of this subsection.

**IN WITNESS WHEREOF,** Source and Ironbound have caused this Agreement to be executed by their respective duly authorized officers as of the date first written above.

SOURCE INTERLINK COMPANIES, INC.

By: _____
Name: Douglas J. Bates
Its: Assistant Secretary

IRONBOUND PARTNERS, LLC

By: _____
Name: JONATHAN J. LEDECKY
Its: MANAGING DIRECTOR

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 27th day of June, 2005, I caused a true and correct copy of the foregoing to be served by electronic mail on the following persons:

Matthew D. Schwartz, Esq.
THOMPSON COBURN, LLP
1909 K. Street, NW
Suite 600
Washington, DC 20006

                                                        _____
                                                        Jacqueline Arendse