UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

_____
                                        )
IRONBOUND PARTNERS, LLC,                )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )        Case Number  1:05CV01039 (JGP)
                                        )
SOURCE INTERLINK COMPANIES, INC.,       )
                                        )
        Defendant.                      )
_____ )

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

        This case involves the breach of a referral agreement (the "Agreement") that was

negotiated, executed and performed in the District of Columbia.  By its motion, defendant

Source Interlink Companies, Inc. ("Source") moves to dismiss the complaint for lack of

personal jurisdiction and improper venue or, alternatively, to transfer venue to the United

States District Court for the Middle District of Florida.  In so doing, however, Source disregards

controlling Supreme Court and federal court precedent and its own contacts with the District

of Columbia.

        Never mind, says Source, that it negotiated a contract with a resident of the District of

Columbia by directing communications into the forum by telephone, email and fax.  Never

mind that plaintiff, Ironbound Partners, LLC ("Ironbound"), executed the Agreement in the

District of Columbia.  Never mind that Source faxed the fully executed copy of the Agreement

to the District of Columbia following the parties' negotiations.  Never mind that the

Agreement was substantially performed in the District of Columbia.  Never mind too that the

Agreement creates continuing obligations between Source and a resident of the District of

Columbia. (Agreement ¶¶ 1-4). All this, says Source, is irrelevant because it did not physically enter the forum.

This is simply incorrect. It is well settled that where, as here, an out of state defendant directs communications into the forum by wire and mail for the purpose of entering into a contract, jurisdiction may not be avoided merely because defendant did not physically enter the district. It is equally well settled that where a defendant enters into a contract that creates continuing obligations between itself and a resident of the forum, defendant has manifestly availed itself of the privilege of transacting business there. Thus, even if the Court were to accept Source's factual assertions at face value, the facts, as alleged in the declarations accompanying Source's motion and exhibits thereto, would be sufficient to establish personal jurisdiction.

That said, Source's recitation of the facts, which are at best incomplete, should not be accepted at face value. As discussed more fully below, Source transacted business in this jurisdiction by entering into a contract with a resident of the District of Columbia, where a substantial portion of the contract was (and in the future would be) performed. Additionally, as also discussed below, upon information and belief, Source purposefully directs significant activities toward residents of the District of Columbia in furtherance of its core business operations.

Source's position is untenable. It would permit parties who intentionally transact business in this district to use jurisdictional theory as a shield to escape regulation and sanction of their actions in the District of Columbia. Source has purposefully availed itself of the privilege of doing business in the District of Columbia and should not be permitted to avoid jurisdiction merely because it is not physically present in the forum. Because this Court has personal jurisdiction over Source, venue is also proper, and Source's motion should be denied.

Statement of Material Facts

1.      As Source concedes, the Agreement was negotiated by Source's general counsel,
Douglas Bates, and Ironbound's managing member, Jonathan Ledecky, by email, telephone and
fax. (Bates Decl. ¶ 8; *See also* Declaration of Jonathan Ledecky ¶ 2 ("Ledecky Decl.")), which is
attached hereto as Exhibit A). Ledecky conducted all negotiations relating to the Agreement
from Ironbound's office in the District of Columbia. (Ledecky Decl. ¶ 2). During the
negotiations, Source's general counsel sent email, fax and telephone communications
concerning the terms and conditions of the Agreement, which included proposed revisions
thereto, to Ledecky at Ironbound's office in the District of Columbia. (Ledecky Decl. ¶ 4).
After reaching agreement on the material terms, Source's general counsel revised the
Agreement and emailed it to Ledecky in the District of Columbia. (Ledecky Decl. ¶ 4).

2.      As provided by the Agreement's counterpart provision (Agreement ¶ 5(f)),
Ledecky executed the Agreement in the District of Columbia and returned it to Source's general
counsel. (Ledecky Decl. ¶ 5). Upon receiving Ironbound's signed copy of the Agreement,
Source's general counsel counter-signed the Agreement and faxed the fully executed document
back to Ironbound in the District of Columbia. (Ledecky Decl. ¶ 5). Additionally, and
although not discussed in Source's papers, Source's general counsel sent email and fax
communications to Ledecky in the District of Columbia concerning a nondisclosure agreement
to be entered between Source and Endeavor/Emmanuel (Ironbound's "client" and the party
Ironbound was introducing to Source pursuant to the Agreement). (Ledecky Decl. ¶ 5).

3.      In addition to being negotiated and executed in the District of Columbia, the
Agreement was also performed in the District of Columbia. (Ledecky Decl. ¶ 7). Ironbound
had two obligations under the Agreement: (1) to arrange a telephone conference to introduce
Source to its client (*i.e.*, Endeavor/Emmanuel), and (2) to assist Source in evaluating and

negotiating any proposed business ventures between Source and Endeavor/Emmanuel. (Agreement ¶ 1; Ledecky Decl. ¶ 6).

4.     Ironbound performed its obligations in the District of Columbia. (Ledecky Decl. ¶ 7). As agreed, Ironbound arranged, initiated and attended a telephone conference from its office in the District of Columbia in which it introduced Source to Endeavor/Emmanuel. (Ledecky Decl. ¶ 7). Ironbound also assisted Source in facilitating a business relationship with Endeavor/Emmanuel through telephone and email communications between Ironbound and Source and between Ironbound and Endeavor/Emmanuel from the District of Columbia. (Ledecky Decl. ¶ 7). Finally, Ironbound stands ready, willing and able to assist Source in evaluating and negotiating future business relationships with Endeavor/Emmanuel from the District of Columbia. (Ledecky Decl. ¶ 8; Agreement ¶ 5(j) ("Ironbound may perform its services at such places and in such manner as it determines are reasonably necessary for the performance of its obligations under the Agreement.")).

5.     In arranging and making the required introduction to Source from the District of Columbia, and assisting Source in facilitating its business relationship with Endeavor/Emmanuel from the District of Columbia, Ironbound fully performed its obligations under the Agreement in the District of Columbia. Moreover, in accepting the introduction and pursuing a relationship with Endeavor/Emmanuel, Source accepted the benefit of the services performed by Ironbound in the District of Columbia. (Ledecky Decl. ¶ 7).

6.     For its part, Source had two obligations under the Agreement: (1) pay Ironbound compensation equal to 5% of the net income earned by defendant as a result of Source's relationship with Endeavor/Emmanuel during the five-year period following the establishment of a business relationship between Source and Endeavor/Emmanuel (Agreement ¶ 2; Ledecky Decl. ¶ 9), and (2) provide Ironbound an annual accounting of net income earned by Source attributable to the business relationship with Endeavor/Emmanuel. (Agreement ¶ 4; Ledecky

Decl. ¶ 9). Pursuant to the Agreement, all notices from Source to Ironbound, which would include Source's obligation to provide an accounting (*i.e.*, a notice of how much net income was earned), were to be sent by Source to Ironbound in the District of Columbia. (Agreement at ¶ 5(c)) ("Any and all notices required or permitted to be given under this Agreement shall be sufficient if furnished in writing and personally delivered or sent by registered or certified mail to Ironbound at 1400 34th Street NW Washington DC 20007 . . ."); Ledecky Decl. ¶ 9). Similarly, payment of Ironbound's compensation would have been sent by Source to Ironbound in the District of Columbia. (Ledecky Decl. ¶ 9). Indeed, the only performance required of Source (*i.e.*, providing Ironbound with an accounting and compensating Ironbound) involved obligations to Ironbound in the District of Columbia.[1]

7.      Additionally, and as discussed above, following Ironbound's introduction to Endeavor/Emmanuel, Source's Chairman and Chief Executive Officer made telephone calls to Ironbound's Ledecky in the District of Columbia concerning Source's relationship with Endeavor/Emmanuel. (Ledecky Decl. ¶ 10). Ledecky, in turn, communicated with both Source and Endeavor/Emmanuel from Ironbound's office in the District of Columbia to assist Source in facilitating its relationship with Endeavor/Emmanuel. (Ledecky Decl. ¶ 10). Thus, all (or substantially all) communications with Ironbound took place in the District of Columbia. (Ledecky Decl. ¶ 10).

8.      In addition to this transaction, Source has had other contacts with the District of Columbia. As discussed above, prior to entering into the Agreement, Ironbound's Ledecky assisted Source with several transactions, each of which involved communications by Source

---

[1] Source confuses its performance under the Agreement with its performance of business dealings introduced pursuant to the Agreement. The Agreement does not obligate Source to pursue any business relationship introduced by Ironbound. Agreement at ¶ 1 ("Source shall have unfettered discretion to accept or reject any proposed business relationship with Client without liability to Ironbound"). Instead, Source's only obligations are to pay Ironbound a fee for those relationships it does pursue and for which it earns net income, and to provide an annual accounting to Ironbound in the District of Columbia.

with Ledecky in the District of Columbia.  (Ledecky Decl. ¶ 11).  In each case, Source's

representatives directed communications into the District of Columbia by telephone and wire

for the purpose of advancing Source's business interests.  (Ledecky Decl. ¶ 11).

    9.    Finally, upon information and belief, Source distributes magazines and other

products to retailers in the District of Columbia, provides in-store services to retailers in the

District of Columbia, and ships products on behalf of national internet retailers directly to

consumers in the District of Columbia.[2]  Source Interlink Companies, Inc., Securities and

Exchange Commission, Form 10-K, at 2, for fiscal year ending January 31, 2005 ("Source 10-

K").  As reported more fully in its filings with the Securities and Exchange Commission (SEC),

Source (1) provides distribution and "in-store" services to more than 110,000 store fronts

throughout the United States for regional and national retailers such as Barnes & Noble,

Borders, Tower Records, and Giant Food, and (2) provides "consumer direct fulfillment"

services for national internet retailers such as amazon.com, barnesandnoble.com and

circuitcity.com.  *Id*.  Upon information and belief, Source provides distribution and "in-store"

services to retail outlets operated by its customers in the District of Columbia and ships

products on behalf of its customers to consumers in the District of Columbia.

---

[2]  Ironbound's information and belief is based upon Source's filings with the Securities and Exchange Commission**.**  In its filings with the SEC, Source reports that it serves as the national distributor and provides "in-store services" to national and regional retail chains that maintain retail locations in the District of Columbia.  Source 10-K at 4-5.  Source also states that it provides direct consumer fulfillment services for national internet retailers such as amazon.com, which supply products to consumers in the District of Columbia.  Source 10-K at 5.  Finally, Source reports that it acts as the exclusive distributor for several nationally distributed magazines, which are sold in the District of Columbia.  Moreover, its Magazine Fulfillment group is the principal magazine supplier for Barnes & Noble, Inc., and Borders Group, Inc., and supplies retailers, such as CVS Corporation and 7-Eleven, Inc., which maintain retail locations in the District of Columbia.  Source Interlink Companies, Inc., Securities and Exchange Commission, Amendment No. 1 to Form S-4, at 96 (January 18, 2005).  Nowhere in its SEC filings does Source state that it does not provide such services to retailers and consumers in the District of Columbia or that the District of Columbia is excluded from its national distribution and fulfillment services to retailers doing business in the District of Columbia.  It is on the basis of this information that Ironbound asserts its belief that Source provides such services or causes such services to be provided in the District of Columbia.

10.     In connection with its supply chain management and distribution services, Source ships, or causes to be shipped, magazines, CDs and DVDs from its warehouses directly to retail locations (*i.e.*, stores) around the United States, including, upon information and belief, the District of Columbia, where a number of Source's largest customers maintain retail locations.  Source 10-K at 4-5.

11.     In connection with its "in-store services," Source provides, or causes others to provide, a number of services to individual retail locations including, without limitation, designing front-end display fixtures and supervising their installation.  *Id*. at 5-6.  Upon information and belief, Source supplies in-store services to retail locations operated by its customers in the District of Columbia.

12.     And, in connection with its "consumer direct fulfillment" services for national internet retailers such as amazon.com, Source fills, or causes others to fill, internet orders and sends products directly to consumers around the country, including, upon information and belief, consumers in the District of Columbia.  *Id*. at 5.

13.     Of course, the Court need not rely on these additional contacts in determining whether to assert jurisdiction.  Rather, the Court need only consider Source's contacts with the District of Columbia as they relate to the Agreement.  The Agreement creates a five-year obligation between Source and a resident of the District of Columbia.  By purposely negotiating and entering into the Agreement, Source transacted business in the District of Columbia and availed itself of the benefits and privileges of doing business here.  As discussed below, the contacts related to this transaction are sufficient, without more, to permit the assertion of specific jurisdiction over Source by this Court.

<u>Argument</u>

Inasmuch as no discovery or evidentiary hearing has taken place, Ironbound need only establish a prima facia case that jurisdiction exists to defeat Source's motion.  *See Crane v. New York Zoological Society*, 894 F.2d 454, 458 (D.C. Cir. 1990); *Sheikh v. Mr. K's Restaurant, No. CIV.A.04-00515*, 2005 WL 1387591 at *2 (D.D.C. June 10, 2005) (*citing Nix v. Hoke*, 62 F. Supp. 2d 110, 113 (D.D.C. 1999)) (attached hereto as Exhibit B).  Moreover, Ironbound's factual allegations must be accepted as true and must be accorded all reasonable inferences that may derive therefrom.  *See Crane*, 894 F.2d at 456 (citing *Reuber v. United States*, 750 F.2d 1039, 1052 (D.C. Cir. 1984)); *Sheikh*, 2005 WL 1387591 at *2 (citing *GTE New Media Servs. v. BellSouth Corp.*, 21 F. Supp. 2d 27, 36 (D.D.C. 1998)).  Accordingly, the Court should only dismiss for lack of jurisdiction if it appears "beyond doubt that the [plaintiff] can prove no set of facts in support of his claim that would entitle him to relief."  *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 62 F. Supp. 2d 13, 19 (D.D.C. 1999) (citing *Kenneda v. U.S.*, 880 F.2d 1439, 1442 (D.C. Cir. 1989)).  Inasmuch as the Agreement was negotiated, executed and performed in the District of Columbia, and involves continuing obligations between Source and a resident of the District of Columbia, jurisdiction is proper and Source's motion should be denied.

## I.   <u>This Court Has Personal Jurisdiction Over Defendant</u>

Personal jurisdiction is proper if the Court can obtain jurisdiction over the defendant under the statutes of the District of Columbia and the exercise of that jurisdiction is consistent with the constraints of the Due Process Clause of the Constitution.  *Crane*, 894 F.2d at 456; *Sheikh*, 2005 WL 2683817 at *2; *Mouzavires v. Baxter*, 434 A.2d 988, 990 (D.C. 1981) (en banc), *cert. denied*, 455 U.S. 1006 (1982) (citing *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)).  Under the District of Columbia long-arm statute, a Court may assert

personal jurisdiction where (1) defendant transacted business in the district, and (2) the claim arose from the business transacted in the District. D.C. CODE §§ 13-423(a)(1), (b) (2005). This provision of the long-arm statute extends the Court's jurisdiction to the fullest extent permitted by the Due Process Clause of the Constitution. *Koteen v. Bermuda Cablevision, Ltd.*, 913 F.2d 973, 974 (D.C. Cir. 1990) (the District of Columbia's long-arm statute "is as far reaching as the due process clause allows"). Moreover, provided the constitutional requirements of due process are satisfied, jurisdiction may be asserted on the basis of a single transaction. *Arista Records, Inc. v. Sakfield Holding Co.*, 314 F. Supp. 2d 27, 31 (D.D.C. 2004) (citing *Mouzavires*, 434 A.2d at 992); *Fisher v. Bander*, 519 A.2d 162, 164 (D.C. 1986) ("when the contact is related to the cause of action, even one such contact may be sufficient to support jurisdiction.") (citing *Hughes v. A.H. Robins Co.*, 490 A.2d 1140, 1146 (D.C. 1985)).

Because the District of Columbia long-arm statute is co-extensive with the Due Process Clause, the long-arm statute analysis is subsumed by the due process analysis. *Comsat Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 521 (D.D.C. 1995) (citing *Fisher*, 519 A.2d at 163 (citing *Hummel v. Koehler*, 458 A.2d 1187, 1190 (D.C. 1983); *Smith v. Jenkins*, 452 A.2d 333, 336 (D.C. 1982))). The requirements of due process will be satisfied, and the exercise of personal jurisdiction will be proper, where a defendant has established "minimum contacts" with the forum state such that the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

In conducting this analysis, courts consider whether the defendant's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World Wide Volkswagon v. Woodsen, 444 U.S. 286, 297 (1980).* "This 'fair warning' requirement is satisfied 'if the defendant has 'purposefully directed' his activities at residents of the forum, . . . and litigation results from alleged injuries that 'arise out of or relate

to' those activities.'" *Fisher*, 519 A.2d at 163 (quoting *Burger King Corp.*, 471 U.S. at 472 (citations omitted)).  Where, as here, defendant has purposefully directed its activities to residents of the forum state by entering into a contract, and the litigation relates to that contract, due process is satisfied and the assertion of personal jurisdiction is proper.  *Id.*

Ironbound does not rely on its own unilateral activities in asserting jurisdiction under the long-arm statute.  As discussed above, Source's contacts with the District of Columbia are not random, fortuitous or attenuated, but rather, proximately result from Source's own actions.  As Source concedes, the Agreement was negotiated by Source's general counsel and Ironbound's Ledecky by email, telephone and fax.  During those negotiations, Source sent emails and faxes, and made telephone calls, to Ironbound in the District of Columbia.  Following the negotiations, the Agreement was executed by Ironbound in the District of Columbia, and a fully executed copy of the Agreement was faxed by Source to Ironbound in the District of Columbia.  After the Agreement was executed, Ironbound performed each of its obligations from the District of Columbia, and Source continued to direct communications to Ironbound in the District of Columbia.  Finally, and as evidenced by the Agreement's notice provision (which directs Source to send all notices to Ironbound in the District of Columbia), Source was to send Ironbound its accounting and compensation to Ironbound's office in the District of Columbia.  *See Sheikh*, 2005 WL 2683817 at *3 (where defendant fails to make a payment that is to be sent to the District of Columbia, the breach occurs in the District).  By directing its activities at a resident of the District of Columbia, and entering into a contract with a resident of the District of Columbia, Source is deemed to have transacted business in

the District of Columbia.[3] *See Koteen*, 913 F.2d at 975; *Sheikh*, 2005 WL 2683817 at *5; *Fisher*, 519 A.2d at 163; *Mouzavires*, 434 A.2d at 997-998.

In its effort to avoid jurisdiction, Source places great weight on the fact that it did not physically enter the District of Columbia. (Memorandum at 3). It is well settled, however, that jurisdiction "may not be avoided merely because the defendant did not *physically* enter the forum State." *Burger King Corp.*, 471 U.S. at 476. *See also McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) (upholding court's exercise of jurisdiction over out-of-state defendant whose only contact with the forum State involved a single contract that was entered by mail). As the Supreme Court has explained:

> [I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Burger King Corp.*, 471 U.S. at 476 (citations omitted). In the 20 years since the Supreme Court's decision in *Burger King Corp.*, the conduct of business by wire and wireless communications (*e.g.*, email, fax, telephone and video conferencing) has become a customary, if not required, means by which business is transacted. Ignoring this reality, and nearly 50 years of Supreme Court precedent, Source maintains that it has not transacted business in the District of Columbia merely because it has not physically entered the forum. In so arguing,

---

[3] In addition to their contacts with the District of Columbia directly arising from the Agreement, which are sufficient without more to confer jurisdiction, upon information and belief, Source also purposefully directed activities toward the District of Columbia in connection with its core business. Upon information and belief, Source ships magazines and other products to stores in the District of Columbia, provides in-store services to retailers in the District of Columbia, and ships products on behalf of national internet retailers directly to consumers in the District of Columbia. These activities are related to the instant Agreement, the purpose of which was to introduce Source to people who could assist it in expanding its business into the national distribution and fulfillment of home entertainment content (*e.g.*, CDs and DVDs) on the national market, including (presumably) the District of Columbia.

Source disregards the declaration of its own general counsel, who concedes that he negotiated the Agreement with Ironbound by directing email, fax, and telephone communications to the District of Columbia.  (Bates Decl. ¶ 8; Ledecky Decl. ¶ 2).

　　Where, as here, an out-of-state defendant negotiates and enters into a contract with a resident of the District of Columbia by mail or wire, courts in the District of Columbia have consistently found personal jurisdiction to be proper, even though defendant did not physically enter the forum.  *Schwartz v. CDI Japan, Ltd.*, 938 F. Supp. 1, 5-6 (D.D.C. 1996) (jurisdiction is proper even without physical presence where defendant entered into contract by mail and wire transaction only); *Mouzavires*, 434 A.2d at 995 ("the exercise of personal jurisdiction has been sustained where the nonresident defendant's only contact with the forum has been by mail or telephone.") (citations omitted).  Indeed, only last month, in a case involving facts similar to those presented here, this Court held that jurisdiction was proper even though the defendant had not physically entered the forum.  *See Sheikh*, 2005 WL 1387591 at *3 (Roberts, J.) ("the exercise of personal jurisdiction has been sustained where the nonresident defendant's only contact with the forum has been by mail or telephone") (citation omitted) (attached hereto as Exhibit B).

　　In *Sheikh*, defendant entered into an agreement with plaintiff, a District of Columbia resident, under which plaintiff agreed to provide consulting services to defendant in launching and managing a restaurant located in New York.[4]  *Sheikh*, 2005 WL 1387591 at *1.  Defendant claimed that plaintiff performed no services for the restaurant venture other than securing an off shore loan.  In finding that the court had personal jurisdiction over defendant, Judge Roberts noted that (1) defendant intentionally established contacts with the District of Columbia by

---

[4] The compensation provision in the consulting agreement in *Sheikh*, which was strikingly similar to that contained in the instant Agreement, provided that defendant was to pay plaintiff 8% of its net profits for a period of five years, and 2% of gross receipts for the following five-year period.  *Sheikh*, 2005 WL 1387591 at *1.

retaining plaintiff's services, (2) defendant had extensive communications with plaintiff in the District of Columbia via telephone and mail, and (3) defendant accepted the services performed by plaintiff in the District of Columbia. *Id.* at *5. Noting that plaintiff's claims stemmed "directly from defendant's contacts with the plaintiff via plaintiff's Washington D.C. office," Judge Roberts held that personal jurisdiction was proper because defendant had "purposefully availed itself of the privilege of conducting activities within this forum, thus invoking the benefits and protections of its laws." *Id.* at *4-5. In so holding, Judge Roberts also noted the District of Columbia's "substantial interest in providing a forum within which wrongs inflicted in the District by clients who fail to pay for professional services rendered in the District can be redressed." *Id.* at *5.

Similarly, in *Mouzavires v. Baxter*, s*upra*, the District of Columbia Court of Appeals held that personal jurisdiction was proper over an out-of-state defendant under the District of Columbia long-arm statute where (1) defendant solicited plaintiff's services, which were to be performed in the District of Columbia, (2) plaintiff's services were performed in major part in the District of Columbia, (3) defendant entered into a contract with plaintiff in the District of Columbia via phone and mail, and (4) defendant sent partial payment for services to be performed by plaintiff in the District of Columbia. *Mouzavires*, 434 A.2d at 996-997. In a concurring opinion, Judge Kelly further noted that it was the conduct of the parties that was important to the analysis, not whether the initial suggestion to enter into the relationship was made by plaintiff or defendant: "the assertion of [personal] jurisdiction has withstood a due process challenge even where the initial solicitation to enter a contract was made by plaintiff rather than the defendant." *Id.* at 998 (citing *Vencedor Manufacturing Co. v. Gougler Industries, Inc.*, 557 F.2d 886 (1st Cir. 1977); *Shealy v. Challenger Manufacturing Co.*, 304 F.2d 102, 104 (4th Cir. 1962); *J. Henrijean & Sons v. M. V. Bulk Enterprise*, 311 F. Supp. 417, 421 (W.D. Mich. 1970); *Dornbos v. Kroger Co.*, 9 Mich. App. 515, 157 N.E.2d 498 (1968)).

- 13 -

Explaining the basis for such rulings, Judge Kelly quoted the Tenth Circuit's opinion in *Barnes,*

*Inc. v. P & C Food Markets, Inc.,* 567 F.2d 933 (10th Cir. 1977):

> The principal distinction between the present case and McGee [v.
> International Life Insurance Cos.] is that there the defendant
> made the initial solicitation while here that was made by the
> plaintiff.  Initial contact is not decisive.  The subsequent conduct
> of [defendant] shows that it purposefully availed itself of the
> privilege of carrying on activities to secure goods from a Kansas
> manufacturer and seller.

*Mouzavires,* 434 A.2d at 998 (emphasis added).  Apropos this case, Judge Kelly concluded by

noting, "[s]o, too, here, where a Florida defendant purposefully availed itself of the privilege of

carrying on activities to secure services from a [D]istrict of Columbia [resident], it should not

matter whether plaintiff or defendant made the initial contact." *Id.*  The District of Columbia

Court of Appeals has continued to cite *Mouzavires* as controlling law since the decision was

rendered in 1980.  *See e.g., Holder v. Haarmann & Reimer Corp.,* 779 A.2d 264, 269-271

(D.C. 2001); *Shoppers Food Warehouse v. Moreno,* 746 A.2d 320, 327, 331 (D.C. 2000); *Fisher

v. Bander,* 519 A.2d 162, 164 (D.C. 1981).

    In the instant case, Source purposefully availed itself of the privilege of carrying on

activities in the District of Columbia.  That a Source representative did not physically enter the

forum is of little moment.  It is well settled that where, as here, "defendant 'deliberately' has

. . . created 'continuing obligations' between himself and residents of the forum, he manifestly

has availed himself of the privilege of conducting business there, and . . . it is presumptively

not unreasonable to require him to submit to the burdens of litigation in that forum as well."

*Burger King Corp.,* 471 U.S. at 475-476 (internal citations and quotations omitted).  Having

negotiated and entered into a contract that creates continuing obligations with a resident of the

District of Columbia, and having directed communications in connection therewith into the

District of Columbia, Source cannot be heard to complain that it has not transacted business

in the District of Columbia.  That Source would make such a claim is neither credible nor

consistent with controlling case law.[5]

Because Source has purposefully directed its activities toward the District of Columbia,

the assertion of jurisdiction by this Court is presumed to be fair.  *Burger King Corp.*, 471 U.S.

at 475-476 ("where the defendant 'deliberately has  . . . created 'continuing obligations'

between himself and residents of the forum, . . . he manifestly has availed himself of the

privilege of conducting business there, and  . . . it is presumptively not unreasonable to require

him to submit to the burdens of litigating in that forum as well").  *See also* JAMES WM. MOORE

ET AL., MOORE'S FEDERAL PRACTICE ¶ 180.42[5][a] (3d ed. 2005) (same).  Source does not, and

cannot, claim that litigating in the District of Columbia would be "so gravely difficult and

inconvenient" that it would place Source at a "severe disadvantage" in comparison to

Ironbound.  *Burger King, Corp.*, at 478.[6]  Inasmuch as Source has purposefully directed its

activities to the District of Columbia and availed itself of the privilege of conducting business

here, the Court's assertion of jurisdiction will not offend traditional notions of fair play and

substantial justice.  *Id.*

---

[5] Source's reliance on *Comsat Corp., supra,* for the proposition that it has not transacted business in the
District of Columbia is misplaced.  Unlike Source, and as the *Comsat Corp.* court went to great length to
explain, the defendant in *Comsat Corp.* did not enter into a contract or otherwise purposefully establish
a relationship with the plaintiff.  *Comsat Corp.*, 900 F. Supp. at 521-524.  Noting that defendant's
contacts were a "far cry" from those of defendant in *Burger King Corp.* (in that case, defendant
purposefully entered into a contract with a Florida resident) the *Comsat Corp.* court held that
defendant's conduct did not manifest the deliberate and voluntary association necessary to invoke
jurisdiction.  *Id*.  Here, it is undisputed that Source directed communications into the District of
Columbia for the purpose of entering into a contract with a resident of the District of Columbia, thereby
purposefully directing its activities at the District of Columbia.

[6] As discussed more fully below, apart from the fact that Source owns a corporate jet and has retained
lawyers with offices in both Florida and the District of Columbia, the abundance of commercial air
transportation and numerous communications tools that Source can use to communicate with its
lawyers, such as phone, email, and fax, considerably reduce Source's burden of litigating in the District
of Columbia.

There are at least three justifications for asserting personal jurisdiction over Source in the District of Columbia.  First, "the District has an interest in providing its residents with the opportunity to redress grievances inflicted by out-of-state defendants."  *Fisher*, 519 A.2d at 164. Second, fairness requires that out-of-state actors who avail themselves of the benefits of contacts with the forum be accountable in the forum for the consequences of their activities. *Id*.  Third, an out-of-state actor's voluntary establishment of contacts with the forum ensures that subjecting it to personal jurisdiction in the District of Columbia will not impose an undue burden on the out-of-state defendant.  *Id*.  (citing *Burger King Corp*., 471 U.S. at 473-74).

All three justifications are applicable here.  First, the District of Columbia has a substantial interest in providing a forum to redress wrongs inflicted upon its citizens by clients who fail to pay for services rendered in the District of Columbia.  *See Sheikh*, 2005 WL 1387591 at *5 (citing *Hanson v. Denkla*, 357 U.S. 235, 253 (1958)); *Fisher*, 519 A.2d at 164-65 (citations omitted).  Second, Source availed itself of, and accepted the benefits of, Ironbound's services.  As discussed above, Ironbound introduced its client Endeavor/Emmanuel to defendant.  By receiving the introduction and entering into a relationship with Endeavor/Emmanuel, Source accepted the benefit of the services performed by Ironbound in the District of Columbia.  Having sought and accepted the benefit of contact with the forum, Source cannot now invoke due process to avoid jurisdiction.  *Burger King Corp.*, 471 U.S. at 474 ("the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed"); *Fisher*, 519 A.2d at 164 (citing *Chase, supra*; *Mouzavires, supra*).  Finally, it is well settled that where an out-of-state defendant engages a consultant to perform services in the District of Columbia, it cannot be said that a fee dispute with that same consultant in the same forum imposes an undue burden upon the defendant.  *Fisher*, 519 A.2d at 165.  Moreover, "because 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a

State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in a another forum for disputes relating to such activity." *Burger King Corp.*, 471 U.S. at 474.

"[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477. Source has made no showing, and cannot make any showing, that submission to litigation in this forum would be so gravely difficult and create such a sever disadvantage as to be unfair. *See id.* Accordingly, and for the reasons discussed more fully above, this Court has personal jurisdiction over Source based on the actions giving rise to the claims in this case.[7]

II.    Venue is Proper in the District of Columbia

Pursuant to 28 U.S.C. § 1391(a), in a case founded on diversity of citizenship, venue is proper in (1) a judicial district where defendant resides, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a judicial district in which defendant is subject to personal jurisdiction, if there is no district in which the action may otherwise be brought. *See also Fogle v. Ramsey Winch Co.*, 774 F. Supp. 19, 24 (D.D.C. 1991). In this case, venue in the District of Columbia is proper based on the first two of these factors.

---

[7] Although it is clear that Source is subject to personal jurisdiction in the District of Columbia, if there is any doubt, Ironbound should be entitled to conduct limited discovery on this issue. *GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1351-52 (D.C. Cir. 2000) (plaintiff entitled to jurisdictional discovery where record on defendant's contacts with District of Columbia was inadequate); *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996) (same). *See also Crane v. Carr*, 814 F.2d 758, 760 (D.C. Cir. 1987) (vacating, in part, the District Court's judgment because "Crane's case was dismissed with no opportunity for discovery on the issue of personal jurisdiction"). "A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of the trial court by withholding information on its contacts with the forum." *El-Fadl*, 75 F.3d at 676.

First, venue is proper in a judicial district where Source resides.  28 U.S.C. § 1391(a)(1). 28 U.S.C. § 1391(c) provides "[f]or purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  Where, as here, a defendant is subject to personal jurisdiction in the District of Columbia, that defendant is deemed to be a resident of the District of Columbia for purposes of venue.  *Sheikh*, 2005 WL 1387591 at *5.  Accordingly, venue in the District of Columbia is proper under 28 U.S.C. § 1391(a)(1).

Venue is also proper in a district in which a substantial part of the events or omissions giving rise to the claim occurred.  *Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 108 (D.D.C. 2002) (citing *Dooley v. United Tech. Corp.*, 786 F. Supp. 65, 80 (D.D.C. 1992)).  A plaintiff is "not required to establish that the District of Columbia has the most substantial contacts to the dispute, but, rather, only that 'a substantial part of the events occurred' here."  *Jacobsen*, 201 F. Supp. 2d at 108.  As discussed above, a substantial part of the events giving rise to the claims in this case occurred in the District of Columbia.  Among other things (1) Ironbound negotiated the Agreement in the district of Columbia (Statement of Facts ¶ 1), (2) Source directed email, fax and telephone communications to Ironbound in the District of Columbia in connection with the parties' negotiations (Statement of Facts ¶ 1), (3) Ironbound executed the Agreement in the District of Columbia (Statement of Facts ¶ 2), (4) Ironbound performed the Agreement in the District of Columbia (Statement of Facts ¶¶ 3-5), and (5) Source's breach of contract in repudiating its obligation to provide an accounting and to pay Ironbound's compensation is deemed to have occurred in the District of Columbia.  *Sheikh*, 2005 WL 2683817 at *10.  (*See also* Statement of Facts ¶ 6).  Based on these facts, venue in the District of Columbia is also proper under 28 U.S.C. § 1391(a)(2).

A.    <u>Motion to Transfer Venue Pursuant to 28 U.S.C. § 1406(a)</u>

Source argues that this case should be transferred to the Middle District of Florida pursuant to 28 U.S.C. § 1406(a).  That statute, however, only applies where venue is improper. *Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995); *Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1147 (5th Cir. 1984) (overruled on other grounds by *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147 (5th Cir. 1987)); *Bacik v. Peek*, 888 F. Supp. 1405, 1413 (N.D. Ohio 1993); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Frasch*, 751 F. Supp. 1075, 1078 (S.D.N.Y. 1990).  Where, as here, venue in the District of Columbia is proper, a motion to transfer venue under 28 U.S.C. § 1406(a) must be denied.[8]

B.    <u>Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)</u>

As an alternative to its motion to dismiss for improper venue, Source includes a one sentence footnote on the last page of its supporting memorandum in which it avers that "even if venue were proper in the District of Columbia, a transfer to the Middle District of Florida would still be warranted pursuant to 28 U.S.C. § 1404(a), which authorizes transfer '[f]or the convenience of parties and witnesses [and] in the interest of justice.'" (Supporting Memorandum at 9 n.3).  In making this bald assertion, Source provides no analysis whatsoever.

In determining whether to transfer, the Court must balance factors related to the interests of the parties as well as the public interest.  *Gemological Inst. of Am., Inc. v. Thi-Dai-*

---

[8] For the same reason, Source's reliance on *Abramoff v. Shake Consulting, L.L.C.*, 288 F. Supp. 2d 1 (D.D.C. 2003), is misplaced.  In that case, venue was improper and, for that reason, the court granted a motion to transfer venue pursuant to § 1406(a).  *Id.* at 5-6.  In *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1301 (D.C. Cir. 1996), the Circuit Court stated that sections 1404(a) and 1406(a) have been subject to "a nearly hopeless muddle of conflicting reasoning and precedent."  As discussed more fully below, the proper means for transferring venue, where venue is proper in the transferor district, is pursuant to 1404(a).

*Phan*, 145 F. Supp. 2d 68, 71 (D.D.C. 2001). The moving party bears the burden of establishing that transfer is proper. *Int'l Painters and Allied Trades Indus. Pension Fund v. Tri-State Interiors, Inc.*, 357 F. Supp. 2d 54, 56 (D.D.C. 2004). *See also Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002); *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001). To support a change of venue under 28 U.S.C. § 1404(a), a defendant must show that the balance of convenience of the parties and witnesses and the interest of justice favor transfer. *Green v. Footlocker Retail, Inc.*, 2005 WL 1330686, *1 (D.D.C. June 3, 2005) (attached hereto as Exhibit C); *Int'l Painters and Allied Trades Indus. Pension Fund*, 357 F. Supp. 2d at 56. By its single conclusory sentence, Source does not come close to meeting its burden. As discussed below, a balancing of the factors does not support Source's motion.

      *i.*     *Plaintiff's Choice of Forum*

      One of the most important factors to consider in weighing a decision whether to transfer venue is the plaintiff's choice of forum, which is entitled to "substantial deference." *Int'l Painters and Allied Trades Indus. Pension Fund v. Tri-State Interiors, Inc.*, 357 F. Supp. 2d 54, 55-56 (D.D.C. 2004); *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001); *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10,12 (D.D.C. 2000); *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 71 (D.D.C. 1998). Plaintiff's choice of forum is the "paramount consideration in any determination of a transfer request." *Green*, 2005 WL 1330686 at *1; *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002); *Sheraton Operating Corp. v. Just Corporate Travel*, 984 F. Supp. 22, 25 (D.D.C. 1997). Defendant bears a "heavy burden" in asking the Court to overturn it. *Thayer/Patricof Educ. Funding, L.L.C.*, 196 F. Supp. 2d at 31; *Shapiro, Lefschitz & Schram, P.C.*, 24 F. Supp. 2d at 71.

It is rare that the plaintiff's forum bears so little relationship with the transaction at issue that the court should transfer the action for the sake of convenience. *Shapiro, Lifschitz & Schram, P.C.*, 24 F. Supp. 2d at 71 (quoting *Gross v. Owen*, 221 F.2d 94, 95 (D.C. Cir. 1955)). *See also Green*, 2005 WL 1330686 at \*2; *Int'l Painters and Allied Trades Indus. Pension Fund*, 357 F. Supp. 2d at 55-56. Moreover, a court may not transfer a case "from a plaintiff's chosen forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff." *Green*, 2005 WL 1330686 at \*2; *Wilderness Soc'y*, 104 F. Supp. 2d at 12; *Shapiro, Lifschitz & Schram, P.C.*, 24 F. Supp. 2d at 71 (citing *Pain v. United Tech. Corp.*, 637 F.2d 775, 783 (D.C. Cir. 1980)).

In the instant case, Ironbound is a resident of the District of Columbia. Generally, where the choice is between the district where plaintiff resides and the district where defendant resides (in this case, the Middle District of Florida), plaintiff's district will prevail. *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-65 (7th Cir. 2003). *See also Robinson v. Gimarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996); *Laumann Mfg. Corp. v. Castings USA, Inc.*, 913 F. Supp. 712, 721 (E.D.N.Y. 1996). District of Columbia courts have held that deference to the plaintiff's choice of forum is particularly strong where the plaintiff has chosen its home forum. *Green*, 2005 WL 1330686 at \*2 (citing *Armco Steel Co. v. CSX Corp.*, 790 F. Supp. 311, 323 (D.D.C. 1991)); *Int'l Painters and Allied Trades Indus. Pension Fund v. Tri-State Interiors, Inc.*, 357 F. Supp. 2d 54, 56 (D.D.C. 2004); *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002). Because Ironbound resides in the District of Columbia and its choice of forum is entitled to substantial deference, this factor militates against transferring venue.

ii.        *Convenience of Third Party Witnesses*

Another factor to consider in determining whether to transfer venue is the convenience of third party witnesses, which is given more weight than the convenience of party witnesses. *State St. Capital Corp. v. Dente*, 855 F. Supp. 192, 198 (S.D. Tex. 1994); *Aquatic Amusement Assocs., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990). In this case, the only likely third party witnesses include Ari Emanuel and outside advisors, none of whom reside in either the District of Columbia or the Middle District of Florida. Rather, they reside in California and New York.

Courts have held that, where third party witnesses do not reside in either forum, this factor is considered neutral and does not weigh either in favor of or against transfer. *Aquatic Amusement Assocs., Ltd.*, 734 F. Supp. at 58; *Houk v. Kimberly-Clark Corp.*, 613 F. Supp. 923, 931 (W.D. Mo. 1985). *See also SEC v. Hart*, 1978 WL 1091, *1, 25 Fed. R. Serv. 2d 1315 (D.D.C. 1978) (denying transfer where witnesses were located throughout a substantial portion of the U.S. and, therefore, travel by witnesses would be required regardless of the forum). Moreover, as between the District of Columbia and the Middle District of Florida, if either forum is more convenient for potential third party witnesses, it is the District of Columbia. With respect to potential witnesses who reside in New York, the District of Columbia is easily accessible by plane, train, and automobile. Thus, if this factor weighs in either direction, it favors keeping the case in the District of Columbia.

iii.       *Convenience of the Parties*

The convenience of the parties and party witnesses is also a factor to consider in determining whether to transfer venue. *Green v. Footlocker Retail, Inc.*, 2005 WL 1330686, *1 (D.D.C. June 3, 2005). Here, Source has alleged that "most of the witnesses," which are employees of Source, are located in Florida. However, it is not the shear number of witnesses

that is crucial in determining whether the convenience of witnesses weighs in favor of transfer, but, rather, the question is whether their testimony is material. *State St. Capital Corp. v. Dente*, 855 F. Supp. 192, 198 (S.D. Tex. 1994); *Dwyer v. Gen. Motors Corp.*, 853 F. Supp. 690, 693 (S.D.N.Y. 1994) (citing *Catalano v. BRI, Inc.*, 724 F. Supp. 1580, 1584 (E.D. Mich. 1989)). Even if the number of witnesses were dispositive, Source has only named two potential witnesses, Doug Bates and Leslie Flegel, who are located in Florida.

A party seeking transfer based on the convenience of witnesses must clearly specify the key witnesses to be called and make a general statement of their testimony, which Source has not done. *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 33 (D.D.C. 2002); *Laumann Mfg. Corp. v. Castings USA, Inc.*, 913 F. Supp. 712, 720-21 (E.D.N.Y. 1996); *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 183 (S.D.N.Y. 1995). This court has also held that the moving party must demonstrate whether or not its witnesses are willing to travel to another jurisdiction to testify. *Thayer/Patricof Educ. Funding, L.L.C.*, 196 F. Supp. at 33. Where the party seeking transfer fails to provide information explaining the materiality of the testimony of its proposed witnesses, it cannot demonstrate the requisite inconvenience to its witnesses. *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992). *See also SEC v. Hart*, 1978 WL 1091, *1, 25 Fed. R. Serv. 2d 1315 (D.D.C. 1978) (denying transfer where "defendant's description of his witnesses and their testimony is inadequate to sustain his burden concerning convenience to the parties and the witnesses").

In this case, Source has failed to identify its anticipated witnesses, provide information explaining why their testimony is material, or demonstrate whether or not its witnesses are willing to travel to the District of Columbia to testify. Although Source has failed to provide a list of its witnesses and their anticipated testimony in order to support their materiality, it has attached to its motion the affidavits of two of its employees, Douglas Bates and Leslie Flegel. Because Messrs. Bates and Flegel are employees of Source, and it can be presumed that they

will be made available to testify in the District of Columbia.  *See Thayer/Patricof Educ. Funding, L.L.C.*, 196 F. Supp. at 32; *S-Fer Int'l, Inc. v. Paladion Partners, Ltd.*, 906 F. Supp. 211, 215 (S.D.N.Y. 1995).  As District of Columbia courts have held, "convenience of witnesses is considered only to the extent that the witnesses 'may actually be unavailable for trial in one of the fora.'"  *Green*, 2005 WL 1330686 at *2 (quoting *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 12 (D.D.C. 2000)).  Additionally, where the result of a transfer would be simply to shift the inconvenience from defendant's witnesses to plaintiff's witnesses, transfer should be denied.  *See Int'l Painters and Allied Trade Indus. Pension Fund*, 357 F. Supp. 2d 54, 57 (D.D.C. 2004) (denying transfer where it would merely shift the inconvenience from defendant's witnesses to plaintiff's witnesses).  Therefore, the fact that Messrs. Bates and Flegel reside in Florida should be accorded little, if any, weight in determining whether to transfer venue.[9]

In determining whether venue should be transferred, courts also consider the relative burden to each party, including the parties' relative financial means.  *Dwyer*, 853 F. Supp. at 693-94 (transfer denied because defendant, a large corporation, was better able to absorb the added expense of litigating away from its home); *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 989 (E.D.N.Y. 1991).  Courts also take into account the disruption to a party's business caused by the prolonged absence of key employees.  *Aquatic Amusement Assocs., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 58 (N.D.N.Y. 1990) (giving weight to plaintiff's assertion that its business would be adversely affected by the absence of six of its executives to testify at a lengthy trial in a district away from its corporate offices); *Air Line Pilots Assn. v. Eastern Air*

---

[9] In addition to its office in Florida, Source maintains an office in New York, along with a corporate apartment for Mr. Flegel.

*Lines*, 672 F. Supp. 525, 527 (D.D.C. 1987) (taking into account "the expense of transportation and the length of time that witnesses will be absent from their jobs").

In this case, there would be little burden to Source, a national distribution and fulfillment company, in litigating in the District of Columbia. Due to its large number of employees, which number in the thousands, Source's business operations will not be materially disrupted if two (or more) employees are required to travel to the District of Columbia to give testimony. While some of Source's witnesses may live in Florida, "it can fly them to the District of Columbia at negligible expense and effort." *Air Line Pilots Assn*, 672 F. Supp. at 527. Moreover, Source's senior executives have corporate jets at their disposal (indicating that they are no strangers to travel). In many cases, the flight time from Florida to the District of Columbia is no different than the time it takes to drive to the District of Columbia from an outlying suburb. Moreover, Source is a billion dollar company, its financial resources significantly outstrip those of Ironbound, and, from a financial perspective, litigating in the District of Columbia will not be a material burden. Indeed, the cost of filing and litigating this motion will likely exceed the cost of travel to the District of Columbia for Source's witnesses; unless that is, it uses its corporate jet.

Conversely, Jonathan Ledecky, the sole proprietor of Ironbound and its primary witness, has sole responsibility for Ironbound's day-to-day operations and the operations of his other business ventures in the District of Columbia. (Ledecky Decl. ¶ 1). If Mr. Ledecky is required to litigate in Florida, he will be away from his businesses for an extended period of time, and his ability to manage the day-to-day activities of Ironbound and other business ventures in the District of Columbia with which he is involved will be hampered. (Ledecky Decl. ¶ 1). Moreover, where transfer would merely shift the balance of inconvenience from the defendant to the plaintiff, an argument based on the convenience of the parties is insufficient to show that a transfer is warranted. *Int'l Painters and Allied Trades Indus. Pension Fund v. Tri-State*

*Interiors, Inc.*, 357 F. Supp. 2d 54, 57 (D.D.C. 2004); *Sheraton Operating Corp. v. Just Corporate Travel*, 984 F. Supp. 22, 26 (D.D.C. 1997). *See also Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 73 (D.D.C. 1998).

Because the burden to Mr. Ledecky and Ironbound of litigating in Florida exceeds the burden to Source of litigating in the District of Columbia, and because, at most, a transfer would merely shift the balance of inconvenience from Source to Ironbound, this factor militates against transfer.

    iv.    *Local Interest in Deciding Local Controversies at Home*

Another factor to consider when determining whether transfer of venue is appropriate is the interest of local courts in deciding local controversies. *See, e.g., Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 (1981) (granting transfer where foreign country had greater interest in litigation involving an airplane accident that occurred in its airspace). The District of Columbia has an interest in litigation involving a the District of Columbia resident. *Fisher v. Bander*, 519 A.2d 162, 164 (D.C. Cir. 1986) ("the state has an interest in providing its residents with the opportunity to redress grievances inflicted by out-of-state defendants"); *Sheikh v. Mr. K's Restaurant*, 2005 WL 1387591, *5 (D.D.C. June 10, 2005) (finding that the District of Columbia has a "substantial interest in providing a forum within which wrongs inflicted in the District by clients who fail to pay for professional services rendered in the District can be redressed"); *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 52 n.8 (D.D.C. 2000) (finding that courts in California have "a greater particularized interest in resolving allegations that a California citizen has suffered injury"). *See also Promuto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 641 (S.D.N.Y. 1999) (quoting *Dwyer v. Gen. Motors Corp.*, 853 F. Supp. 690, 695 (S.D.N.Y. 1994)) (New York has an interest in seeing its residents compensated for their losses). It has a "manifest interest" in providing its residents with a convenient forum

in which to redress injuries caused by out-of-state actors. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985); *Ross v. Prod. Dev. Corp.*, 736 F. Supp. 285, 291 (D.D.C. 1989).

Because Ironbound is a resident of the District of Columbia and Source has purposely availed itself of the privilege of conducting business here, the District of Columbia has a strong interest in enforcing the agreement between Ironbound and Source, and this factor weighs against transfer. *Fisher*, 519 A.2d at 164; *Sheikh*, 2005 WL 1387591 at *5.

  *v.*  *Location of Physical Evidence*

The location of physical evidence may also be considered in determining whether to transfer venue. However, the location of documents is a relatively less important consideration, given the low cost of transporting documents. *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 36 (D.D.C. 2002) (holding that documents in Kansas could be easily transported to the District of Columbia and that "the location of documents, given modern technology, is less important in determining the convenience of the parties"); *Aerotel Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 n.9 (S.D.N.Y. 2000) (in "today's era of photocopying, fax machines, and Federal Express," location of documents is a neutral factor in a convenience analysis). *See also Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992) (finding that, although defendant, in arguing for transfer to Florida, claimed that his defense would require boxes of documents, "Defendant never attempted to explain, let alone substantiate, why these documents could not be sifted through (at his Florida offices) and the probative ones shipped at relatively minor cost to Oklahoma for trial"); *Air Line Pilots Assn. v. Eastern Air Lines*, 672 F. Supp. 525, 527 (D.D.C. 1987) (finding that defendant, located in Miami, "would not be severely encumbered by having to photocopy these materials and transport them to this area").

The instant case is unlikely to involve a large amount of documents, since the primary dispute centers on the Agreement and the negotiation of the Agreement. To the extent that documents will be needed to provide an accounting of the net income Source has earned as a result of its relationship with Endeavor/Emanuel, it is likely that most of that evidence will be financial information that is available electronically or in several banker's boxes. Moreover, regardless of whether trial is held in the District of Columbia or Florida, Source will still be required to review its documents for privilege, copy them, and make them available for Ironbound's review. The only difference is that, if this case is litigated in the District of Columbia, Source will be required to produce its documents in this forum. Inasmuch as the cost of shipping several (or even 100) boxes documents is *de minimis* (especially when compared with the legal fees incurred by Source to file and brief this motion), this factor is neutral when considering whether transfer of venue is appropriate. *See Scheidt v. Klein*, 956 F.2d at 966 (finding that probative documents could be shipped from Florida to Oklahoma at "minor cost"); *Aerotel Ltd.*, 100 F. Supp. 2d at 197 n.9 (holding that location of documents is a neutral factor in a convenience analysis).

      vi.    *Choice of Law*

Another factor that may be considered in deciding a motion to transfer venue is which state's substantive law will apply. Where an issue of state statutory law or unique common law governs, this factor will typically weigh in favor of transfer to the state that is the source of the applicable governing law. *See, e.g., Trout Unlimited v. United States Dep't of Agric.*, 944 F. Supp. 13, 19 (D.D.C. 1996). This factor is given little weight, however, where, as here, the legal issues do not involve a complex question of another state's laws, but, rather, relate to a simple matter of common law. *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992) (holding that the simplicity of the common law contract issues involved in that case neutralized this

factor); *Coker v. Bank of Am.*, 984 F. Supp. 757, 766 (S.D.N.Y. 1997) (holding that the fact that another state's substantive law applies is accorded little weight where no complex questions of the other state's law are involved); *S-Fer Int'l, Inc. v. Paladion Partners, Ltd.*, 906 F. Supp. 211, 215-16 (S.D.N.Y. 1995) (finding that, where a case involved "relatively unexceptional questions of contract and fraud," the court would be capable of applying another state's law); *Dwyer v. Gen. Motors Corp.*, 853 F. Supp. 690, 694 (S.D.N.Y. 1994); *Houk v. Kimberly-Clark Corp.*, 613 F. Supp. 923, 932 (W.D. Mo. 1985) (finding that the possibility that another state's law will apply is "not of great moment" in deciding a motion to transfer); *Vassallo v. Niedermeyer*, 495 F. Supp. 757, 760 (S.D.N.Y. 1980). *See also George Washington Univ. v. DIAD, Inc.*, 1996 WL 470363, *2 (D.D.C. Aug. 9, 1996) (rejecting defendant's motion to transfer, which was based, in part, on the argument that the court would be required to apply Virginia law, and stating that "the law of the Commonwealth is not foreign law requiring proof of expert testimony") (attached hereto as Exhibit D).

As this Court held in *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 36 (D.D.C. 2002), "[f]ederal courts today . . . are often called upon to apply state laws, especially on common legal issues such as breach of contract. . . ." In *Thayer*, which also involved a breach of contract claim, the court held that the contract's designation of Kansas law did not strongly favor transfer. *Id.* at 37. In the instant case, although the choice of law provision in the Agreement provides that Florida law applies to claims arising out of that agreement, the dispute involves a simple, common law breach of contract claim. Thus, as it relates to the breach of contract claim, this factor should be considered neutral.[10]

---

[10] It is true that, in a recent case involving a breach of contract claim, *Schmidt v. Am. Inst. of Physics*, 322 F. Supp. 2d 28 (D.D.C. 2004), Judge Urbina granted a motion to transfer venue to the District of Maryland relying, in part, on the fact that Maryland's law would apply. That case is distinguishable, however, in that, in the *Schmidt* case, a wrongful termination case, the District of Columbia had no meaningful ties to the case because all the events giving rise to the litigation occurred in Maryland, where defendant's corporate offices were located. *Id.* at 33. By contrast, in the instant case, as discussed

Moreover, this court has held that, where, as here, District of Columbia law applies to some claims and another state's law to other claims, the choice of law factor does not argue in favor of transfer. *Stewart v. Capitol Area Permanente Med. Group, P.C.*, 720 F. Supp. 3, 7 (D.D.C. 1989). In this case, although the breach of contract claim is governed by Florida law, pursuant to the parties' agreement, the equitable claims will be governed by District of Columbia law.[11] Because District of Columbia law will apply to three of the four claims set forth in the Complaint, this factor weighs against transfer.

    vii.    *Balance of Convenience*

In deciding whether to transfer, the Court should balance the interests of plaintiff and defendant, along with public interests such as efficiency and fairness. *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001); *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 12 (D.D.C. 2000). As the Supreme Court has held, unless the balance tips strongly in favor of defendant, plaintiff's choice of forum is to be respected. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).[12] *See also Dooley v. United Techs. Corp.*, 786 F. Supp. 65, 82 (D.D.C. 1992) (holding that the court must weigh the convenience of the parties and

---

above, a substantial part of the events giving rise to the claims occurred in the District of Columbia. Moreover, in the *Schmidt* case, there was no indication that District of Columbia law would apply to any of the claims at issue, whereas, in the instant case, District of Columbia law will apply to three of the four claims set forth in the Complaint.

[11] Under District of Columbia choice of law rules, the law of the jurisdiction that has the most substantial interest in the matter governs. *Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143 (D.D.C. 1997). In this case, as detailed above, the District of Columbia has the most substantial interest in this matter because it is the jurisdiction where the Agreement was negotiated and executed, where Ironbound performed its obligations under the Agreement, and where the breach occurred. In this respect, the District of Columbia has a substantial interest in providing its residents with a forum to redress wrongs.

[12] This case was superseded by statute on other grounds.

witnesses and the interest of justice "against the longstanding principle that the plaintiff's choice of forum rarely should be disturbed").

In this case, when weighing all the factors, the balance of convenience unquestionably weighs in favor of keeping this case in the District of Columbia. Because the District of Columbia is Ironbound's home forum, Ironbound's choice of forum is entitled to substantial deference. The likely third party witnesses are not residents of either the District of Columbia or Florida, and it can be presumed that witnesses who are employees of the parties will be available to testify in the District of Columbia. The burden to Mr. Ledecky, who is self-employed, of transferring this case to Florida would far outweigh the burden to Source, a large publicly traded national corporation, of litigating this case in the District of Columbia, which has an interest in enforcing agreements made with its residents. The cost to Source of mailing documents to the District of Columbia will likely be *de minimis*, and, although the Agreement provides that Florida law applies to the breach of contract claim, that claim involves a simple matter of common law, and the other equitable claims will be decided under District of Columbia law. For all these reasons, Source's motion to transfer venue should be denied.

<u>Conclusion</u>

Ironbound has made a prima facie case that personal jurisdiction and venue are proper in the District of Columbia.  For the foregoing reasons, Source's Motion to Dismiss for Lack of Jurisdiction and Improper Venue, or Alternatively to Transfer Venue, should be denied.

Respectfully submitted,

/s/ Matthew D. Schwartz
Matthew D. Schwartz (D.C. Bar No. 436619)
THOMPSON COBURN LLP
1909 K. Street, N.W. Ste. 600
Washington, D.C.  20006-1167
(202) 585-6900 (telephone)
(202) 585-6969 (facsimile)

*Attorney for Plaintiff Ironbound Partners, LLC*

CERTIFICATE OF SERVICE

This is to certify that on the 8th day of July, 2005, a true and correct copy of the above

Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper

Venue was served by electronic mail to the following:

C. Allen Foster
Kevin E. Stern
GREENBERG TRAURIG, LLP
800 Connecticut Avenue, NW
Suite 500
Washington DC  20006


/s/  Ryan K. Manger