Westlaw.

IronBound Partners LLC v. Source Interlink Companies, Inc.,
Case No. 1:05CV01039 (JGP)

Exhibit B

Slip Copy
2005 WL 1387591 (D.D.C.)
**(Cite as: 2005 WL 1387591 (D.D.C.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, District of Columbia.
Saeed M. SHEIKH, Plaintiff,
v.
MR. K'S RESTAURANT, INC., Defendant.
**No. Civ.A. 04-00515(RWR).**

June 10, 2005.

Matthew A. Rizzo, Odin, Feldman & Pittleman, P.C., Fairfax, VA, for Plaintiff.

Simon M. Osnos, Falls Church, VA, for Defendant.

*MEMORANDUM OPINION AND ORDER*

ROBERTS, J.

**\*1** Plaintiff filed a complaint against the defendant ("the Restaurant"), alleging that the defendant breached a contract ("the Consulting Agreement") between the two parties by failing to compensate him under the contract's terms and that the defendant fraudulently induced him to sign a side agreement waiving his rights to such compensation. Defendant filed a motion to dismiss the complaint for lack of personal jurisdiction, or alternatively, for improper venue. Because plaintiff has alleged facts sufficient to show that this court has personal jurisdiction over the defendant under the District of Columbia's long-arm statute, and because venue is proper in this district, defendant's motion to dismiss will be denied.

*BACKGROUND*

Plaintiff is a resident of Maryland who maintains a business office in the District of Columbia. (Compl. ¶ 1; Decl. of Saeed M. Sheikh ("Sheikh Decl.") ¶ 2.) Defendant is a New York corporation maintaining its principal place of business in New York. (Compl.¶ 2.) In early 1997, Johnny Tsu Kau, defendant's president, contacted plaintiff at plaintiff's office and solicited his assistance in opening a Mr. K's Restaurant in New York. [FN1] (Compl. ¶ 7; Sheikh Decl. ¶ 3.) Plaintiff alleges that the defendant sought his consulting expertise in launching and managing the New York restaurant. (Compl.¶ 7.)

FN1. At the time, Kao was also president of Mr. K's, Inc., a distinct District of Columbia corporation that owns a Mr. K's Restaurant in downtown Washington, D.C. (*See* Aff. of Johnny Tsu Kao ("Kao Aff.") ¶ 2.) Kau initially became acquainted with plaintiff because plaintiff was a patron of that restaurant. (*Id.* ¶ 3.)

Shortly thereafter, both parties began to negotiate the compensation that plaintiff would receive for his consultation services. (Compl.¶ 8.) Defendant forwarded a signed proposed Consulting Agreement to the plaintiff's office for plaintiff's approval and signature, and plaintiff there executed the document. (Sheikh Decl. ¶ ¶ 5-6.) Plaintiff alleges that just before he signed the Consulting Agreement, Kao held a secret meeting with plaintiff, outside the presence of plaintiff's counsel. (*Id.* ¶ 17.) Plaintiff claims that at the meeting, Kao presented plaintiff with papers that Kao asserted had been approved by plaintiff's counsel and were part of the overall Consulting Agreement. (*Id.* ¶ ¶ 17-18, 41.)

The Consulting Agreement contains the following provision:

> In consideration of [plaintiff's] past and continuing contributions to the [Restaurant] as a consultant, the [Restaurant] agrees to pay [plaintiff] 8% of all [its] net profits ... for the first 5 years from the date the [Restaurant] opens to the public for daily business, and 2% of all [its] monthly gross receipts ... for the second 5 years that the [Restaurant] is open for daily business.

(Compl.Ex. A.) The Restaurant opened for business in February 1998. (Compl. ¶ 25; Kao Aff. ¶ 1.)

Plaintiff contends that all activities giving rise to the Consulting Agreement, including defendant's solicitation of plaintiff's services, telephone negotiations, execution of the contract, and performance of services, [FN2] occurred at the plaintiff's office in the District. (Mem. of P. & A. in Opp'n to Mot. to Dismiss at 2.) Plaintiff argues that defendant breached the Consulting Agreement by refusing to compensate him for his services under its terms. (Compl. ¶ ¶ 30-33; *see also* Compl. Ex. A.) Plaintiff also contends that after he made repeated requests for payment, counsel for the defendant

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 1387591 (D.D.C.)
**(Cite as: 2005 WL 1387591 (D.D.C.))**

Page 2

produced a two-sentence side agreement, signed by the plaintiff, which defendant's counsel alleged replaced the Consulting Agreement and nullified the Restaurant's financial obligation to pay plaintiff two percent of its gross monthly profits during the second five years of its operation. (Compl.¶ 34.)

>  FN2. Plaintiff claims that the services performed pursuant to the Consulting Agreement "included business promotion activities with various embassy personnel .... [and] telephone calls from the [District] to hotels and corporate contacts throughout the world." (Mem. of P. & A. in Surreply to Def.'s Mot. to Dismiss at 5.) Defendant contends that the plaintiff performed no services for the restaurant venture other than securing an offshore loan. (Reply to Pl.'s Opp'n to Mot. to Dismiss at 2; Kao Aff. ¶ ¶ 4, 5, 10, 11.)

 **\*2** Plaintiff states that his counsel had in fact never seen or approved the side agreement, and that defendant did not provide copies of the papers to plaintiff or his counsel until after plaintiff's repeated requests for payment under the Consulting Agreement, nearly six years later. (*Id.* ¶ ¶ 18-19, 37.) Plaintiff maintains that insofar as he executed the side agreement during his secret meeting with Kao, defendant obtained plaintiff's signature through fraud, trickery, and intentional misrepresentations that the document had previously been approved by plaintiff's counsel. (*Id.* ¶ ¶ 49-50.)

*DISCUSSION*
I. PERSONAL JURISDICTION

 In a case where no discovery or evidentiary hearing has yet taken place, a plaintiff may defeat a motion to dismiss for lack of personal jurisdiction merely by making factual allegations sufficient to connect the defendant to the forum and establish a prima facie showing of jurisdiction. *Nix v. Hoke,* 62 F.Supp.2d 110, 113 (D.D.C.1999). A court must draw all reasonable inferences in favor of the plaintiff in ruling on a motion to dismiss a complaint for lack of personal jurisdiction. *See GTE New Media Servs., Inc. v. Ameritech Corp.,* 21 F.Supp.2d 27, 36 (D.D.C.1998).

 The plaintiff has asserted federal subject matter jurisdiction on the basis of the parties' diversity of citizenship. 28 U.S.C. § 1332(a) (2000). Because plaintiff asserts no claim arising under federal law, personal jurisdiction over the defendant turns on District of Columbia law insofar as it is compatible with due process. *See Steinberg v. Int'l Criminal Police Org.,* 672 F.2d 927, 930 (D.C.Cir.1981). Plaintiff invokes the District's long-arm statute as the basis for the court's exercise of personal jurisdiction over the defendant. Two requirements must be met for personal jurisdiction to exist over a defendant in a diversity action under the District's long-arm statute. First, the long-arm statute must authorize exercising personal jurisdiction, and second, exercising personal jurisdiction must comport with due process. *See id.*

 A. *Long-arm Statute*

 The District of Columbia's long-arm statute states in relevant part:
> (a) A District of Columbia court may exercise personal jurisdiction over a person, [FN3] who acts directly or by an agent, as to a claim for relief arising from the person's--

>  FN3. The definition of "person" as used in the District's long-arm statute includes a corporation. D.C.Code Ann. § 13-421 (2001); *see Koteen v. Bermuda Cablevision, Ltd.,* 913 F.2d 973, 974 (D.C.Cir.1990); *Urciolo v. Versa Prods., Inc.,* 1991 U.S. Dist. LEXIS 12671, at 4-5 (D.D.C.1991).

> (1) transacting any business in the District of Columbia;
> (2) contracting to supply services in the District of Columbia; ...
> (b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

 D.C.Code Ann. § 13-423 (2001). Therefore, to establish personal jurisdiction under section 13-423(a)(1), a plaintiff must make factual allegations (1) that the defendant transacted business in the District, and (2) that the claim arose from the business transacted in the District.

 **\*3** The requirement that the defendant transacted business in the District can be met by "those contractual activities of a nonresident defendant which cause a consequence [in the District]." *Mouzavires v. Baxter,* 434 A.2d 988, 992 (D.C.1981) (upholding jurisdiction where nonresident defendants solicited plaintiff to perform services largely within the District via a contract executed in the District). The legislative history and intent of the requirement suggest that its language should be given a broad interpretation. *See id.* Sometimes, even "a single act

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 1387591 (D.D.C.)
**(Cite as: 2005 WL 1387591 (D.D.C.))**

Page 3

alone may be sufficient to constitute transacting business." See id.; cf. Cockrell v. Cumberland Corp., 458 A.2d 716, 718 (D.C.1983) (holding that "appellant's writing of a check on a District of Columbia bank is both too remote and too trivial to be regarded as a consequence of any contractual activity by appellee.")

In *Mouzavires,* the District of Columbia Court of Appeals held that nonresident defendants were transacting business in the District within the meaning of § 13-423, and that jurisdiction over the defendants was proper, where the defendants (1) solicited the plaintiff's services in the District to be performed in major part in the District, (2) entered into a contract with the plaintiff by contacting the plaintiff in the District via phone and mail, and (3) sent partial payment for services performed to the plaintiff in the District. See Mouzavires, 434 A.2d at 994-97. The court noted that a nonresident defendant need not be physically present in the District, and that "the exercise of personal jurisdiction has been sustained where the nonresident defendant's only contact with the forum has been by mail or telephone." Id. at 992, 995 (collecting cases).

The facts of this case are similar to those in *Mouzavires.* As in *Mouzavires,* plaintiff does not rely on his own unilateral activities in asserting jurisdiction under the long-arm statute. See id. at 994. Plaintiff alleges that defendant initiated the contract between the parties in the District by soliciting plaintiff's business services via plaintiff's office, and that defendant later sent a signed Consulting Agreement to plaintiff's office to be signed and implemented. (Mem. of P. & A. in Opp'n to Mot. to Dismiss at 1-2.) Plaintiff also claims that his performance under the contract--assisting defendant in the New York start-up venture--occurred in the District. (See id. at 2.) Moreover, defendant's alleged failure to pay plaintiff the full compensation required under the contract also occurred in the District because payment was to be sent to plaintiff's District office. (Id. at 1-2.) See also Mouzavires, 434 A.2d at 994 ("[I]t seems fair to say that one who solicits in a state may be sued there if the transaction he has sought goes sour." (citation and internal quotation marks omitted)). Consequently, plaintiff has made a sufficient prima facie factual allegation that the defendant, through its contractual activities, transacted business in the District within the meaning of § 13-423.

***4** The requirement that the plaintiff's claim must arise from the business transacted in the District permits a defendant to be sued here only for claims that arose from the defendant's specific contacts within this forum. See Junqquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1032 (D.C.Cir.1997); Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 509 (D.C.Cir.2002). [FN4] Under the District's long-arm statute, then, "the court must confine its jurisdictional analysis to those contacts that 'could be said to have *given rise to the claims charged* in the plaintiff's complaint." ' Schwartz v. CDI Japan, 938 F.Supp. 1, 5 (D.D.C.1996) (emphasis in original) (quoting First Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1377 n. 2 (D.C.Cir.1988)). Here, plaintiff's claims against the defendant include breach of contract and fraudulent inducement. (Compl.¶ ¶ 43-47.) They stem directly from defendant's contacts with the plaintiff via plaintiff's Washington D.C. office involving the contract and side agreement. Therefore, the second prong of the District's long-arm statute is met.

> FN4. It is not enough that a defendant have continuous corporate operations within a state that are "thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." Int'l Shoe Co. v. Washington, 326 U.S. 310, 318, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

B. *Due Process*

For the exercise of jurisdiction to comport with due process, a defendant must have purposefully established minimum contacts in the forum such that the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. See Koteen v. Bermuda Cablevision, Ltd., 913 F.2d 973, 975 (D.C.Cir.1990) (citations omitted). To determine whether the defendant has established minimum contacts with the forum, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). A court must look at "the relationship among the defendant, the forum, and the litigation," Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), to ensure that based on the defendant's conduct, the defendant "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490

Slip Copy  
2005 WL 1387591 (D.D.C.)  
**(Cite as: 2005 WL 1387591 (D.D.C.))**

Page 4

(1980). The requirement that a defendant purposefully avail itself of the privilege of conducting activities within the forum ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Woodson,* 444 U.S. at 299.

In *Burger King v. Rudzewicz,* a case involving a franchise agreement, the Supreme Court re-emphasized its earlier holding that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 94 L.Ed. 1154 (1950)). *Burger King* held that where a defendant has purposefully engaged in significant activities within a state, the defendant "manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.* at 476 (internal citations omitted). In holding that it was presumptively reasonable for the defendant who resided in Michigan to face suit in Florida, where Burger King is incorporated, the Court stated that "[defendant's] refusal to make the contractually required payments in Miami, and his continued use of Burger King's trademarks and confidential business information after his termination, caused foreseeable injuries to the corporation in Florida." *Id.* at 480.

**\*5** In this case, plaintiff has adequately alleged that defendant intentionally established contacts with the District by retaining the plaintiff's services in the District, extensively communicating with plaintiff in the District via telephone and mail, and accepting the services performed in the District by plaintiff. *See Koteen,* 913 F.2d at 975 (holding that the defendant purposefully established contacts with the District by retaining, visiting, and communicating with a District of Columbia law firm). Defendant thereby purposefully availed itself of the privilege of conducting activities within this forum, thus invoking the benefits and protections of its laws. *See Hanson,* 357 U.S. at 253. The court's exercise of jurisdiction is further supported by the District's substantial interest in providing a forum within which wrongs inflicted in the District by clients who fail to pay for professional services rendered in the District can be redressed. *See id.* Because the plaintiff's factual allegations are sufficient to establish that the requirements of the District's long-arm statute and due process have been met, the court may assert personal jurisdiction over the defendant.

II. VENUE

For diversity cases, the applicable federal venue statute provides in relevant part:
> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may [be brought] in (1) a judicial district where any defendant resides, if all defendants reside in the same State....
> (c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

28 U.S.C. § § 1391(a), (c) (2000). Because personal jurisdiction is proper over this corporate defendant under the District's long-arm statute, defendant is deemed to reside in the District of Columbia for purposes of venue. *See id.* § 1391(c). Since venue is proper in "a judicial district where any defendant resides," *id.* § 1391(a)(1), venue is proper in the District of Columbia.

*CONCLUSION AND ORDER*

Because plaintiff has established that the court may assert personal jurisdiction over the defendant, and because venue is also proper in this district, it is hereby

ORDERED that defendant's motion to dismiss [4] be, and hereby is, DENIED.

2005 WL 1387591 (D.D.C.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 2683816 (Trial Pleading) Verified Complaint (Mar. 22, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.