IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IRONBOUND PARTNERS, LLC, )
)
    Plaintiff, )
)
v. ) Case No. 1:05CV01039 (JGP)
)
SOURCE INTERLINK COMPANIES, INC., )
)
    Defendant. )
_____)

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, ALTERNATIVELY, TO TRANSFER VENUE**

Boiled to its essence, plaintiff's personal jurisdiction argument rests upon the following slender reeds: (i) Source negotiated the Referral Agreement at issue (the "Agreement") with plaintiff by telephone, fax and e-mail; (ii) after the Agreement was executed, plaintiff's principal, Mr. Ledecky, made two telephone calls from the District pursuant to the Agreement, only one in which Source participated (Complaint ¶¶ 13, 16); and (iii) Source made one phone call to Mr. Ledecky after the Agreement was executed (Complaint ¶ 15). No other substantive contacts or activities within the District exist. To exercise personal jurisdiction over Source based upon these *de minimis* activities would be unprecedented. It would effectively subject any party who negotiates and enters into a contract with a District resident to personal jurisdiction even when, as is the case here, the Agreement at issue was solicited and initiated by plaintiff, not Source.

For similar reasons, plaintiff's argument that this is a proper venue for this suit is unavailing. The parties' negotiations and execution of the Agreement did not directly give rise to plaintiff's claims, so they cannot even be considered. Furthermore, it is undisputed that the singular event giving rise to plaintiffs' claims—the merger between Source and Alliance

Entertainment Corp.—did not take place in the District, but instead substantially took place in Florida.

I. **Source Has Not "Purposefully Directed" Its Activities Towards the District of Columbia**

In analyzing plaintiff's argument, it is important to keep the governing legal principles in mind. First, mail and wire communications between a defendant and a District resident in the District of Columbia do not, standing alone, provide a basis for personal jurisdiction. *Comsat Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 523 (D.D.C. 1995) (citing *Health Communications, Inc. v. Mariner Corp.*, 860 F.2d 460, 461 (D.C. Cir. 1988)). Second, the mere existence of a contract between a non-resident and a District resident cannot serve as the basis for the exercise of personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985); *Comsat Corp.*, 900 F. Supp. at 524 (citing *Hanson v. Denckla*, 357 U.S. 235 (1958)). Third, any contacts by Source with Mr. Ledecky or plaintiff that are unrelated to the claims being asserted here are not relevant to the analysis where specific personal jurisdiction is being asserted. *See* D.C. Code § 13-423(b); *Comsat Corp.*, 900 F. Supp. at 521. Thus, plaintiff's assertion that, prior to entering into the Agreement, Ledecky (not Ironbound) "assisted Source with several transactions, each of which involved communications by Source with Ledecky in the District of Columbia" (Plaintiff's Opposition ("Opp.") at pp. 5-6), has no bearing on whether personal jurisdiction can be asserted over Source in the present case.

At bottom, plaintiff's argument rests mainly upon its contention that it "substantially performed" its obligations under the Agreement in the District. However, even assuming this to be true, it is wholly irrelevant. "[A] plaintiff cannot rely on its own activities, rather than those of a defendant, to establish the requisite minimal contacts for personal jurisdiction." *Environmental Research Int'l, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 812

(D.C. 1976) (en banc); *see also Frank E. Basil, Inc. v. Guardino*, 424 A.2d 70, 77 (D.C. 1980) ("[I]n determining whether an in-state activity may serve as the basis of jurisdiction over a nonresident defendant, the plaintiff's performance does not control . . . ."); *Comsat Corp.*, 900 F. Supp. at 522-23. As the Supreme Court stated in *Hanson v. Denckla*:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. . . . [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws.

357 U.S. at 253 (citations omitted). Thus, in *Environmental Research*, personal jurisdiction could not be asserted over the defendants where the contract in question was initiated by the plaintiff, a District professional consulting firm, negotiations between the parties were not physically conducted in the District, and the defendants' contacts with the plaintiff were limited to a few letters and telephone calls. 355 A.2d at 812. The court rejected the plaintiff's argument that personal jurisdiction existed because the plaintiff had performed services in the District pursuant to the contract for the benefit of the defendants, holding that "[t]he mere fact that a nonresident defendant has retained the professional services of a District of Columbia firm, thereby setting into motion the resident party's own activities within this jurisdiction, does not constitute an invocation by the nonresident of the benefits and protections of the District's laws." *Id.*

*Environmental Research* is on all fours with this case. The Agreement here was initiated by plaintiff, not Source. Second Declaration of S. Leslie Flegel ("2d Flegel Decl.") ¶ 2, attached hereto as **Exhibit 1.** The Agreement was negotiated exclusively by wire and electronic communications. Subsequent to the Agreement's execution, Source's only substantive contacts with plaintiff (*i.e.*, Mr. Ledecky) in the District consisted of two telephone calls. Plaintiff's

"performance" of the Agreement within the District, which consisted of arranging an introductory telephone conference amongst the relevant parties and making a follow-up telephone call to Ari Emanuel after a substantive meeting of the parties took place in New York, do nothing to demonstrate that Source has invoked the benefits and protections of the District's laws. To the contrary, by including a Florida choice-of-law provision in the Agreement, Source specifically demonstrated its intent <u>not to invoke</u> the benefits and protections of D.C. law and the parties' lack of expectation that suit could be brought against Source in the District. *See Burger King*, 471 U.S. at 482 (inclusion of Florida choice-of-law provision demonstrated defendant's purposeful invocation of benefits and protections of State's laws and the reasonable foreseeability of possible litigation there); *Health Communications*, 860 F.2d at 464 n.2 (choice-of-law provision is indicative of the parties' own perceptions of their degree of contact with a particular forum); *Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 132 (D.D.C. 2004).

The cases upon which plaintiff relies are readily distinguishable. They teach that, where a non-resident defendant enters into a contract with a resident plaintiff and, as is the case here, never physically enters the jurisdiction, personal jurisdiction can still exist if the defendant is the party that initiated or solicited the contractual relationship. Such solicitation demonstrates that the defendant has "purposefully directed" its activities toward a District resident and, therefore, has reached out beyond one state to create a continuing relationship and obligations with a citizen of another state. *Reiman v. First Union Real Estate Equity & Mortgage Inv.*, 614 F. Supp. 255, 258 (D.D.C. 1985) (citing *Burger King*, 471 U.S. at 472-73); *see also Ings v. Restum*, 1988 WL 8846, at *3 (D.D.C. Jan. 19, 1988) ("When a defendant enters the District physically or by some means of communication to solicit business, . . . the Court may reasonably infer that he intends to benefit from the protection of the laws of the District."). Thus, in *Mouzavires v.*

*Baxter,* 434 A.2d 988 (D.C. 1981) (en banc), the court found personal jurisdiction could be asserted over the defendants even though they never set foot in the District because the defendants "initiated the transaction; ordered the services which were performed in, and the results of which were in part dispatched from, the District. . . ." *Id.* at 994. The court noted that this was not a case where the plaintiff relies on his own activities in asserting personal jurisdiction. *Id.* In *Fisher v. Bander,* 519 A.2d 162, 164 (D.C. 1986), the defendant was found to have purposefully directed his activities towards the District by telephoning the plaintiff law firm and requesting its services.[1] And in *Sheikh v. Mr. K's Restaurant, Inc.*, 2005 WL 1387591 at *3 (D.D.C. Jun. 10, 2005), the court found personal jurisdiction existed over the defendant where it "initiated the contract between the parties in the District by soliciting plaintiff's business services via plaintiff's office . . ." *See also Burger King,* 471 U.S. at 479-80 (personal jurisdiction existed in Florida where Michigan defendant deliberately "reached out beyond" Michigan to enter into long-term franchise agreement with Florida corporation that involved a virtual integration of the parties' businesses).

Here, the Agreement was initiated by plaintiff's principal, Mr. Ledecky, when he contacted Source's Chairman and CEO, Leslie Flegel, in Israel on or around April 22, 2004, and proposed to Mr. Flegel a referral-finder's fee arrangement that was ultimately incorporated into the Agreement, which is dated as of April 26, 2004. 2d Flegel Decl. ¶¶ 2, 3. Thus, in contrast to the aforementioned cases, Source did not solicit a contractual relationship with plaintiff and, therefore, contrary to plaintiff's assertion, did not "purposefully direct" its activities towards the

---

[1] The defendant in *Fisher* was also, unlike Source here, physically present in the District at least once in connection with the matter. *Id.*