District of Columbia or even "reach out" to a District resident.[2] *See Health Communications,* 860 F.2d at 465 ("a purchaser who selects an out-of-state goods or services based on their economic merit does not thereby purposefully avail itself of the seller's state law, and does not merely by purchasing from the seller submit to the laws of the jurisdiction in which the seller is located . . . ."). Source's extremely limited contacts with the District (by wire and electronic communications) were the direct result of plaintiff's unilateral actions, and did not manifest a "deliberate and voluntary association with the forum." *Mouzavires,* 434 A.2d at 995. Under such circumstances, Source cannot be subject to personal jurisdiction in the District.[3]

## II. A Substantial Part of the Events Directly Giving Rise to Plaintiff's Claims Did Not Occur in the District

Under 28 U.S.C. § 1391(a)(2), a venue is proper only if a substantial part of the events that <u>directly</u> gave rise to plaintiff's claims occurred there. *Abramoff v. Shake Consulting, L.L.C.,*

---

[2] The fact that there may have been several, as opposed to a few, communications between the parties during the negotiation process is irrelevant, because Source's contacts with the forum must be evaluated qualitatively, not qualitatively. *Mouzavires,* 434 A.2d at 995. If the quantity of communications mattered, then a non-resident defendant could be haled into the plaintiff's jurisdiction simply by virtue of having long, protracted negotiations with the plaintiff while a defendant who had a simple, straightforward negotiation could avoid jurisdiction. Such a result would be nonsensical and contrary to the due process and fundamental fairness principles set forth in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

[3] Plaintiff also suggests that personal jurisdiction can be asserted over Source because Source allegedly ships products to its customers' retail locations located in the District and to District consumers on behalf of national internet retailers. Opp. at 11 n. 3. However, mere shipment of goods into the District as a result of transactions that were not solicited by Source in the District and/or were initiated by District residents through a third party internet retailer do not demonstrate purposeful availment of the benefits and protections of District law or "continuous and systematic" contact with the District sufficient to find general jurisdiction, particularly where it is undisputed that Source is not registered to do business in the District, does not advertise in the District, and has no offices, agents, employees or property located in the District. *See Holder v. Haarman & Reimer Corp.,* 779 A.2d 264, 271-74 (D.C. 2001) (defendant not subject to personal jurisdiction where its product reached the District through a chain of third party manufacturers, distributors and retailers); *Hockerson-Halberstadt, Inc. v. Propet USA, Inc.,* 62 Fed. Appx. 332, 337 (Fed. Cir. 2003) (general jurisdiction lacking over seller despite its e-commerce sales into Louisiana where seller had no bank accounts, property, offices, agents or employees in state, was not registered to do business in state and had no inventory or sales records in Louisiana); *Stairmaster Sports/Medical Prods., Inc. v. Pacific Fitness Corp.,* 916 F. Supp. 1049, 1052 (W.D. Wash. 1996), *aff'd,* 78 F.3d 602 (Fed. Cir. 1996) (defendant not subject to general jurisdiction where it only sold products in state through independent distributors, shipped about 3% of total sales volume to state, and employees had made only isolated visits to state); *cf. Gorman v. Ameritrade Holding Corp.,* 293 F.3d 506, 511-13 (D.C. Cir. 2002) (general personal jurisdiction could be asserted if defendant's contacts with the District, consisting entirely of electronic transactions solicited through its internet website, were continuous and systematic).

288 F. Supp. 2d 1, 4 (D.D.C. 2003). Plaintiff contends that the parties' negotiations and Ironbound's execution of the Agreement are amongst the relevant events that occurred in the District of Columbia. Opp. at 18. Negotiation and entry into a contract, however, does not qualify as a substantial part of the events or omissions giving rise to a breach of contract claim. *Abramoff*, 288 F. Supp. 2d at 5 ("[T]he finalized agreement was a prerequisite to the defendants' alleged breach, but the act of finalizing the agreement was not itself wrongful and did not directly give rise to the plaintiff's claims."). In any event, the negotiation and execution of the Agreement equally took place in the District and the Middle District of Florida.

The only remaining event plaintiff contends that took place in the District is its performance under the Agreement, which consisted of two telephone calls. But the forum activities of the defendant, not the plaintiff, are the focus of the venue analysis. *Id.; Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003); 17 MOORE'S FED. PRACTICE § 110.04[1]. Here, there was no performance by Source in the District.[4] Moreover, it is undisputed that the singular operative event giving rise to plaintiffs' claim--the merger between Source and Alliance Entertainment Corp.--did not take place in the District, but took place substantially in Florida.[5] Accordingly, because practically no relevant events giving rise to plaintiff's claims took place in the District, venue does not properly lie in this Court under

---

[4] Plaintiff contends that Source's alleged breach occurred in the District because it refused to provide an accounting and make payment to plaintiff under the Agreement. Opp. at 18. But Source's alleged breach and repudiation occurred as a result of plaintiff contacting Source, not Source contacting plaintiff in the District. *See* Complaint ¶¶ 26, 28, 30. Furthermore, the fact that plaintiff may feel damages in the District cannot create venue under section 1391(a)(2). *Abramoff*, 288 F. Supp. 2d at 5.

[5] Plaintiff's own Complaint demonstrates the overwhelming importance of the Alliance merger to this suit when compared to plaintiff's performance under the Agreement by devoting thirteen substantive paragraphs to the Alliance merger negotiations and transaction (*see* ¶¶ 18-30) compared to just two paragraphs discussing plaintiff's alleged performance (*see* ¶¶ 13, 16).

section 1391(a)(2) (or section 1391(a)(1)), and this Court should either dismiss this action or transfer it to the Middle District of Florida.[6]

## CONCLUSION

For the foregoing reasons and reasons stated in its opening statement of points and authorities, Source respectfully requests that its motion be granted and this Court dismiss this action or, alternatively, transfer it to the Middle District of Florida,

                          Respectfully submitted,

                          /s/ Kevin E. Stern
                          _____
                          C. Allen Foster (Bar No. 411662)
                          Kevin E. Stern (Bar No. 459214)
                          GREENBERG TRAURIG, LLP
                          800 Connecticut Avenue, N.W.
                          Suite 500
                          Washington, DC 20006
                          Tel: (202) 331-3102
                          Fax: (202) 331-3101

                          *Counsel for Defendant Source Interlink Companies, Inc.*

Dated: July 15, 2005

---

[6] Plaintiff devotes almost thirteen pages of its opposition to arguing that a forum *non conveniens* transfer pursuant to 28 U.S.C. § 1404(a) is not warranted. Source, however, has not moved to transfer pursuant to section 1404(a) and, therefore, will not burden the Court with argument on issues that are not before it at this time.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**Exhibit 1**

IRONBOUND PARTNERS, LLC, )
)
Plaintiff, )
)  Case No. 1:05CV01039 (JGP)
v. )
)
SOURCE INTERLINK COMPANIES, INC., )
)
Defendant. )
_____)

**SECOND DECLARATION OF S. LESLIE FLEGEL
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION AND IMPROPER VENUE OR,
ALTERNATIVELY, TO TRANSFER VENUE**

S. LESLIE FLEGEL, being duly sworn, deposes and says:

1. I submit this declaration, based upon my personal knowledge, in support of Source's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, alternatively, to Transfer Venue.

2. On or around April 22, 2004, Jonathan Ledecky contacted me by telephone while I was traveling in Israel. During this telephone conversation, Mr. Ledecky, upon his own initiative, stated that he knew of a person interested in meeting me to discuss the placement of DVDs at the checkout counters of grocery stores. After I expressed my interest in such a meeting, Mr. Ledecky, upon his own initiative, suggested the possibility of entering into some type of referral arrangement between himself and Source Interlink Companies, Inc ("Source"). My conversation with Mr. Ledecky on or about April 22, 2004 was the first time that he engaged me in any discussion concerning the referral arrangement that was ultimately incorporated into the Referral Agreement which forms the subject

matter of this lawsuit ("Agreement") and, to the best of my knowledge, the first time that Source was engaged in any manner by Mr. Ledecky concerning the same. At no time prior to this phone call did I, or anyone else on behalf of Source to the best of my knowledge, attempt to either contact Mr. Ledecky or otherwise initiate discussions with him, in any way, concerning the Agreement.

3. During the following week, the arrangement suggested by Mr. Ledecky was memorialized into the Agreement, dated as of April 26, 2004.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 14, 2005

S. Leslie Flegel

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of July, 2005, I caused a true and correct copy of the foregoing to be served by electronic mail on the following persons:

Matthew D. Schwartz, Esq.
THOMPSON COBURN, LLP
1909 K. Street, NW
Suite 600
Washington, DC 20006

_____
Jacqueline Arendse