## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IRONBOUND PARTNERS, LLC** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 05-1039 (JGP) |
| | ) |
| **SOURCE INTERLINK COMPANIES, INC.,** | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION

This matter is before the Court pursuant to **Defendant Source Interlink Companies, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, Alternatively, to Transfer Venue** [#6].  Defendant requests that the Court dismiss this action for lack of personal jurisdiction and improper venue or, alternatively, transfer this case to the Middle District of Florida.  As explained more fully below, the Court concludes that the defendant's motion should be denied.

### BACKGROUND

On April 26, 2004, plaintiff Ironbound Partners, L.L.C. ("Ironbound") and defendant Source Interlink Companies, Inc. ("Source") entered into a Referral Agreement ("Agreement").  Compl. at ¶ 6.  Under the Agreement, Ironbound would receive compensation, equal to 5% of any net income recorded by Source, as a result of introducing Source to a client that Ironbound

believed could help expand Source's industry.[1]  Id.; see also Def.'s Mot. Dismiss, Ex. A ("Referral Agreement").  Pursuant to the Agreement, Ironbound's representative introduced Source's CEO to Mr. Ariel Emmanuel.[2]  Id. at ¶ 13.  The first meeting occurred via telephone conference, and was followed by a meeting in New York City.  Id.  Mr. Emmanuel became Source's advisor, and subsequently arranged for Source to meet with Alliance Entertainment Corp. ("Alliance").[3]  Id. at ¶¶ 13,18.  With Mr. Emmanuel's assistance, Source merged with Alliance on or about November 18, 2004.  Id. at ¶ 22.  When Ironbound subsequently demanded payment under the Agreement, Source refused stating that it never intended the Agreement to cover mergers or acquisitions.  Id. at ¶ 28.

On May 23, 2005, Ironbound filed a complaint in this Court seeking a declaration of the parties' right and liabilities under the Agreement, an order directing Source to produce its books and records for an annual accounting to determine amounts owed to Ironbound under the Agreement, and damages in an amount to be proven at trial.  Compl. at ¶ 1.  Source filed a motion to dismiss the complaint for lack of personal jurisdiction and improper venue arguing that the Agreement was not negotiated or performed in the District of Columbia, and moreover, Source is not a resident of the District, and substantially all of the events giving rise to

---

[1] Ironbound believed that Source's direct-to-retail network made the company ideally suited to expand into the distribution and fulfillment of audio and video products.  Compl. at ¶ 9.

[2] Mr. Ariel Emanuel is the founder of a talent agency who has extensive relationships with key participants in the entertainment industry.  Compl. at ¶ 6.  Ironbound believed that Mr. Emanuel could expose Source to potential business opportunities relating to the distribution of audio and video products like CDs and DVDs.  Id. at ¶ 12.

[3] Alliance was a leading provider of distribution and fulfillment services to audio and video retailers.  Compl. at ¶ 18.

Ironbound's claims occurred elsewhere.[4]  Def.'s Mot. Dismiss at 2.

## DISCUSSION

I. *Personal Jurisdiction Standard*

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that personal jurisdiction exists.  Jin v. Ministry of State Security, 335 F.Supp.2d 72, 77 (D.D.C. 2004).  While the court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts," United States v. Phillip Morris Inc., 116 F.Supp.2d 116, 120 n.4 (D.D.C. 2000), the court should resolve factual discrepancies in the complaint and affidavits in favor of the plaintiff.  Jin, 335 F.Supp.2d at 77.

In determining whether it may exercise personal jurisdiction over a non-resident defendant, the court must engage in a two-part inquiry.  Harrison v. Lappin, No. 04-0681, slip op. at 2 (D.D.C. Mar. 31, 2005).  First, the court must determine whether jurisdiction may be exercised under the District's long-arm statute.  Second, the court must decide whether the exercise of personal jurisdiction satisfies due process requirements.  Id.

Under the District's long-arm statute, a District of Columbia court may exercise personal jurisdiction over a non-resident defendant who "transacts any business in the District of Columbia."  D.C. Code § 13-423(a)(1).  The requirement that the defendant "transact business" in the District is interpreted very broadly and can be met by any "contractual activit[y] of a nonresident defendant which cause[s] a consequence [in the District]."  Sheikh v. Mr. K's

---

[4]Source is a Delaware corporation with it's principal place of business in Bonita Springs, FL.  Compl. at ¶ 5.  Ironbound is a Delaware limited liability company with it's principal place of business in the District of Columbia.  Id. at ¶ 4.

Restaurant, Inc., No. 04-00515, slip op. at 3 (D.D.C. June 10, 2005). Sometimes, even "a single act alone may be sufficient to constitute transacting business." Mouzavires v. Baxter, 434 A.2d 988, 992 (D.C. 1981), cert denied, 455 U.S. 1006, 102 S.Ct. 1643 (1982).

The Due Process Clause of the Fifth Amendment requires that the plaintiff demonstrate minimum contacts between the defendant and the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. See GTE New Media Servs. v. Bellsouth Corp., 339 U.S.App.D.C. 332, 337, 199 F.3d 1343, 1347 (2000). The proper application of the minimum contacts formula requires "a consideration of not only whether a nonresident defendant has sufficient contacts with the forum, but also whether those contacts are voluntary and deliberate, rather than fortuitous." Mouzavires, 434 A.2d at 995. Courts have recognized that "even where a nonresident defendant has never physically been present in the forum, his contacts with the forum, when viewed quantitatively, may be quite substantial." Id. Thus, jurisdiction has been held to exist where a nonresident defendant's only contact with the forum has been by mail or telephone. Id.

With respect to interstate contractual obligations, parties "who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities." Burger King v. Rudzewictz, 471 U.S. 462, 473, 105 S.Ct. 2174, 2182 (1985) (internal quotations omitted). The test is whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled to court there." Id. at 474, 2183. Hence jurisdiction is proper "where the defendant 'deliberately' has engaged in significant activities within a State or

has created 'continuing obligations' between himself and residents of the forum." Id. at 475-76, 2184.

II. *Jurisdiction Is Proper In This Court*

The jurisdictional facts of this case meet both requirements for the exercise of personal jurisdiction. The Agreement executed by the parties constitutes a business transaction because it's purpose was to assist Source in negotiating a proposed business relationship with Ironbound's client, Mr. Emanuel. See Referral Agreement. Moreover, Source's contacts with Ironbound are sufficient to satisfy Due Process requirements because Source entered into the Agreement voluntarily, deliberately, and with continuing obligations.[5]

Source argues that this Court does not have jurisdiction because: 1) the Agreement was neither negotiated nor executed by Source in the District; 2) the Agreement was never performed by Source in the District; and 3) the alleged breach of the Agreement did not occur in the District. Def.'s Mot. Dismiss at 5. Source primarily relies upon the fact that none of Source's agents or employees were physically present in the District when the Agreement was negotiated or executed. Id. However, the Supreme Court has held that jurisdiction may not be avoided merely because a nonresident defendant does not physically enter the forum state. Burger King, 471 U.S. at 476, 105 S.Ct. at 2184 ("it is an acceptable fact of modern commercial life that a

---

[5] Provision 1 of the Agreement provides that after Ironbound introduces Source to Ironbound's client, Ironbound "shall assist Source with its evaluation and negotiation of any proposed business venture between client and Source." See Referral Agreement. Additionally, the Compensation provision provides that Source pay Ironbound, "compensation equal to 5% of the net income recorded by Source...during the five-year period following the date on which the business relationship is established between Source and Ironbound's client." Id. Both of these provisions show that the Source intended to create continuing obligations between itself and Ironbound.

5

substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a state in which business is conducted."); Mouzavires, 434 A.2d at 995.  Hence, the Court still has jurisdiction even though the Agreement was negotiated solely by email, telephone, and fax.[6]

Source makes an additional argument against jurisdiction claiming that it's contacts with Ironbound do not meet the "purposeful availment" requirement.[7]  See Mot. Dismiss at 2.  Referencing the Supreme Court's holding in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228 (1958), Source argues that in order to meet the requirement of "purposeful availment," it must have solicited services from Ironbound.[8]  Mot. Dismiss at 5.  Since Ironbound initiated the Agreement, Source argues that it's contacts with Ironbound cannot be deemed "purposeful."[9] Id.  Source's argument fails, however, because "purposeful availment" is not solely determined by which party initiates contact.  Where a defendant creates continuing obligations between itself and residents of the forum state, the defendant is deemed to have purposely availed itself of the privileges, protections and benefits of the forum state's laws.  See Burger King, 471 U.S. at 476, 105 S.Ct. at 2184.

---

[6] See Bates Decl. at ¶ 8;  Flegel Decl. at ¶¶ 3-5 (attached to Def.'s Mot. Dismiss).

[7] The purposeful availment requirement is meant to protect a defendant from "being haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts."  Burger King, 471 U.S. at 475, 105 S.Ct. at 2183.

[8] In Hanson, the Supreme Court held that in order for a forum to exercise jurisdiction, "there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum State."  357 U.S. at 253, 78 S.Ct. at 1239.

[9] Ironbound's manager contacted Source's CEO on April 22, 2004 to discuss the possibility of entering into a referral agreement.  See Def.'s Reply in Supp. Mot. Dismiss, Ex. 1. Source and Ironbound had no discussions about any potential agreement prior to that date.  Id.

The Agreement between Ironbound and Source created continuing obligations between the parties. The Agreement obligated Ironbound to assist Source, at all junctures, "in the evaluation and negotiation of any proposed business venture" between Source and Ironbound's client, Mr. Emmanuel. See Referral Agreement.[10] Considering Source's voluntary execution of the Agreement, as well as the parties ongoing obligations under the Agreement, Source's contacts with Ironbound cannot be deemed "random," "fortuitous," or "attenuated." See Burger King, 471 U.S. at 475, 105 S.Ct. at 2183. Hence, personal jurisdiction is proper in this Court.

III. *Venue*

Federal Rule of Civil Procedure 12(b)(3) gives the court the discretion to dismiss an action for lack of venue, or transfer a case in the interest of justice. See Fed.R.Civ.P. 12(b)(3); 28 U.S.C. § 1406(a). Pursuant to 28 U.S.C. § 1391, a complaint may be filed in a judicial district where the defendant resides. If the defendant is a corporation, the defendant shall be deemed to reside in the judicial district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391(c). Since Source is a corporation subject to personal jurisdiction in the District of Columbia, Source is considered a resident of the District, and hence venue is proper in this Court.[11] See Sheikh, No. 04-00515, slip op. at 5 (D.D.C. June 10, 2005).

---

[10] Subsequent to the initial meeting and teleconference by which Ironbound introduced Source to Mr. Emanuel, Ironbound acted as a mediator when Source's initial negotiations with Mr. Emanuel were not forthcoming. See Compl. at ¶¶ 15-17.

[11] In Ironbound's opposition to Source's motion to dismiss, Ironbound argues against a transfer of venue under 28 U.S.C. § 1404. As Source has not moved for a transfer under Section 1404, the Court will not address that argument. See Def's Mot. Dismiss; Def.'s Reply in Supp. Mot. Dismiss at 8, n.6.

**CONCLUSION**

For the foregoing reasons, defendant Source Interlink Companies, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, Alternatively, to Transfer Venue is denied. An appropriate order accompanies this Memorandum Opinion.

**Date: August 26, 2005**                              **JOHN GARRETT PENN**
                                                       **United States District Judge**