IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IRONBOUND PARTNERS, LLC, | ) |
| *Plaintiff*, | ) |
| v. | ) Civil Action No. 1:05CV01039 (JGP) |
| SOURCE INTERLINK COMPANIES, INC., | ) |
| *Defendant*. | ) |

PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure and the Court's October 19, 2005 Scheduling Order, Plaintiff moves for leave to amend the Complaint to add counts of estoppel, breach of the duty of good faith and fair dealing, and reformation of contract. It also moves for leave to amend the Complaint to change the name of the Plaintiff to Jonathan Ledecky d/b/a Ironbound Partners. Finally, Plaintiff seeks leave to amend the Complaint to clarify the identity of the "Client," as that term is used in the parties' agreement that is in issue in this case. The basis for this motion is more fully set forth in the accompanying memorandum. Redline and clean copies of Plaintiff's proposed Amended Complaint are attached hereto.

    /s/   Matthew D. Schwartz
Matthew D. Schwartz (D.C. Bar No. 436619)
Allison Sinoski (D.C. Bar No. 482593)
THOMPSON COBURN LLP
1909 K. Street, N.W. Ste. 600
Washington, D.C. 20006-1167
(202) 585-6900 (telephone)
(202) 585-6969 (facsimile)

*Attorneys for Plaintiff Ironbound Partners, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IRONBOUND PARTNERS, LLC, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Civil Action No. 1:05CV01039 (JGP) |
| ) | |
| SOURCE INTERLINK COMPANIES, INC., ) | |
| ) | |
| *Defendant*. ) | |

MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR LEAVE TO AMEND COMPLAINT

Plaintiff moves to amend the Complaint to add counts of estoppel, breach of the duty of good faith and fair dealing and reformation. It also moves to amend the Complaint to replace "Ironbound Partners, LLC" as Plaintiff with "Jonathan Ledecky d/b/a Ironbound Partners." Finally, Plaintiff moves to amend the Complaint to clarify the identity of the "Client," as that term is used in the Referral Agreement. The amendments are appropriate for the reasons set forth below and will not prejudice Defendant.

Argument

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." As the Supreme Court has held, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). *See also Foremost-*

- 3 -

*McKesson Inc. v. Islamic Republic of Iran*, 759 F. Supp. 855, 857 (D.D.C. 1991); *Monroe v. Williams*, 705 F. Supp. 621, 622 (D.D.C. 1988); *Kas v. Fin. Gen. Bankshares, Inc.*, 105 F.R.D. 453, 457 (D.D.C. 1985).

A motion to amend should be granted "unless there is a clear and solid justification for denying it." *Monroe*, 705 F. Supp. at 623. The most crucial factor in determining whether to grant a motion for leave to amend is whether there is prejudice to the opposing party. *Kas*, 105 F.R.D. at 458. A party seeking to oppose a motion to amend on the grounds of undue prejudice "'must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely.'" *Foremost-McKesson Inc.*, 759 F. Supp. at 858 (quoting *Cuffy v. Getty Refining & Mktg. Co.*, 648 F. Supp. 802, 807 (D.Del. 1986)). In this case, the proposed amendments are being made within the time provided in the Court's scheduling order and will not prejudice or unfairly disadvantage Defendant.

    i.    <u>Clarification of Client's Identity</u>.

In its interrogatories, Defendant asked Ironbound to state the identity of the Client, as that term is used in the Referral Agreement. In response, Plaintiff stated, "The Client is The Endeavor Agency, LLC, which includes its founder and principal, Arie Emanuel. The natural person that Ironbound introduced to Source was Emanuel." During a discovery conference, counsel for Ironbound was advised that the basis for this question was a perceived ambiguity in Ironbound's Complaint.[1] Therefore, Plaintiff seeks to amend the Complaint to resolve any perceived ambiguities. This amendment will not prejudice Defendant.

---

[1] In the original Complaint, Plaintiff defined the Client as both Endeavor and Emanuel and referred to them collectively as Emanuel. Plaintiff worded the Complaint this way in response to an earlier suggestion by Source that the introduction to Endeavor did not cover Emanuel (Endeavor's founder and principal) and thus Source was not liable under the Referral Agreement because its relationship was with Emanuel. While the amendment is intended to clarify any ambiguity, it should be noted that Plaintiff takes the position that Endeavor includes Emanuel—its founder and principal.

ii. <u>Estoppel and Breach of Duty of Good Faith and Fair Dealing</u>.

The additional causes of action for estoppel and breach of the duty of good faith and fair dealing are largely based on the same operative facts as Plaintiff's pending claims and, based on the Court's Scheduling Order, Defendant will have ample time to conduct discovery, which is continuing. Accordingly, the inclusion of these claims will not deprive Defendant of the opportunity to present facts or evidence in defense of such claims and will not, therefore, cause undue prejudice.

iii. <u>Reformation</u>.

Nor will permitting Plaintiff to assert a reformation claim prejudice Defendant. By its claim, Plaintiff does not seek to alter, modify or otherwise amend the terms or conditions of the parties' Referral Agreement, which is the subject of this lawsuit. Rather, that claim merely seeks to delete the term "LLC" from Plaintiff's name and to remove the related reference to Plaintiff's status as a Delaware limited liability company. Stated differently, Plaintiff seeks to correct a mistake in its name on the agreement, which was first discovered after the filing of this lawsuit.

Ironbound Partners, LLC was formed as a Delaware limited liability company in December 1998. During its entire existence, Ironbound Partners, LLC was a single-member limited liability company through which Jonathan Ledecky, its sole member, transacted business. The purpose of transacting business through Ironbound Partners, LLC was to permit Ledecky to limit his personal liability by obtaining the protections afforded by a limited liability company. *See* NTS Am. Jur. 2d *Limited Liability Companies* § 1 ("[a] limited liability company . . . offers all of its members limited liability as if they were shareholders of a corporation").

Ironbound Partners, LLC was merged out of existence in 1999. From the time Ledecky entered into the Referral Agreement, and continuing through the time of the filing of this lawsuit,

however, Ledecky mistakenly believed that Ironbound Partners, LLC was still an active Delaware limited liability company and continued to do business and maintain bank accounts under that name. Because the company had in fact been merged out of existence, Ledecky was in reality conducting business under a trade name. While this error deprived him of the limited liability protection he otherwise would have received, it did not, as discussed more fully below, impair the validity of any contracts or legal obligations that were entered under the trade name. In this respect, the error had no substantive effect on anyone other than Ledecky, who is subject to personal liability for all obligations incurred by virtue of having conducted business under a trade name rather than as a limited liability company.

In connection with its evaluation of certain defenses raised by Source, counsel for Ironbound undertook a review of Ironbound's corporate status and discovered that the company had been merged out of existence in 1999.[2] Prior to this time, Ledecky did not realize that Ironbound Partners, LLC had been merged out of existence.[3] As a result, he simply used the wrong name when he entered into the Referral Agreement. Following the execution of the Referral Agreement, Ledecky continued to transact business and even maintain bank accounts

---

[2] Counsel's inquiry was initiated when, in response to discovery requests concerning the basis for Defendant's subject matter jurisdiction defense, Defendant stated that this Court may lack subject matter jurisdiction "on grounds of lack of diversity of citizenship between the parties because it has not been provided with affirmative proof that Ironbound is in fact a Delaware limited liability company (as opposed to a Delaware corporation)." After receiving this response, Plaintiff investigated further and discovered that, while Ironbound Partners was not a Delaware corporation, as Defendant suggested, the LLC had in fact been merged out of existence in 1999. Upon learning of this, Ledecky ceased doing business under the name Ironbound Partners, LLC and formed a new Delaware LLC called Ironbound Partners Fund, LLC, of which he is again the sole member.

[3] At the time that Ironbound Partners, LLC merged out of existence, Ledecky was involved in numerous business ventures and the operation of a foundation dedicated to the support of inner-city charitable projects. For whatever reason—whether because it slipped through the cracks or he was simply never advised—the fact that the LLC had been merged out of existence, and the import of that fact, did not register with Ledecky. Had he realized this fact, he would have formed a new LLC, as he has since done, rather than continue to do business without the protection afforded by a limited liability company.

under the name Ironbound Partners, LLC, still operating under the belief that it was a valid entity. It was not until the discovery phase of this lawsuit that Ledecky realized the error.

To the extent that Ledecky continued to do business as Ironbound Partners, LLC after that entity was merged out of existence, he was operating under a trade name—also referred to in various statutes as a fictitious name, assumed name or business name. The law of the District of Columbia, the jurisdiction in which Ledecky was doing business, expressly permits business to be conducted under a trade or fictitious name. D.C. Code § 47-2855.02. Under D.C. law, a contract entered into under an assumed, fictitious or representative name is valid and binding, and the failure to register a trade name at the time a contract is entered into does not impair the validity of that contract.[4] D.C. Code § 47-2855.02(e) ("[f]ailure to complete this registration [of a trade name] shall not impair the validity of any contract"). In this respect, D.C. law is consistent with the majority of jurisdictions. *See, e.g.* 42 A.L.R. 2d 516, § 6 (2005) ("[t]he majority of the cases sustain the rule that contracts or transactions entered into by individuals or partnerships . . . under assumed or fictitious names or designations not showing the names of the partners are not, for that reason, invalid and unenforceable by such parties"). *See also* 17A Am. Jur.2d *Contracts* § 413 (2004) ("[a] contract entered into under an assumed, fictitious, or representative name is valid and binding"); Richard A. Lord, *Williston on Contracts* § 19.67 (4th ed. 1998) ("the great weight of authority supports the right of the proprietor to enforce a contract made under a business name, especially where the other party has received the consideration").

---

[4] While Florida law governs the Referral Agreement, it does not govern Ledecky's right to do business under a trade name. That said, Florida law is consistent with D.C. law, permitting business to be conducted under a trade name and recognizing the validity of contracts entered into using a trade name, even where that trade name has not been registered with the state. Fla. Stat. § 865.09 ("The failure of a business to comply with this section [regarding the registration of a fictitious name] does not impair the validity of any contract, dead, mortgage, security interest, lien, or act of such business").

Absent fraud, therefore, the fact that Ironbound was not a limited liability company, but rather an assumed, fictitious or trade name, has no effect on the validity of that agreement.

By seeking to add a reformation count to its Complaint and to amend the name of the plaintiff in this case, Ironbound is seeking to correct a mistake that in no way affects the substance of the parties' agreement or alters, modifies or amends any of its terms. Defendant will not be prejudiced or disadvantaged in any way by these amendments or the requested relief. The introduction that Ironbound agreed to make under the Referral Agreement was made as promised, and the central issue in dispute is whether Ledecky is entitled to compensation for its services based on the benefits Defendant has received. Defendant was never led to believe that Ironbound Partners, LLC was anything more than a single-member LLC owned and operated by Ledecky. Indeed, as set forth in the Complaint, the Referral Agreement was negotiated and signed by Ledecky, who was Defendant's sole point of contact both prior to and after the entry of the agreement. Ledecky introduced Defendant to Endeavor and Mr. Emanuel, pursuant to the Referral Agreement, and assisted in facilitating the relationship between Defendant, Emanuel, and Endeavor. Defendant did not deal with any party other than Ledecky, nor was it represented that Ironbound had any members other than Ledecky. The only effect of using the wrong name was to render Ledecky personally liable under the Agreement.

Of course, the issue at this stage is not whether reformation is appropriate, which Ironbound believes to be the case, but whether allowing Ironbound to amend the complaint to include a reformation claim will prejudice Defendant, which it will not.

<u>Conclusion</u>

For the foregoing reasons, Plaintiff respectfully requests that its Motion for Leave to Amend Complaint be granted.

- 8 -

    /s/   Matthew D. Schwartz
Matthew D. Schwartz (D.C. Bar No. 436619)
Allison Sinoski (D.C. Bar No. 482593)
THOMPSON COBURN LLP
1909 K. Street, N.W. Ste. 600
Washington, D.C.  20006-1167
(202) 585-6900 (telephone)
(202) 585-6969 (facsimile)

*Attorneys for Plaintiff Ironbound Partners, LLC*

- 9 -

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing Plaintiff's Motion for Leave to Amend Complaint and Memorandum in Support of Plaintiff's Motion for Leave to Amend Complaint, along with attachments, was mailed electronically through CM/ECF this 1st day of February, 2006 to:

>Kevin E. Stern
>C. Allen Foster
>Maria Hallas
>GREENBERG TRAURIG, LLP
>800 Connecticut Ave., N.W.
>Suite 500
>Washington, D.C. 20006

                                                    /s/   Allison Sinoski