IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IRONBOUND PARTNERS, LLC,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**SOURCE INTERLINK COMPANIES, INC.,** )<br>)<br>**Defendant.** )<br>_____) | **Case No. 1:05CV01039 (JGP)** |

### DEFENDANT SOURCE INTERLINK COMPANIES, INC.'S STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER

Pursuant to Fed. R. Civ. P. 26(c), Defendant Source Interlink Companies, Inc. ("Source") respectfully moves the Court to issue a protective order prohibiting Plaintiff Ironbound Partners, LLC ("Ironbound" or "Plaintiff") from seeking or obtaining discovery in this case, including deposition testimony, from Source regarding any potential, unfulfilled or unrealized business opportunities that have been presented to Source by Mr. Ariel Emanuel ("Emanuel") or The Endeavor Agency, LLC ("Endeavor"), or that have resulted from Source's February 2005 merger with Alliance Entertainment Corporation ("Alliance"). As discussed below, discovery of this confidential and proprietary information should be denied because this discovery is not reasonably calculated to lead to the discovery of admissible evidence for at least two principal reasons. First, discovery should be denied because this case has been bifurcated into two phases, a liability phase and a damages phase, and this discovery appears to relate entirely to the damages phase of the case. Second, even if this evidence is arguably not damages-related, it is still not reasonably calculated to lead to the discovery of admissible evidence in the liability phase because, even under Plaintiff's flawed theory of the case, Source cannot possibly be liable to Plaintiff for any business opportunities that have not resulted in any actual business, income,

or economic benefit to Source, either under the Referral Agreement that is the subject of this dispute, or under Plaintiff's alternative equitable claim of unjust enrichment/quantum meruit. Accordingly, good cause exists for the issuance of a protective order.

## BACKGROUND

This case concerns the parties' rights and obligations under a "Referral Agreement" (**Exhibit A**).[1]  Pursuant to the Referral Agreement, Plaintiff agreed to introduce Source to a "Client" of Plaintiff and to assist Source in evaluating and negotiating any proposed "business relationship" with the Client.  *Id.* ¶ 1.  Source had the unfettered discretion to accept or reject any proposed business relationship with the Client, and Source's acceptance of a business relationship could only be manifest by execution of a written agreement between Source and the Client.  *Id.*  In the event Source and the Client entered into a business relationship and that relationship was documented by an executed written agreement between the parties, the Referral Agreement provides that:

> Source shall pay to Ironbound, and Ironbound shall accept, compensation equal to 5% of the net income recorded by Source as a result of its relationship with Client during the five-year period following the date (the "Establishment Date") on which the business relationship is established between Source and Client.

*Id.* ¶ 2.

Plaintiff contends that it performed its obligations under the Referral Agreement and is entitled to compensation.  Specifically, Plaintiff claims that, pursuant to the Referral Agreement, (i) it introduced Source to Emanuel, a founder and member of Endeavor, a California-based talent agency; (ii) Emanuel allegedly became a consultant for Source; (iii) and that, as a result of Emanuel/Endeavor's alleged "business relationship" with Source, Source has and will continue to earn substantial net income.  Plaintiff alleges that this includes net income earned by Source as

---

[1] All exhibits referenced herein are attached to this Memorandum.

a result of its February 2005 merger with Alliance, which Plaintiff alleges was facilitated by Emanuel.

Source does not dispute that the parties entered into the Referral Agreement and that Plaintiff's principal, Jonathan Ledecky, introduced Emanuel and Endeavor to Source, but denies that Plaintiff is entitled to any compensation under the Referral Agreement. Among the principal reasons that Plaintiff is not entitled to any compensation are: (i) Plaintiff failed to fully perform its obligations under the Referral Agreement; (ii) there exists no "business relationship" between Source and Emanuel or Endeavor as that term is used in the Agreement; (iii) there has never existed an executed written agreement that establishes any business relationship between Source and Emanuel or Endeavor; and (iv) even if there exists a "business relationship" between Source and Emanuel or Endeavor, neither of them did anything on Source's behalf to facilitate or cause the merger between Source and Alliance.

In addition to its breach of contract claim, Plaintiff has also brought alternative claims for quantum meruit and unjust enrichment, claiming that, even if it is not entitled to recover under the Referral Agreement, it should be entitled to recover for the "value" of the services it provided to Source.[2]

Pursuant to the Scheduling Order entered on October 19, 2005, discovery and trial in this case has been bifurcated into liability and damages phases. On November 7, 2005, Plaintiff served its First Request for Production of Documents (**Exhibit B**). Request No. 10 seeks "All documents relating to actual or potential business opportunities for Source that have been discussed by Emanuel and Source or Endeavor and Source." Request No. 27 seeks "All

---

[2] On February 1, 2006, Ironbound filed a Motion for Leave to Amend Complaint, seeking, among other things, to change the name of the plaintiff from "Ironbound Partners, LLC" to "Jonathan Ledecky d/b/a Ironbound Partners" due to the fact that Ironbound Partners, LLC was merged out of existence in 1999 and, hence, did not legally exist at the time the Referral Agreement was executed. The Amended Complaint also changes the alleged identity of the "Client" under the Referral Agreement from Emanuel to Endeavor.

3

documents relating to the market opportunities Source's management believes have been or will be presented by the Alliance merger." On December 7, 2005, Source served its Response to Plaintiff's First Request for Production of Documents (**Exhibit C**) in which Source objected to, among other things, Plaintiff's Request Nos. 10 and 27.

On January 20, 2006, counsel of the parties met and conferred regarding various discovery disputes and issues, including Source's objections to producing documents in response to Plaintiff's Request Nos. 10 and 27. The parties were unable to resolve these objections.

Also on January 20, 2006, Plaintiff served a series of deposition notices on Source, including two separate Rule 30(b)(6) deposition notices.[3] One of these 30(b)(6) notices (**Exhibit D**) demanded that Source identify the "most knowledgeable" person about, *inter alia,* the following topics:

1. The business relationship between Source and Ariel Emanuel including, without limitation, business opportunities presented to Source by Emanuel.
2. The business relationship between Source and The Endeavor Agency, LLC ("Endeavor") including, without limitation, business opportunities presented to Source by Endeavor.

\*   \*   \*

11. Opportunities that have been presented to Source for the distribution of home entertainment content products since the Alliance merger.

On January 27, 2006, Source's counsel wrote to Plaintiff's counsel (**Exhibit E**), to inform him of Source's objections to, among other things, topics 1, 2 and 11 of the 30(b)(6) deposition notice to the extent Plaintiff intended to seek testimony regarding unfulfilled or potential business opportunities that have been presented to Source by Emanuel or Endeavor or as a result of the Alliance merger.

---

[3] Although these and the other Source depositions were originally noticed by Plaintiff for February, the parties have since agreed to reschedule these depositions for April 11-13, 2006.

On February 6, 2006, Source's counsel, in response to a follow-up inquiry from Plaintiff's counsel, informed Plaintiff's counsel that Source was willing, as a compromise, to allow discovery relating to any business opportunities that have been presented to Source by Endeavor or Emanuel *that have been fulfilled*, *i.e.,* have resulted in actual business to Source or a consummated agreement, but Source was still unwilling to allow discovery relating to unfulfilled or potential business opportunities.  (**Exhibit F**)  Plaintiff's counsel responded on February 8, 2006 (**Exhibit G**), rejecting Source's compromise offer and continuing to insist that Plaintiff was entitled to discovery of "all business opportunities presented to Source by Endeavor or Emanuel, including business opportunities that have resulted from the Alliance merger. . . ."

Because the parties have been unable to reach agreement on this discovery issue, Source seeks a protective order from this Court.

## ARGUMENT

Under Fed. R. Civ. P. 26(b) a party may obtain discovery regarding unprivileged information that is relevant to a claim or defense and such information need not be admissible at trial so long as it is reasonably calculated to lead to the discovery of admissible evidence. "Although the standard for discovery is a broad one, it is not boundless." *E.E.O.C. v. Dist. of Columbia Pub. Schools*, 217 F.R.D. 12, 14 (D.D.C. 2003).  Accordingly, if a party shows that information sought by the other party is irrelevant to any claim or defense and not reasonably calculated to lead to the discovery of relevant evidence, then it has shown sufficient "good cause" for a protective order under Rule 26(c) prohibiting discovery of such information.[4]  *See, e.g., id.* at 15 (protective order issued barring plaintiff from seeking information regarding

---

[4]  A court may not impose a evidentiary burden higher than "good cause" on a movant seeking a protective order. *E.E.O.C. v. National Children's Center, Inc.*, 98 F.3d 1406 (D.C. Cir. 1996) (employer was only required to show "good cause" – not "concrete threat to an important interest" – to obtain protective order limiting public access to depositions).

5

discipline of all teachers employed by defendant because, *inter alia*, such information was not directly relevant to plaintiff's age discrimination claims); *City of Rome v. United States*, 450 F. Supp. 378, 382 (D.D.C. 1978) (protective order issued prohibiting plaintiff's discovery requests pertaining to irrelevant matters over which the court did not have subject matter jurisdiction).

Source here respectfully requests a protective order preventing Ironbound from seeking testimony, documents or other information relating to potential, unfulfilled or unrealized business opportunities that have been presented to Source by Emanuel or Endeavor or have resulted from Source's February 2005 merger with Alliance, because this is confidential and proprietary information of Source which has no relevance whatsoever to this case and is not reasonably calculated to lead to the discovery of admissible evidence.

### A.  Protective Order is Warranted for Discovery Regarding "Potential or Unfulfilled Business Opportunities" Because Discovery in This Case is Bifurcated

First, discovery relating to potential, unfulfilled or unrealized business opportunities is not reasonably calculated to lead to the discovery of admissible evidence because this case has been bifurcated into two phases, a liability phase and a damages phase, and this discovery appears to relate entirely to the damages phase. In response to Source's objections concerning this discovery, Plaintiff's counsel has argued that this discovery pertains to the alleged "value" and "benefit" of Plaintiff's introduction of Endeavor/Emanuel to Source. *See* **Exhibit G**. But the alleged value and benefit to Source of Plaintiff's introduction are quintessential damages-related issues that have been precluded from discovery in this phase of the case, the liability phase.

Moreover, the purpose of the liability phase is to determine whether in fact Source entered into a "business relationship" with Endeavor (as that term is used in the Referral

6

Agreement), and, if so, whether Endeavor in fact did anything on Source's behalf to facilitate or cause the merger between Source and Alliance. Whether Endeavor or Emanuel has presented any potential business opportunities to Source or whether new potential opportunities have arisen from the Alliance merger is utterly meaningless to deciding or resolving these liability issues.

>    B.   **A Protective Order is Also Warranted Because Source Cannot be Liable to Plaintiff for Unfulfilled or Potential Business Opportunities**

Second, even if discovery relating to potential, unfulfilled or unrealized business opportunities is arguably not exclusively damages-related, it is still not reasonably calculated to lead to the discovery of admissible evidence in this case because, even under Plaintiff's theory of the case, Source cannot possibly be liable to Plaintiff for any business opportunities that have not resulted in any actual business, income, or economic benefit to Source, either under the Referral Agreement that is the subject of this dispute, or under Plaintiff's alternative equitable claim of unjust enrichment/quantum meruit.

Under Paragraph 2 of the Referral Agreement, Ironbound is entitled to "compensation equal to *5% of the net income recorded by Source* as a result of its relationship with Client during the five-year period following the date. . . on which the business relationship is established between Source and Client." *Id.* (emphasis added). Thus, assuming *arguendo* that Source did enter into a qualifying "business relationship" with Endeavor (it didn't), if a purported business opportunity presented by Endeavor (or Emanuel) to Source or as a result of the Alliance merger went *unfulfilled* or went *unrealized,* by definition, the opportunity did not result in Source earning any income, much less net income, to which Plaintiff would be entitled under the Referral Agreement.

In similar breach of contract cases, courts have forbidden overbroad discovery delving into business dealings that were not relevant to the plaintiff's claims. *See, e.g., Mid-America*

7

*Facilities, Inc. v. Argonaut Ins. Co.,* 78 F.R.D. 497, 498-99 (E.D. Wis. 1978) (in contract dispute, plaintiff impermissibly sought information about defendant's dealings with other companies; such information was "in no way relevant" to plaintiff's claims; court required plaintiff to narrow request to dealings between parties); *Blatt v. Casa Blanca Cigar Co.,* 51 F.R.D. 312 (D. Pa. 1970) (in breach of contract case, plaintiff could not discover information about defendant's sales of *all* types of cigars within geographic area, since plaintiff had exclusive contract to sell only particular brands of cigars); *Fort Wayne Corrugated Paper Co. v. Anchor Hocking Glass Corp.,* 4 F.R.D. 328 (D. Pa. 1940) (in breach of contract action, plaintiff could not obtain discovery of all minutes of the defendant corporation and other corporations and all the correspondence between them relating to formation of other defendant corporation because those documents had no material bearing on contract relations between plaintiff and defendants).

Similarly, assuming *arguendo* that Plaintiff is entitled to maintain an alternative equitable claim of unjust enrichment/quantum meruit based upon the alleged value or benefits that have been conferred upon Source as a result of Plaintiff's introduction of Endeavor/Emanuel, it cannot be said under any circumstance that a business opportunity presented to Source that has gone unfulfilled or unrealized has provided any actual measurable economic value or benefit to Source.  The remedy for an implied-in-law contract is restitution, which must be measured by the reasonable value of the benefit conferred or services rendered.[5]  *Guyana Tel. & Tel. Co., Ltd. v. Melbourne Intern. Commc'ns, Ltd.,* 329 F.3d 1241, 1249 (11th Cir. 2003) (for unjust enrichment claim under Florida law, jury improperly calculated restitution based on plaintiff's loss, not

---

[5]  Because the Referral Agreement is expressly governed by the laws of the State of Florida. (Exh. A, ¶ 5(d)), Plaintiff's equitable claims should also be governed by Florida law.  In any event, unjust enrichment claims are identical under Florida and District of Columbia law.  *Value House, Inc. v. MCI Telecommunications Corp.,* 917 F. Supp. 5, 6 (D.D.C. 1996).  Furthermore, although Plaintiff has alleged separate counts of unjust enrichment and quantum meruit, they are one in the same and are typically used interchangeably.  In reality, quantum meruit is the term used to describe an equitable remedy to provide restitution for unjust enrichment.  *Webster v. Royal Caribbean Cruises, Ltd.,* 124 F. Supp. 2d 1317, 1326 n.9 (S.D. Fla. 2000) (citing BLACK'S LAW DICTIONARY 1255 (7th ed. 1999)).

8

defendant's gain); *Webster,* 124 F. Supp. 2d at 1326 n.9; *Gary v. D. Agustini & Asociados, S.A.,* 865 F. Supp. 818, 827 (S.D. Fla. 1994). Obviously, an unfulfilled or unrealized business opportunity has no measurable or quantifiable "value" and cannot constitute a "conferred benefit" for which restitution would be available. Plaintiff should accordingly not be allowed to pursue discovery concerning unfulfilled business opportunities because such information has nothing to do with any benefit conferred upon Source by Plaintiff.

Courts have prevented discovery of irrelevant financial and other information sought in connection with implied-in-law claims such as unjust enrichment or quantum meruit. For example, in *Nalco Chem. Co. v. Hydro Techs., Inc.,* 149 F.R.D. 686, 689 (E.D. Wis. 1993), the plaintiff chemical company alleged a competitor misappropriated its trade secrets and thereby unjustly enriched itself. The plaintiff sought to discover the identity, services offered to, correspondence with, expenses, profitability and other information relating to all "customers" and "prospects" of defendant located within the "territory." *Id.* at 697. The court held that the plaintiff's discovery requests were overbroad and limited discovery to information relating to former and present customers of plaintiff. *Id.* The plaintiff also sought broad discovery concerning defendant's net worth, assets, liabilities, owner's equity, profits and losses. *Id.* at 698. The court held that plaintiff was seeking financial information unrelated to the trade secrets that plaintiff contended the defendants had allegedly misappropriated and denied discovery of such financial information. *Id.*; *see also Drs. Bethea v. St Paul Guardian Ins. Co.*, 2003 WL 292302, at *3 (E.D. La. Feb. 11, 2003) (plaintiff doctors claimed that defendant insurance company was unjustly enriched by discontinuing prepaid "tail coverage" for cancelled medical malpractice insurance policies; court held that the following information was irrelevant and could not be discovered: (a) the rate scale, premium schedule or other method of calculation used

9

to determine the price or premium charged for the tail coverage or (b) loss ratios, profits and losses, and reserves of defendant); *Webb Commc'ns Group Inc. v. Gateway 2000 Inc.,* 1994 WL 171448, at *2 (N.D. Ill. May 3, 1994) (plaintiff marketing firm produced ads for defendant computer manufacturer using a "stepped insert" format; later, the defendant contracted with another marketing firm to produce "stepped insert" ads; plaintiff sued defendant for misappropriation of trade secrets and sought "unjust enrichment" damages; court held that defendant was not required to produce financial and sales information documents regarding defendant's profits since the "stepped insert" process conferred minimal, if any, benefit to defendant); *S.S. Fretz, Jr., Inc. v. White Consol. Indus., Inc.*, 1991 WL 21655, at *4 (E.D. Pa. Feb. 15, 1991) (in breach of contract and unjust enrichment case concerning exclusive distributorship relationship of parties, plaintiff could not obtain "open ended" production of documents reflecting defendant's sales and marketing; such production was unduly burdensome; court limited discovery to two years prior to inception of relationship).

Accordingly, in this case, the discovery at issue -- potential, unfulfilled or unrealized business opportunities -- is neither relevant nor reasonably calculated to lead to admissible evidence, even under Plaintiff's flawed theory of the case. By definition, unrealized opportunities have not resulted in any economic or tangible benefit to Source, and have nothing to do with the Referral Agreement at issue, Plaintiff's alleged entitlement to compensation, or Source's alleged liability to Plaintiff.

## **CONCLUSION**

For the foregoing reasons, from seeking or obtaining discovery in this case, including deposition testimony, regarding any potential, unfulfilled or unrealized business opportunities

that have been presented to Source by Mr. Ariel Emanuel or The Endeavor Agency, LLC, or that have resulted from Source's February 2005 merger with Alliance Entertainment Corporation.

| | |
|---|---|
| Dated:  February 21, 2006 | /s/ Kevin E. Stern |
| | C. Allen Foster (Bar No. 411662) |
| | Kevin E. Stern (Bar No. 459214) |
| | Maria Hallas (Bar No. 436529) |
| | GREENBERG TRAURIG, LLP |
| | 800 Connecticut Avenue, N.W., Suite 500 |
| | Washington, DC  20006 |
| | Tel:  (202) 331-3100 |
| | Fax:  (202) 331-3101 |
| | |
| | *Counsel for Defendant Source Interlink Companies, Inc.* |

11