# Greenberg
# Traurig

Kevin E. Stern
Tel. 202.452.4878
Fax 202.261.0107
sternk@gtlaw.com

January 27, 2006

**VIA ELECTRONIC AND FIRST CLASS MAIL**

Matthew D. Schwartz, Esq.
Thompson Coburn LLP
1909 K Street, N.W. Suite 600
Washington, D.C. 20006-1167

Re:   **Ironbound Partners, LLC vs. Source Interlink Companies, Inc.**
      Case No.: 1:05CV01039 (JGP)

Dear Matt:

I am writing to confirm dates and location for some of the Source depositions you have noticed. Based upon your request that these depositions be scheduled during the weeks of March 6 or 13 if the depositions are to take place in Florida, we offer the following schedule:

- March 6: Doug Bates
- March 7: Jim Gillis
- March 8: Leslie Flegel

We have already reserved a conference room for the depositions at a law firm located across the parking lot from Source's headquarters. The firm is Cohen & Grigsby, P.C. Address is 27200 Riverview Center Blvd., Suite 309, Bonita Springs, FL 34134.

Unfortunately, I still do not have any information regarding Ari Emanuel's availability, despite several phone calls to Endeavor's general counsel, Tom McGuire, which have gone unreturned. I will certainly let you know as soon as I know something.

As I advised you earlier this week, there is no one at Source with the title or responsibility of "document custodian," so there is no one we can make available for the Source document custodian deposition you have noticed.

**DEFENDANT'S EXHIBIT E**

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
CHICAGO
DALLAS
DENVER
FORT LAUDERDALE
LOS ANGELES
MIAMI
NEW JERSEY
NEW YORK
ORANGE COUNTY, CA
ORLANDO
PHILADELPHIA
PHOENIX
SILICON VALLEY
TALLAHASSEE
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
WILMINGTON
ZURICH

Greenberg Traurig, LLP | Attorneys at Law | 800 Connecticut Avenue, NW | Suite 500 | Washington, D.C. 20006
Tel 202.331.3100 | Fax 202.331.3101

www.gtlaw.com

Matthew D. Schwartz, Esq.
January 27, 2006
Page 2

---

Turning to the two 30(b)(6) deposition notices you have issued, one of which, for lack of a better description, concerns "Alliance" topics (the "Alliance 30(b)(6) notice") while the other concerns "Source" topics (the "Source 30(b)(6) notice"), it is presently anticipated that Mr. Flegel will be designated to testify on several of the topics listed in the Source 30(b)(6) notice. We would expect that this deposition would take place on March 8, either before or after Mr. Flegel is deposed in his individual capacity.

We do, however, have significant issues and objections with regard to the Alliance 30(b)(6) topics and some of the Source 30(b)(6) topics. Probably the principal issue we have with the Alliance topics is that there is no one at Source who can speak to the first three topics, *i.e.*, (1) "when Alliance first identified Source as a potential business partner;" (2) "Alliance's consideration of a business relationship with Source;" and (3) "the initial meetings between Source and Alliance." As I assume you already know, Alliance's consideration of a merger or business combination with Source was initiated by Alliance's controlling stockholder, The Yucaipa Companies, L.L.C. ("Yucaipa"), and the person who attended all of the initial meetings on Alliance's behalf was Erika Paulson, a director of Alliance and a partner with Yucaipa. Ms. Paulson also authored the June 9, 2004 memo we have produced which shows that Yucaipa was considering Source as a potential business partner for Alliance prior to her initial meetings with Source. Ms. Paulson, however, is not an employee, officer or director of Source. Thus, while she is obviously the person who is most knowledgeable about topics 1-3 in the Alliance 30(b)(6) notice, we do not have the power or ability to make Ms. Paulson available to be deposed on these topics. Her testimony will have to be obtained through a subpoena.

With regard to topic 4 of the Alliance 30(b)(6) notice -- "Alliance's business operations before and after the merger including, without limitation, Alliance's entry into distribution agreements involving home entertainment products" -- we object to this topic on several grounds. First, the topic is way overbroad and, therefore, unduly burdensome; it is not limited with respect to its time frame (Alliance is a company that was founded in the 1980s), and the term "business operations" is so vague it could theoretically apply to every aspect of the company's business, *e.g.*, sales, distribution, accounting, personnel, management, etc. Furthermore, the premise of the topic is flawed in that, subsequent to its merger with Source, Alliance does not have any "business operations" independent from Source's operations. Finally, we object to any generalized inquiry concerning Alliance's business operations, including any distribution agreements entered into by Alliance before the merger (Alliance hasn't entered into any such agreements after the merger because it no longer exists), as we do not see how this subject is reasonably calculated to lead to the discovery of admissible evidence in the liability phase of this case.

Matthew D. Schwartz, Esq.
January 27, 2006
Page 3

---

Turning to the listed topics in the Source 30(b)(6) notice, we are prepared to designate a witness to testify regarding Source's alleged "business relationships" with Mr. Emanuel and Endeavor (topics 1-2).[1] However, we object to any inquiry concerning unfulfilled or potential "business opportunities" presented to Source by Emanuel or Endeavor. As we have previously discussed with you, whether Emanuel or Endeavor has presented any business opportunities to Source does nothing to establish whether Ironbound is entitled to any compensation under the Referral Agreement. Under the Referral Agreement, Ironbound is only entitled to "compensation equal to 5% of the net income recorded by Source as a result of its relationship with Client during the five-year period following the date (the "Establishment Date") on which the business relationship is established between Source and Client." Thus, even assuming that you can establish that a "business relationship" exists between Source and Emanuel or Endeavor (it doesn't), if a purported business opportunity presented by one of these parties to Source went *unfulfilled*, by definition the opportunity did not result in Source earning any income, much less net income, to which Ironbound would be entitled. Accordingly, unfulfilled or potential business opportunities presented by Endeavor or Emanuel are not a relevant line of inquiry even under your theory of case, and we will have no choice but to seek a protective order if you insist on going forward with questions concerning this subject.

We also object to topic 8 of the Source 30(b)(6) notice, "[t]he merger between Source and Alliance." As presently stated, this topic is so vague and overbroad that it is impossible for us to designate a person who is most knowledgeable about this subject.

Source topic 9 ("Source's business operations before and after the Alliance merger including, without limitation, Source's entry into distribution agreements involving home entertainment content products") is also overbroad. Like Alliance topic 4, Source topic 9 is not limited with respect to its time frame, and the term "business operations" potentially applies to every aspect of the company's business. In addition, we object to any generalized inquiry concerning Source's business operations, including any distribution agreements entered into before or after the merger, as we do not see how this subject is reasonably calculated to lead to the discovery of admissible evidence in the liability phase of this case. Source topic 10 ("New contracts for the distribution of home entertainment content products entered into by Source after the merger with Alliance") is also objectionable for this same reason.

Finally, we object to Source topic 11, "[o]pportunities that have been presented to Source for the distribution of home entertainment content products since the Alliance merger." As discussed above, we do not believe that unfulfilled or potential "opportunities"

---

[1] Of course, we do not agree that a "business relationship" exists between Source and Mr. Emanuel or Endeavor as that term is used in the Referral Agreement.

Matthew D. Schwartz, Esq.
January 27, 2006
Page 4

---

that have been presented to Source by Emanuel, Endeavor or anyone else have any relevance to this suit.

As always, we are willing to try to work with you to try to reach a satisfactory resolution of these issues without Court involvement. Please feel free to contact me if you wish to discuss any of the foregoing.

Sincerely,

*[signature]*

Kevin E. Stern
