IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IRONBOUND PARTNERS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SOURCE INTERLINK COMPANIES, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. 1:05CV01039 (JGP)<br>)<br>)<br>)<br>)<br>) |

PLAINTIFF'S FIRST REQUEST
FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Source Interlink Companies, Inc. is directed to provide for inspection and copying, at the offices of Thompson Coburn, LLP, Suite 600, 1909 K Street, N.W., Washington, D.C., 20006, the documents described below, within the time provided by the Federal Rules of Civil Procedure. Unless otherwise specified, this request covers the period from January 1, 2004 to the present.

Definitions and Instructions

I.   Definitions

   1.   "Ironbound" means Plaintiff Ironbound Partners, LLC, its members, parents, subsidiaries, affiliates, partners, officers, directors, employees, agents, representatives, consultants, and attorneys.

   2.   "Source" means Defendant Source Interlink Companies, Inc., its members, parents, subsidiaries, affiliates, partners, officers, directors, employees, agents, representatives, consultants and attorneys.

3219850

3. "Alliance" means Alliance Entertainment Corporation, its parents, subsidiaries, affiliates, partners, officers, directors, employees, agents, representatives, consultants and attorneys.

4. "Endeavor" means The Endeavor Agency, LLC, its members, parents, subsidiaries, affiliates, partners, officers, directors, employees, agents, representatives, consultants and attorneys.

5. "Ledecky" means Jonathan L. Ledecky of Ironbound.

6. "Flegel" means S. Leslie Flegel of Source.

7. "Emanuel" means Ariel Emanuel of Endeavor.

8. "You" and "Your" refers to Source.

9. "Referral Agreement" refers to the Referral Agreement by and between Ironbound and Source dated as of April 26, 2004.

10. "Person" means natural persons, corporations, municipal corporations, the Government of the United States and all departments and agencies thereof, state governments, and all departments and agencies thereof, and any other governmental agencies, political subdivisions, partnerships, joint ventures, groups, associations, or any other form of organization or entity and its officers, directors, members, managers, shareholders, employees, representatives, and agents.

11. "Document" means all written, printed, typed, magnetic and electronic media, and any other media from which information can be derived. It includes, without limitation, original documents, drafts, non-identical copies, diaries, correspondence, proposals, schedules, books, indices, printed forms, publications, press releases, notices, brochures, pamphlets, guidelines, manuals, minutes, memoranda, summaries, abstracts, reports, files, file jackets, transcripts, data

processing cards, audio tapes, computer tapes, discs, hard drives, printouts, information contained in, on, or retrievable from computer programs, bulletins, surveys, charts, exhibits, drawings, diagrams, graphs, tables, photographs, recordings, telegrams, cables, telex messages, facsimiles, microfilms, videotapes, studies, work papers, analyses, valuations and notes.

12. "Relating" means relating, referring or pertaining, directly or indirectly, to the subject matter of the request.

13. "Communication" means any document or contact, oral or written, formal or informal, manually, mechanically or electronically generated, in which information of any nature was transmitted, transferred or stored.

14. The use of the singular form of any word includes the plural and vice versa.

15. The use of the present tense includes the past and future tenses and vice versa.

16. The foregoing definitions shall have the same meaning regardless of whether upper or lower case is used in the interrogatory.

II.   Instructions

1. If you object to any request based on a claim of privilege, work product, or other exemption from disclosure, state the reasons for each objection and produce all documents to which the claimed protection or exemption does not apply.

2. These requests shall be supplemented when required under subdivision (e)(1) of Rule 26 of the Federal Rules of Civil Procedure.

3. Except as provided above, you are directed to produce each document in its entirety, without redaction or expurgation.

4. If any document covered by this request is withheld from production or redacted prior to production, furnish a list identifying each such document, and provide the following information:

    a. the subject matter of the document or the redacted portion of such document;

    b. the reasons for withholding;

    c. the date of the document;

    d. the name, job title, and the last known business and home addresses of each person who drafted, or assisted in the preparation of the document;

    e. the name, job title and the last known business and home addresses of each person who received, viewed, or has had access to the document, including, without limitation, those persons identified on the face of the document as having received copies;

    f. a brief description of the document;

    g. a statement of the facts that constitute the basis for any claim of privilege, work product, or other exemption from discovery;

    h. the paragraph(s) of the request to which the document is responsive; and

    i. in the case of any document that refers in any way to a person, identification by name, job title, and last known business and home addresses of each person referenced therein.

5. To the extent that any document is responsive to more than one request, it need be produced only once.

- 5 -

## Documents Requested

1. All documents relating to the Referral Agreement, the parties' rights and liabilities thereunder, and any amendments, modifications, exhibits or attachments thereto including, without limitation, the Referral Agreement, amendments, modifications, exhibits or attachments themselves.

2. All documents relating to the identity of the "Client," as that term is used in the Referral Agreement.

3. All documents relating to the introduction of Source and Emanuel.

4. All documents relating to the relationship, if any, between Source and Emanuel prior to April 26, 2004.

5. All communications between Source and Emanuel.

6. All documents relating to the introduction of Emanuel or Endeavor to Source in or about April 2004.

7. All documents relating to any agreements (whether written or oral, executed or unexecuted) between Source and Emanuel including, without limitation, the agreements themselves and any attachments, exhibits, amendments or modifications thereto.

8. All documents relating to any consulting arrangement between Source and Emanuel including, without limitation, communications relating to the terms and conditions thereof.

9. All documents relating to the consulting services provided to Source by Emanuel in connection with the Alliance merger.

10. All documents relating to actual or potential business opportunities for Source that have been discussed by Emanuel and Source or Endeavor and Source.

11. All documents relating to any agreements (whether written or oral) between Source and Endeavor including, without limitation, the agreements themselves and any attachments, exhibits, amendments or modifications thereto.

12. All documents relating to the conference call held on or about April 28, 2004 between Ledecky, Emanuel, and Flegel.

13. All documents relating to any communications or meetings between Emanuel and any director, officer or employee of Source in April, May, or June 2004.

14. All documents relating to Source's business relationship with Emanuel.

15. All documents relating to any payments by Source to Emanuel or Endeavor for consulting or other services including, without limitation, the $1.5 million fee paid to Emanuel for consulting services provided to Source in connection with the merger between Source and Alliance.

16. All documents relating to Emanuel's appointment to and service on Source's Board of Directors.

17. All documents relating to Source's introduction to Alliance.

18. All documents relating to any actual or potential business relationship between Source and Alliance prior to April 2004.

19. All documents relating to the decision of Source's management to enter into discussions with Alliance about a potential business relationship.

20. All documents relating to the decision of Source's management to enter into a business relationship with Alliance.

21. All documents evidencing or relating to your claim, if any, that Alliance was evaluating a possible business relationship with Source prior to May 2004.

22. All documents submitted to the Federal Trade Commission or the Antitrust Division of the United States Department of Justice by Source and Alliance pursuant to Item 4(c) of the Antitrust Improvement Act Notification and Report Form for Certain Mergers and Acquisitions in connection with Source's merger with Alliance.

23. All documents relating to the business reasons and justifications for Source's merger with Alliance.

24. All documents relating to the expected and actual benefits to Source from its merger with Alliance.

25. All documents relating to agreements between Alliance and any third party relating to the distribution or sale of home entertainment content (i.e., DVDs, CDs, and video games) effective as of February 27, 2005 including, without limitation, the agreements themselves.

26. All documents relating to actual or potential agreements between Source and any third party relating to the distribution or sale of home entertainment content (i.e., DVDs, CDs, and video games) for the period from February 28, 2005 to the present including, without limitation, the agreements themselves.

27. All documents relating to the market opportunities Source's management believes have been or will be presented by the Alliance merger.

28. All documents relating to the manner in which Source expects its in-store merchandizing capabilities to be strengthened by the Alliance merger.

29. All documents relating to how the Alliance merger is expected to further Source's objective of creating the premier provider of information, supply chain management, and logistics services to retailers and producers of home entertainment content products.

30. All documents relating to your belief that the Alliance merger will position Source as the distribution channel of choice for film studies, record labels, publishers and other producers of home entertainment content.

31. All documents relating to the percentage of Source's revenues attributable to DVD and CD sales before and after the Alliance merger including, without limitation, sales and sales projections made between February 28, 2005 and the present.

32. All documents relating to how the merger with Alliance is expected to increase Source's financial strength.

33. All documents relating to the first time Source identified Alliance as a potential merger or acquisition candidate or business partner.

34. All documents relating to the first time Alliance identified Source as a potential business partner.

35. All documents relating to communications between any employee, officer or director of Source and any employee, officer, director or member of Endeavor during the period from April 2004 through February 2005 including, without limitation, the communications themselves.

36. The minutes of meetings for Source's Board of Directors for July 27, August 2, and November 17, 2004.

/s/ Matthew D. Schwartz
Matthew D. Schwartz (D.C. Bar No. 436619)
THOMPSON COBURN LLP
1909 K. Street, N.W. Ste. 600
Washington, D.C. 20006-1167
(202) 585-6900 (telephone)
(202) 585-6969 (facsimile)

*Attorney for Plaintiff Ironbound Partners, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of November, 2005, a true and correct copy of the foregoing Plaintiff's First Request for Production of Documents was served via hand delivery on:

> Kevin E. Stern
> C. Allen Foster
> Maria Hallas
> GREENBERG TRAURIG, LLP
> 800 Connecticut Ave., N.W.
> Suite 500
> Washington, D.C. 20006

*Allison Sinoski*