# THOMPSON COBURN

*Thompson Coburn LLP*
*Attorneys at Law*

Suite 600
1909 K Street, N.W.
Washington, D.C. 20006-1167
202-585-6900
FAX 202-585-6969

www.thompsoncoburn.com

Matthew D. Schwartz
direct dial 202-585-6932
direct fax 202-508-1020
mschwartz@thompsoncoburn.com

January 13, 2005

Kevin E. Stern, Esquire
Greenberg Traurig, LLP
800 Connecticut Ave., N.W.
Suite 500
Washington, D.C. 20006

Re:   *Ironbound Partners, LLC v. Source Interlink Companies, Inc.*, Case No. 1:05CV01039 (JGP)

Dear Kevin:

We have reviewed Source's responses to Ironbound's First Request for Production of Documents and find them deficient in several respects. Accordingly, Ironbound is preparing a motion to compel discovery and requests that you advise us of your availability to confer in person or by telephone during the week of January 16, 2006 to discuss whether Ironbound's concerns can be resolved without the Court's intervention.

While we will not here address each and every deficiency contained in Source's response, in an effort to ensure a productive and meaningful discussion, we thought it would be useful to provide examples of Ironbound's concerns. As detailed below, Source has failed to produce known responsive documents, has professed an inability to understand the meaning of common everyday terms, which in many cases are taken directly from its own SEC filings, and has asserted boiler plate objections that appear to be interposed for the sole purpose of avoiding discovery or increasing the cost of litigation. Additionally, Source has not produced a privilege log identifying the documents that it has withheld from discovery or the information that it has redacted under a claim of privilege.

As an initial matter, Ironbound is deeply concerned about the wholesale absence of emails from Source's document production. Although Ironbound propounded 36 separate requests, which cover internal and external communications and, among other things, relate to the single largest transaction in Source's history, Source has produced a grand total of one email. This is particularly troubling since Ironbound is in possession of several responsive emails that were generated by (or sent to) Source, but which were nevertheless withheld from production. It is inconceivable that Source and its representatives had no email communications with Mr.

January 13, 2005
Page 2

Emanuel, Endeavor or others relating to matters such as the consulting services provided by Endeavor or the Alliance merger. Under the circumstances, we can only conclude that such documents were either intentionally withheld from production or that Source failed to conduct a good faith search as required under the Federal Rules of Civil Procedure.

Ironbound is equally troubled by Source's objections to the meaning of common everyday words and phrases as a basis for withholding discovery. For example, Source objects to the phrase "consulting services," as well as numerous other phrases, as vague and ambiguous, even though such phrases are taken from its own SEC filings. Source also objects that such common everyday words as "introduction" and "evaluating" are vague and ambiguous.

We do not believe, and are confident that the Court will not believe, that Source is unable to understand the meaning of terms taken directly from its own SEC filings. Nor do we believe, and are confident that the Court will not believe, that Source is unable to understand the plain meaning of words such as "introduction," "evaluating," or "business relationship," especially in the context of this litigation. If Source is sincere in its claim that it does not understand the meaning of the term "introduction," for example, it can consult any desk-top dictionary. Of course, it is not credible to suggest that Source does not understand the meaning of terms contained in its own SEC filings or in the contracts prepared by its own general counsel.

Nor is it credible to suggest that Source has no documents relating to its relationship with Emanuel and Endeavor or the consulting services provided by Emanuel and Endeavor in connection with the Alliance merger. Emanuel is a member of Source's Board of Directors, and Endeavor was paid $1.5 million for the consulting services rendered in connection with the Alliance merger. Additionally, both Endeavor and Emanuel have continued to work with Source to identify new business opportunities, a fact acknowledged by Messrs. Flegle and Bates and confirmed by the limited documents that Source has thus far produced. At a minimum, therefore, Source should have documents relating to the "consulting services" for which it paid a $1.5 million fee, Emanuel's appointment to and involvement with Source's Board of Directors, the current consulting services that Emanuel and/or Endeavor are providing to Source, and the business opportunities that Emanuel and Endeavor have identified, discussed, and/or are pursuing.

Additionally, Source has objected to numerous requests on the grounds that they are overly broad, vague and ambiguous or not reasonably calculated to lead to the discovery of admissible evidence without apparent regard for the actual substance of the request. For example, we are confident that the Court will not agree that a request seeking documents relating to the Referral Agreement and the parties' rights and responsibilities thereunder, which is the central issue in this case, is overly broad, vague or ambiguous. (In addition to suing on the Referral Agreement, Ironbound seeks a declaration of the parties' rights and liabilities thereunder.) Nor do we agree, and are confident that the Court will not agree, that Ironbound's request for documents relating to agreements between Source and Endeavor, another central point in this case, is not reasonably

January 13, 2005
Page 3

calculated to lead to the discovery of admissible evidence. Indeed, Source's documents are especially significant in light of the fact that Source is claiming that a written agreement is a condition precedent to its liability and the fact that Ironbound is entitled to receive compensation for a period of five years based on Source's relationship with Endeavor/Emanuel.

Source has also objected to a series of requests seeking information about the benefits and value Source attributes to the Alliance merger on the ground that such requests are not reasonably calculated to lead to the discovery of admissible evidence. As Source knows, in addition to Ironbound's contract claim and request for declaratory relief, Ironbound has asserted equitable claims for quantum meruit and unjust enrichment. These claims turn on the question of whether Ironbound rendered a valuable service to Source and whether Source accepted the benefit of that service and was enriched thereby. Accordingly, Ironbound's request for documents relating to the value Source has attached to the merger and the benefits that it expected to derive and has derived therefrom are not only reasonably calculated to lead to the discovery of admissible evidence, but directly relevant to establishing Ironbound's affirmative claims.

Finally, Source has objected to the production of "confidential" documents pending the entry of a stipulated protective order. Inasmuch as the parties' stipulated protective order has now been entered by the Court, please confirm that Source will produce all documents withheld on the basis of this objection.

Ironbound's inability to obtain production of discoverable documents is interfering with its preparation for depositions. If Ironbound is not able to obtain the documents to which it is entitled prior to the commencement of deposition practice, it will have no alternative but to keep the depositions open and recall witnesses pending the production of such documents, which will needlessly increase expense and inconvenience to all concerned.

I am hopeful that we can resolve these issues expeditiously and in good faith.

Sincerely,

Matthew D. Schwartz