IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN LEDECKY d/b/a<br>IRONBOUND PARTNERS,<br><br>    *Plaintiff*,<br><br>v.<br><br>SOURCE INTERLINK COMPANIES, INC.,<br><br>    *Defendant*. | Civil Action No. 1:05CV01039 (JGP) |

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL

On January 20, 2006, a discovery conference was held at the request of Plaintiff Jonathan Ledecky d/b/a Ironbound Partners ("Ironbound") to discuss deficiencies in the document production of Defendant Source Interlink Companies, Inc. ("Source"). During the same conference, the parties also discussed Ironbound's responses to Source's discovery requests. In connection with that discussion, Ironbound advised Source that it had produced *all* documents relating to the Referral Agreement (the "Agreement") at issue in this case including, without limitation, documents relating to communications with Source, The Endeavor Agency, LLC ("Endeavor"), Ariel Emanuel, and Alliance Entertainment Corporation ("Alliance"), all drafts of the Agreement, and all electronic records relating to the Agreement.

Ironbound also gave detailed explanations for its objections. Specifically, Ironbound advised Source that Source's demand that Ironbound produce communications wholly unrelated to the Agreement is not reasonable, especially in light of the fact that Ironbound is a sole proprietorship and requiring its principal, Jonathan Ledecky, to search all of his files for communications that have nothing to do with this case would be an unreasonable burden. In

determining whether to stand on its objections, Ironbound asked Source to explain why its requests were reasonably calculated to lead to the discovery of admissible evidence and how the requested documents related to any claim or defense in this action. In response, Source could not, or would not, explain how such documents were related to this case. Instead, Source simply asserted that courts routinely compel production of communications between the parties (even though not related to the subject matter of the litigation) and stated "you never know what you might find." In light of Source's wholesale inability to articulate any justification for the disputed requests, Ironbound advised Source that it would stand on its objections.

<u>Argument</u>

The documents Source seeks to compel fall into two basic categories. The first category includes blanket requests for communications between Ironbound and various other entities and individuals without any limitation as to the subject matter or the time period of the communications. The second category involves requests for documents relating to Ironbound's relationship with Endeavor and/or its founder and principal, Ariel Emanuel, prior to, or separate from, the Agreement. As discussed more fully below, neither of these categories of documents has any relevance to the subject matter of this lawsuit.

I.   <u>Communications Between Ironbound and Various Other Entities and Individuals</u>.

As discussed above, Source has issued blanket requests for *all* documents relating to *any* communications between Ironbound and/or Ledecky and various other entities and individuals without any attempt to limit those requests to documents relevant to the Agreement, Source's relationship with Endeavor, or other issues in this case. Specifically, Request Numbers 12-16 of Defendant's First Request for Production of Documents seek *all* documents relating to *any* communications between Ironbound and/or Ledecky and (a) Emanuel, (b) Endeavor, (c) Source,

(e) Alliance, and (f) The Yucaipa Companies, LLC ("Yucaipa"). (Def.'s Opening Mem. at Ex. A.) After producing all communications relating to the subject matter of this lawsuit, Ironbound objected to these requests on the grounds that they are overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. During the parties' discovery conference, Ironbound explained its objections in more detail, pointing out that these requests would encompass a multitude of documents that predated the Agreement (by as much as seven years) and had no relationship to the issues in this case.

For example, in Request Number 14, Source has requested "[a]ll documents relating to any communications between Ironbound and/or Ledecky and Source." (Def.'s Opening Mem. at Ex. A.) As Ironbound advised Source during the parties' discovery conference, Ironbound's Ledecky has been a major shareholder of Source for seven years, was Source's single largest shareholder prior to the Alliance merger, and has had numerous discussions with Source's officers and employees regarding matters that have nothing to do with this case and, in the majority of cases, predate the Agreement. As discussed above, when Ironbound asked Source to explain why a request for *all* documents relating to *any* communications between Ledecky and Source was reasonably calculated to lead to the discovery of admissible evidence, Source was unable to articulate any reason other than to say that courts routinely compel the discovery of *all* communications between parties (even if not related to the litigation) and "you never know what you might find." Such a fishing expedition is not appropriate. *Pleasants v. Allbaugh*, 208 F.R.D. 7, 9 (D.D.C. 2002) (quoting *Hardrick v. Legal Services Corp.*, 96 F.R.D. 617, 618 (D.D.C. 1983)) ("courts remain concerned about 'fishing expeditions, discovery abuse, and inordinate expenses involved in overbroad and far-ranging discovery requests' and have therefore limited discovery to the issues involved in the particular case"). In addition to the fact

that these requests are not reasonably calculated to lead to the discovery of admissible evidence, they are also burdensome. By its request, Source seeks to require Ledecky, a sole proprietor, to spend hours or even days to sift through e-mails and files from his seven-year relationship with Source searching for communications that have absolutely nothing to do with the Agreement or any other issue relevant to this case. There can be no legitimate purpose for such a request.

For the same reasons, Source's requests for *all* documents relating to *any* communications between Ironbound and/or Ledecky and Endeavor, Emanuel, Alliance, and Yucaipa are also overbroad and not reasonably calculated to lead to the discovery of admissible evidence. This is especially true with respect to Endeavor and Emanuel, with whom Ironbound has had communications that have nothing to do with Source, the Agreement, Endeavor's relationship with Source, or any other issue remotely related to this case. During the parties' discovery conference, Ironbound informed Source that it has already produced to Source all communications relating to the Agreement, Ironbound's introduction of Source to Emanuel/Endeavor, and Source's relationship with Emanuel/Endeavor. Source's blanket requests for *all* documents relating to *any* communications between Ironbound and these various entities and individuals—regardless of their relationship to this case—are not reasonably calculated to lead to the discovery of admissible evidence.

Source points out that Ironbound, in its own document requests, also requested documents relating to communications. (Def.'s Opening Mem. at 8 n.2.) What Source fails to mention is that it objected to these requests on the grounds that they were overly broad and not reasonably calculated to lead to the discovery of admissible evidence. It also neglects to mention that Ironbound's requests were for documents relating to communications between Source and Emanuel and/or Endeavor that occurred following Ironbound's introduction of Source and

- 4 -

Endeavor. Those requests are calculated to lead to the discovery of admissible evidence because Ironbound is entitled to compensation for any net income earned by Source as a result of its relationship with Endeavor and/or Emanuel for a five-year period. Thus, Ironbound's requests for all communications between Source and Emanuel and/or Endeavor, which have all occurred subsequent to the introduction by Ironbound, are calculated to lead to evidence concerning transactions and other business dealings between Source and Endeavor for which Ironbound is entitled to compensation.[1] Source has failed to adequately explain why communications between Ironbound and Source (or Emanuel, Endeavor, Yucaipa, or Alliance) that do not relate to this lawsuit are discoverable.

Similarly broad requests for communications were rejected in *Alexander v. Federal Bureau of Investigation*, 194 F.R.D. 299 (D.D.C. 2000). In that case, the plaintiffs sued for violations of their privacy interests when the FBI handed over to the Clinton White House hundreds of FBI files regarding former political appointees and government employees from the Reagan and Bush administrations. *Id.* at 300. The plaintiffs sought to discover all communications between Hillary Clinton and various administration personnel. *Id.* at 304. The court, noting that "these requests are completely unlimited in subject area," found that the plaintiff had failed to show that all contact that Mrs. Clinton had with the named individuals was relevant to that particular case. *Id.* As in this case (where Ledecky has had business dealings unrelated to the Agreement here at issue), the court noted that Mrs. Clinton "clearly may have other reasons for communicating with these individuals that are totally unrelated to this case."

---

[1] Ironbound's request for documents relating to communications between Source and Endeavor and/or Emanuel are also limited, as are all of Ironbound's requests, to documents dating from January 1, 2004 to the present. Moreover, Ironbound's request for documents relating to communications between Source and Endeavor is further limited to the time period from April 2004 to February 2005. By contrast, Source's requests are not limited to a specific time frame.

*Id.* Thus, the court limited the requests to documents relating to the matters at issue in that case. *Id.* With respect to the instant case, such documents have already been produced.

II.  Documents Relating to Ironbound's Relationship with Emanuel and/or Endeavor Prior to, or Apart from, the Agreement in this Case.

Source has also requested documents relating to (1) Ironbound's pre-existing relationship with Endeavor prior to the execution of the Agreement (Def.'s Opening Mem. at Ex. A, Req. No. 7), and (2) any agreements, business relationship, proposed agreements and/or proposed business relationship between Ironbound and Endeavor or Emanuel (Def.'s Opening Mem. at Ex. A, Req. Nos. 19 and 20). These documents have no bearing on the Agreement or the parties' rights and responsibilities thereunder. In its motion, Source asserts that the basis for these requests is a statement in the Agreement's recitals, which reads "WHEREAS, Ironbound has a *pre-existing relationship* with an entity (the 'Client') that desires to establish a business relationship with Source, the name of which shall be disclosed to Source in writing immediately following execution of this Agreement. . . ." (Def.'s Opening Mem. at Ex. B) (emphasis in original). This generic statement, which Source does not dispute, does not provide a basis for discovery unrelated to the subject matter of this litigation.

First, Source does not dispute that Ledecky introduced it to Endeavor (thus establishing that Ledecky and Endeavor had a "pre-existing" relationship as stated in the recital). Second, this recital, which is boilerplate drafted by Source's own lawyer, makes no representation regarding the nature or scope of Ironbound's relationship with the "Client" (Endeavor). It is simply a background statement noting that Ironbound has a relationship with a company it has offered to introduce to Source. Indeed, Source admits that Ironbound introduced it to Endeavor, thus acknowledging that Ironbound and Endeavor had a pre-existing relationship. (Def.'s Resp. to Pl.'s First Reqs. for Admis., Resp. to Req. No. 5, attached hereto as Ex. 1.) Ledecky could not

have made that introduction absent some pre-existing relationship with Endeavor.  Finally, under Florida law, recitals are not part of the contract.

     Source appears to be requesting this information in an attempt to argue that, because Ironbound's prior relationship with Endeavor was not of some specific quality or duration (which Source has not defined and which is not addressed by the Agreement), Source should be excused from complying with its obligations under the Agreement.  Source's vague assertions notwithstanding, the Agreement makes no reference to the nature or scope of the relationship between Ironbound and Endeavor.  Rather, it merely states that Ironbound has a "pre-existing" relationship with Endeavor, which was confirmed when Ironbound introduced Source and Endeavor.  Despite its attempt to attach some extra-contractual meaning to this recital, Source has articulated no reason why it should be excused from compensating Ironbound as required under the Agreement based on Source's opinion that Ironbound's relationship with Endeavor was not of some undefined quality or duration not mandated by the Agreement.  The only question at issue in this case is whether Ironbound made the introduction and Source accepted it.  Having accepted the benefit of Ironbound's introduction, the duration or quality of Ironbound's relationship with Endeavor is irrelevant.

     The only conceivable relevance of such information would be if Source were claiming that Ironbound, by this statement in the recitals, fraudulently introduced Source to enter into the Agreement.  However, Source has made no such claim.  In fact, on the contrary, as discussed above, Source accepted the benefit of the Agreement and entered into a relationship with Endeavor.  That relationship proved so successful that Source paid Endeavor $1.5 million for consulting services provided in connection with the Alliance merger and even appointed Emanuel to its board of directors.  Clearly, there is no basis to allege, and Source does not allege,

that it was somehow defrauded with respect to the extent of the relationship between Ironbound and Endeavor and denied the benefit of its bargain.

Not only is the nature and scope of the prior existing relationship between Ironbound and Endeavor irrelevant to Source's liability under the Agreement, but Source's reliance on the contract's recitals to argue the relevance of this information is misplaced.  Under Florida law, which governs the Agreement, recitals do not form a part of the contract.  *Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1074 (11th Cir. 2003) (finding that, under Florida law, "'whereas' clauses are not binding when the contract is otherwise unambiguous"; rather, they are "merely prefatory recitations of the facts that lead the parties to enter the agreement"); *Rose v. M/V "Gulf Stream Falcon"*, 186 F.3d 1345 (11th Cir. 1999) ("under Florida law, such 'whereas' or other prefatory clauses are not binding").  Thus, Source cannot point to the recitals as justification for requiring Ironbound to produce irrelevant information.

III.  <u>Ironbound has provided Source with sufficient detail regarding the bases for its objections</u>.

Source expends a great deal of effort arguing that Ironbound's objections are not specific.[2]  In so doing, however, Source ignores the fact that the bases for Ironbound's objections were discussed in detail during the parties' mandatory meet and confer conference held at the offices of Source's counsel on January 20, 2006.  During that conference, Ironbound explained that Source's requests for communications between Ironbound and various other parties would encompass communications on a variety of issues not relating to this case, some pre-dating the Agreement by many years.  Additionally, Ironbound explained that Source's requests for

---

[2] Ironically, Ironbound's initial objections to Source's discovery requests were virtually identical in phrasing to Source's objections to Ironbound's discovery requests.  (*Compare* Def.'s Resp. to Pl.'s First Req. for Produc. of Docs., attached hereto as Ex. 2, with Pl.'s Resp. to Def.'s First Req. for Produc. of Docs., Ex. D to Def.'s Opening Mem.)

documents relating to Ironbound's relationship with Emanuel and/or Endeavor prior to, or separate from, the Agreement were not reasonably calculated to lead to the discovery of admissible evidence because (1) Source has already admitted that Ironbound introduced Source to Endeavor, thus acknowledging that Ironbound and Endeavor had a pre-existing relationship, and (2) recitals are not considered part of a contract under Florida law. Finally, Ironbound asked Source to state how such information could be used in support of any claim or defense in this case, but it could not.

Not only did Ironbound explain the bases for its objections in great detail during the parties' discovery conference, it also explained in detail the steps it took to locate and produce responsive information. Ironbound's counsel noted that Ledecky is the sole owner of Ironbound and conducted the entire search himself. Finally, as discussed above, Ironbound represented to Source that it had produced all documents that were in any way related to the Agreement, the introduction of Source to Endeavor, Source's relationship with Endeavor, and the Alliance merger.

In its opening memorandum, Source conveniently ignores everything the parties discussed during their discovery conference and chooses to pretend that Ironbound has not provided Source with any information regarding the bases for its objections other than those set forth in its initial response to Source's document requests. Contrary to Source's representations, Ironbound has explained in detail the bases for its objections and why Source's requests are not reasonably calculated to lead to the discovery of admissible evidence. Why Source would suggest otherwise is unclear.

Conclusion

For the foregoing reasons, Ironbound requests that Source's Motion to Compel be denied, and that Ironbound be awarded its costs and attorneys' fees incurred in connection with opposing this motion, pursuant to Rule 37(a)(4)(B).

Respectfully submitted,

  /s/   Matthew D. Schwartz
Matthew D. Schwartz (D.C. Bar No. 436619)
Allison Sinoski (D.C. Bar No. 482593)
 THOMPSON COBURN LLP
 1909 K. Street, N.W. Ste. 600
 Washington, D.C. 20006-1167
 (202) 585-6900 (telephone)
 (202) 585-6969 (facsimile)

*Attorneys for Plaintiff Ironbound Partners, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of March, 2006, a true and correct copy of the foregoing Plaintiff's Opposition to Defendant's Motion to Compel, along with attachments, was mailed electronically through CM/ECF to:

>   Kevin E. Stern
>   C. Allen Foster
>   Maria Hallas
>   GREENBERG TRAURIG, LLP
>   800 Connecticut Ave., N.W.
>   Suite 500
>   Washington, D.C.  20006


           /s/   Allison Sinoski