IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IRONBOUND PARTNERS, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SOURCE INTERLINK COMPANIES, INC., )<br>)<br>Defendant. )<br>) | Case No. 1:05CV01039 (JGP) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST REQUESTS FOR ADMISSION**

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Defendant Source Interlink Companies, Inc. ("Source") herein responds to Plaintiff Ironbound Partners, LLC's ("Plaintiff" or "Ironbound") First Requests for Admission (collectively referred to herein as "Requests") as follows:

**GENERAL OBJECTIONS**

1.  Source objects to each request to the extent it is not relevant to any claim or defense of Plaintiff or the subject matter involved in this case and is not reasonably calculated to lead to the discovery of admissible evidence. In particular, because this case has been bifurcated into two phases -- a liability phase and a damages phase -- Source objects to the extent that Plaintiff's Requests seek information that goes beyond the scope of issues relating to the liability phase of this case, as such requests are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

2. Source objects to each request to the extent that it is overbroad, unduly burdensome, vague and/or ambiguous, so as to require Source to speculate as to the nature and/or scope of the information sought.

3. Source objects to each request to the extent that it seeks discovery of any information protected from disclosure by (1) the attorney-client privilege; (2) the attorney work-product doctrine or immunity; or (3) any other statutory or common law privilege, protection or immunity.

4. Source objects to each request to the extent it calls for disclosure of trade secret or other confidential proprietary or business information. Any responsive confidential proprietary information will be disclosed to Plaintiff subject to the terms of the parties' Stipulated Protective Order.

5. Source objects to each request to the extent that it attempts to impose obligations upon Source beyond those provided for in the Federal Rules of Civil Procedure.

6. Source expressly reserves all objections, in this or any other proceeding, with respect to relevance, materiality, and admissibility of all information provided pursuant to these interrogatories. This response is made without waiver of, or prejudice to, any such objections or rights.

**RESPONSES AND SPECIFIC OBJECTIONS**

Without waiving any of the foregoing General Objections, Source provides the following Responses and Specific Objections to Plaintiff's Requests:

1. Admit that, at the time Source executed the Referral Agreement, it did not know the identity of the Client, as that term is used in the Agreement.

**RESPONSE:** Admitted.

2. Admit that Source understood that Ledecky expected to be compensated for his introduction of the Client in the event that Source earned net income as a result of its relationship with the Client.

**RESPONSE:** Source admits that the Referral Agreement sets forth the terms and conditions under which Ironbound is entitled to be compensated for its introduction of the Client to Source. Except as expressly admitted herein, this request to admit is denied.

3. Admit that all of Source's interactions with Ironbound were with Ironbound's Ledecky.

**RESPONSE:** Source objects to this request to admit on grounds that the term "interactions" is vague and ambiguous. Subject to and without waiving the foregoing objection, Source admits that, to the best of its knowledge, all of its direct dealings with Ironbound to date have been with Ironbound's Ledecky. Except as expressly admitted herein, this request to admit is denied.

4. Admit that Source negotiated the Referral Agreement with Ledecky.

**RESPONSE:** Admitted.

5. Admit that Ledecky introduced Source to Endeavor.

**RESPONSE:** Admitted.

6. Admit that Ledecky disclosed the identities of Endeavor and Emanuel to Source after Source signed the Referral Agreement.

**RESPONSE**: Admitted.

7.      Admit that, following execution of the Referral Agreement, Ledecky arranged a telephone conference between Flegel and Emanuel.

**RESPONSE**: Admitted.

8.      Admit that Source did not have a business relationship with Endeavor prior to Ledecky's introduction of Source to Endeavor.

**RESPONSE**: Source objects to this request to admit to the extent it implies or suggests that Source entered into a "business relationship" with Endeavor as that term is used in the Referral Agreement subsequent to Ledecky's introduction of Source to Endeavor. Subject to and without waiving this objection, Source admits that it did not have a relationship, business or otherwise, with Endeavor prior to being introduced to Endeavor by Ledecky.

9.      Admit that Source did not have discussions with Endeavor concerning a potential business relationship between Source and Endeavor prior to Ledecky's introduction of Source to Endeavor.

**RESPONSE**: Source objects to this request to admit to the extent it implies or suggests that Source entered into a "business relationship" with Endeavor as that term is used in the Referral Agreement subsequent to Ledecky's introduction of Source to Endeavor. Subject to and without waiving this objection, Source admits that it had no discussions with Endeavor concerning a potential relationship, business or otherwise, prior to Ledecky's introduction of Source to Endeavor.

10.     Admit that Source has no documents evidencing a business relationship between Source and Endeavor prior to the time Source was introduced to Endeavor by Ledecky.

**RESPONSE:** Source objects to this request to admit to the extent it implies or suggests that Source entered into a "business relationship" with Endeavor as that term is used in the Referral Agreement subsequent to Ledecky's introduction of Source to Endeavor. Subject to and without waiving this objection, Source admits that it has no documents evidencing a relationship, business or otherwise, with Endeavor prior to being introduced to Endeavor by Ledecky.

11. Admit that Ledecky introduced Source to Emanuel.

**RESPONSE:** Admitted.

12. Admit that Source did not have a business relationship with Emanuel prior to Ledecky's introduction of Source to Emanuel.

**RESPONSE:** Source objects to this request to admit to the extent it implies or suggests that Source entered into a "business relationship" with Endeavor as that term is used in the Referral Agreement subsequent to Ledecky's introduction of Source to Emanuel. Subject to and without waiving this objection, Source admits that it did not have a relationship, business or otherwise, with Emanuel prior to being introduced to Emanuel by Ledecky.

13. Admit that Source did not have discussions with Emanuel concerning a potential business relationship between Source and Emanuel prior to Ledecky's introduction of Source to Emanuel.

**RESPONSE:** Source objects to this request to admit to the extent it implies or suggests that Source entered into a "business relationship" with Endeavor as that term is used in the Referral Agreement subsequent to Ledecky's introduction of Source to Emanuel. Subject to and without waiving this objection, Source admits that it had no discussions with Emanuel

concerning a potential relationship, business or otherwise, prior to Ledecky's introduction of Source to Emanuel.

14. Admit that Source has no documents evidencing a business relationship between Source and Emanuel prior to the time Source was introduced to Emanuel by Ledecky.

**RESPONSE**: Source objects to this request to admit to the extent it implies or suggests that Source entered into a "business relationship" with Emanuel as that term is used in the Referral Agreement subsequent to Ledecky's introduction of Source to Emanuel. Subject to and without waiving this objection, Source admits that it has no documents evidencing a relationship, business or otherwise, with Emanuel prior to being introduced to Emanuel by Ledecky.

15. Admit that Emanuel introduced Source to Alliance.

**RESPONSE**: Source admits that Emanuel introduced Source to Erika Paulson, a director of Alliance and a partner with The Yucaipa Companies, LLC, which was affiliated with Alliance's controlling stockholder, AEC Associates, L.L.C. Except as expressly admitted herein, this request to admit is denied.

16. Admit that Source did not have a business relationship with Alliance prior to Emanuel's introduction of Source to Alliance.

**RESPONSE**: Source objects to this request to admit to the extent it implies or suggests that (i) Emanuel introduced Source to Alliance, and (ii) Source entered into a "business relationship" with Alliance as a direct result of anything Emanuel did. Subject to and without waiving this objection, Source admits that it entered into a merger agreement with Alliance on November 18, 2004, which occurred subsequent to Emanuel's introduction of Source to Erika Paulson, a director of Alliance and a partner with The Yucaipa Companies, LLC, which was

affiliated with Alliance's controlling stockholder, AEC Associates, L.L.C. Except as expressly admitted herein, this request to admit is denied.

17. Admit that Source did not have discussions with Alliance concerning a potential business relationship between Source and Alliance prior to Emanuel's introduction of Source to Alliance.

**RESPONSE:** Source objects to this request to admit to the extent it implies or suggests that (i) Emanuel introduced Source to Alliance, and (ii) Source entered into a "business relationship" with Alliance as a direct result of anything Emanuel did. Subject to and without waiving this objection, Source admits that it did not have any discussions with Alliance concerning entering into any relationship, business or otherwise, prior to Emanuel's introduction of Source to Erika Paulson, a director of Alliance and a partner with The Yucaipa Companies, LLC, which was affiliated with Alliance's controlling stockholder, AEC Associates, L.L.C. Except as expressly admitted herein, this request to admit is denied.

18. Admit that Source has no documents evidencing a business relationship between Source and Alliance prior to the time Source was introduced to Alliance by Emanuel.

**RESPONSE:** Source objects to this request to admit to the extent it implies or suggests that (i) Emanuel introduced Source to Alliance, and (ii) Source entered into a "business relationship" with Alliance as a direct result of anything Emanuel did. Subject to and without waiving this objection, Source admits that it has no documents evidencing a relationship, business or otherwise, between Source and Alliance prior to Emanuel's introduction of Source to Erika Paulson, a director of Alliance and a partner with The Yucaipa Companies, LLC, which

was affiliated with Alliance's controlling stockholder, AEC Associates, L.L.C. Except as expressly admitted herein, this request to admit is denied.

19. Admit that Source entered into a written non-disclosure agreement with Endeavor for the purpose of exploring and evaluating a possible business relationship.

**RESPONSE**: Admitted.

20. Admit that the non-disclosure agreement entered into between Source and Endeavor governs their ongoing relationship.

**RESPONSE**: Denied.

21. Admit that Source and Endeavor entered into the non-disclosure agreement after Ledecky introduced Source to Endeavor.

**RESPONSE**: Denied.

22. Admit that Source entered into a consulting relationship with Endeavor.

**RESPONSE**: Denied.

23. Admit that Endeavor provided consulting services to Source in connection with the merger between Source and Alliance.

**RESPONSE**: Source admits that Emanuel, acting on Endeavor's behalf, provided consulting services in connection with the merger between Source and Alliance. Except as expressly admitted herein, this request to admit is denied.

24. Admit that Emanuel provided consulting services to Source in connection with the merger between Source and Alliance.

**RESPONSE:** Source admits that Emanuel, acting on Endeavor's behalf, provided consulting services in connection with the merger between Source and Alliance. Except as expressly admitted herein, this request to admit is denied.

25. Admit that Source received a $1.5 million invoice dated March 2, 2005 from Endeavor for a "consultant fee."

**RESPONSE:** Admitted.

26. Admit that Source paid Endeavor the $1.5 million fee billed in Endeavor's March 2, 2005 invoice.

**RESPONSE:** Admitted.

27. Admit that the consulting services for which Endeavor was paid $1.5 million consultant fee were performed, at least in part, by Emanuel.

**RESPONSE:** Admitted.

28. Admit that the consultant fee billed in Endeavor's March 2, 2005 invoice encompassed a fee for services rendered, at least in part, by Emanuel in connection with the Alliance merger.

**RESPONSE:** Source admits that the consultant fee in Endeavor's March 2, 2005 invoice was a fee for services rendered by Emanuel on Endeavor's behalf in connection with the Alliance merger. Except as expressly admitted herein, this request to admit is denied.

29. Admit that Emanuel was appointed to Source's Board of Directors in November of 2004.

**RESPONSE:** Admitted.

30.  Admit that the merger between Source and Alliance was of significant value to Source's business.

**RESPONSE:** Source objects to this request to admit on grounds that the phrase "was of significant value" is vague and ambiguous and is therefore is not capable of being admitted or denied.

31.  Admit that Source believes that the merger between Source and Alliance will create more shareholder value than could be achieved by Source individually.

**RESPONSE:** Admitted.

32.  Admit that Source believes that the merger between Source and Alliance will position Source as the distribution channel of choice for film studios, record labels, publishers and other producers of home entertainment content products.

**RESPONSE:** Admitted.

33.  Admit that Source expects to realize substantial cost savings in the areas of procurement, marketing, information technology, administration and other operational efficiencies as a result of its merger with Alliance.

**RESPONSE:** Admitted.

34.  Admit that Source believes that the merger between Source and Alliance will enhance Source's financial strength.

**RESPONSE:** Admitted.

35.  Admit that Endeavor is currently assisting Source in exploring new business opportunities.

**RESPONSE:** Denied.

36.  Admit that Emanuel is currently assisting Source in exploring new business opportunities.

**RESPONSE**: Denied.

                              Respectfully submitted,

                              */s/ Kevin E. Stern*
                              C. Allen Foster (D.C. Bar No. 411662)
                              Kevin E. Stern (D.C. Bar No. 459214)
                              Maria E. Hallas (D.C. Bar No. 436529)
                              GREENBERG TRAURIG, LLP
                              800 Connecticut Ave., N.W.
                              Suite 500
                              Washington, D.C. 20006
                              (202) 331-3102 (telephone)
                              (202) 331-3101 (facsimile)

                              *Attorneys for Defendant Source Interlink Companies, Inc.*

Dated: February 6, 2006

CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on February 6, 2006, a copy of the foregoing **DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUESTS FOR ADMISSION** was duly served upon all parties of record by first class mail, addressed as shown below.

Matthew D. Schwartz
THOMPSON COBURN LLP
1909 K Street, N.W. Ste. 600
Washington, D.C. 20006-1167
(202) 585-6900 (telephone)
(202) 585-6969 (facsimile)

*Attorneys for Plaintiff Ironbound Partners, LLC*

_____
Julie Lee