IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN LEDECKY d/b/a<br>IRONBOUND PARTNERS,<br><br>    *Plaintiff*,<br><br>v.<br><br>SOURCE INTERLINK COMPANIES, INC.,<br><br>    *Defendant*. | Civil Action No. 1:05CV01039 (JGP) |

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

After stating in open court that its relationship with Ironbound's "Client," The Endeavor Agency, LLC ("Endeavor"), is *not* the type of relationship covered by the parties' agreement (the "Agreement"), Source now seeks dismissal of Ironbound's equitable claims on the ground that Ironbound has an adequate remedy at law under that same Agreement. Source cannot have its cake and eat it too. Under Florida law, which governs the Agreement in this case, if the matters in dispute are outside the scope of a written contract, a plaintiff is entitled to assert and recover upon implied contract claims. Moreover, Florida law expressly permits a plaintiff to plead breach of contract and equitable claims alternatively.

In this case, Ironbound is *not* seeking to recover under *both* its contract and equitable claims. Rather, Ironbound's equitable claims have been asserted alternatively in response to Source's argument that the Agreement does not apply to its relationship with Endeavor or to the Alliance merger. Although Ironbound believes that the Court or a jury will have no difficulty finding that the Agreement *is* applicable to both Source's relationship with Endeavor and the Alliance merger, given Source's defense that these matters are not covered by the Agreement,

the assertion of equitable claims is proper and permitted under Florida law. Accordingly, Source's motion should be denied.[1]

## Background

Ironbound has asserted its equitable claims as an alternative ground for recovery in response to Source's assertion that the Agreement is not applicable to its relationship with Endeavor or the Alliance merger. Specifically, Source says (1) that the relationship between Source and Endeavor is not the type of relationship envisioned by the parties or encompassed by the Agreement, (2) that the Agreement does not apply to net income resulting from a merger or other business combination introduced or facilitated by Endeavor, and (3) that the identity of the "Client," as that term is used in the Agreement, is in dispute. (*See* Exhibit A, Tr. of Initial Scheduling Conference (Oct. 18, 2005) at 6:7-12; Exhibit B, Resp. to Req. No. 2.) Indeed, during the initial scheduling conference in this case, Source stated "we do not believe that any business relationship as envisioned under the [A]greement was established between the defendant and the plaintiff's client, and also whether or not any relationship pursuant to the terms of the [A]greement developed that would entitle them to net income."[2] (Exhibit A at 6:7-12.)

Source cannot have it both ways. It cannot claim that the Agreement does not cover the relationships and transactions here at issue, yet, at the same time, assert that Ironbound's

---

[1] In its motion, Source makes much of the fact that Ironbound did not allege in its Complaint that it lacks an adequate remedy at law. Ironbound has asserted its equitable claims in the alternative due to the fact that Source has indicated that it intends to argue that the claims at issue in this case are outside the scope of the Agreement. If the basis of Source's motion is Ironbound's failure to state that it does not have an adequate remedy at law, Ironbound will seek leave to amend its Complaint to allege, with respect to its equitable claims, that it will lack an adequate remedy at law should Source succeed in arguing that the Agreement does not apply to this case.

[2] Because Source has not filed its answer to Ironbound's Amended Complaint, Ironbound does not yet know whether Source will oppose Ironbound's claim for reformation of the Agreement to eliminate the "LLC" designation in "Ironbound Partners, LLC." While, as discussed in Ironbound's Memorandum in Support of its Motion for Leave to Amend Complaint, Ironbound does not believe that such an error affects the validity of the Agreement, should Source contest the validity of the Agreement on this basis, Ironbound would rely upon its equitable claims as an alternative basis for recovery.

equitable claims should be dismissed because Ironbound has an adequate remedy at law. Ironbound agrees that, if the factfinder concludes that these matters are covered by the Agreement, as Ironbound believes they are, Ironbound cannot also recover in equity. If, as Source argues, however, the Agreement does not apply to this case, Ironbound is entitled to seek recovery in equity. As such, Ironbound's assertion of equitable claims as an alternative basis for recovery is appropriate.

<u>Argument</u>

It is well-settled that a Complaint may include causes of action that are pleaded in the alternative and that a party may state as many separate claims or defenses as the party has, regardless of consistency. Fed. R. Civ. P. 8(e)(2). This includes pleading breach of contract and equitable claims in the alternative. *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1320 (M.D. Fla. 2000) ("both the Federal Rules of Civil Procedure and Florida law permit a party to allege, in the alternative, recovery under an express contract and seek equitable relief under the theory of unjust enrichment"). Indeed, in *In re Managed Care Litigation*, 185 F. Supp. 2d 1310 (S.D. Fla. 2002), a case relied upon by Source, the court expressly acknowledged that, if one of the parties contests the existence of an express contract governing the subject matter of the dispute, an equitable claim may be pleaded in the alternative. *Id.* at 1337-38.

The existence of an express contract between the parties does not per se preclude alternative claims for equitable relief, especially where the defendant asserts that the issues in dispute are outside the scope of the parties' agreement. *Excess Risk Underwriters, Inc., v. Lafayette Life Ins. Co.*, 328 F. Supp. 2d 1319, 1345-46 (S.D. Fla. 2004); *Moylan v. Estes*, 102 So.2d 855, 856 (Fla. Dist. Ct. App. 1958) (citing 3 A.L. Corbin, *Corbin on Contracts*, § 564). Rather, under Florida law, an express contract between the parties only precludes the finding of

- 3 -

an implied contract where the disputed claims are covered by a valid and enforceable contract. *Excess Risk Underwriters, Inc.,* 328 F. Supp. 2d at 1345-46; *S. Bell Tel. and Tel. Co. v. Acme Elec. Contractors, Inc.*, 418 So.2d 1187, 1189 (Fla. Dist. Ct. App. 1982) (citing 3 A.L. Corbin, *Corbin on Contracts* § 564 (1960 ed.)); *Moylan*, 102 So.2d at 856 (citing 3 A.L. Corbin, *Corbin on Contracts*, § 564). Indeed, even where contract and equitable claims involve the same topic, Florida courts have consistently held that the assertion of equitable claims is proper where the disputed transactions, dealings or work is potentially outside the scope of the parties' agreement. *Id.*

For example, in *Excess Risk Underwriters, Inc., supra*, the court held that "[t]he mere existence of an express contract cannot preclude suit in quasi-contract for disputes that are not governed by the subject matter of the contract." *Id.* at 1345-46. In that case, plaintiff, an insurance administrator, argued that defendant, an insurance carrier, among other things, breached an agreement to appoint plaintiff as the sole administrator of certain types of insurance policies. At its core, the dispute concerned whether certain blocks of insurance policies were excluded from the parties' agreement, as defendant contended, or whether the parties' agreement covered all insurance policies of the type in question, as plaintiff contended. With respect to those policies that defendant admitted were covered by a valid and enforceable contract, the court agreed that a quasi-contract claim could not stand. *Id.* at 1345. With respect to those policies that defendant disputed were covered by the agreement, however, the court held that plaintiff's quasi-contract claims were proper and denied defendant's motion for summary judgment on such claims. *Id.* at 1345-46. Stated differently, the court held that, to the extent the parties' agreement was limited in scope so as to include certain policies and exclude others, the assertion of a quasi-contract claim with respect to the excluded policies was appropriate. *Id.*

Similarly, to the extent that the parties' Agreement in this case includes certain relationships and transactions, but excludes others, as Source contends, the assertion of quasi-contract claims to cover the excluded relationships and transactions is proper.  *See id.*

In another case, *Moylan v. Estes, supra*, the court considered a contract between plaintiff, a real estate broker, and defendant, a seller, relating to the sale of a tract of land. *Moylan*, 102 So.2d at 855-56.  Although the sale contemplated by that contract was not consummated, the seller ultimately sold a smaller portion of the subject property to a purchaser who had been located solely through plaintiff's efforts.  *Id.* at 855-56.  In reversing the trial court's holding that the broker could not recover, the court explained:

> There can be no question of the right of a plaintiff, in a proper case, to declare on an express contract, and at the same time on one, covering the same transaction, implied in fact.  In such a case, the worst that can happen is a compelled election, at the trial or before, between two causes of action.
>
> * * *
>
> But it frequently happens, as on plaintiff's evidence it may have happened here, that, starting with an express contract, the parties soon and plainly, although tacitly, deliberately leave their original compact behind, and so conduct themselves, one performing services or rendering benefit to the other which the latter accepts, that a promise to pay may or even must be implied from their conduct.  That is, their actions rather than their words produce implications from which a new contract appears.

*Id.* (quoting *Benedict v. Pfunder*, 183 Minn. 396, 399-400, 237 N.W. 23, 3-4 (1931) (Stone, J.)). In this case, Ironbound's introduction of Source and Endeavor was immediately followed by Source and Endeavor's entry into a business relationship, which resulted in, among other things, the consummation of a significant merger (*i.e.*, the Alliance transaction).  Like in *Moylan*, Source and Endeavor were brought together solely through Ironbound's efforts, Source accepted the benefit of that introduction, and a promise to pay may be implied from the parties' conduct.

Other courts have also permitted implied contract claims where the contract did not cover the work performed by one of the parties. In *Infra-Pak (Dallas), Inc. v. Carson Stapler & Shippers Supply, Inc.*, 803 F.2d 862 (5th Cir. 1986), the United States Court of Appeals for the Fifth Circuit considered a case in which the parties contracted for the distribution of certain wrapping machines. *Id.* at 863. Under the contract, plaintiff, a distributor, purchased the machines from defendant, the manufacturer, for a discount and then sold them to its customers. *Id.* Plaintiff located a potential customer for one of the machines, but that customer later purchased a machine directly from defendant. *Id.* Thereafter, plaintiff demanded a commission on the sale, which defendant refused. *Id.* At trial, the jury awarded plaintiff damages on its quantum meruit claim, *id.* at 864, and defendant appealed claiming that plaintiff could not recover in equity because an express contract existed between the parties that governed the terms upon which plaintiff would be paid for the sale of a machine. *Id.*

Affirming the jury's verdict, the Fifth Circuit ruled that quantum meruit recovery was not precluded inasmuch as the recovery sought was not the subject of an enforceable contract. *Id.* Because plaintiff performed work for which the parties' agreement made no provision, plaintiff's quantum meruit claims were not barred, even though the written agreement related to the same topic, *i.e.*, the distribution and sale of defendant's machines. *Id.* at 864-65. *See also ABC Elec., Inc. v. Nebraska Beef, Ltd.*, 249 F.3d 762, 765 (8th Cir. 2001) ("a quantum meruit claim may supplement an express contract by seeking reasonable compensation for work not covered by the contract"); *BB & B Constr., Inc. v. Hogan*, 17 Fed. Appx. 850, 851 (10th Cir. 2001) (holding that, even where there is an express contract, "[r]elief under a quantum meruit theory may be permitted as long as it involves obligations outside the scope of the express contract") (a copy of this case is attached hereto as Exhibit C); *Lansing Bd. of Water and Light v. Deerfield Ins. Co.*,

183 F. Supp. 2d 979, 991 (W.D. Mich. 2002) (permitting "an action in *quantum meruit*, even in the face of an express contract, where the performance of additional work or benefit not contemplated in the express contract is present").

Similarly, in *Brookhaven Landscape & Grading Co., Inc. v. J.F. Barton Contracting Co.*, 676 F.2d 516 (11th Cir. 1982), the United States Court of Appeals for the Eleventh Circuit considered a case in which a subcontractor claimed that the contractor had breached an oral agreement to pay for excavating work in excess of work the subcontractor had already agreed to perform under the terms of a written contract. *Id.* at 518. The subcontractor brought claims based both on the alleged oral contract and, alternatively, on a theory of quantum meruit. *Id.* at 519-20. The jury was given instructions on both claims and returned a verdict in favor of the subcontractor. *Id.* at 520. On appeal, the Eleventh Circuit rejected the contractor's argument that it was entitled to judgment notwithstanding the verdict on the quantum meruit claim. *Id.* at 522. In so doing, the court held that recovery in quantum meruit is appropriate "when the required performance falls outside the terms of the original obligation . . . ." *Id. See also Ventura v. Titan Sports, Inc.*, 65 F.3d 725, 730 (8th Cir. 1995) ("if an existing contract does not address the benefit for which recovery is sought, quantum meruit is available regarding those items about which the contract is silent"). Thus, if Source were to prevail in its contention that the Endeavor relationship and the Alliance merger are outside the scope of the Agreement, recovery in quantum meruit would be appropriate.

Finally, as discussed above, there is still a question as to whether Source will contest the validity of the Agreement in light of the reformation claim in Ironbound's Amended Complaint. While Source has not taken a formal position, it has refused to stipulate that Ledecky's error relating to Ironbound's legal status did not affect the validity of the Agreement. Although

Ironbound does not believe that this error affects the validity of the Agreement, should Source successfully contest the validity of the parties' Agreement on this basis, no contract would exist, and Ironbound's only recourse would be on its equitable claims.  *See, e.g., Quayside Assocs., Ltd. v. Triefler*, 506 So.2d 6, 7 (Fla. Dist. Ct. App. 1987) ("[a]lthough the jury found no express contract it could have, and obviously did, consider the failed express contract as evidence of the value of the services performed").

As discussed above, Ironbound has asserted equitable claims as an alternative basis for recovery because Source disputes that the Agreement is applicable to the facts alleged in this case.  As long as Source continues to argue that the Agreement does not govern the relationship and transactions at issue in this case, Ironbound is entitled to rely on its equitable claims, and a jury is entitled to impose liability on those claims, as an alternative basis for recovery.

## Conclusion

For the foregoing reasons, Ironbound respectfully requests that Source's Motion to Dismiss be denied.

Respectfully submitted,

   /s/   Matthew D. Schwartz
Matthew D. Schwartz (D.C. Bar No. 436619)
Allison Sinoski (D.C. Bar No. 482593)
 THOMPSON COBURN LLP
 1909 K. Street, N.W. Ste. 600
 Washington, D.C.  20006-1167
 (202) 585-6900 (telephone)
 (202) 585-6969 (facsimile)

*Attorneys for Plaintiff Ironbound Partners, LLC*

- 9 -

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of March, 2006, a true and correct copy of the foregoing Plaintiff's Opposition to Defendant's Motion to Dismiss, along with attachments, was mailed electronically through CM/ECF to:

>Kevin E. Stern
>C. Allen Foster
>Maria Hallas
>GREENBERG TAURIG, LLP
>800 Connecticut Ave., N.W.
>Suite 500
>Washington, D.C. 20006

        /s/    Allison Sinoski