1

```
        IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF COLUMBIA

IRONBOUND PARTNERS,              . Docket No. CA 05-1039
(JGP)                            .
                                 .
     Plaintiff,                  .
                                 . Washington, D.C.
     v.                          . October 18, 2005
                                 . 10:30 a.m.
SOURCE INTERLINK COMPANIES,      .
                                 .
     Defendant.                  .
. . . . . . . . . . . . . . . . .

        TRANSCRIPT OF INITIAL SCHEDULING CONFERENCE
         BEFORE THE HONORABLE JOHN GARRETT PENN
                UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | Thompson, Coburn, LLP<br>By: Matthew Schwartz, Esquire<br>1909 K Street, Northwest<br>Suite 600<br>Washington, D.C. 20006 |
| For the Defendant: | Greenberg, Traurig, LLP<br>By: Kevin Stern, Esquire<br>800 Connecticut Avenue, Northwest<br>Suite 500<br>Washington, D.C. 20006 |
| Court Reporter: | LINDA L. RUSSO, RPR<br>Official Court Reporter<br>Room 6808, U.S. Courthouse<br>Washington, D.C. 20001<br>(202) 408-5222 |

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription

```
 1                    P R O C E E D I N G S
 2          THE CLERK:  Civil action 05-1039, Ironbound Partners
 3  versus Source Interlink Companies.  Matthew Schwartz for the
 4  plaintiff.  Kevin Stern and Maria Hallas for the defendant.
 5          THE COURT:  Good morning, counsel.  Are there any
 6  preliminary matters before we go forward with this hearing?
 7          MR. SCHWARTZ:  I don't believe so, Your Honor.
 8          MR. STERN:  No, Your Honor.
 9          THE COURT:  All right.  Well, I have received the
10  joint statement of the parties.  I think I understand what the
11  case is about.  I've read your pleadings, and I take it the
12  parties are still in agreement as to the time schedule that
13  they've set out here, is that right?
14          MR. SCHWARTZ:  That's largely correct, Your Honor.
15  We're in agreement about everything except the timing for the
16  pretrial.
17          THE COURT:  Why don't you come up to the microphone.
18          MR. SCHWARTZ:  I'm sorry, Your Honor.  Matthew
19  Schwartz on behalf of plaintiff.
20          The parties I believe are in agreement on everything
21  except the timing for the pretrial conference, and that
22  disagreement really came about as a result of a decision to
23  bifurcate, or plaintiff's agreement at defendant's request to
24  bifurcate the liability and damages phases.  So the plaintiff
25  is of the view if it's going to be bifurcated, we'd rather have
```

```
 1   the pretrial and the trial sooner than later just because
 2   there's going to be a second half of this marathon.  So that's
 3   I think the only disagreement.
 4            MR. STERN:  Yeah, counsel for plaintiff -- this is
 5   Kevin Stern for the defendant -- is largely correct.  The only
 6   reason particularly why we are in slight disagreement over the
 7   scheduling is because of my personal schedule.  I presently
 8   have a trial scheduled for June next year, and given that, plus
 9   another trial scheduled for May, it would be easier for me
10   personally to have the pretrial schedule I think for July, is
11   when the defendant would ask for.  And then in terms of the
12   trial date simply because of the fact it being summer and all
13   the other things, we think it would be more convenient for
14   everybody to have a trial in September as opposed to I believe
15   July or August is what the plaintiff would ask for.
16            Other than that, I think, Your Honor, we're in pretty
17   much agreement on scheduling matters.
18            THE COURT:   Do you have any strong objection?
19            MR. SCHWARTZ:  No, Your Honor.  Plaintiff's
20   preference is to have the trial on liability sooner than later.
21            THE COURT:  Well, are you in agreement on splitting
22   it?
23            MR. STERN:  Yes, Your Honor.
24            THE COURT:  Bifurcating it?
25            MR. STERN:  Yes.  The parties have agreed to
```

1  bifurcate on liability and damages.
2          THE COURT: All right.
3          MR. SCHWARTZ: That was the defendant's request, and
4  the plaintiff accommodated that. There's no strenuous
5  objection. The plaintiff's preference is to get to the
6  liability phase sooner than later, but the plaintiff's in
7  agreement that August would probably impose a burden on not
8  only the Court, but on third party witnesses. So if it can't
9  be done in July, the plaintiff would agree that a September
10 trial makes sense.
11         THE COURT: Are you looking at two trials?
12         MR. SCHWARTZ: That's the agreement, Your Honor.
13         THE COURT: All right. The same jury?
14         MR. SCHWARTZ: Plaintiff would defer to the Court.
15 It would probably be more efficient to use the same jury and
16 potentially even do them back-to-back. It's a relatively
17 straightforward matter on liability.
18         THE COURT: Why don't you briefly tell me about it.
19         MR. SCHWARTZ: The case is as the Court correctly
20 summarized in its opinion on jurisdiction, on the motion to
21 dismiss on jurisdictional grounds, defendant's motion. The
22 case involves the breach, or the alleged breach, of a referral
23 agreement under which the plaintiff agreed to introduce the
24 defendant to a client, an individual that could help defendant
25 with its business, and in return defendant agreed to pay the

1  plaintiff a portion of the net income it earned as a result of
2  that introduction and its relationship with the client.
3         The plaintiff alleges that it fulfilled, it performed
4  its part of the bargain by introducing the defendant to the
5  plaintiff's client, and that the plaintiff stood ready to
6  perform on all other aspects, which was to help facilitate the
7  relationship and advise the defendant as necessary.  The
8  defendant accepted the benefit of that performance, entered
9  into a relationship with the plaintiff's client, and as a
10 result of that relationship has entered into a number of
11 business transactions which have and are expected to continue
12 to result in significant net income to the defendant.  Based on
13 that, the plaintiff has requested that it be paid its
14 compensation under the agreement, and the defendant has refused
15 to pay it, denying that it's liable to the plaintiff under the
16 agreement or the introduction that was provided.
17         THE COURT:  Mr. Stern, what is your version of the
18 case?
19         MR. STERN:  Your Honor, the defendant essentially
20 disputes that pursuant to the specific terms of the agreement
21 that there was -- while we do not dispute there was an
22 introduction to our client by the plaintiff's client, we
23 dispute whether or not a "business relationship" developed as a
24 result of that introduction, and further, whether or not there
25 was an actual, as a result of that introduction, a business

1  relationship in which they are entitled to under the terms of
2  the contract any income for it.
3          Those are our principle defenses.  There's also some
4  issues about some of the terms of the agreement that we think
5  are somewhat ambiguous and need to be explored as to whether or
6  not those terms have actually been fulfilled by the plaintiff
7  and also based upon the facts of the case.  So we do not
8  believe that any business relationship as envisioned under the
9  agreement was established between the defendant and the
10 plaintiff's client, and also whether or not any relationship
11 pursuant to the terms of the agreement developed that would
12 entitle them to net income.
13         If I could illuminate, Your Honor, a little bit about
14 the bifurcation issue.  The reason why the parties, why we
15 proposed and why the plaintiff has agreed to it, is that
16 pursuant to the terms of the agreement, if there's going to be
17 any damages, it's defined as compensation equal to five percent
18 of the net income recorded by a source, the defendant, as a
19 result of its relationship with the client during the five year
20 period following the date on which the business relationship is
21 established between source and the client.  In terms of the
22 relationship that they're establishing they're entitled to net
23 income, the numbers, the financial numbers in which those would
24 be based upon, would be based upon audited financial
25 statements.  I think both parties are in agreement on that.

1          And as I told plaintiff's counsel, those audited
2    financial statements on which they would be basing their
3    damages claim on would not be finalized at the earliest until
4    April of next year.  They start the auditing process in
5    January, and it would not be finalized until April.  So if
6    we're going to be getting into damages issues, we think it
7    makes sense for both sides to be in agreement on what are the
8    numbers that we're going to be arguing over.  And it doesn't
9    make sense to have discovery prior to that on damages issues
10   if, in fact, the financial statements are not ready until Apri.
11         And so therefore we thought it would make sense, plus
12   to defer that until there's been, first of all, a determination
13   whether or not there's liability.  I think both sides in this
14   case believe that that issue may be able to be resolved on
15   summary judgment.  And so we think it makes a lot of sense to
16   bifurcate those parts --
17         THE COURT:  Do you feel that issue can be determined
18   on summary judgment?
19         MR. STERN:  We believe that it can, with a little
20   discovery.
21         THE COURT:  Do you agree?
22         MR. SCHWARTZ:  Your Honor, the answer to the Court's
23   question is perhaps.  I hate to give the lawyerly answer.  It
24   would seem to be a straightforward matter of law.  However,
25   attorneys have a way of injecting issues of fact into things.

```
 1            The plaintiff is --
 2            THE COURT:  Don't make a declaration against
 3   interest.
 4            MR. SCHWARTZ:  The plaintiff is of the position that
 5   this case is certainly susceptible to a decision on summary
 6   judgment, and if after completing the first phase of discovery
 7   it appears that the Court can make a decision as a matter of
 8   law, the plaintiff certainly anticipates filing a motion.
 9            The other thing in response to the Court's question,
10   at least why the plaintiff agreed to bifurcation, Your Honor,
11   was not so much a concern about when the audited financials
12   were coming out, but the damages phase of this case is going to
13   involve substantially more burden on witnesses and probably the
14   Court.  I suspect this is where the discovery disputes are
15   going to come in.  This is where we expect to see expert
16   witnesses come in, and the plaintiff concurred that to the
17   extent there's any issue on liability and given the fact that
18   the financials are running somewhat down the road, it probably
19   made sense to go forward on the liability phase.
20            THE COURT:  All right.  Have counsel given any
21   consideration to settlement, or referral to ADR?
22            MR. SCHWARTZ:  Yes, Your Honor.  I believe that the
23   parties have some disagreement that the plaintiff has offered
24   to, both prior to filing the lawsuit and since filing the
25   lawsuit, to undergo a mediation or engage in formal -- in
```

1    informal settlement discussions.  I don't want to speak for the
2    defendant, so I'll let counsel address that issue.
3          MR. STERN:  Your Honor, my client would be willing to
4    engage in mediation or ADR type of settlement discussion, but
5    we would want to defer that until there's been some discovery
6    in the case, but we certainly envision having that type of
7    conference or attempt to settle prior to -- somewhat down the
8    road.
9          THE COURT:  All right.  And I guess you're familiar
10   with our ADR program here at the court, both of you.
11         MR. SCHWARTZ:  We are, Your Honor.
12         MR. STERN:  Yes, sir.
13         THE COURT:  All right.  All right, counsel.  Well,
14   you've given us dates, and we will accept those dates.  You
15   indicated that you stand by the dates that you've set forth, so
16   I will issue a scheduling order.
17         With respect to the pretrial conference, one says
18   June and one says July.  Does it really make that much
19   difference?
20         MR. SCHWARTZ:  No, Your Honor.  Plaintiff will agree
21   to a July pretrial conference.  Plaintiff would request that
22   the Court hold the conference at its earliest convenience, but
23   no, this doesn't need to be a litigated issue.
24         THE COURT:  What about July 11th for the pretrial
25   conference?

```
 1              MR. STERN:  That's fine, Your Honor.
 2              THE COURT:  Plaintiff?
 3              MR. SCHWARTZ:  That's fine, Your Honor.
 4              THE COURT:  And trial September 12th.
 5              MR. SCHWARTZ:  That's fine for plaintiff, Your Honor.
 6              MR. STERN:  Acceptable to the defendant.
 7              THE COURT:  How long do you think the trial will
 8    take?
 9              MR. SCHWARTZ:  From plaintiff's perspective, to be
10    conservative plaintiff allot four days on liability, but I
11    suspect we could get it done in two.
12              THE COURT:  But you do think that it's possible that
13    the issue of liability can be determined on motion?
14              MR. SCHWARTZ:  Plaintiff believes it's possible.
15              THE COURT:  How about the defendant?
16              MR. STERN:  We do believe that it could be determined
17    by motion, by summary judgment.
18              THE COURT:  What's that?
19              MR. STERN:  We do believe that there's a high
20    likelihood that liability, certainly from our perspective, can
21    be determined by summary judgment.  And in terms of if we do
22    have a trial, I think plaintiff's counsel's estimate is
23    probably accurate.
24              THE COURT:  All right.  All right then, counsel, we
25    will issue an order.  I would like to set a date in May for a
```

```
 1  status hearing. May 24th?
 2          MR. SCHWARTZ: That's acceptable for plaintiff, Your
 3  Honor.
 4          MR. STERN: That's acceptable to the defendant.
 5          THE COURT: All right. All hearings are scheduled
 6  for 10:00. Do counsel have anything else?
 7          MR. SCHWARTZ: Nothing further. Thank you, Your
 8  Honor.
 9          THE COURT: Mr. Stern?
10          MR. STERN: Nothing further, Your Honor.
11          THE COURT: All right, thank you, counsel. We will
12  issue an order.
13          (Proceedings concluded.)
14
15                          CERTIFICATE
16          I, LINDA L. RUSSO, Official Court Reporter, certify
17  that the foregoing pages are a correct transcript from the
18  record of proceedings in the above-entitled matter.
19
20
21                                  Linda L. Russo, RPR
22                                  Virginia CCR No: 0313102
23
24
25
```