**MINUTES OF A SPECIAL TELEPHONIC MEETING OF
THE BOARD OF DIRECTORS OF
SOURCE INTERLINK COMPANIES, INC.**

November 18, 2004
8:00 am Eastern time

The following are minutes of a special telephonic meeting of the Board of Directors of Source Interlink Companies, Inc., a Missouri corporation (the "Corporation"), held at the above time and place pursuant to notice duly given to all members of the Board of Directors of the Company. The following directors were:

| | |
|---|---|
| PRESENT: | A. Clinton Allen |
| | S. Leslie Flegel |
| | Harry L. "Terry" Franc, III |
| | James R. Gillis |
| | Aron S. Katzman |
| | Allan R. Lyons |
| | Kenneth F. Teasdale |
| | |
| ABSENT: | Randall S. Minix |

Also present by invitation of the Board of Directors were (i) Doug Bates, General Counsel of the Corporation, (ii) Marc Fierman, Chief Financial Officer of the Corporation, (iii) Dean Heine, the Corporation's investor relations consultant, (iv) Steve Bernard and Steve Liu of Wilson Sonsini Goodrich & Rosati, M&A counsel to the Corporation, (v) Marc Taxay of Cohen & Grigsby, outside counsel to the Corporation and (vi) John Chiles, John Buchanan and Paul Clausing of Jefferies & Company, financial advisor to the Corporation.

Mr. Flegal, Chairman of the Board of Directors and Chief Executive Officer, confirmed that everyone participating by teleconference could hear the proceedings and be heard, called the meeting to order, reviewed the meeting's agenda and requested that Mr. Bates keep the minutes of the meeting.

**Update on Negotiations**

Mr. Flegal provided the Board with an update on negotiations since the adjournment of the last Board meeting. Messrs. Bates and Bernard also addressed the Board and provided insight into the matters that had been resolved as well as highlighting certain remaining matters. The directors provided input and direction.

The directors were also invited to raise any further issues and questions regarding the matters presented to the Board previously. Discussion ensued.

**Fairness Opinion**

CONFIDENTIAL

D-0380

Exhibit 2

The Board then formally requested that Jefferies & Company deliver its fairness opinion. Mr. Chiles rendered the oral opinion of Jefferies & Company (to be subsequently confirmed by the delivery of a written opinion), that as of November 18, 2004, the exchange ratio pursuant to the merger agreement was fair to Source Interlink from a financial point of view.

**Resolutions**

Mr. Bernard then discussed each of the proposed resolutions which had been previously circulated, and upon motions duly made and seconded, the directors approved each of the resolutions attached hereto as **Exhibit A** subject to the resolution of the remaining open issues to the satisfaction of the Company's officers acting in their discretion and in the Company's best interests.

**Adjournment**

There being no further business, the meeting was thereupon duly adjourned.

Douglas J. Bates
Secretary of the Meeting

CONFIDENTIAL

D-0381

# EXHIBIT A

## RESOLUTIONS OF
## THE BOARD OF DIRECTORS SOURCE INTERLINK COMPANIES, INC.

**WHEREAS**, there has been presented to and discussed by this Board of Directors (this "**Board**") of Source Interlink Companies, Inc., a Missouri corporation (the "**Corporation**"), a proposed strategic business combination with Alliance Entertainment Corp., a Delaware corporation ("**Alliance**"), pursuant to which Alliance will be merged with and into Alligator Acquisition, LLC, a Delaware limited liability company ("**Merger Sub**") and a wholly owned subsidiary of the Corporation, and the separate corporate existence of Alliance will thereupon cease and Merger Sub will continue as the surviving company and a wholly owned subsidiary of the Corporation (the "**Merger**") upon the terms and conditions set forth in the Agreement and Plan of Merger, including certain exhibits, schedules and ancillary agreements, certificates and documents attached thereto or contemplated thereby (the "**Merger Agreement**"),

**WHEREAS**, this Board has considered a number of factors relating to the Merger, including, but not limited to, the following: (1) management's belief that the merger can further our objective of creating the premier provider of information, supply chain management and logistics services to retailers and producers of home entertainment content merchandise and to produce greater shareholder value than would be expected absent the Merger; (2) the belief that the combined company can capitalize on the Corporation's extensive market expertise at the front-end checkout and its strong retail relationships to expand its direct-to-retail distribution and fulfillment services beyond the magazine periodicals business to include Alliance's home entertainment content products; (3) the belief that Alliance's in-store merchandising capabilities and comprehensive inventory and category management services should prove invaluable as the companies combine their diverse skill sets; (4) the importance of market position, scale and financial resources of Alliance; (5) the benefits of becoming a larger organization with over 2,400 combined employees, which would provide access to greater financial, development, distribution channel and other resources; (6) the cost savings synergies that may be achieved from procurement, marketing, information technology and administrative and other operating efficiencies; (7) historical information concerning the Corporation's and Alliance's respective businesses, prospects, financial performance and condition, operations, management and competitive position, including the results of operations for each company; (8) current financial market conditions and historical market price, volatility and trading information with respect to the Corporation's common stock, par value $0.01 (the "**Common Stock**"); (9) the consideration to be paid to Alliance's stockholders pursuant to the Merger; (10) a comparison of comparable merger transactions; (11) the belief that the terms of the Merger Agreement, including the parties' representations, warranties and covenants, and the conditions to their respective obligations, are reasonable; (12) the potential for third parties to enter into strategic relationships with or to acquire the Corporation or Alliance; (13) detailed financial analysis and pro forma and other information with respect to the companies presented to the Board of Directors; (14) the oral opinion of Jefferies & Company, Inc. (to be subsequently confirmed in writing) that the exchange ratio is fair, from a financial point of view, to the Corporation, and the procedures and methods used by Jefferies & Company, Inc. to reach that opinion; (15) the impact of the Merger on

CONFIDENTIAL

the Corporation's customers, strategic partners and employees; and (16) reports from management and legal and financial advisors as to the results of the due diligence investigation of Alliance.

**WHEREAS**, this Board has also considered the terms of the proposed Merger Agreement regarding the Corporation's and Alliance's respective rights to consider and negotiate other acquisition proposals in certain circumstances, as well as the possible effects of the provisions regarding the termination fees.

**WHEREAS**, this Board has also identified and considered a variety of potentially negative factors in its deliberations concerning the Merger, including, but not limited to: (1) the risk that the potential benefits and cost synergies sought in the Merger might not be fully realized; (2) the risk that, because the exchange ratio provides for no adjustment for changes in the market price of the Common Stock, the per share value of the consideration to be received by Alliance stockholders on the date of closing might be more than the price immediately before the announcement of the Merger due to fluctuations in the market value of the Common Stock; (3) the risk that the combined company's financial results will not meet expectations given the current economic climate and the combined companies' customer base; (4) the limitations imposed on the conduct of the Corporation's business prior to the consummation of the Merger; (5) the risks relating to Alliance's business and how they would affect the operations of the combined company; (6) the possibility that the Merger might not be consummated and the effect of public announcement of the Merger on (a) the Corporation's ability to attract and retain key management, marketing, technical, administrative and other personnel and (b) the progress and status of certain projects and customer accounts; (7) the substantial charges to be incurred in connection with the Merger, including costs of integrating the businesses and transaction expenses arising from the Merger; (8) the risk that, despite the efforts of the combined company, key management, marketing, technical, administrative and other personnel might not remain employed by the combined company; (9) the challenges of integrating the businesses of the Corporation and Alliance; (10) the revised composition of the Board following the Merger; (11) the fact that the combined company will have a significant shareholder who will be able to exercise significant influence over all matters requiring shareholder approval; and (12) various other risks and uncertainties.

**WHEREAS**, this Board has received the oral opinion of Jefferies & Company, Inc., which shall be followed with a written opinion, dated as of November 18, 2004, to the effect that, as of such date, the exchange ratio is fair, from a financial point of view, to the Corporation.

**WHEREAS**, this Board has determined that the Merger is consistent with and in furtherance of the long-term business interests of the Corporation and fair to, and in the best interests of, the Corporation and deems the Merger Agreement to be advisable.

**WHEREAS**, each of (i) Alliance, as a result of the exercise of certain voting agreements in favor of Alliance, and (ii) AEC Associates LLC (and its affiliates) as a result of the Merger, if consummated, may become the beneficial owner (as defined in Section 351.459 of the General and Business Corporation Law of Missouri (the "**GBCL**")) of 20% or more of the outstanding Common Stock of the Corporation.

**CONFIDENTIAL**

*NOW, THEREFORE*, this Board adopted the following resolutions:

*Approval of Merger Agreement, Merger and Ancillary Agreements*

> **RESOLVED:** That this Board has determined that the Merger is consistent with and in furtherance of the long-term business interests of the Corporation and fair to, and in the best interests of, the Corporation and its shareholders; that this Board hereby deems the Merger Agreement advisable; and that the Merger Agreement and the other agreements contemplated thereby to which the Corporation is a party including without limitation the Source Interlink Voting Agreements, the Company Voting Agreement, the Stockholder's Agreement, the Consulting Agreement and the Affiliate Agreement (collectively, the "*Ancillary Agreements*") and the other transactions contemplated by the Merger Agreement and the Ancillary Agreements are hereby approved, subject to such changes and modifications as the appropriate officers of the Corporation may consider necessary or appropriate which changes are hereby authorized and approved.

> **RESOLVED FURTHER:** That the appropriate officers of the Corporation be, and each of them hereby is, authorized and directed to execute and deliver on behalf of the Corporation the Merger Agreement, the Ancillary Agreements, any amendments to the Merger Agreement or the Ancillary Agreements as the appropriate officers may deem necessary or appropriate and which amendments are hereby authorized and approved and such other agreements, instruments and documents as may be necessary or appropriate to consummate the Merger and the other transactions contemplated by the Merger Agreement and the Ancillary Agreements with such changes and modifications as the appropriate officers may deem necessary or appropriate, which changes are hereby authorized and approved.

> **RESOLVED FURTHER:** That all prior actions by the officers of the Corporation with respect to the preparation and negotiation of the Merger Agreement, the Ancillary Agreements and related agreements and otherwise in effecting the purposes and intent of the Merger Agreement, the Ancillary Agreements and the Merger are hereby ratified, confirmed and approved.

> **RESOLVED FURTHER:** That the Merger is intended to qualify as a reorganization within the meaning of Section 368 of the Internal Revenue Code of 1986, as amended (the "*Code*"), and parties to the Merger Agreement intend to adopt a plan of reorganization within the meaning of Section 354(a) of the Code.

> **RESOLVED FURTHER:** That these resolutions shall constitute approval pursuant to Sections 2 and 3(1) of Section 351.459 of the GBCL by the Board of Directors of (i) the Merger, (ii) the execution and delivery to Alliance of the Source Interlink Voting Agreements. and (iii) the acquisition by (A) Alliance, as a result of the exercise of certain voting agreements in favor of Alliance and/or (B) AEC Associates LLC (and its affiliates) as a result of the Merger, if consummated, of beneficial ownership of 20% or more of the outstanding Common Stock of the Corporation.

CONFIDENTIAL

*Amendment to the Articles of Incorporation; Reservation and Issuance of Shares*

**RESOLVED**: That, in connection with the Merger, the Corporation's Articles of Incorporation shall be amended to, among other things, increase the number of authorized shares of its Common Stock to 100,000,000 with such other changes and modifications therein and additions thereto as the appropriate officers of the Corporation shall deem necessary or advisable in consultation with legal counsel, to effect the Merger and the transactions contemplated by the Merger Agreement.

**RESOLVED**: That, in connection with the Merger and pursuant to the terms of the Merger Agreement and the transactions contemplated by the Merger Agreement, the Corporation hereby reserves for issuance out of its authorized and unissued shares of Common Stock as shall be issuable upon consummation of the transactions contemplated by the Merger, substantially on the terms and conditions and in the manner and at the time contemplated by the Merger Agreement, including without limitation such shares of Common Stock as may be issuable from time to time upon the completion of the Merger and upon the exercise of the Assumed Awards (as defined below) (the "*Shares*");

**RESOLVED FURTHER**: That the Corporation be, and hereby is, authorized to issue the Shares;

**RESOLVED FURTHER**: That upon such issuance in accordance with the terms of the Merger Agreement and the Corporation's Articles of Incorporation, all such Shares shall be fully paid and non-assessable.

*Amendment of the Bylaws*

**RESOLVED**: That, effective upon the completion of the Merger in accordance with the Merger Agreement, the Corporation's Bylaws shall be amended to, among other things, (i) adjust the authorized number of directors to be between three (3) and eleven (11) with the exact number to be specified by resolution approved by (A) at least 75% of the total number of members of the Board or (B) the unanimous written consent of the Board ("*Supermajority Board Approval*"); (ii) provide that the consummation of a Change of Control (as defined in Article XI of the Merger Agreement) or any further amendment to the Corporation's Bylaws shall require Supermajority Board Approval; (iii) until the date on which the Principal Stockholder, together with its members and affiliates, owns less than 10% in the aggregate of the outstanding Source Common Stock (the "*Minimum Holding Date*"), provide that if any Company Designated Director or Stockholder Designated Director (as such terms are defined in the Merger Agreement) is unable to fulfill his or her term in office, for whatever reason, either as a result of death, resignation, retirement or removal, then the remaining Company Designated Directors and the Stockholder Designated Directors shall have the exclusive right to designate an individual to fill such vacancy; and (iv) until the Minimum Holding Date, provide that if any Source Designated Director is unable to fulfill his or her term in office, for whatever reason, either as a result of death, resignation, retirement or removal, then the remaining Source Designated

Directors shall have the exclusive right to designate an individual to fill such vacancy, with such other changes and modifications therein and additions thereto as the appropriate officers of the Corporation shall deem necessary or advisable, in consultation with legal counsel, to the effect the Merger and the transactions contemplated by the Merger Agreement are hereby approved, adopted and confirmed.

*Formation of Merger Sub*

**RESOLVED:** That all actions taken by the officers of the Corporation in connection with the formation Merger Sub pursuant to the laws of the State of Delaware are hereby ratified and approved in all respects; and that all actions taken by the officers of the Corporation to cause the Corporation to purchase 100% of the outstanding membership interests of Merger Sub at the purchase price determined by such officers are hereby ratified and approved in all respects.

**RESOLVED FURTHER**: That the appropriate officers of the Corporation be, and each hereby is, authorized and directed to cause the Corporation, as the sole member of Merger Sub, to vote its membership interest of Merger Sub in favor of the Merger, and to take any other actions in the name of and on behalf of Merger Sub that are necessary or appropriate to carry out the Merger and the other transactions contemplated by the Merger Agreement.

Exchange Agent

**RESOLVED**: That such entity as the officers of the Corporation deem necessary or advisable to select and contract with, shall act as exchange agent for the Corporation's stock certificates to be exchanged for Alliance Common Stock certificates upon completion of the Merger.

**RESOLVED FURTHER**: That this Board hereby adopts any resolutions which may be required by the Exchange Agent in connection with such appointment and such resolutions are hereby incorporated in these minutes by reference.

*Applications and Filings for Regulatory Approval*

**RESOLVED**: That, in order for the Corporation to comply with all applicable requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended (the "*HSR Act*"), and the rules and regulations thereunder, the officers of the Corporation be, and each of them hereby is, authorized and directed, in the name and on behalf of the Corporation, with the assistance of counsel, to prepare, execute, deliver and file, or cause to be prepared, executed, delivered and filed, all reports, statements, documents and information required to be filed by the Corporation pursuant to the HSR Act, in connection with the transactions contemplated by the Merger Agreement; and to respond to all requests for additional information and to meet or confer with, or to cause counsel or other agents of the Corporation to meet or confer with, officials of the Antitrust Division of the Department of Justice or the Federal Trade Commission, relating to any transactions contemplated by the Merger Agreement and any other agreements referred therein or by these resolutions; and to defend any lawsuits or other legal proceedings, whether judicial or

administrative, challenging the Merger Agreement or the transactions contemplated by the Merger Agreement; and to seek to have removed any stay or temporary restraining order entered by any court or other governmental entity;

**RESOLVED FURTHER**: That the officers of and counsel for the Corporation be, and each of them hereby is, authorized and directed, in the name and on behalf of the Corporation, to cause to be prepared and to execute, verify and file such other forms, schedules, statements, reports, registrations, documents, powers or amendments thereto that, in the judgment of the officers or counsel taking such action, are necessary, appropriate or advisable in order to comply with any requirements of, or to obtain any order, approval, consent, permit, certificate, or authorization of or from any federal, state, local or foreign government, and other governmental, administrative and regulatory entities or any office, agency or entity thereof in connection with the transactions contemplated by the Merger Agreement, and to execute any and all required notifications, applications, registrations, reports, consents or other instruments or documents or any amendments thereto with any and all appropriate federal, state, local and foreign governments or any office, agency, commission, instrumentality or entity thereof and to respond to all requests for additional information and to meet or confer with, or to cause counsel or other agents of the Corporation to meet or confer with, officials thereof relating to any transactions contemplated by the Merger Agreement and any other agreements referred to therein or by these resolutions.

*Professional Fees*

**RESOLVED**: That the proper officers of the Corporation be, and hereby are, authorized to pay any and all expenses and fees (including any professional fees) incurred by the Corporation in connection with the negotiation, execution, delivery and performance of the Merger Agreement, the Ancillary Agreements and the transactions contemplated thereby, and such fees are hereby ratified and approved.

*Assumption of Alliance Options and Warrants*

**RESOLVED**: That consistent with the terms of the Merger Agreement, the Board hereby approves the assumption of all outstanding options, warrants and other rights to acquire Alliance capital stock, whether issued under any of the Alliance option plans or otherwise (the "*Assumed Awards*").

*Reincorporation of the Corporation into Delaware*

**RESOLVED**: That, in connection with the Merger, the Board has determined that the reincorporation of the Corporation from Missouri into Delaware (the "*Reincorporation*"") is desirable and in the best interests of the Corporation and its shareholders.

**RESOLVED FURTHER**: That the appropriate officers of the Corporation are hereby authorized, directed and empowered to incorporate a wholly owned subsidiary of the Corporation (the "*Reincorporation Subsidiary*") in the State of Delaware having such Certificate of Incorporation and Bylaws as such officers of the Corporation, in consultation with legal counsel, shall deem advisable; that the Reincorporation Subsidiary's Certificate of Incorporation shall provide for 1,000 shares of the Reincorporation Subsidiary's common stock, par value $0.01 per share; and that the Corporation is hereby authorized and directed to purchase 1,000 shares of the Reincorporation Subsidiary's common stock, par value $0.01 per share, at a purchase price of $0.01 per share, to be paid in cash.

**RESOLVED FURTHER**: That the appropriate officers of the Corporation are hereby authorized, directed and empowered to negotiate, execute and deliver an Agreement and Plan of Merger by and between the Corporation and the Reincorporation Subsidiary (the "*Reincorporation Agreement*"), whereby the Corporation will be merged with and into the Reincorporation Subsidiary, upon such terms and subject to such conditions as such officers, in consultation with legal counsel, shall deem necessary and advisable, the execution of the Reincorporation Agreement to be conclusive evidence of such determination.

**RESOLVED FURTHER**: That the appropriate officers of the Corporation are hereby authorized, directed and empowered to submit the Reincorporation and the Reincorporation Agreement to the vote of the shareholders of the Corporation in accordance with statutory requirements.

**RESOLVED FURTHER**: That the appropriate officers of the Corporation are hereby authorized and directed to execute Articles of Merger in the State of Missouri and a Certificate of Merger in the State of Delaware and to cause the same to be filed with the Secretaries of State of Missouri and Delaware, respectively.

**RESOLVED FURTHER**: That the appropriate officers of the Corporation are hereby authorized and empowered to make or cause to be made, and to negotiate, execute and deliver such other corporate papers, agreements, documents, instruments, certificates and undertakings, with the corporate seal of the Corporation affixed thereto and attested by the Secretary of the Corporation, or unattested, or without such seal, and to do or cause to be done all such acts or things to engage in such other transactions, engagements or activities, and to make all such payments and remittances, as such officers may deem necessary or appropriate in connection with the Reincorporation or the Reincorporation Agreement or otherwise in order to carry out the full intent and purpose of the Reincorporation and the Reincorporation Agreement.

**RESOLVED FURTHER**: That all actions previously taken by any officer, employee or agent of the Corporation in connection with or related to the matters set forth in or reasonably contemplated or implied by the Reincorporation or the Reincorporation Agreement, including but not limited to, the transactions contemplated thereby, be and each of them hereby is, adopted, ratified, confirmed and approved in all respects as the acts and deeds of the Corporation.

*Blue Sky Compliance*

**RESOLVED**: That, in connection with the Shares to be issued pursuant to the Merger Agreement and the transactions contemplated by the Merger Agreement, it is desirable and in the best interests of the Corporation that the Shares be qualified or registered for sale in various states; that the appropriate officers be, and each of them individually hereby is, authorized and directed to determine the states in which appropriate action shall be taken to qualify or register for sale all or such part of the Shares as such officers may deem advisable; that such officers are hereby authorized to perform, in the name and on behalf of the Corporation, any and all such acts as they may deem necessary or advisable in order to comply with the applicable laws of any such states, and in connection therewith to execute and file all requisite papers and documents, including, without limitation, applications, reports, surety bonds, irrevocable consents and appointments of attorneys for service of process;

**RESOLVED FURTHER**: That the Board hereby adopts the form of any resolution required by any state or other authority to be filed in connection with any offering and sale of the Shares if (i) in the opinion of the officers of the Corporation upon advice of counsel, the adoption of such resolution is advisable, and (ii) the Secretary or Assistant Secretary of the Corporation evidences such adoption by attaching to these resolutions a copy of such resolution which will thereupon be deemed to have been adopted by the Board *in haec verba* with the same force and effect as if presented in writing to, and specifically adopted by, the Board and set forth herein at length.

*Proxy Statement/Prospectus; Special Meeting of Shareholders*

**RESOLVED**: That this Board hereby authorizes and directs the appropriate officers of the Corporation to prepare and give notice to the shareholders of the Corporation of a special meeting of shareholders (the "*Special Meeting*") for the purpose of considering and voting upon:

1. a proposal to approve the issuance of the Common Stock as contemplated by the Merger Agreement;

2. a proposal to amend the Corporations articles of incorporation to increase the authorized shares of Common Stock to 100,000,000;

3. a proposal to adopt the 2004 Stock Option Plan;

4. a proposal to effect the Reincorporation;

5. any and all other matters that may properly come before the meeting.

**RESOLVED FURTHER**: That this Board recommends that the shareholders of the Corporation vote in favor of adoption of each of the matters above.

**RESOLVED FURTHER**: That the proper officers of the Corporation are hereby authorized to establish the date on which the Special Meeting will be held, the inspector or inspectors of election and the proxy holders, and to take such other actions and do such other things as may be necessary or appropriate to insure that the Special Meeting is conducted in a manner consistent with the provisions of applicable law and in accordance with the terms of the Merger Agreement.

*SEC Filings and Related Matters*

**RESOLVED**: That the appropriate officers of the Corporation be, and of them hereby is, authorized and directed to prepare and file, in the name and on behalf of the Corporation, with the assistance of counsel, to cause to be prepared, executed and filed with the Securities and Exchange Commission (the "*SEC*"), all reports, statements, documents and information required to be filed by the Corporation pursuant to the Securities Act of 1933, as amended (the "*Securities Act*"), including without limitation (i) a Registration Statement meeting the requirements of the Securities Act, together with any and all exhibits, other documents and amendments (including post-effective amendments) relating thereto, including, without limitation, materials in the form of a Proxy Statement/Prospectus of the Corporation (the "*Proxy Materials*"), with respect to the Special Meeting; (ii) written communications relating to the Merger Agreement and the transactions contemplated therein, to be filed pursuant to and meeting the requirements of Rule 425 under the Securities Act and (iii) all other reports, statements, documents and information required to be filed by the Corporation pursuant to the Securities Act for the purpose of registering the issuance of the Shares under the Securities Act pursuant to the Merger Agreement.

**RESOLVED FURTHER**: That in order for the Corporation to comply with any additional requirements of the Securities Act and the Securities Exchange Act of 1934, as amended (the "*Exchange Act*"), and any applicable state securities laws, the appropriate officers of the Corporation be, and each of them hereby is, authorized and directed, in the name and on behalf of the Corporation, with the assistance of counsel, to take all such actions which may be necessary, appropriate or advisable to cause to be prepared, executed and filed, all reports, statements, documents and information related to the transactions contemplated by the Merger Agreement and the Ancillary Agreements required to be filed by the Corporation pursuant to, and to take all other action necessary, appropriate or advisable in connection with the Securities Act and the Exchange Act, including, without limitation, one or more Current Reports on Form 8-K;

**RESOLVED FURTHER**: That the officers of the Corporation are hereby authorized and empowered to prepare and file a registration statement or statements on Form S-8 with the SEC to register shares to be issued pursuant to the exercise of the Assumed Awards and to take all actions necessary or appropriate to fulfill the purpose and intent of this resolution.

**RESOLVED FURTHER**: That the appropriate officers and counsel for the Corporation be, and each of them hereby is, authorized and directed, in the name and on behalf of the Corporation, to appear before the SEC in connection with any documents hereinabove authorized to be filed with the SEC, to file one of more amendments and/or supplements to any such documents as may be

necessary or desirable as determined by any such officer and to take such further action and execute all such other documents as may be necessary or desirable in order to obtain the approval of the SEC or the effectiveness under the Exchange Act and the Securities Act of any document filed with the SEC and otherwise to comply with the requirements of the Exchange Act and the Securities Act.

### *Appointment of Director to Term Expiring in 2007*

**WHEREAS**, the Board currently consists of nine (9) members, of which only eight (8) have been duly appointed or elected.

**RESOLVED**: That Ariel Emanuel be, and he hereby is, appointed as a Class III director of the Corporation, in accordance with the Corporation's Bylaws, to serve until the 2007 annual meeting of shareholders or until his successor is duly elected and qualified.

*Omnibus Resolutions*

**RESOLVED**: That the appropriate officers of the Corporation and legal counsel to the Corporation be, and each of them hereby is, authorized to prepare, execute, deliver and file all agreements, documents and instruments, and any amendments thereto, authorized and directed to pay any and all expenses and fees of the Corporation arising in connection with the Merger Agreement, the Merger and the other transactions contemplated by the Merger Agreement and the Ancillary Agreements, and authorized to take or cause to be taken such other action and to execute such further documents as may be necessary or desirable to effect the Merger and all other transactions contemplated by the Merger Agreement and the Ancillary Agreements, and to carry out the intent and accomplish the purpose thereof and of these resolutions.

**RESOLVED FURTHER**: That all acts and deeds heretofore done by any director or officer of the Corporation intended to carry out the intent and accomplish the purpose of the foregoing resolutions are hereby ratified and approved.

**RESOLVED FURTHER**: That the corporate seal of the Corporation may be affixed to any instrument or document executed pursuant to the foregoing resolutions by impressing or affixing the corporate seal or by imprinting or otherwise reproducing thereon a facsimile thereof.

**RESOLVED FURTHER**: That the taking of any action or the execution of any instrument by an officer of the Corporation pursuant to the foregoing resolutions shall be conclusive of his determination that the same was necessary to serve the best interests of the Corporation.

DRAFT Last printed 12/1/2005 1:02 PM
SUBJECT TO REVISION

ENGAGEMENT AGREEMENT

**THIS ENGAGEMENT AGREEMENT** (the "**Agreement**") is made and entered into as of _____, 2005 by and between Source Interlink Companies, a Delaware corporation (the "**Company**") having its principal executive offices at 27500 Riverview Center Blvd., Bonita Springs, Florida 34134 and The Endeavor Agency, LLC, a\_\_\_\_\_ limited liability company ("**Endeavor**") having its principal executive offices at _____.

**WHEREAS**, the Company is engaged in the business of (i) designing, manufacturing and marketing front-end fixtures, shelving and other display equipment and accessories for use by retail stores; (ii) designing, manufacturing and marketing custom wood fixtures, furnishings and millwork for use by commercial enterprises, (iii) distribution and fulfillment of magazines, books, pre-recorded music, video and video games, computer software and other merchandise, (iv) rendering third party billing and collection services with respect to claims for manufacturer rebates and incentive payments payable to retailers respecting the sale of magazines, books, pre-recorded music, video and video games, computer software and other merchandise, and (v) providing sales and marketing data and analyses to retailers and vendors of products distributed by the Company (the "**Products and Services**"); and

**WHEREAS**, the Company desires to engage the Endeavor to assist in the promotion, marketing and solicitation of sales of Products and Services on behalf of the Company throughout the world (the "**Territory**") on the terms and conditions set forth in this Agreement; and,

**WHEREAS**, Endeavor desires to accept such engagement on the terms and conditions set forth in this Agreement.

**NOW THEREFORE**, in consideration of the engagement of the Endeavor by the Company, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is hereby mutually agreed as follows:

1.  **Recitals.**    The recitals set forth above shall constitute and be construed to be an integral part of this Agreement.

2.  **Engagement and Acceptance.** The Company hereby engages the Endeavor to serve as a sales representative in the Territory upon the terms and conditions set forth in this Agreement. The Endeavor hereby accepts such engagement and agrees use its Best Efforts to assist the Company in marketing and merchandising the Products and Services by, among other things,

    2.1   Assisting the Company to purchase entertainment content products on terms and conditions, including those relating to promotional allowances, more favorable to the Company than prevail in the market generally;

    2.2   Enhancing the image and awareness of the Company among potential business prospects by, among other things, arranging for representatives of the Company to attend high profile entertainment events at least once per calendar quarter;

**CONFIDENTIAL**                                                                                   D-0393