IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN LEDECKY d/b/a IRONBOUND PARTNERS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SOURCE INTERLINK COMPANIES, INC.,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)　Case No. 1:05CV01039 (JGP)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT SOURCE INTERLINK COMPANIES, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S IMPLIED CONTRACT CLAIMS

Defendant Source Interlink Companies, Inc. ("Source"), by and through counsel, respectfully submits this Reply Memorandum in further support of its motion to dismiss Plaintiff's equitable claims pursuant to Fed. R. Civ. P. 12(b)(6).

### Introduction

As Source demonstrated in its opening brief, Plaintiff's alternative equitable claims cannot stand, regardless of whether Plaintiff is ultimately denied recovery under the terms and conditions of the Referral Agreement. It is a mainstay of jurisprudence that there can be no recovery under an implied contract theory of unjust enrichment or quantum meruit when an enforceable express contract between the parties is alleged. In an effort to forestall the inevitable, Plaintiff argues, incorrectly, that he may be required to elect his remedies at some further date, but not now. To support this notion, Plaintiff cites to a host of cases which stand for the undeniable proposition that, under limited exceptions, a party can plead contract and quasi-contract claims in the alternative. However, none of those exceptions and circumstances applies here. And, unfortunately for Plaintiff, several persuasive authorities have held that alternative

1

quasi-contract pleading is foreclosed where the parties have contracted for a fully integrated agreement which contains a merger clause, as the Referral Agreement does.

### Quantum Meruit Claims Are Barred Where a Written Contract Exists

Plaintiff has neither challenged the multitude of well-reasoned authorities Source cited in its opening memorandum nor attempted to distinguish them in any way. *See, e.g., Webster v. Royal Caribbean Cruises Ltd.*, 124 F. Supp. 1317, 1326 (S.D. Fla. 2000) (citing *Gary v. D. Augustini & Asociados, S.A.*, 865 F. Supp. 818, 827 (S.D. Fla. 1994)); *Nautica Int'l, Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1342 (S.D. Fla. 1998); *Bolweg v.Bowe*, 502 So.2d 71, 72 (Fla. Dist. Ct. App. 1987). Under Florida law, which both parties concede governs these claims, the law will not imply a contract where a valid express contract exists. *Thunderwave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997) ("upon a showing that an express contract exists, the quasi-contract claim fails"); *Poe v. Estate of Levy*, 411 So.2d 253, 256 (Fla. Dist. Ct. App. 1982) ("allegations of an express agreement preclude, in the same count, a claim for quantum meruit"); *Tobin & Tobin Ins. Agency, Inc. v. Zeskind*, 315 So.2d 518, 520 (Fla. Dist. Ct. App. 1975); *Soultec Corp. v. Young & Lawrence Assocs., Inc.*, 243 So.2d 605, 606 (Fla. Dist. Ct. App. 1971) ("[a]ny proof of an express agreement between the parties as to the compensation to be paid for the services rendered would defeat rather than sustain an action based upon quantum meruit").

Disingenuously, Plaintiff would have this Court believe that he had no choice but to cast his lot in favor of including implied contract claims in his Amended Complaint dated February 22, 2006 after learning at the Rule 26(f) conference in October 2005 that Source was challenging whether the Referral Agreement applies to the merger between Source and Alliance. *See* Opposition at 1 ("Ironbound's equitable claims have been asserted alternatively *in response to*

2

*Source's argument that the Agreement does not apply to its relationship with Endeavor or to the Alliance merger.*") (emphasis added). This is untrue. While Plaintiff may suggest he resorted to the unjust enrichment and quantum meruit causes of action after hearing this "defense" in October 2005, the same claims were present in Plaintiff's original Complaint which was filed months earlier – on May 23, 2005 – well before the alleged insight he gained at the Court-ordered conference in October 2005.

### None of the Exceptions Against Dismissing Alternatively Pled Quantum Meruit Claims Applies Here

To attempt to convince the Court to spare his quantum meruit claims (at least for now), Plaintiff cites to various Florida courts that have held that an express contract claim does not "per se" preclude equitable claims. True enough. However, unlike this case, the contracts at issue in those cases fell within a recognized exception against dismissing such claims at the pleading stage.

This is not a dispute involving a contract with a limited subject matter as was the case in *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 328 F. Supp. 2d 1319 (S.D. Fla. 2004). In *Excess Risk*, the Court wrestled with a complex and partially-novated insurance referral contract which ultimately had to be construed after discovery to determine the subject matters and claims contained within and without the parties' agreement. After construing the contract, the *Excess Risk* court found that the subject matter of the contract was "limited in its scope to the ABLAC renewal block of business and any new business brought to LLIC by ERU producers." *Id.* at 1346. It is therefore no surprise at all that the court permitted the parties to continue to litigate "transfer of cases that were not part of the ABLAC block and not brought to LLIC by ERU producers." It found those matters to be simply beyond the scope of the written contract and allowed those quantum meruit claims to proceed to trial. But, following the general rule, the

court in *Excess Risk* granted summary judgment as to "'quasi-contract' [claims] pertaining to the ABLAC renewal block of policies because the ERU-LLIC Agreement expressly governs those policies." *Id.* at 1345.

Unlike *Excess Risk*, however, the Plaintiff in this case cannot concoct a factual dispute about what precise subject matter is or is not covered by the instrument because there is an integration clause in the contract that speaks directly to this issue. According to the terms of the Agreement, "*This is the entire and only Agreement between the parties respecting the subject matter hereof.*" Exhibit A at ¶5(i) (emphasis added). Because the Agreement occupies the entire field of the potential universe of claims between Plaintiff and Source regarding referral fee payments, this Court should conclude that quantum meruit is unavailable to Plaintiff as a matter of law.[1]

The remaining cases cited by Plaintiff in his opposition also are inapposite because they involve other recognized exceptions for preserving implied contract claims when: (1) the contract did not cover additional unanticipated work performed by the promisor; (2) an entirely different performance is rendered by the promisor; or (3) there was a fraud by the defendant. In this case, and entirely unlike those cases, Mr. Ledecky (the promisor) has never claimed he did any more than what he promised to do in the Referral Agreement and, in fact, made only the specific introduction anticipated under the contract, to Endeavor. *See* Amended Complaint ¶ 41 (breach of contract) ("Pursuant to the Agreement, Ironbound introduced Source to Endeavor's Emanuel."). Whatever else he may claim he did, Plaintiff certainly is not claiming he personally made the introduction between Source and Alliance. *See, e.g., Southern Bell Tele. & Tele. Co. v. Acme Elec. Contractors, Inc.*, 418 So. 2d 1187 (Fla. Dist. Ct. App. 1982) (holding that because

---

[1] Moreover, Plaintiff is admittedly not relying here on any subsequent oral or written agreements, course of dealing, or industry custom.

no written contract existed between parties contractor could recover for additional work it had to perform to complete project); *Infra-Pak (Dallas) Inc. v. Carlson Stapler & Shippers Supply, Inc.*, 803 F.2d 862 (5th Cir. 1986) ("We are persuaded that the work Carlson performed was extra work for which the distributorship agreement made no provision."); *ABC Elec. Inc. v. Nebraska Beef, Ltd.*, 249 F.3d 762 (8th Cir 2001) (noting that trial court correctly instructed jury that "ABC may only recover in quantum meruit for 'construction work on the premises of [Nebraska Beef] over and above that required under the plans and specs described on Schemmer Associates, Inc. drawings.'"); *Brookhaven Landscape & Grading Co. v. J.F. Barton Contracting Co.*, 676 F.2d 516 (11th Cir. 1992) (affirming quantum meruit verdict for boulder excavation work not contemplated by original contract); *Ventura v. Titan Sports, Inc.*, 65 F.3d 725 (8th Cir. 1995) (upholding verdict for quantum meruit which permitted professional wrestler to recover royalties while televised as commentator, even though royalties were excluded while Ventura was acting as wrestler in televised performances). *Lansing Bd. Of Water & Light v. Deerfield Ins. Co.*, 183 F. Supp. 2d 979 (W.D. Mich. 2002) (permitting quantum meruit recovery based upon additional work performed); *Moylan v. Estes*, 102 So. 2d 855 (Fla. Dist. Ct. App. 1958) (permitting quantum meruit claim in face of "fraud" where realtor obtained preliminary contract which purchaser refused to consummate after which purchaser proceeded immediately to negotiate direct sale with seller to deny commission to realtor).

In summary, although Plaintiff is certainly correct that exceptions exist to the quasi-contract pleading rule, he has made no allegations in the Amended Complaint that would bring him within those exceptions.

## The Presence of The Integration Clause in The Referral Agreement Forecloses Quasi-Contract Pleading

The instrument Plaintiff sued upon unequivocally states that "This is *the entire and only Agreement between the parties respecting the subject matter hereof*, and supercedes all prior agreements." Exhibit A at ¶5(i) (emphasis added). Thus, Plaintiff cannot surmount the contours of the contract he actually received by seeking equitable entitlements. At least three courts outside of Florida that have addressed this precise issue have concluded that dismissal of implied contract claims is proper when the written contract sued upon contains an integration clause.

In *Sea Star Line, LLC v. Emerald Equip. Leasing, Inc.*, 2006 WL 214206 (D. Del. Jan. 26, 2006), a cargo handling operator and a leasing company entered into a written equipment rental contract providing for payment for use of certain cargo equipment by Sea Star. The rental agreement contained an integration clause expressing that the written agreement was "the entire agreement between the parties". *See id.* at *4. Nonetheless, the equipment lessor sought recovery in quantum meruit as an alternative to its contract claim "to the extent that Sea Star's use of Emerald's equipment occurred during any period not covered by the written lease agreement." *Id.* Thus, Emerald sought to engage in precisely the same kind of hedging Plaintiff seeks in this case: recovery in quantum meruit to the extent Source contends or proves it is not liable under the terms and conditions of the parties' written agreement. The Court rejected the suggestion outright and dismissed the quantum meruit claim, concluding that, "In this case Emerald has pled the existence of a written contract governing its claims, and the contract contains an integration clause." *Id.* at *6. *See also Mass Transit Admin. v. Granite Contsr. Co.*, 471 A.2d 1121, 1126 (Md. Ct. Spec. App. 1984) ("When parties enter into a contract they assume certain risks with the expectation of a return. Sometimes, the expectations are not realized, but they discover that under the contract they have assumed the risks of having those

expectations defeated. As a result, they have no remedy under the contract for restoring their expectations. In desperation, they turn to quasi-contract for recovery. This the law will not allow.").

The Minnesota Court of Appeals reached a similar conclusion in *Nelson v. Kemper WCI*, 1996 WL 495046 (Sept. 3, 1996). In that case, a sales representative entered into a written commission sales agreement with his employer providing that he would earn payments on sales he generated within his geographic territory. *Id.* at *1. Allegedly with the permission of his employer, the sales representative successfully obtained business outside his geographic territory resulting in millions of dollars in sales to the employer. *Id.* After the employer refused to compensate him for the sale, the employee sued, claiming that because no express provision of the contract governed the situation, his quantum meruit action was not barred by the sales agreement. *Id.* at *2. Similar to the Agreement, the sales agreement contained an integration clause stating that it "contains the entire agreement between the parties and its terms cannot be altered or amended in any way except by a written instrument specifically accepted or approved in writing by a duly authorized representative of [the employer]." *Id.* The court directed a verdict for the employer and the appellate court affirmed, reasoning that, "As a result of the integration clause, the sales agreement explicitly governs every aspect of the relationship between Nelson and Kemper. Thus, the contract covers the subject matter of this dispute and bars Nelson's quantum meruit claim." *Id.*

Finally, in *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 872 A.2d 611 (Del. Ch. 2005), Vice Chancellor Lamb recently addressed whether Wal Mart could recover under a theory of unjust enrichment for substantial losses resulting from a failed tax-avoidance scheme involving corporate owned life insurance policies for which Wal Mart paid substantial premiums. Noting

the black letter law that, "Courts generally dismiss claims for quantum meruit on the pleadings when it is clear from the face of the complaint that there exists an express contract that clearly controls," the Chancellor dismissed Wal Mart's quasi contract claims under Rule 12(b)(6). *Id.* at 620. In so doing, the Court was motivated, in part, by the presence of an integration clause in the insurance policies. *See id.* ("Furthermore, the case for dismissing Wal-Mart's unjust enrichment claim is bolstered by the fact that the written contract contains a merger clause, *expressly disavowing that any additional promises or agreements existed between the parties*." (emphasis added) Because Plaintiff agreed to an integration clause in the Agreement squarely placing on himself the risk of loss on all claims that fell outside the four corners of the contract, this Court should dismiss Plaintiff's implied contract claims with prejudice.

## Source Has Not Alleged That The Contract is Invalid

As an afterthought on which to base his implied contract claims, Plaintiff contends that there is a serious question as to whether Source will contest the "validity of the agreement in light of the reformation claim in Plaintiff's Amended Complaint." To the extent that the Agreement is "invalid," Plaintiff believes he is entitled to plead these claims in the alternative to his breach of contract claim.[2] However, because Ironbound Partners, LLC is no longer a party to this lawsuit – Mr. Ledecky is the only Plaintiff – Source will not need to assert that the Agreement is invalid based on the fact that Ironbound Partners, LLC (a dissolved entity) was the counterparty. The only questions at this time are (1) whether Mr. Ledecky will succeed in meeting the elements of his reformation claim[3] or, failing that, (2) whether he otherwise has

---

[2] This is another disingenuous argument on Plaintiff's part, as Plaintiff's original complaint included quantum meruit and implied contract claims, but did not include a reformation claim.

[3] Present invalidity or unenforceability of a contract is not a predicate to or element of contract reformation. *See Moffett, Hodgkins & Clarke Co., v. Rochester*, 178 U.S. 373, 385 (1900). ("Where the agreement as reduced to writing omits or contains terms or stipulations contrary to the common intention of the parties, the instrument will be

standing as a non-party to the Agreement to enforce it. Neither of those questions bears on the validity of the Agreement. As such, potential invalidity is no basis for permitting alternative pleading in quasi-contract here.

## CONCLUSION

For the foregoing reasons, Source respectfully maintains that the Court should grant its Motion and dismiss Plaintiff's implied contract claims of quantum meruit and unjust enrichment claims with prejudice.

Respectfully submitted,

/s/ Kevin E. Stern
C. Allen Foster (Bar No. 411662)
Kevin E. Stern (Bar No. 459214)
Maria Hallas (Bar No. 436529)
GREENBERG TRAURIG, LLP
800 Connecticut Avenue, N.W., Suite 500
Washington, DC 20006
Tel: (202) 331-3100
Fax: (202) 331-3101
*Counsel for Defendant Source Interlink Companies, Inc.*

Dated: March 20, 2006

---

corrected so as to make it conform to their real intent. The parties will be placed as they would have stood if the mistake had not occurred. The party alleging the mistake must show exactly in what it consists and the correction that should be made. The evidence must be such as to leave no reasonable doubt upon the mind of the court as to either of these points. The mistake must be mutual, and common to both parties to the instrument. It must appear that both have done what neither intended. A mistake on one side may be a ground for rescinding, but not for reforming, a contract. Where the minds of the parties have not met there is no contract, and hence none to be rectified."); *Canal Ins. Co. v. Hartford Ins. Co.*, 415 So.2d 1295, 1297 (Fl. Ct. App. 1982) ("It is universally held that in order for a trial court to reform a contract, the evidence must clearly and convincingly show a mutual mistake of fact. . . . Moreover, the mutual mistake must be determined to have existed at the time the contract was reduced to writing.").

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of March, 2006, I caused a true and correct copy of the foregoing to be served by electronic mail through CM/ECF on the following persons:

Matthew D. Schwartz, Esq.
Allison N. Sinoski, Esq.
THOMPSON COBURN, LLP
1909 K. Street, NW
Suite 600
Washington, DC 20006

                                              /s/ Julie Lee
                                              Julie Lee