Message                                                                                   Page 1 of 1

| | |
|---|---|
| Subj: | **sourcenondisclosure1.doc** |
| Date: | 4/26/2004 2:28:52 PM Eastern Daylight Time |
| From: | DBates@sourceinterlink.com |
| To: | JLEDECKY@aol.com |
| File: | **sourcenondisclosure1.doc** (38400 bytes) DL Time (TCP/IP): < 1 minute |

Sent from the Internet *(Details)*

Here are a couple of suggested changes

NOTICE: The contents of this email and any attachments to it may contain privileged and confidential information from Source Interlink Companies, Inc. This information is only for the viewing or use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of, or the taking of any action in the reliance upon, the information contained in this email, or any of the attachments to this email, is strictly prohibited and that this email and all of the attachments to this email, if any, must be immediately returned to Source Interlink Companies, Inc. or destroyed and, in either case, this email and all attachments to this email must be immediately deleted from your computer without making any copies thereof. If you have received this email in error, please notify Source Interlink Companies, Inc. by email immediately.



IB 00511

Thursday, May 20, 2004 America Online: Jledecky

## Mutual Non-Disclosure Agreement

This agreement ("Agreement") is made effective as of <u>April 26, 2004</u> (the "Effective Date") by and between _____ with offices at _____ and Source Interlink <u>Companies, Inc.</u> with offices at <u>27500 Riverview Center Blvd., Suite 400, Bonita Springs, Florida 34134</u> (each individually a "Party" and collectively the "Parties").

### WITNESSETH:

Whereas, in connection with exploring and evaluating a possible business relationship (the "Relationship") and for the purposes of the ongoing Relationship, the Parties recognize the need to disclose to one another certain of their Confidential Information (as defined below); and

Whereas, the Parties wish to provide the terms and conditions upon which such Confidential Information will be disclosed by one Party to the other Party hereunder;

Now, therefore, the Parties agree as follows:

1. "Confidential Information" means information in whatever form disclosed by one Party (the "Disclosing Party") to the other Party (the "Receiving Party") before, on or after the Effective Date hereof which relates to a Disclosing Party's business or the Relationship including without limitation business, financial and technical materials, information and data, or which although not directly related to the Relationship, is nevertheless disclosed as a result of or in connection with the Parties' discussions of the Relationship.

2. The Receiving Party shall use the Disclosing Party's Confidential Information only for the purpose of evaluating the Relationship and for the purposes of the ongoing Relationship, and shall protect such Confidential Information from disclosure to third parties, using the same degree of care used to protect its own proprietary information of like importance, but in any case using no less than a reasonable degree of care. The Receiving Party may disclose the Disclosing Party's Confidential Information to its officers, directors, employees, agents, advisors and consultants ("Representatives") in each case if such Representatives have a need to know, provided such Representatives limit the use of the Confidential Information as required hereunder. Each Party, for itself, shall be responsible for any breach of the terms of this Agreement by such Party or its Representatives. Each Party agrees, for itself at its sole expense, to take all reasonable measures (including but not limited to court proceedings) to restrain its Representatives from prohibited or unauthorized disclosure or use of the Confidential Information.

3. The restrictions of this Agreement on use and disclosure of Confidential Information shall not apply to information that:

(a) the Receiving Party can demonstrate was in its possession or control at the time of its disclosure hereunder;

(b) is or becomes publicly known, through no wrongful act of the Receiving Party;

(c) the Receiving Party can demonstrate was received by such Party from a third party which the Receiving Party had no reason to believe was under any obligation (whether contractual, legal, fiduciary or otherwise) to maintain the confidentiality thereof~~free to disclose it without obligation (whether contractual, legal, fiduciary or otherwise) to the Disclosing Party~~;

(d) the Receiving Party can demonstrate the information was developed independently by such Party without reference to the Confidential Information, or

(e) is lawfully required to be disclosed to any governmental agency or is otherwise required to be disclosed by law; provided, however, that before making such disclosure, the Receiving Party shall give the Disclosing Party an adequate opportunity to interpose an objection an/or take action to assure confidential handling of such information.

4. Confidential Information disclosed under this Agreement (including information in computer software or held in electronic storage media) shall be and remain the property of the Disclosing Party. The Receiving Party shall keep a record of the location of all tangible Confidential Information of the Disclosing Party in its possession, and, upon the written request of the Disclosing Party at any time, shall promptly return or destroy all such tangible Confidential Information of the Disclosing Party in its possession, and no such Confidential Information shall thereafter be retained in any form by the Receiving Party. The Receiving Party shall be fully responsible for the return or destruction of all Confidential Information disclosed to its Representatives. Any destruction of Confidential Information shall be certified in writing by the Receiving Party.

5. Without the prior written consent of the other Party, a Party will not disclose to any third party any information (including Confidential Information) regarding the Relationship, including without limitation, the fact that discussions are occurring concerning the Relationship, any of the terms or conditions relating to the Relationship being discussed by the Parties, or the existence of this Agreement.

6.- Both parties understand and agree that no contract or agreement with respect to the Relationship (or any other transaction) shall be deemed to exist between them or their respective stockholders or other owners, unless and until a definitive agreement has been executed and delivered by the Parties. None of the Parties or their respective stockholders, or any other person will have any rights or obligations of any kind whatsoever with respect to any such transaction by virtue of this Confidentiality Agreement or any other written or oral expression by either Party or their respective

IB 00513

Representatives unless and until a definitive agreement between the Parties is executed and delivered, other than with respect to the matters specifically agreed to herein. For purposes of this Confidentiality Agreement, the term "definitive agreement" does not include an executed letter of intent or any other preliminary written agreement. The Parties acknowledge that any Relationship is subject to the approval of their respective senior management and/or the Board of Directors, which approval may be denied, granted or conditionally granted in such management's or board's complete discretion. It is expressly understood and agreed that neither Party is bound by this Confidentiality Agreement to establish a Relationship (or any other transaction). Each Party reserves the right, in its sole and absolute discretion, at any time, to reject any and all proposals from, and to terminate all discussions with, the other Party.

7. For a period of two years from the date of this Agreement, neither Party (including its directly or indirectly owned subsidiaries and controlled affiliates) will, directly or indirectly, contact for the purposes of hiring, solicit for employment or hire any employee, officer or director of the other Party (including its directly or indirectly owned subsidiaries); provided, however, that the foregoing shall not preclude either Party from hiring any person who (i) initiates discussions regarding employment without any direct solicitation by the Party, (ii) responds to any general public advertisement by the Party that is not directed towards any such employee or group of employees, or (iii) has been terminated by by the employing Party.

8. This Agreement shall become effective on the date first set forth above and shall continue for the longer of (i) one year from the Effective Date or (ii) the period of the Relationship.

9~~7~~. This Agreement: (a) is the complete Agreement of the Parties concerning the subject matter hereof and supercedes any and all prior agreements, understanding or discussions with respect to the subject matter hereof; (b) shall not be construed to create any obligation on the part of either Party to retain the services or to compensate the other Party in any manner, except as may be set forth by a separate written Agreement duly executed and delivered by the parties; (c) may not be amended or in any manner modified except in a writing signed by the Parties; and (d) shall be governed and construed in accordance with the laws of the State of California without regard to its conflicts of law principles. If any provision of this Agreement is found to be unenforceable, the remainder shall be enforced as fully as possible and the unenforceable provisions shall be deemed modified to the limited extent required to permit enforcement of the terms of this Agreement in a manner most closely representing the intention of the Parties as expressed herein. Without prejudice to the rights and remedies otherwise available to the Parties, the Parties agree that money damages may not be a sufficient remedy for any breach of this Agreement by either Party or their respective Representatives and, accordingly, that either Party shall be entitled to equitable relief, including injunctive and specific performance, if either Party or any of their respective Representatives breaches or threatens to breach any of the provisions of this Agreement. This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and all of which shall constitute the same Agreement. The Parties hereto agree that the prevailing

Party in any dispute arising under or related to this Agreement shall be entitled to attorneys fees in addition to any other relief ordered by the trier of fact.

In witness whereof, each of the Parties hereto has caused the Agreement to be executed by its duly authorized representative.

ACCEPTED AND AGREED:

By:_____

ACCEPTED AND AGREED

By:_____

IB 00515