1

1      IN THE UNITED STATES DISTRICT COURT

2        FOR THE DISTRICT OF COLUMBIA

3

4    _____
                                   )
5    JONATHAN LEDECKY d/b/a         )     Case No. 1:05CV01039
     IRONBOUND PARTNERS,            )
6                                   )
7           Plaintiff,              )     COPY
                                    )
     vs.                            )
8                                   )
     SOURCE INTERLINK COMPANIES,    )
9    INC.,                          )
                                    )
10          Defendant.              )
     _____)
11

12

13            VIDEOTAPED DEPOSITION OF

14               JONATHAN J. LEDECKY

15                Washington, D.C.

16            Wednesday, March 29, 2006

17

18   Job No.:  1-74746

     Pages 1 through 278

19   Reported by:  John L. Harmonson, RPR

20

21

22


L.A.D
REPORTING &
DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, MD • McLean, VA

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

14

| | | |
|---|---|---|
| 1 | answer the question before we take a break.  Is | 10:40:16 |
| 2 | that clear? | 10:40:18 |
| 3 | A.    Thank you. | 10:40:20 |
| 4 | Q.    Could you tell me what your home | 10:40:20 |
| 5 | address is? | 10:40:22 |
| 6 | A.    1400 34th Street, N.W., Washington, | 10:40:22 |
| 7 | D.C., 20007. | 10:40:29 |
| 8 | Q.    How long have you lived at that | 10:40:32 |
| 9 | address? | 10:40:34 |
| 10 | A.    Since August 1, 1987. | 10:40:34 |
| 11 | Q.    Do you own any other homes outside of | 10:40:37 |
| 12 | the District of Columbia residences? | 10:40:40 |
| 13 | A.    Which one are you asking? | 10:40:45 |
| 14 | Q.    Well, do you own any homes outside of | 10:40:47 |
| 15 | the District of Columbia? | 10:40:49 |
| 16 | A.    What are you defining as "home"?  I'm | 10:40:51 |
| 17 | sorry. | 10:40:54 |
| 18 | Q.    A place where you reside, either a | 10:40:55 |
| 19 | second home, a vacation home. | 10:40:57 |
| 20 | A.    Yes. | 10:41:00 |
| 21 | Q.    Okay.  How many of those do you have? | 10:41:00 |
| 22 | A.    Four. | 10:41:04 |

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

15

1    Q.    Where are they located?    10:41:05

2    A.    Another one in Washington, D.C., two in    10:41:08

3    New York City, and one in Wyoming.    10:41:12

4    Q.    And where are the homes in New York    10:41:17

5    City located, addresses?    10:41:19

6    A.    1080 Fifth Avenue and 279 Central Park    10:41:26

7    West.    10:41:33

8    Q.    What is your business address?    10:41:33

9    A.    I guess we have to be more specific.    10:41:39

10    Now?    10:41:41

11    Q.    Currently.    10:41:42

12    A.    Current business address?    10:41:44

13    Q.    Yes.    10:41:45

14    A.    I maintain two business addresses.    One    10:41:46

15    is 1400 34th Street, N.W., Washington, D.C.,    10:41:48

16    20007.    And then I also have an office at Ledecky    10:41:54

17    Foundation, 901 15th Street, N.W., Suite 950,    10:42:00

18    Washington, D.C., 20005.    10:42:06

19    Q.    And what businesses are located at    10:42:09

20    your -- I'm sorry, I forgot the address -- the    10:42:17

21    34th Street address?    10:42:20

22    A.    That would be Ironbound Partners Fund.    10:42:23

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

50

| | | |
|---|---|---|
| 1 | document is?  This e-mail dated April 22, 2004, | 11:21:35 |
| 2 | from you to Jim Gillis of Source; is that right? | 11:21:41 |
| 3 | A.    Yep.  Yes. | 11:21:46 |
| 4 | Q.    Okay.  And the subject is "huge," in | 11:21:47 |
| 5 | capitals, business opportunity.  Could you tell me | 11:21:50 |
| 6 | what this e-mail was about? | 11:21:54 |
| 7 | A.    It looks like an e-mail discussing an | 11:22:00 |
| 8 | opportunity for Source to do a transaction or to | 11:22:05 |
| 9 | do some business with a company in Los Angeles. | 11:22:09 |
| 10 | Q.    Okay.  And do you recall that company | 11:22:13 |
| 11 | being Endeavor Talent Agency? | 11:22:16 |
| 12 | A.    Yes. | 11:22:19 |
| 13 | Q.    And what is the opportunity that you | 11:22:21 |
| 14 | are referencing here, this huge business | 11:22:23 |
| 15 | opportunity that you're talking about here? | 11:22:25 |
| 16 | A.    In this e-mail, I believe the business | 11:22:30 |
| 17 | opportunity is an opportunity for Source and | 11:22:32 |
| 18 | Endeavor to come together and do business with | 11:22:35 |
| 19 | each other in the field of DVD, CD and other | 11:22:40 |
| 20 | marketing opportunities that Endeavor represented | 11:22:46 |
| 21 | that they could bring Source. | 11:22:50 |
| 22 | Q.    Okay.  And when you say "do business," | 11:22:52 |

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

51

1   what type of business arrangement were you          11:22:56

2   thinking about when you wrote this?                 11:22:59

3       A.    To me, it appears to be a business        11:23:02

4   arrangement in this e-mail that could be anything   11:23:05

5   from a joint venture relationship to setting up of  11:23:08

6   a new joint venture company, which was something    11:23:14

7   that Endeavor was interested in looking at.         11:23:19

8       Q.    And you say that this opportunity could   11:23:25

9   literally be worth 100 million a year in profit to  11:23:28

10  Source.  Do you recall how you came up with that    11:23:32

11  number?                                             11:23:35

12      A.    That number was given to me by Ari        11:23:35

13  Emanuel.                                            11:23:37

14      Q.    Why don't you tell me, how did you end    11:23:41

15  up having discussions with Endeavor about a         11:23:44

16  potential opportunity with Source?                  11:23:46

17      A.    In the meeting in which Rick Rosen        11:23:48

18  introduced me to Ari Emanuel and his other          11:23:50

19  partners, we had a general discussion of my         11:23:53

20  background, and Ari and the others asked me to      11:23:57

21  give, much as you did in the beginning, sort of a   11:24:04

22  biography, and I mentioned that I was a             11:24:08

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

52

| | | |
|---|---|---|
| 1 | stockholder in Source. | 11:24:11 |
| 2 | And they asked me what Source did, and | 11:24:12 |
| 3 | Ari got very excited and said, "Oh, my God, that's | 11:24:15 |
| 4 | an amazing -- sounds like an amazing company. | 11:24:18 |
| 5 | There would be so many opportunities to do | 11:24:21 |
| 6 | business together and make money.  Could you | 11:24:24 |
| 7 | perform an introduction?  Could you introduce | 11:24:27 |
| 8 | Source and Endeavor to one another?" | 11:24:30 |
| 9 | So he was the person who had the germ | 11:24:33 |
| 10 | of the idea and asked me whether or not I could | 11:24:35 |
| 11 | try to put something together. | 11:24:38 |
| 12 | Q.    And in terms of what Mr. Emanuel was | 11:24:40 |
| 13 | talking about in terms of the opportunities, it | 11:24:43 |
| 14 | was in the idea of distributing CDs and DVDs by | 11:24:46 |
| 15 | Source? | 11:24:53 |
| 16 | A.    Yes.  Once Source was explained to him | 11:24:54 |
| 17 | as to what Source did.  Because he got into -- he | 11:24:56 |
| 18 | asked me to go into some detail about Source's | 11:24:58 |
| 19 | business activities.  He indicated that he had | 11:25:01 |
| 20 | enormously deep and thorough relationships with | 11:25:04 |
| 21 | movie studios; that Endeavor was the leading | 11:25:08 |
| 22 | talent agency in representation of movie stars in | 11:25:12 |

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

53

| | | |
|---|---|---|
| 1 | Hollywood; and as a result, he could literally see | 11:25:15 |
| 2 | a situation where Source could put DVDs, CDs and | 11:25:19 |
| 3 | other materials that related to the entertainment | 11:25:25 |
| 4 | business at checkout stands in supermarkets all | 11:25:27 |
| 5 | around the country.  And he outlined this vision | 11:25:32 |
| 6 | of being able to do this on an exclusive basis | 11:25:34 |
| 7 | where he would take a studio and negotiate one | 11:25:38 |
| 8 | studio against another for the benefit of a higher | 11:25:42 |
| 9 | price being paid by the corporation that wanted | 11:25:45 |
| 10 | distribution at checkout. | 11:25:48 |
| 11 | Q.    And this was all discussed at this | 11:25:50 |
| 12 | meeting? | 11:25:52 |
| 13 | A.    The meeting that took place with him | 11:25:53 |
| 14 | and his partners at his offices in Los Angeles. | 11:25:54 |
| 15 | Q.    Do you recall whether this meeting was | 11:25:58 |
| 16 | right around the time you sent this e-mail or | 11:26:00 |
| 17 | right before? | 11:26:03 |
| 18 | A.    This e-mail was a result of having had | 11:26:04 |
| 19 | that meeting earlier with Ari. | 11:26:05 |
| 20 | Q.    Do you recall if it was on the same day | 11:26:09 |
| 21 | or the day before? | 11:26:10 |
| 22 | A.    I don't recall the exact dates.  But | 11:26:12 |

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

55

1    together, where Endeavor and Source could do          11:27:16

2    business together.                                     11:27:23

3        Q.    Okay.  Was there any discussions when        11:27:23

4    you were at Endeavor about Endeavor introducing        11:27:25

5    Source to other entities that they could do a deal     11:27:31

6    with for distributing CDs and DVDs?                    11:27:35

7        A.    There was quite a bunch of discussion        11:27:39

8    with Ari about various -- You know, again he           11:27:42

9    mentioned various movie studios, and at one point      11:27:46

10   he mentioned that he had relationships where he        11:27:50

11   had been best man or individuals that were            11:27:54

12   influential in this industry had been best men in      11:28:00

13   his wedding or he had been the best man in their       11:28:03

14   wedding.  You know, he was in a very bullish mood      11:28:03

15   and mode about this set of opportunities.              11:28:10

16       Q.    But other than talking about doing           11:28:12

17   deals between Source and Endeavor involving movie      11:28:14

18   studios, was there any other type of opportunities     11:28:20

19   discussed specifically?                                11:28:23

20       A.    Yeah.  Again, without getting into           11:28:24

21   specific names, because no specific names were         11:28:26

22   mentioned, he talked about his relationships with      11:28:28

L.A.D. REPORTING & DIGITAL VIDEOGRAPHY
(202) 861-3410  (800) 292-4789  (301) 762-8282  (703) 288-0026  (410) 539-3664

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

56

| | | |
|---|---|---|
| 1 | various entertainment companies, with companies | 11:28:32 |
| 2 | that had involvement in this industry. | 11:28:35 |
| 3 | Q.    And when you wrote here that you would | 11:28:43 |
| 4 | get the fee arrangement on it, what kind of fee | 11:28:46 |
| 5 | arrangement did you have in mind at that time when | 11:28:49 |
| 6 | you wrote this? | 11:28:51 |
| 7 | A.    Well, I had in mind a fee arrangement | 11:28:52 |
| 8 | based on negotiating with Source an agreement.  It | 11:28:57 |
| 9 | was probably put here deliberately vague because | 11:29:03 |
| 10 | typically you have to negotiate those situations. | 11:29:06 |
| 11 | You don't just impose a fee.  And indeed, I | 11:29:09 |
| 12 | believe I sent the company something, and they | 11:29:13 |
| 13 | decided they would go with their own agreement. | 11:29:16 |
| 14 | Q.    Okay.  But at the time you wrote this, | 11:29:20 |
| 15 | you had in your own mind what kind of fee | 11:29:23 |
| 16 | arrangement you would want, right? | 11:29:27 |
| 17 | A.    I think by the words "fee arrangement" | 11:29:28 |
| 18 | here, I meant more the structure of the document. | 11:29:30 |
| 19 | Because typically you send it and you have a blank | 11:29:33 |
| 20 | for what the fee -- or at least when I was doing | 11:29:37 |
| 21 | it, I would send it with a blank, and then you | 11:29:39 |
| 22 | would have a discussion with the company. | 11:29:40 |

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

57

| | | |
|---|---|---|
| 1 | Q. But in terms of the structure of the | 11:29:42 |
| 2 | arrangement -- not the amount of money that could | 11:29:44 |
| 3 | potentially be paid to you, but in terms of the | 11:29:46 |
| 4 | structure -- what arrangement did you have in mind | 11:29:50 |
| 5 | at the time? | 11:29:52 |
| 6 | A. What I had in mind was to get a | 11:29:53 |
| 7 | percentage of whatever profits resulted from | 11:29:55 |
| 8 | whatever enterprise resulted. And that would | 11:29:58 |
| 9 | depend on where the negotiations went. Because it | 11:30:01 |
| 10 | was such a broad-based discussion with Endeavor, I | 11:30:04 |
| 11 | wanted to try to maintain fluidity in the | 11:30:10 |
| 12 | agreement. | 11:30:14 |
| 13 | Q. You talk here about having Source's | 11:30:19 |
| 14 | in-house lawyer vet both agreements. So at the | 11:30:23 |
| 15 | time you wrote this, you were contemplating | 11:30:27 |
| 16 | sending a proposed fee arrangement agreement | 11:30:31 |
| 17 | to Source to negotiate with them, right? | 11:30:34 |
| 18 | A. Well, there were two things. Right, | 11:30:36 |
| 19 | one was the confidentiality agreement, which | 11:30:37 |
| 20 | again, I didn't think I was empowered to negotiate | 11:30:39 |
| 21 | on the behalf of Source. And the second was a fee | 11:30:43 |
| 22 | arrangement agreement between me and the company, | 11:30:46 |

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

68

1    Endeavor?                                              11:40:51

2        A.    I believe so, yes.                           11:40:51

3        Q.    Okay.  I guess I'm trying to                 11:40:52

4    understand.  You're talking here about an              11:41:00

5    investment in Endeavor, but above here you're          11:41:03

6    talking about a potential business opportunity.        11:41:07

7        A.    And I think you're correct on that,          11:41:09

8    because I think Ari was having a very broad-based       11:41:11

9    discussion in the meeting about all the different      11:41:15

10   things that Endeavor wanted to accomplish and that     11:41:15

11   Endeavor could do, and Leslie was very much in the     11:41:18

12   mode of doing acquisitions.                            11:41:21

13       Q.    So you had previously had discussions        11:41:24

14   with Leslie prior to this about Source acquiring       11:41:27

15   or doing an acquisition of companies to help           11:41:31

16   expand the business?                                   11:41:35

17       A.    Yes.  Leslie and I had many                  11:41:36

18   conversations over the years about acquisitions.       11:41:38

19   And many times Leslie actually made me a subject       11:41:40

20   to inside trading laws by sharing with me his          11:41:46

21   thoughts on deals he was trying to do.  So he was      11:41:49

22   trying to think about an acquisition, and              11:41:52

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

74

| | | |
|---|---|---|
| 1 | with Leslie in Greece on Sunday, April 25, 2004? | 11:59:13 |
| 2 | A.    I recall having a conversation with | 11:59:21 |
| 3 | him, yes. | 11:59:23 |
| 4 | Q.    Okay. | 11:59:24 |
| 5 | A.    He was on a boat. | 11:59:25 |
| 6 | Q.    Tell me about that conversation. | 11:59:27 |
| 7 | A.    I think the conversation is really | 11:59:35 |
| 8 | summarized in the e-mail. | 11:59:38 |
| 9 | Q.    Okay.  So this e-mail here is a fair | 11:59:43 |
| 10 | summary of what you and Leslie talked about? | 11:59:47 |
| 11 | A.    Yes.  I mean, Leslie left that | 11:59:50 |
| 12 | potential compensation vague, as I said in the | 11:59:53 |
| 13 | e-mail, and I'm not comfortable with that, so I | 11:59:56 |
| 14 | wanted to memorialize the understanding between | 11:59:59 |
| 15 | Source and myself, which was, as I mentioned | 12:00:03 |
| 16 | earlier, based on earlier attempts with Leslie to | 12:00:06 |
| 17 | get agreement. | 12:00:10 |
| 18 | Q.    And you wrote here:  "A leading company | 12:00:11 |
| 19 | on the West Coast wants to enter into an exciting | 12:00:14 |
| 20 | business relationship with Source." | 12:00:16 |
| 21 | Generally, what did you and Leslie talk | 12:00:17 |
| 22 | about in terms of this exciting business | 12:00:18 |

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

75

| | | |
|---|---|---|
| 1 | relationship that you had in mind? | 12:00:22 |
| 2 | A.    I left it very general and vague | 12:00:24 |
| 3 | because, one, until I felt that I had an agreement | 12:00:26 |
| 4 | memorialized with the company, why would I | 12:00:30 |
| 5 | disclose the nature of the opportunity, No. 1. | 12:00:32 |
| 6 | And No. 2, in our discussion with | 12:00:36 |
| 7 | Mr. Emanuel that I had in his office, there was | 12:00:39 |
| 8 | such a broad-based discussion of opportunities | 12:00:42 |
| 9 | that I thought the important thing was to get the | 12:00:47 |
| 10 | two sides together.  And I wanted to make sure | 12:00:49 |
| 11 | that in making the marriage, as I referred to it, | 12:00:52 |
| 12 | that I would get paid this time. | 12:00:55 |
| 13 | Q.    So you didn't talk anything about the | 12:00:57 |
| 14 | potential of distributing DVDs at checkouts at | 12:00:59 |
| 15 | grocery stores? | 12:01:05 |
| 16 | A.    I can't specifically recall that.  But | 12:01:07 |
| 17 | in general, when I do these things, to give the | 12:01:08 |
| 18 | potential client all of the information sort of | 12:01:12 |
| 19 | defeats the purpose of making the introduction and | 12:01:16 |
| 20 | having a business relationship around it.  So I | 12:01:18 |
| 21 | would assume -- and again, I'm making an | 12:01:21 |
| 22 | assumption -- I discussed it the way it is in this | 12:01:23 |

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

79

1    your mind, at least when you wrote this, you

2    were thinking about this being a potential

3    joint venture or partnership between the

4    companies?)

5         THE WITNESS:  It could be a joint                    12:03:58

6    partnership.  It could be a business relationship.       12:04:00

7    It could be the introduction of third parties,          12:04:02

8    like movie studios, other players that would want       12:04:05

9    to do business with Source.  That was the nature        12:04:09

10   of the discussion we had had with Ari that day.         12:04:13

11   EXAMINATION BY MR. STERN:                                12:04:16

12        Q.    Okay.  But in terms of the relationship       12:04:16

13   between Source and Endeavor, it was envisioned it       12:04:19

14   would be a relationship in which Endeavor would be      12:04:23

15   making some money as well as Source, right?             12:04:24

16        A.    That there would be commerce between         12:04:25

17   the firms that could be in any shape or form.  And      12:04:27

18   again, that's what we couldn't decipher at the          12:04:32

19   time.  So I was trying to protect myself by having      12:04:35

20   a somewhat global agreement so that whatever came       12:04:39

21   out of those relationships, I would be compensated      12:04:41

22   for, whether that was a joint venture, whether it       12:04:44

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

80

| | | |
|---|---|---|
| 1 | was a merger, whether it was an introduction to | 12:04:46 |
| 2 | other parties.  You know, I had seen Source do | 12:04:48 |
| 3 | very creative things in the past.  And I had seen, | 12:04:52 |
| 4 | obviously from watching it in the meetings with | 12:04:56 |
| 5 | Endeavor, that Endeavor was a pretty creative | 12:04:58 |
| 6 | place, too.  So I was trying to capture lightning | 12:05:02 |
| 7 | in a bottle and make sure that I was paid for it. | 12:05:05 |
| 8 | Q.    But you certainly had in mind whatever | 12:05:08 |
| 9 | deal might result would have been a deal in which | 12:05:08 |
| 10 | Endeavor would have made some money out of it as | 12:05:12 |
| 11 | well? | 12:05:14 |
| 12 | MR. SCHWARTZ:  Objection; asked and | 12:05:16 |
| 13 | answered. | 12:05:16 |
| 14 | THE WITNESS:  Absolutely. | 12:05:17 |
| 15 | EXAMINATION BY MR. STERN: | 12:05:18 |
| 16 | Q.    It wasn't going to be a thing where | 12:05:18 |
| 17 | Endeavor was going to help introduce Source to | 12:05:21 |
| 18 | someone else and then Endeavor wouldn't get any | 12:05:24 |
| 19 | money out of it, right? | 12:05:26 |
| 20 | A.    Again, I think at that time it was | 12:05:28 |
| 21 | here's a chance for two businesses to come | 12:05:29 |
| 22 | together, a chance to do commerce together and | 12:05:32 |

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

129

| | | |
|---|---|---|
| 1 | the proposed changes to the nondisclosure | 13:54:02 |
| 2 | agreement that Source had proposed, correct? | 13:54:04 |
| 3 | A.   Yes. | 13:54:08 |
| 4 | (Exhibit 12 marked for identification and | |
| 5 | attached hereto.) | |
| 6 | EXAMINATION BY MR. STERN: | 13:54:43 |
| 7 | Q.   I've handed you what's been marked as | 13:54:48 |
| 8 | Exhibit 12.  There are two e-mails here.  The | 13:54:51 |
| 9 | first one is an e-mail from you, April 26, 2004, | 13:54:54 |
| 10 | 11:30 p.m., to Delia Everett.  Who is Delia | 13:54:59 |
| 11 | Everett, if you recall? | 13:55:04 |
| 12 | A.   At the time, she was the administrative | 13:55:06 |
| 13 | assistant to either Leslie Flegel, Jim Gillis or | 13:55:09 |
| 14 | both. | 13:55:15 |
| 15 | Q.   Is it fair to say that as of the | 13:55:16 |
| 16 | evening of April 26, basically all the terms were | 13:55:18 |
| 17 | agreed to on the referral agreement and also the | 13:55:21 |
| 18 | nondisclosure agreement? | 13:55:24 |
| 19 | A.   It seems that way from reading this | 13:55:27 |
| 20 | e-mail, yes. | 13:55:29 |
| 21 | Q.   And here you're talking in this e-mail | 13:55:31 |
| 22 | to Delia Everett, you're trying to confirm setting | 13:55:33 |

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

130

| | | |
|---|---|---|
| 1 | up a conference call among Endeavor and yourself | 13:55:38 |
| 2 | and Source the next day, right? | 13:55:41 |
| 3 | A.    That's correct. | 13:55:44 |
| 4 | Q.    And do you recall who was the person | 13:55:49 |
| 5 | that was going to be responsible for sort of | 13:55:51 |
| 6 | getting everybody together on this conference | 13:55:53 |
| 7 | call? | 13:55:56 |
| 8 | A.    Well, I say in the e-mail that perhaps | 13:55:57 |
| 9 | Delia, because she knows where everybody is, can | 13:55:59 |
| 10 | put together the call three ways. | 13:56:02 |
| 11 | Q.    Do you recall where you were at that | 13:56:05 |
| 12 | time when you had this call? | 13:56:06 |
| 13 | A.    I believe I was in Washington, D.C., in | 13:56:09 |
| 14 | my office at 34th Street. | 13:56:12 |
| 15 | Q.    And here you talk in the third | 13:56:15 |
| 16 | paragraph here, you will e-mail Appendix A to | 13:56:18 |
| 17 | Source.  "You can take the company name and add to | 13:56:24 |
| 18 | the nondisclosure and fax it back to me and we | 13:56:28 |
| 19 | should be covered on all sides." | 13:56:31 |
| 20 | Was Appendix A going to be the document | 13:56:34 |
| 21 | that disclosed the name of Endeavor to Source? | 13:56:38 |
| 22 | A.    It appears to be, yes. | 13:56:46 |

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

131

| | | |
|---|---|---|
| 1 | Q.    And then Doug wrote in response to you | 13:56:47 |
| 2 | on the next morning, April 27, 9:06 a.m., that he | 13:56:49 |
| 3 | didn't have, as of that e-mail, the Appendix A. | 13:56:56 |
| 4 | Do you recall whether you actually sent an | 13:57:00 |
| 5 | Appendix A to anyone at Source for the conference | 13:57:02 |
| 6 | call? | 13:57:07 |
| 7 | A.    I don't have specific recall of that, | 13:57:09 |
| 8 | but I certainly think I would have done that prior | 13:57:11 |
| 9 | to the call, because that would have wrapped | 13:57:12 |
| 10 | things up. | 13:57:13 |
| 11 | Q.    Do you recall whether or not you | 13:57:14 |
| 12 | disclosed the name of Endeavor just in the | 13:57:15 |
| 13 | nondisclosure agreement and never sent a separate | 13:57:18 |
| 14 | Appendix A to them? | 13:57:22 |
| 15 | A.    Again, I have no recollection either | 13:57:24 |
| 16 | way. | 13:57:26 |
| 17 | (Exhibit 13 marked for identification and | |
| 18 | attached hereto.) | |
| 19 | EXAMINATION BY MR. STERN: | 13:58:29 |
| 20 | Q.    I've handed you what's been marked as | 13:58:45 |
| 21 | Exhibit 13.  The cover sheet of this document, is | 13:58:47 |
| 22 | that your handwriting? | 13:58:50 |

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

132

1    A.    Yes, it is.                                        13:58:52

2    Q.    Does this appear to be a fax of the               13:58:54

3    referral agreement to Doug Bates to obtain his          13:58:57

4    signature on the document?                              13:59:04

5    A.    Yes.                                              13:59:05

6    Q.    And if you look at the last page here,            13:59:05

7    it appears to have your signature on the document?      13:59:08

8    A.    Correct.                                          13:59:11

9    Q.    So you signed it before you sent it to            13:59:11

10   him, right?                                             13:59:13

11   A.    Yes.                                              13:59:14

12        MR. STERN:  Okay.  Let's do this as 14.            13:59:28

13   (Exhibit 14 marked for identification and

14   attached hereto.)

15   EXAMINATION BY MR. STERN:                               13:59:33

16   Q.    I've handed you what's been marked as             13:59:33

17   Exhibit 14.  And looking at the last page of            13:59:35

18   Exhibit 14, does this appear to have Doug Bates'        13:59:49

19   signature on it?                                        13:59:49

20   A.    Yes.                                              13:59:50

21   Q.    And then if you look at the top of each           13:59:50

22   page in this document, there appears to be a fax        13:59:52

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

133

| | | |
|---|---|---|
| 1 | legend -- | 13:59:55 |
| 2 | A.    Yes. | 13:59:56 |
| 3 | Q.    -- with a date and time stamp.  Does | 13:59:56 |
| 4 | there appear to be a date and a time stamp on | 14:00:01 |
| 5 | that? | 14:00:04 |
| 6 | A.    Yes. | 14:00:04 |
| 7 | Q.    And it says April 27, 2004, and 10:19, | 14:00:04 |
| 8 | right? | 14:00:12 |
| 9 | A.    That's what it says. | 14:00:13 |
| 10 | Q.    And as you recall, would that be | 14:00:16 |
| 11 | 10:19 in the morning that you received this? | 14:00:18 |
| 12 | A.    It would be very difficult to recall | 14:00:28 |
| 13 | the exact time of a fax received in 2004.  I can | 14:00:31 |
| 14 | only go by what's on the document, Kevin.  So I | 14:00:34 |
| 15 | have no recollection whether that's correct, | 14:00:35 |
| 16 | whether daylight savings time changed and it was | 14:00:37 |
| 17 | really 9:19 or 11:19.  I can't comment on that. | 14:00:40 |
| 18 | Q.    Well, do you recall -- | 14:00:41 |
| 19 | A.    I certainly would have received this | 14:00:41 |
| 20 | document prior to the phone call. | 14:00:43 |
| 21 | Q.    Okay.  And you recall receiving this | 14:00:44 |
| 22 | document prior to having the phone call? | 14:00:46 |

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

134

| | | |
|---|---|---|
| 1 | A.    Yes. | 14:00:48 |
| 2 | MR. STERN:   Let's mark that. | 14:01:24 |
| 3 | (Exhibit 15 marked for identification and | |
| 4 | attached hereto.) | |
| 5 | EXAMINATION BY MR. STERN: | 14:01:28 |
| 6 | Q.    This is Exhibit 15.  Does this appear | 14:01:29 |
| 7 | to be a fax of the nondisclosure agreement between | 14:01:31 |
| 8 | Source and Endeavor signed by Doug Bates? | 14:01:41 |
| 9 | A.    Yes. | 14:01:52 |
| 10 | Q.    And does it appear from the fax legend | 14:01:58 |
| 11 | on top that it was sent on 4/27/2004 at 10:49? | 14:02:02 |
| 12 | A.    Yes, it does. | 14:02:10 |
| 13 | Q.    So it appears, based on the time line, | 14:02:12 |
| 14 | assuming these fax legends are accurate, that | 14:02:13 |
| 15 | about a half hour after -- | 14:02:13 |
| 16 | A.    Yes, sir. | 14:02:17 |
| 17 | Q.    -- Doug Bates sent you the signed | 14:02:17 |
| 18 | referral agreement, he sent you the signed | 14:02:18 |
| 19 | nondisclosure agreement, right? | 14:02:21 |
| 20 | A.    Correct. | 14:02:24 |
| 21 | MR. STERN:   Let's mark this. | 14:02:26 |
| 22 | (Exhibit 16 marked for identification and | |

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

135

| | | |
|---|---|---|
| 1 | attached hereto.) | |
| 2 | EXAMINATION BY MR. STERN: | 14:02:42 |
| 3 | Q.    Exhibit 16 has been handed to you. | 14:02:42 |
| 4 | Does this appear to be a fax from Tom McGuire to | 14:02:45 |
| 5 | you? | 14:02:49 |
| 6 | A.    Yes. | 14:02:49 |
| 7 | Q.    And if you look at the fax legend on | 14:02:49 |
| 8 | top there, it says April 27, 2004, 8:22 a.m. | 14:02:53 |
| 9 | A.    That would have been Western time. | 14:02:57 |
| 10 | Q.    Pacific time.  So that would have been | 14:03:00 |
| 11 | approximately 11:22 a.m. Eastern time? | 14:03:03 |
| 12 | A.    Right. | 14:03:06 |
| 13 | Q.    And this appears to be the | 14:03:06 |
| 14 | nondisclosure agreement signed by Tom McGuire on | 14:03:09 |
| 15 | behalf of Endeavor, right? | 14:03:12 |
| 16 | A.    Yes. | 14:03:14 |
| 17 | Q.    So as of approximately 11:22 in the | 14:03:14 |
| 18 | morning, April 27th, you had all the executed | 14:03:18 |
| 19 | agreements -- | 14:03:22 |
| 20 | A.    Correct. | 14:03:22 |
| 21 | Q.    -- that you needed to do to have this | 14:03:22 |
| 22 | conference call, right? | 14:03:25 |

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

136

| | |
|---|---|
| 1 | A.    Yes, sir. | 14:03:26 |
| 2 | Q.    And do you recall the call taking place | 14:03:28 |
| 3 | shortly thereafter you received all that? | 14:03:30 |
| 4 | A.    Per the e-mails you shared with me, | 14:03:33 |
| 5 | they were pointing toward a 1:00 o'clock, it | 14:03:36 |
| 6 | looked like, phone call.  The phone call certainly | 14:03:39 |
| 7 | took place because I do remember the call. | 14:03:41 |
| 8 | Q.    Okay.  And you remember it happening on | 14:03:43 |
| 9 | the same day that you got everything executed? | 14:03:45 |
| 10 | A.    I believe that's why they were coming | 14:03:49 |
| 11 | in such sequence, because people were gearing | 14:03:50 |
| 12 | towards the call. | 14:03:54 |
| 13 | Q.    Okay.  And how did you know who from | 14:03:54 |
| 14 | Endeavor was going to be on the call? | 14:03:56 |
| 15 | A.    Oh, I think that was arranged with Ari | 14:03:58 |
| 16 | Emanuel and Tom McGuire.  Tom McGuire was the | 14:04:01 |
| 17 | interface for most of the back and forth, as you | 14:04:07 |
| 18 | see from your exhibits. | 14:04:12 |
| 19 | Q.    All right.  So you learned from Tom | 14:04:12 |
| 20 | McGuire that there was going to be Emanuel from | 14:04:13 |
| 21 | Endeavor on the call, and then there was you, and | 14:04:17 |
| 22 | Leslie Flegel? | 14:04:18 |

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

259

| | | |
|---|---|---|
| 1 | time. | 16:21:45 |
| 2 | Q. And during that time, did you ever have | 16:21:45 |
| 3 | any discussion with anyone from Source while these | 16:21:48 |
| 4 | negotiations were going on about whether you would | 16:21:51 |
| 5 | get some compensation or be compensated under the | 16:21:53 |
| 6 | referral agreement? | 16:21:55 |
| 7 | A. Yes, I did. | 16:21:56 |
| 8 | Q. Okay. Why don't you tell me about | 16:21:57 |
| 9 | those. | 16:21:59 |
| 10 | A. I had a conversation with Jim Gillis | 16:21:59 |
| 11 | along the way in which Mr. Gillis indicated that | 16:22:02 |
| 12 | when the transaction was completed, I could expect | 16:22:05 |
| 13 | compensation in the millions, as he called it. | 16:22:09 |
| 14 | Q. And is there anything else you recall | 16:22:12 |
| 15 | about that? | 16:22:14 |
| 16 | A. About that conversation? | 16:22:15 |
| 17 | Q. Yeah. | 16:22:16 |
| 18 | A. No. It made me very happy to hear | 16:22:16 |
| 19 | that. I felt pleased and I felt that that was | 16:22:17 |
| 20 | well deserved for the fact that I had kept the | 16:22:20 |
| 21 | thing on track. | 16:22:24 |
| 22 | Q. Okay. And do you recall when that | 16:22:25 |

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

260

| | | |
|---|---|---|
| 1 | conversation took place? | 16:22:26 |
| 2 | A.    It took place in or around the time | 16:22:27 |
| 3 | that the merger was announced, the acquisition was | 16:22:31 |
| 4 | announced. | 16:22:35 |
| 5 | Q.    Okay.  And that would be in November of | 16:22:35 |
| 6 | 2004? | 16:22:36 |
| 7 | A.    My recollection would be late October | 16:22:37 |
| 8 | or November of '04. | 16:22:38 |
| 9 | Q.    Was this something you asked Jim about, | 16:22:40 |
| 10 | saying, you know, "Hey, am I going to get paid for | 16:22:42 |
| 11 | what I did?" | 16:22:46 |
| 12 | A.    No.  He called me.  Again, we had | 16:22:47 |
| 13 | regular conversations, and he was fairly happy | 16:22:47 |
| 14 | about what was going on.  He was fairly happy for | 16:22:48 |
| 15 | me and he felt it was great.  He knew that I had | 16:22:51 |
| 16 | carried a lot of the water in the early part of | 16:22:54 |
| 17 | the deals we've discussed here, and he felt very | 16:22:56 |
| 18 | happy as a friend and as a colleague and as an | 16:22:59 |
| 19 | officer of Source that I would be compensated for | 16:23:02 |
| 20 | the effort that I had made. | 16:23:05 |
| 21 | Q.    Okay.  Did you have any other | 16:23:06 |
| 22 | conversations with Jim Gillis about compensation? | 16:23:07 |

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

261

1    A.    I think the only conversation I had was     16:23:12

2    when it was clear from discussions with Leslie    16:23:14

3    that he didn't feel that any compensation was owed  16:23:16

4    me.  So that would be the nature of talking to    16:23:20

5    Jim.  And then I think Jim appropriately said,    16:23:22

6    "Well, that's your battle with Leslie."  And so we  16:23:25

7    arranged a meeting with Leslie ultimately.    16:23:29

8    Q.    So when did you first have a     16:23:32

9    conversation with Leslie about getting paid under  16:23:33

10    the referral agreement?    16:23:36

11    A.    Probably around the same time.  I had    16:23:38

12    actually heard from an investment banker that    16:23:41

13    Leslie had indicated to him that he would owe me   16:23:44

14    millions of dollars as well.  So it was good to    16:23:46

15    hear it from two different sources.  I felt     16:23:49

16    between Jim telling me that and the investment    16:23:52

17    banker telling me that Leslie had told him that,   16:23:55

18    that I had no concerns.  So I felt very, very good  16:23:56

19    about my relationship with Sources.    16:23:59

20    Q.    Who was the investment banker?     16:24:00

21    A.    A man named John Chiles, C-H-I-L-E-S,    16:24:02

22    of Jefferies & Company.    16:24:08

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

262

1    Q.    Okay.  And what's his relationship to    16:24:11

2    Source?    16:24:11

3    A.    He was one of the investment bankers    16:24:11

4    for Source.  And I believe Jefferies & Company may    16:24:11

5    have provided the fairness opinion on the deal.    16:24:13

6    Q.    And he said -- he related to you a    16:24:16

7    conversation or discussion he had with Leslie    16:24:17

8    Flegel about you getting compensated?    16:24:20

9    A.    Yes.    16:24:24

10    Q.    And did he say that he -- Strike that.    16:24:24

11    Was there ever any discussion in terms    16:24:32

12    of disclosing -- with you about disclosing this in    16:24:34

13    any public filings or any SEC filings in regard to    16:24:38

14    this transaction?    16:24:42

15    A.    I felt -- again, very positive -- that    16:24:43

16    my name was in the SEC filings.  So I felt that    16:24:45

17    since I was referenced as the person who made the    16:24:48

18    introduction in the proxy statement, that was    16:24:52

19    consistent with all the things I had been told.    16:24:54

20    So here I am in the proxy statement saying Jon    16:24:57

21    Ledecky introduced Ari Emanuel and Endeavor to the    16:25:00

22    company in the discussion that they have to have    16:25:00

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

263

| | | |
|---|---|---|
| 1 | for a proxy statement for the acquisition. | 16:25:04 |
| 2 | That was very good to see that.  I felt | 16:25:07 |
| 3 | very good about that.  It was consistent with what | 16:25:09 |
| 4 | the investment banker had told me Leslie had said | 16:25:12 |
| 5 | to him.  It was consistent with what Jim Gillis | 16:25:14 |
| 6 | had told me.  So it came as quite a shock when | 16:25:17 |
| 7 | Leslie told me I was entitled to no compensation | 16:25:20 |
| 8 | after the deal had closed. | 16:25:24 |
| 9 | Q.    When was the first conversation you had | 16:25:26 |
| 10 | with Leslie Flegel about being compensated under | 16:25:28 |
| 11 | the agreement? | 16:25:28 |
| 12 | A.    I would say again, as I answered | 16:25:28 |
| 13 | earlier, somewhere around the time of the | 16:25:30 |
| 14 | transaction's announcement. | 16:25:33 |
| 15 | Q.    In November of 2004? | 16:25:34 |
| 16 | A.    Again, around that period.  Was it | 16:25:36 |
| 17 | exactly November?  Was it after Thanksgiving?  I | 16:25:38 |
| 18 | mean, it was somewhere around there.  I was happy | 16:25:43 |
| 19 | for him and I felt very good about it. | 16:25:45 |
| 20 | And it wasn't a question of having to | 16:25:45 |
| 21 | have a conversation because, again, I had in my | 16:25:46 |
| 22 | mind three data points that were very good data | 16:25:48 |

VIDEOTAPED DEPOSITION OF JONATHAN J. LEDECKY
CONDUCTED ON WEDNESDAY, MARCH 29, 2006

264

| | | |
|---|---|---|
| 1 | points.  I had my mention in the proxy.  I had Jim | 16:25:55 |
| 2 | Gillis telling me.  I had the investment banker | 16:25:55 |
| 3 | telling me.  I had the agreement.  So I felt these | 16:25:55 |
| 4 | are guys I've dealt with for six years, they're | 16:25:58 |
| 5 | extremely honorable people, this is wonderful for | 16:26:02 |
| 6 | everybody. | 16:26:06 |
| 7 | Q.    Okay.  And what did Leslie Flegel tell | 16:26:07 |
| 8 | you when you had that conversation with him? | 16:26:10 |
| 9 | A.    He told me that he owed me something. | 16:26:12 |
| 10 | I then tried to press him what the something was, | 16:26:15 |
| 11 | and he said, "I'll have to think about it."  And | 16:26:18 |
| 12 | we went back and forth on that, and eventually he | 16:26:21 |
| 13 | said, "I couldn't possibly pay you millions of | 16:26:24 |
| 14 | dollars.  How could I do that with my board of | 16:26:27 |
| 15 | directors?  I couldn't possibly do that.  Let me | 16:26:30 |
| 16 | think about what I can do with my board of | 16:26:31 |
| 17 | directors.  There are things that I can and can't | 16:26:33 |
| 18 | do without my board approval.  I'll get back to | 16:26:36 |
| 19 | you." | 16:26:39 |
| 20 | Q.    All right.  And did he get back to you? | 16:26:39 |
| 21 | A.    He did. | 16:26:41 |
| 22 | Q.    When was that? | 16:26:42 |