UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IRONBOUND PARTNERS, LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> SOURCE INTERLINK COMPANIES, INC. <br><br> *Defendant.* | Case No. 1:05CV01039 (JGP) |

### DECLARATION OF JONATHAN LEDECKY

I, Jonathan Ledecky, declare as follows:

1. I am a resident of the District of Columbia and the sole member of Ironbound Partners, LLC, which maintains its only office in the District of Columbia. With the exception of an administrative assistant, I am solely responsible for managing Ironbound's business and my other business interests, which I do from my office in the District of Columbia. If I am required to travel to Florida for prolonged periods of time for this case, it will disrupt my ability to manage my business affairs in the District of Columbia.

2. The Referral Agreement between Ironbound and Source (the "Agreement") was negotiated by me and Source's general counsel, Douglas Bates, by email, telephone, and fax. I conducted all negotiations relating to the Agreement from Ironbound's office in the District of Columbia.

3. The purpose of the Agreement was to introduce Source to people who could assist that company in increasing its national distribution and fulfillment business, including distribution and fulfillment to residents and consumers in the District of Columbia.

4. During our negotiation of the Agreement, Mr. Bates sent me email, fax, and telephone communications concerning the terms and conditions of the Agreement, including proposed revisions thereto, to Ironbound's office in the District of Columbia. After reaching agreement on the material terms, Mr. Bates revised the Agreement and emailed it to me to sign in the District of Columbia.

5. I executed the Agreement in the District of Columbia and returned it to Mr. Bates, who counter-signed the Agreement and faxed the fully executed document back to me at Ironbound's office in the District of Columbia. Mr. Bates also sent email and fax communications to me in the District of Columbia concerning a nondisclosure agreement to be entered between Source and Endeavor/Emmanuel, which was executed in connection with my introduction.

6. Ironbound had two obligations under the Agreement: (1) to arrange a telephone conference to introduce Source to Ironbound's client (i.e., Endeavor/Emmanuel), and (2) to assist Source in evaluating and negotiating any proposed business ventures between Source and Endeavor/Emmanuel. (Agreement ¶ 1). The Agreement expressly permits Ironbound to perform its obligations in the District of Columbia. (Agreement at ¶ 5(j)).

7. Ironbound performed its obligations under the Agreement in the District of Columbia. In accordance with the Agreement, I arranged, initiated and attended a telephone conference in which I introduced Source to Endeavor/Emmanuel from Ironbound's office in the District of Columbia. I also assisted Source in facilitating a business relationship with Endeavor/Emmanuel through telephone and email communications with Source and with Endeavor/Emmanuel from the District of Columbia. Source accepted my introduction and my assistance in facilitating a relationship with Endeavor/Emmanuel, and Source successfully pursued that relationship.

8.  Ironbound stands ready, willing, and able to assist Source in evaluating and negotiating future business relationships with Endeavor/Emmanuel, as provided in the Agreement. If called upon to provide such services, Ironbound would do so from its office in the District of Columbia, as expressly permitted by the Agreement. (Agreement ¶ 5(j)).

9.  Source had two obligations under the Agreement: (1) pay Ironbound compensation equal to 5% of the net income earned by Source as a result of its relationship with Endeavor/Emmanuel during the five-year period following the establishment of a business relationship between Source and Endeavor/Emmanuel (Agreement ¶ 2), and (2) provide Ironbound an annual accounting of net income earned by Source attributable to the business relationship with Endeavor/Emmanuel. (Agreement ¶ 4). Pursuant to the Agreement, all notices from Source to Ironbound were to be sent by Source to Ironbound in the District of Columbia. (Agreement ¶ 5(c)). Similarly, the only location for Source to send Ironbound's compensation was at Ironbound's office in the District of Columbia, the address of which is provided in the Agreement. Thus, the accounting and compensation to be given to Ironbound was to have been sent to Ironbound's office in the District of Columbia.

10. Following my introduction of Source to Endeavor/Emmanuel, Source's Chairman and Chief Executive Officer, S. Leslie Flegel, made telephone calls to me in the District of Columbia concerning Source's relationship with Endeavor/Emmanuel. Additionally, Mr. Flegel's secretary made telephone calls to me in the District of Columbia, usually for the purpose of arranging conferences with Mr. Flegel. I, in turn, communicated with both Source and Endeavor/Emmanuel from Ironbound's office in the District of Columbia to assist Source in facilitating its relationship with Endeavor/Emmanuel. All or substantially all of Source's communications with Ironbound were directed into the District of Columbia.

11.     Prior to entering into the Agreement, I assisted Source with several transactions that involved communications by Source with me in the District of Columbia. In each case, Source's representatives directed communications into the District of Columbia by telephone and wire for the purpose of advancing Source's business interests.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

_____
Jonathan Ledecky

Dated: July 7, 2005