# EXHIBIT C

```
                    UNITED STATES DISTRICT COURT

                    FOR THE DISTRICT OF COLUMBIA


JONATHAN LEDECKY d/b/a        ) Civil Action No.
IRONBOUND PARTNERS,           ) 1:05CV01039(JGP)
1400 34th Street NW           )
Washington, DC  20007         )
                              )
            Plaintiff,        )
                              )
       v.                     )
                              )
SOURCE INTERLINK COMPANIES,   )
INC.                          )
27500 Riverview Center Blvd., )
Suite 400                     )
Bonita Springs, FL  34134     )
                              )
            Defendant.        )
_____)


              DEPOSITION OF ERIKA PAULSON

                 Los Angeles, California

                Wednesday, May 17, 2006




Reported by:
Carmen R. Sanchez
CSR No. 5060
```

**Page 106**

1    The third block down or so there's a
2 title that says, "Ari Emanuel." Do you see that?
3    A    Yes.
4    Q    On the first page. And just so I
5 understand it, and I think it's fairly clear, but let's
6 just make sure. The first column brings up an issue.
7 The second column entitled, "Alliance's Position"
8 obviously is the position at that time that Alliance
9 had on the issue; and then the third column entitled,
10 "Source's Position" shows what Source's position was at
11 that time on the issue; correct?
12    A    Yes.
13    Q    Okay.
14       About a little over halfway down the
15 paper in the "Merger Agreement" column there's the
16 title "Ari Emanuel"; correct?
17    A    Yes.
18    Q    And if you read across, this issue deals
19 both with his appointment as a director of Source and a
20 transaction fee of some sort; correct?
21    A    Yes.
22    Q    All right. And it says in the first
23 column, "Appoint as SORC" -- that's S-O-R-C, which is
24 Source's ticker ID; correct?
25    A    Yes.

**Page 107**

1    Q    "Appoint as SORC independent director,"
2 and then over in Source's position it says, "Agreed";
3 right?
4    A    Yes.
5    Q    Okay.
6       Is that referring to what we talked
7 about before; that is, Mr. Emanuel being that 11th
8 director on the board of Source?
9    A    Yes.
10    Q    Okay.
11       Now, the second line says, "Transaction
12 fee to be paid by SORC."
13       What does that refer to?
14    A    That means that we would like to have
15 Source pay Ari's fee, whatever that might be.
16    Q    Okay.
17       Is that the fee that ended up being the
18 million-and-a-half dollars?
19    A    Yes.
20    Q    Okay. And over on Source's position, it
21 says, "Think they are in agreement"; correct?
22    A    It says that, yes.
23    Q    Okay. And why does it say that? Were
24 they in agreement with that?
25    A    Well, I think --

**Page 108**

1    Q    "They" being Source?
2    A    I think they were in agreement that the
3 combined company would pay it. I mean, we always try
4 to get -- I think we always try to get the company to
5 pay the transaction fees, and I think their initial
6 position was Yucaipa should pay it; and we said, "We're
7 not paying it, you know. Our portfolio company is
8 paying it," which, obviously, eventually would be
9 merged into Source; so it would be the combined company
10 who would pay the fee.
11    Q    Okay. But that's not what it says;
12 right? It says, "Transaction fee to be paid by SORC";
13 correct?
14    A    Well, Source will be Source/Alliance.
15    MR. STERN: Object to the form.
16    THE WITNESS: It would be a combined company
17 because it gets paid at close. It's contingent upon
18 the deal closing; so it would be the combined company
19 would be paying it.
20 BY MR. MILLER:
21    Q    How did you know it was contingent upon
22 the deal closing?
23    A    Because that's typically how they're
24 structured.
25    Q    Okay.

**Page 109**

1       Did you talk with anyone at Source about
2 that particular topic, that they would be paying it
3 after the merger?
4    A    I think I had -- early on I -- I had
5 some discussions, and I don't remember if they were
6 with Leslie or not. And their view was that initially
7 that Yucaipa should pay it, and I said that we're not.
8    Q    Did you --
9    A    We're not paying that. Our portfolio
10 company will pay that which, you know, again, it would
11 eventually be a Source/Alliance combined company.
12    Q    Okay.
13       Did you tell anyone at Source what the
14 final fee would be, the million-and-a-half dollars?
15    A    I don't remember if I did specifically
16 or if Ron did.
17    Q    And who decided that the fee would be a
18 million-and-a-half dollars?
19    A    I believe Ron Burkle.
20    Q    Are you aware of any written agreement
21 by which Mr. Emanuel was going to be paid this
22 million-and-a-half-dollar fee?
23    A    No.
24    Q    Are you aware of any contract that
25 required any entity to pay Mr. Emanuel a

**Page 110**

```
1  million-and-a-half-dollar fee?
2      A    No, I'm not.
3      Q    Do you know if Mr. Burkle told
4  Mr. Flegel that Source had to pay Mr. Emanuel's fee?
5      A    I don't know.
6      Q    So the million-and-a-half-dollar fee
7  decided by Mr. Burkle was, as far as you know, done
8  orally?
9      A    Yes.
10     Q    Okay. So if I understand this
11 correctly, then -- and the fee was paid by Source after
12 the merger; correct?
13     A    The fee was paid by the combined
14 company, yes.
15     Q    Okay. After the merger?
16     A    Yes.
17     Q    And the combined company was a public
18 company; right?
19     A    Yes.
20     Q    Still is a public company?
21     A    Yes.
22     Q    Okay. So, as I understand it -- oh, and
23 Mr. Burkle is a shareholder of that public company?
24     A    Yes.
25     Q    Through AEC?
```

**Page 111**

```
1      A    Yes.
2      Q    Right? Okay.
3           So, as I understand it, the testimony is
4  that a publicly traded company agreed to pay one of its
5  directors a million-and-a-half dollars based on an oral
6  agreement of one of its shareholders; is that right?
7      MR. STERN: Object to the form.
8      THE WITNESS: I'm not sure what public company
9  has to do with it but --
10 BY MR. MILLER:
11     Q    Well, you're aware -- you're on the
12 board of a public company; right?
13     A    Yes.
14     Q    You know that a public company has
15 fiduciary duties to its shareholders; correct?
16     A    It was disclosed in the S-4.
17     Q    I understand that. Do you understand
18 that a public company has fiduciary duties to its
19 shareholders; is that correct?
20     A    Yes, and I understand it was fully
21 disclosed. So, yes, Source, the combined company with
22 Alliance, did pay Ari Emanuel a fee.
23     Q    And it was based on the oral say-so of
24 one of its shareholders; correct?
25     MR. STERN: Object to the form.
```

**Page 112**

```
1      THE WITNESS: I don't know of any written
2  document.
3  BY MR. MILLER:
4      Q    Okay. Does Mr. Burkle know that
5  Mr. Flegel has testified that Source paid Mr. Emanuel
6  this million-and-a-half dollars because Mr. Burkle told
7  Mr. Flegel they had to?
8      MR. STERN: Object to the form.
9      THE WITNESS: I have no idea what Mr. Burkle
10 knows.
11 BY MR. MILLER:
12     Q    Mr. Burkle obviously had a personal
13 interest in this merger as well, obviously; correct?
14     A    I don't know.
15     Q    Well, I mean, he ended up being a large
16 shareholder of Source. He was personally interested in
17 this merger.
18     MR. STERN: Object to the form.
19     THE WITNESS: Yes, he ended up being a large
20 shareholder of Source.
21     MR. MILLER: Okay.
22     THE WITNESS: I think all shareholders
23 benefited from the merger.
24 BY MR. MILLER:
25     Q    Okay. Do you think all shareholders
```

**Page 113**

```
1  were okay with a million-and-a-half dollars being paid
2  based on the oral say-so of Mr. Burkle?
3      A    I think all shareholders --
4      MR. STERN: Object to the form.
5      THE WITNESS: I think all shareholders are
6  participating in significant value creation by
7  combining the two companies.
8  BY MR. MILLER:
9      Q    That wasn't my question. My question
10 is: Do you think that all shareholders would be okay
11 with one of the directors being paid a
12 million-and-a-half dollars based on the oral say-so of
13 Mr. Burkle?
14     A    I don't know.
15     MR. STERN: Object to the form.
16 BY MR. MILLER:
17     Q    How would you describe Mr. Emanuel's
18 role in process that ended up in the merger?
19     MR. STERN: Object to the form.
20     THE WITNESS: I would describe it very -- it
21 was at a very high level.
22 BY MR. MILLER:
23     Q    What do you mean by that?
24     A    As far as I know, I had a few
25 conversations with him regarding the status of where
```