# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IRONBOUND PARTNERS, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> SOURCE INTERLINK COMPANIES, INC., <br><br> *Defendant*. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 1:05CV01039 (JGP) <br> ) <br> ) <br> ) <br> ) <br> ) |

PLAINTIFF'S RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, plaintiff Ironbound Partners, LLC ("Ironbound") objects to defendant's first set of interrogatories as follows:

General Objections

1. Ironbound objects to the definitions and instructions to the extent they impose obligations greater than those required by the Federal Rules of Civil Procedure.

2. Ironbound does not warrant or guarantee that its understanding or use of terms contained in defendant's interrogatories accords with the meaning intended by defendant.

3. Ironbound objects to each interrogatory to the extent it imposes burdens or seeks information beyond that permitted by the Federal Rules of Civil Procedure.

4. Ironbound objects to each interrogatory to the extent it seeks information protected by the attorney work product doctrine, the attorney-client privilege, Fed. R. Civ. P. 26, or any other exemption from disclosure that Ironbound is entitled by law to assert.

5.     The supplying of any information does not constitute a waiver of any objections that may be raised at or before trial including, without limitation, objections as to admissibility and relevance.

6.     Ironbound reserves the right to modify, amend, or supplement its response to these interrogatories.

Specific Responses and Objections

INTERROGATORY NO. 1: Identify whom you contend is the "Client" as that term is used in the Referral Agreement.

RESPONSE TO NO. 1:

The Client is The Endeavor Agency, LLC, which includes its founder and principal, Arie Emanuel. The natural person that Ironbound introduced to Source was Emanuel.

INTERROGATORY NO. 2: Describe your pre-existing relationship with the Client prior to the execution of the Referral Agreement, as recited in the Referral Agreement.

RESPONSE TO NO. 2:

Ironbound objects to this interrogatory on the ground that it is not reasonably calculated to lead to the discovery of admissible evidence. This interrogatory seeks information about business relationships unrelated to this case. The only relevant issue is whether Ironbound introduced Source to the Client as provided by the Agreement. Subject to and without waiving this and its general objections, Ironbound states that, prior to the introduction, it was discussing with Emanuel/Endeavor other business transactions that are not related to Source and are not relevant to this case.

INTERROGATORY NO. 3: Describe when and how you disclosed the identity of the Client to Source, including, but not limited to, whether you disclosed the name of the Client to Source in writing immediately following execution of the Referral Agreement.

RESPONSE TO NO. 3:

Pursuant to Section 1 of the Referral Agreement, promptly following execution of the Agreement, on or about April 27, 2004, Ledecky arranged a conference call in which he introduced Source's Flegel to Endeavor's Emanuel. Additionally, although not required by the terms and conditions of the Referral Agreement, the name of the Client was disclosed by Ledecky in writing in a non-disclosure agreement executed by the parties prior to the introductory conference call. Prior to the execution of the Referral Agreement, Ledecky provided Source with a draft of the non-disclosure agreement that did not disclose the Client's identity, which the parties understood would be inserted upon the execution of the Referral Agreement. After the Referral Agreement was signed, Endeavor's name was inserted into the non-disclosure agreement. Thereafter, Source's Bates provided Ledecky with Source's executed copy, which Ledecky then forwarded to Endeavor for its signature. Ledecky also generally recalls sending Source a written addendum disclosing the identity of the Client following the execution of the Referral Agreement, but he cannot locate a copy.

INTERROGATORY NO. 4: Describe in detail what communication you had with the Client prior to the execution of the Referral Agreement regarding the Client's interest in establishing a "business relationship" with Source, as recited in the Referral Agreement.

RESPONSE TO NO. 4:

Ledecky, Emanuel, and others at Endeavor discussed Source's business and ways in which Emanuel/Endeavor could help Source expand its business into the distribution of home entertainment content products based on Emanuel/Endeavor's relationships with key players in

the industry, such as movie studios. This included, without limitation, leveraging Source's extensive distribution network to distribute home entertainment content products at the point of purchase in supermarkets and other retail outlets. Based on his relationship with key players in the industry, Emanuel believed he could assist Source in entering the market for the distribution of home entertainment content and was enthusiastic about a possible business relationship with Source.

INTERROGATORY NO. 5: Describe in detail what actions you took in performance of your obligations under the Referral Agreement and when those actions took place.

RESPONSE TO NO. 5:

Ironbound, through Ledecky, introduced Source to Endeavor/Emanuel on or about April 27, 2004 via a conference call arranged by Ledecky. During the call, Messrs. Flegel and Emanuel had general discussions about potential business opportunities and the distribution of home entertainment content (i.e. CDs and DVDs). No opportunities were ruled out or limited. Following this introduction, Ledecky arranged a meeting at Source's headquarters in New York City that was attended by Ledecky, Flegel, James Gillis, Dean Heine, Emanuel, and one of Emanuel's employees from Endeavor. During the meeting, the parties discussed ways in which Endeavor could aid Source in expanding its business into the distribution of home entertainment content products and the possibility of Endeavor acquiring Source.

Both before and after introducing Source to Endeavor, Ledecky had discussions with Flegel, Gillis and others regarding Endeavor's business, its principals, and its experience in the industry. During a phone call prior to the introduction, Ledecky discussed with Flegel Endeavor's extensive Hollywood contacts and a representative list of Endeavor's clients. Ledecky also discussed the fact that Endeavor was a top talent agency and had relationships with

all the major studios, and he conveyed Emanuel's belief that Endeavor could assist Source in expanding its business into the distribution of home entertainment content products such as DVDs and CDs. Ledecky believed that the information provided was sufficient for Source to make a business judgment about a relationship with Endeavor, and no follow-up information was requested by Source. Had Source requested additional information, Ledecky would have gladly supplied it. In fact, after speaking to Emanuel, Flegel told Ledecky how impressed he was with Emanuel and stated that Emanuel had given him information about Endeavor and the great things the company was doing, suggesting to Ledecky that Flegel felt comfortable with the information he had received.

In or about May 2004, Flegel advised Ledecky that Emanuel was not returning his calls and stated that he, Flegel, did not intend to pursue the relationship further. To prevent the relationship between Flegel and Emanuel from being derailed over what appeared to be a perceived personal slight by Flegel, Ledecky worked with both parties to clear up any misunderstandings and to get the relationship back on track. This included calling Emanuel, relating the situation, discussing the magnitude of the opportunity, and obtaining Emanuel's commitment to call Flegel and clear up any misunderstandings, which Emanuel did. Following this conversation, Flegel advised Ledecky that he had spoken with Emanuel and the relationship was back on track. Ledecky was in communication with Flegel throughout Source's discussions with Alliance and repeatedly offered his assistance, which Flegel declined.

INTERROGATORY NO. 6: State the factual basis for your contention that a "business relationship" exists between Source and Emanuel as that term is used in the Referral Agreement, including, but not limited to, the date such alleged business relationship was established.

-5-

RESPONSE TO NO. 6:

According to Source's public filings with the SEC and statements by Messrs' Flegel and Bates, among others, Source entered into a consulting arrangement with Emanuel and subsequently appointed Emanuel its Board of Directors. Upon information and belief, Endeavor was paid $1.5 million by Source for the consulting services provided by Emanuel/Endeavor in connection with the merger. Also upon information and belief, and according to Source's public filings and its officers, the parties have a continuing business relationship, pursuant to which Emanuel/Endeavor is continuing to consult with Source on business opportunities for which Endeavor will be paid commissions on revenues generated for Source by Emanuel.

INTERROGATORY NO. 7: State the factual basis for your contention in paragraph 7 of the Complaint that "Ironbound's entitlement to compensation under the Agreement includes income earned from any and all business dealings and transactions including, without limitation, business combinations, strategic alliances, distribution agreements, sales agreements and fulfillment agreements, and is not limited to income earned by Source for particular types of transactions.

RESPONSE TO NO. 7:

The compensation to which Ironbound is entitled is based on the plain language of the Referral Agreement, which provides that "Source shall pay to Ironbound, and Ironbound shall accept, compensation equal to 5% of the net income recorded by Source as a result of its relationship with Client during the five-year period following the date ("the Establishment Date") on which a business relationship is established between Source and Client." The contract places no limitation on the type of transaction or business dealing for which Ironbound is entitled to compensation. The sole requirement is that net income be recorded as a result of Source's relationship with Endeavor/Emanuel.

INTERROGATORY NO. 8: State the factual basis for your contention in paragraph 7 of the Complaint that "[O]nce Ironbound introduced Emanuel to Source, the only condition to Ironbound's right to compensation was that Source record "net income" as a result of its relationship with Source [*sic*]."

RESPONSE TO NO. 8:

Once Ironbound fulfilled its obligations under the Agreement by making the introduction, and once Source entered into a business relationship with the person Ironbound introduced, Ironbound was entitled to compensation for net income recorded by Source as a result of that business relationship.

INTERROGATORY NO. 9: State the factual basis for your contention in paragraph 17 of the Complaint that Emanuel "was subsequently retained as an advisor and consultant to [Source.]"

RESPONSE TO NO. 9:

This statement is based on the express representation contained in Source's Amendment No. 1 to Form S-4 Registration Statement Under the Securities Act of 1933, which was filed with the SEC on January 18, 2005.

INTERROGATORY NO. 10: State the factual basis for your contention in paragraph 21 of the Complaint that "[A]ccording to Flegel, the [Source-Alliance] merger would not have been consummated but for Emanuel's efforts.

RESPONSE TO NO. 10:

This statement was specifically made by Flegel during lunch with Ledecky in Baltimore on or about April 20, 2005. Flegel stated that Emanuel was critical to the success of the transaction and credited Emanuel with "saving the deal" after Source and Alliance reached an impasse in the negotiations and Source decided to terminate the merger discussions. According to Flegel, without Emanuel, the merger would not have happened.

As to answers:

_____
Jonathan Ledecky

As to objections:

_____
Matthew D. Schwartz (DC Bar No. 436519)
THOMPSON COBURN LLP
1909 K. Street, N.W. Ste. 600
Washington, D.C. 20006-1167
(202) 585-6900 (telephone)
(202) 585-6969 (facsimile)

*Attorney for Plaintiff Ironbound Partners, LLC*

Dated: December 16, 2005

- 8 -

As to answers:

_____
Jonathan Ledecky

As to objections:

_____
Matthew D. Schwartz (DC Bar No. 436619)
THOMPSON COBURN LLP
1909 K. Street, N.W. Ste. 600
Washington, D.C. 20006-1167
(202) 585-6900 (telephone)
(202) 585-6969 (facsimile)

*Attorney for Plaintiff Ironbound Partners, LLC*

Dated: December 16, 2005

<u>CERTIFICATE OF SERVICE</u>

This is to certify that on the 16th day of December, 2005, a true and correct copy of the above and foregoing Plaintiff's Responses and Objections to Defendant's First Set of Interrogatories and Requests for Production was served via U.S. mail, postage prepaid, on the following:

> Kevin E. Stern
> C. Allen Foster
> Maria E. Hallas
> GREENBERG TRAURIG, LLP
> 800 Connecticut Ave., N.W.
> Suite 500
> Washington, D.C. 20006

*Allison Sinoski*