# EXHIBIT D

*THIS LETTER IS FOR THE PURPOSE OF*
*SETTLEMENT AND COMPROMISE ONLY*

# Ironbound Partners, LLC
## 901 15th Street, NW
## Suite 950
## Washington, DC 20005

May 3, 2005

**By FEDEX**

S. Leslie Flegel
Chairman and CEO
Source Interlink Companies
27500 Riverview Center Blvd.
Bonita Springs, Florida 34134

Re:   Settlement Proposal

Dear Leslie:

This is to follow up on our recent lunch discussion concerning Ironbound Partners, LLC's compensation under its referral agreement with Source Interlink Companies. I appreciate your taking the time to explain the basis for Source's position. I also trust that you appreciate Ironbound's position, which is outlined in its attorney's March 29, 2005 letter to Doug Bates (copy enclosed). Rather than debate the merits of our respective positions, and in an effort to continue a positive relationship, I write to propose a settlement of our dispute.

Based on the Alliance transaction, and future income that Source is expected to realize from its relationship with Ari Emanuel, Ironbound firmly believes that it will ultimately be entitled to receive substantially in excess of $10 million under the referral agreement. Nevertheless, I believe that a definitive settlement, which specifically addresses our mutual expectations, is worth exploring. To this end, Ironbound proposes to settle on the following terms:

1. Source will grant Ironbound 50,000 stock options priced at $8, as you have previously offered;

2. Source will pay Ironbound the greater of (a) $5 million, or (b) 5% of the net operating income derived from sales generated by Mr. Emanuel / Endeavor Agency over a five year period;

3. Source and Ironbound will enter into a new "finder's fee" agreement, the form of which is attached, for the introduction of future business opportunities, including mergers and

*THIS LETTER IS FOR THE PURPOSE OF SETTLEMENT AND COMPROMISE ONLY*

S. Leslie Flegel
Chairman and CEO
Source Interlink Companies
May 3, 2005
Page 2

acquisitions, to Source by Ironbound — as we discussed, I currently have a potential $1 billion transaction to introduce to the Company; and

4. Ironbound and Source will terminate the existing referral agreement and execute a mutual release from all further liability thereunder.

While I am hopeful that we can devote our efforts to growing the company, given the advice I have received from both general counsel and special counsel conversant in these matters, I am prepared to take whatever action may be necessary to protect Ironbound's interests under the referral agreement. At the same time, I believe that an amicable resolution of this dispute is in our mutual interest and am committed to working with you toward this end. As such, Ironbound will postpone commencing any action until May 18, 2005 in order to allow Source sufficient time to confer with its advisors and respond to this offer.

While I regret the formality, I am told that I need to state that this letter is for the purposes of settlement and compromise only and does not constitute an admission of any matter in dispute between us. It is my sincere hope that we can resolve this matter amicably and without unnecessary expense, embarrassment or disruption to either party.

Regards,

Jonathan Ledecky

Enclosures

# THOMPSON COBURN

Thompson Coburn LLP
Attorneys at Law

Suite 600
1909 K Street, N.W.
Washington, D.C. 20006-1167
202-585-6900
FAX 202-585-6969
www.thompsoncoburn.com

March 29, 2005

Matthew D. Schwartz
direct dial 202-585-6932
direct fax 202-508-1020
mschwartz@thompsoncoburn.com

BY FAX AND MAIL

Douglas J. Bates, Esquire
Secretary and General Counsel
Source Interlink Companies, Inc.
27500 Riverview Center Blvd., Suite 400
Bonita Springs, FL 34134

Re:    Referral Agreement

Dear Mr. Bates:

I am writing to follow up on our conversation last week concerning the compensation owed by Source Interlink Companies, Inc. to Ironbound Partners, LLC under that certain referral agreement (the "Agreement") dated as of April 26, 2004. Pursuant to the Agreement, Ironbound introduced Source to Mr. Ariel Emanuel of The Endeavor Agency LLC, who in turn arranged the recent merger between Source and Alliance Entertainment Corp. Inasmuch as Source is expected to record substantial net income as a result of this merger, Ironbound has asked that we work with your office to implement mutually acceptable procedures to track the income attributable thereto so that Ironbound can be fairly compensated in accordance with the terms of the Agreement.

The terms of the Agreement are simple and straightforward. In exchange for Ironbound introducing Source to Mr. Emanuel, Source agreed to pay Ironbound "compensation equal to 5% of the net income recorded by Source as a result of its relationship with [Mr. Emanuel]" for a period of five years. The Agreement is not limited to particular types of transactions, but rather, is broadly worded so that it covers business dealings of every nature. Indeed, the only predicate to payment is that Source increase its net income as a result of its relationship with Mr. Emanuel. Ironbound's right to compensation is not dependent upon the nature of the transaction from which such income is derived, and there is no basis to suggest that the Agreement does not cover mergers or acquisitions.

There is no dispute that Ironbound introduced Source to Mr. Emanuel. Nor is there any dispute that Mr. Emanuel (1) introduced Source to Alliance, (2) was instrumental in facilitating the merger, and (3) was paid $1.5 million by Source. Indeed, as Source's Chairman and CEO, Mr. S. Leslie Flegel, candidly acknowledged during lunch with Mr. Jonathan Ledecky last Friday, but for Mr. Emanuel's efforts, the merger would not have been consummated. By the

Douglas J. Bates, Esquire
March 29, 2005
Page 2

same token, but for Ironbound's efforts, Source would not have been introduced to Mr. Emanuel and realized the benefit of that relationship, which ultimately resulted in the Alliance merger.

Notwithstanding these facts, Source asserts that the Agreement was never intended to cover the merger, but instead, merely entitles Ironbound to a "commission" for revenues generated as a result of a transaction between Source and Mr. Emanuel. In other words, Source argues that Ironbound should not be compensated because Ironbound did not introduce Source to Alliance. This position misapprehends both the terms of the Agreement and the law. Quite simply, the Agreement provides for Ironbound to be compensated for the benefits received by Source as a result of its relationship with Mr. Emanuel, which in the case of the Alliance merger, were and will be substantial. Source's position that Ironbound is not entitled to compensation because the Alliance introduction came through Mr. Emanuel creates a distinction without a difference.

Indeed, an argument similar to that posited by Source was affirmatively rejected by the United States Court of Appeals for the Tenth Circuit in *Broderick v. Keeler*, 29 Fed. Appx. 518, 2002 WL 89908 (10th Cir. 2002). In that case, the court held that plaintiff was entitled to receive a finder's fee even though he did not introduce the corporation to the party with whom it ultimately consummated a transaction, but, rather, introduced the corporation to an intermediary, who in turn made such introduction. In so holding, the court noted that the evidence was more than sufficient "to support the determination that plaintiff . . . had led defendant to [the lender] and ultimately [the] financing to purchase [the company]." *Id.*

It is undisputed that Source has benefited from Ironbound's introduction to Mr. Emanuel and expects to realize substantial profit as a result of its merger with Alliance. Under the circumstances, and not withstanding Source's offer of alternative compensation arrangements, Ironbound is entitled to receive the benefit of its bargain and trusts that Source will honor its obligation.

Doug, it is Ironbound's desire to resolve this matter expeditiously so that the parties can continue what has been a successful and profitable relationship. As you know, Ironbound has identified another significant opportunity to introduce to Source, but believes that it is important to resolve this matter before moving forward.

I look forward to speaking with you.

Sincerely,

Matthew D. Schwartz

# AGREEMENT

This AGREEMENT (the "Agreement") is made this __day of _____, 2005, by and between Ironbound Partners, LLC, a Delaware limited liability company ("Consultant"), and Source Interlink Companies, Inc., a Delaware corporation, ("Company").

## RECITALS

A. Consultant has a pre-existing relationship with an entity (the "Target") that may be interested in establishing a business relationship with the Company.

B. Consultant has agreed to introduce Source to the Target, and Source desires to arrange for Consultant to introduce it to the Target, in accordance with the terms of this Agreement.

## TERMS AND CONDITIONS

1. **TERM.**

The term of this Agreement shall be twenty four (24) months commencing on the date hereof, and month to month thereafter. The term will be terminated as provided herein.

2. **INTRODUCTION.**

Following the execution of this Agreement, Consultant will identify the Target (as defined in paragraph 3 of this Agreement) in writing to the Company. If the Company has already engaged in discussions related to a potential Transaction (as defined in paragraph 2 of this Agreement) with such entity, then within three (3) days of the time Consultant identifies the Target, the Company will notify Consultant of that fact in writing and provide evidence of such prior discussions. Unless Consultant is so notified by the Company, such entity shall be deemed added to Exhibit A and shall become a Target for the purposes of this Agreement, and Consultant shall be entitled to compensation pursuant to the terms and conditions of this Agreement.

3. **COMPENSATION.**

3.1 If, during the term of this Agreement, or one year thereafter, the Company or any affiliate of the Company, enters into any Transaction or Other Business Arrangement with the Target that is consummated within 24 months of the time such Transaction or Other Business Arrangement is entered, the Company shall pay Consultant a fee equal to (a) if a Transaction, a percentage of the Transaction Value as set forth in the fee schedule attached hereto as Exhibit B, or (b) if an Other Business Arrangement, an amount as determined in accordance with paragraph 3.3 of this Agreement, which shall be payable in cash upon the closing of the Transaction or Other Business Arrangement. For the purposes of this Agreement, the term "Target" shall mean the person or entity introduced to the Company by Consultant, as identified in Exhibit A hereto, an affiliate of such entity, any person or entity owning or owned by such entity, or any entity introduced to the Company by such entity.

3.2 For purposes of this Agreement, the term "Transaction" shall mean any transaction or series of transactions in which the Company or one of its affiliates (i) purchases any equity or debt security of the Target, or (ii) acquires, directly or indirectly, the stock or assets of the Target, regardless of the structure or form of the transaction. As used herein, "Transaction Value " means an amount equal to the sum of (a) the aggregate value of any securities issued and any other non-cash consideration actually delivered, and any cash consideration actually paid to the Target or the Target's security holders in connection with a Transaction, and (b) the amount of all indebtedness actually assumed or acquired by the Company or any of its subsidiaries in connection with the Transaction.

3.3 In the event that the Company or any affiliate of the Company enters into a business arrangement with the Target other than as set forth in paragraph 3.1 of this Agreement (an "Other Business Arrangement"), the Company shall compensate Consultant an amount equal to the schedule set forth in Exhibit B, as based upon the Fair Market Value of such Other Business Arrangement. "Fair Market Value" shall be determined by an independent appraiser. To the extent the parties cannot agree within 10 days on the selection of an independent appraiser, each Party shall choose an appraiser and these two appraisers shall select a third appraiser, who shall perform the appraisal. The cost of the appraisal shall be borne by the Company. The Company and Consultant shall fully cooperate with such appraisal process. The Company shall give representatives of the appraiser full access to all information that they may reasonably request concerning the Company for the purpose of preparing the appraisal.

4. SCOPE OF SERVICES.

4.1 This Agreement relates solely to Consultant's services rendered in providing the Company with the name of the Target. There are no additional services that Consultant is required to perform to earn the compensation set forth in paragraph three (3) of this Agreement.

4.2 Consultant will not engage in any negotiations whatsoever on behalf of the Company or the Target. Consultant will not be responsible for providing the Company or the Target with information that may be used as a basis for negotiations between the Company and the Target. Consultant will have no responsibility for, nor will it make recommendations, concerning the terms, conditions or provisions of any agreement between the Company and the Target.

4.3 The parties acknowledge and agree that Consultant is not an agent of the Company for any purpose, and that Consultant has no authority to make any representation, warranty, or agreement on behalf of the Company.

5. REPRESENTATION BY CONSULTANT.

Consultant represents that it is not a licensed securities broker or dealer, or investment advisor, and that this Agreement is not intended for the purpose of buying, selling, or trading securities, or offering counsel or advice with respect to any of such activities. Consultant is not entitled to receive any fee until the Company actually closes a Transaction or Other Business Arrangement as defined herein. Consultant shall comply with all applicable laws in connection with the execution and performance of this Agreement.

6. INDEMNIFICATION.

Company agrees to indemnify, defend and hold Consultant harmless, including is affiliates, successors and assigns, from and against any and all losses, liabilities, claims, or damages and expenses, including reasonable fees and expenses of counsel, to which Consultant or its affiliates, successors and

assigns become subject in connection with or arising from any misrepresentations made by Company or from incorrect information supplied by Company except to the extent such losses, liabilities, claims or damages and expenses were not occasioned by the gross negligence or willful misconduct of Consultant.

7. NO IMPLIED WAIVERS.

The failure of either Party at any time to require performance by the other Party of any provision hereof shall in no way affect the full right to require such performance at any time thereafter. Nor shall the waiver by either Party of a breach of any provision hereof be taken or held to be a waiver of any succeeding breach of such provision or as a waiver of the provision itself.

8. SUCCESSORS AND ASSIGNS.

This Agreement shall be binding on and shall inure to the benefit of the Parties hereto and their successors and assigns.

9. EXPENSES.

9.1 All reasonable expenses associated with the closing of any Financial Transaction pursuant to Paragraph 3 and authorized in writing by Company will be paid by Company.

9.2 Company shall reimburse Consultant for reasonable out-of-pocket expenses incurred in connection with the performance of Consultants' duties hereunder. All such expenses must be approved in writing, in advance, by Company, which approval will not be unreasonably withheld. Consultant agrees to maintain appropriate records and to submit copies of all receipts necessary to support such expenses at the intervals and in the manner prescribed by Company.

10. GOVERNING LAW AND JURISDICTION.

This agreement shall be governed by and construed in accordance with the laws of the commonwealth of Virginia without regard to the choice of law or conflict of law provisions of such laws. Any disputes arising under this agreement shall be resolved by the united states district court for the eastern district of Virginia, Alexandria division, or the Virginia circuit court in Fairfax county Virginia. The parties irrevocably waive any objections they may have, including, without limitation, objections based on venue, to the bringing of any actions or proceedings in such courts. Each Party agrees that service of process of any actions, suits or proceedings arising out of or relating to this agreement may be made by mailing copies thereof by express overnight mail (FedEx priority delivery or equivalent), postage prepaid, to each other Party.

11. COSTS AND ATTORNEYS' FEES.

If either of the parties establishes a breach of this Agreement in a court of competent jurisdiction, the prevailing Party shall be entitled to collect all costs it incurs in enforcing this Agreement, including reasonable attorneys' fees, from the other Party.

12. NOTICES.

Notices to Consultant shall be sent by hand delivery or overnight priority delivery (FedEx next day priority service or equivalent) to Matthew D. Schwartz, Thompson Coburn LLP, 1909 K Street,

N.W., Suite 600, Washington, D.C. 20006-1167. Notices to the Company shall be sent by the same means to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

### 13. LIMITATION OF LIABILITY.

IN NO EVENT WILL EITHER PARTY BE LIABLE FOR ANY INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, TORT, OR OTHERWISE, ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT, EVEN IF THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

### 14. ENTIRE AGREEMENT; MODIFICATIONS.

This Agreement and the exhibits hereto constitute the full and complete understanding between the parties and supersedes all prior agreements, arrangements, and understandings including, without limitation, the Referral Agreement, whether oral or written, between the Parties relating to the subject matter hereof. This Agreement shall be binding upon and enforceable against the parties hereto and their respective affiliates, subsidiaries, successors, assigns, representatives and all those claiming by, through or under each of them respectively.

### 15. AMENDMENTS.

This Agreement may not be altered, amended or modified in any way except by written instrument executed by each of the Parties.

### 16. COUNTERPARTS.

This Agreement may be executed in one or more counterparts, the originals (or facsimile transmissions of such originals) of which, taken together, shall constitute one instrument.

### 17. WAIVER.

No waiver of any provision of this Agreement by any Party shall (i) be effective unless in writing signed by the Party against which it is asserted, or (ii) constitute a waiver of any other provision.

### 18. CONSTRUCTION.

This Agreement shall be construed without regard to any presumption or other rule of law requiring construction against the Party who caused it to be drafted.

### 19. HEADINGS.

The Headings in this Agreement are for reference only and shall be disregarded in construing the Agreement's meaning and intent.

**THIS DOCUMENT IS FOR THE PURPOSE OF SETTLEMENT AND COMPROMISE ONLY**

IN WITNESS WHEREOF, the Parties have caused their authorized representative to execute this Agreement as of the date first written above.

CONSULTANT

By: _____
      Ironbound Partners, LLC

SOURCE INTERLINK COMPANIES, INC.

By: _____

Name: _____

Title: _____

THIS DOCUMENT IS FOR THE PURPOSE OF SETTLEMENT AND COMPROMISE ONLY

## Exhibit A

THIS DOCUMENT IS FOR THE PURPOSE OF SETTLEMENT AND COMPROMISE ONLY

Exhibit B

## FEE SCHEDULE

Pursuant to paragraph 3 of the Agreement, the Company shall pay Consultant a percentage of the Transaction Value, as set forth below:

$0-250 Million……………………………………………………….2.5%

$250-500 Million……………………………………………………...2.0%

$500-750 Million……………………………………………………..1.5%

Amounts over $750 Million……………………………………..1.25%

By way of example, if the Transaction Value is $1 billion, the fee will be computed as follows: (($250,000,000 x .025) + ($250,000,000 x .020) + ($250,000,000 x .015) + ($250,000,000 x .0125)) = $18,125,000.