# EXHIBIT D

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

```
JONATHAN LEDECKY d/b/a           ) Civil Action No.
IRONBOUND PARTNERS,              ) 1:05CV01039(JGP)
1400 34th Street NW              )
Washington, DC  20007            )
                                 )
              Plaintiff,         )
                                 )
       v.                        )
                                 )
SOURCE INTERLINK COMPANIES,      )
INC.                             )
27500 Riverview Center Blvd.,    )
Suite 400                        )
Bonita Springs, FL  34134        )
                                 )
              Defendant.         )
_____)
```

DEPOSITION OF ARIEL ZEV EMANUEL

Beverly Hills, California

Thursday, May 18, 2006

Reported by:
Carmen R. Sanchez
CSR No. 5060

Page 90

1  Q   Okay. Other than that, do you agree
2  with the statement?
3  A   And the date, yes.
4  Q   Okay. And then in the next entry below
5  that --
6  A   And I think, at that point in time,
7  didn't we discuss -- yeah. Okay.
8  Q   Okay. And below that, the next entry,
9  it says (as read):
10     "On June 22, 2004, Mr. Emanuel
11     introduced Messrs. Flegel and Gillis to
12     Erika Paulson, a director of Alliance and a
13     partner with The Yucaipa Companies, LLC, or
14     Yucaipa, which is affiliated with Alliance's
15     controlling share stockholder, AEC Associates,
16     L.L.C. After an informal, general discussion
17     regarding the respective businesses,
18     Ms. Paulson and Messrs. Flegel and Gillis
19     agreed that they should meet again to discuss
20     their mutual interests."
21     Did I read that correctly?
22  A   Correct.
23  Q   Again, other than the date, because I
24 recognize you don't remember the dates, do you agree
25 with that statement?

Page 91

1  A   Yeah.
2  Q   Okay. Let me turn to page -- ask you to
3  turn, rather, to page 50. Again, down -- I'm referring
4  to the numbers down at the bottom of the page.
5  A   Fifty?
6  Q   Fifty, yes, sir. Okay.
7      Over on page 50 -- I think you're
8  looking at 49. There you go. The next to last
9  paragraph --
10 A   Yes.
11 Q   -- says -- let's see if I read it right
12 first. It says (as read):
13     "Ariel Emanuel, one of our directors,
14     will be paid $1.5 million upon the consummation
15     of the merger as compensation for consulting
16     services provided to us in connection with the
17     Merger. Mr. Emanuel was not a director at the
18     time we entered into this agreement [sic] with
19     him nor when the board approved the merger."
20     Did I read that correctly?
21 A   Yes, you read it correctly.
22 MR. STERN: Objection. It said "arrangement"
23 not "agreement."
24 MR. MILLER: I'm sorry. Let me reread that --
25 let me start over. Sorry about that.

Page 92

1      Ariel Emanuel -- thank you.
2      "Ariel Emanuel, one of our directors,
3      will be paid $1.5 million upon the consummation
4      of the merger as compensation for consulting
5      services provided to us in connection with the
6      merger. Mr. Emanuel was not a director at the
7      time we entered into this arrangement with him
8      nor when the board approved the merger."
9      Did I read it correctly that time?
10 A   Yes, you did.
11 Q   Oh, thank you.
12     Do you agree with that statement?
13 A   I don't know how -- okay. I mean, okay.
14 Q   Is that accurate?
15 A   That's what it says. That's -- that
16 statement is what they said so ....
17 Q   I know. I'm asking you if they report
18 that correctly in this document?
19 A   Well, from my -- I mean, you're asking
20 me from my perspective is this, you know -- I don't
21 want to say all of a sudden that's incorrect or getting
22 people in trouble, because that's -- whether I disagree
23 or agree with that statement. You can't -- I'm not
24 here to say that that's right or wrong.
25 Q   Well, unfortunately, because I have to

Page 93

1  ask you that question, you actually are here to say
2  whether that's right or wrong; so I'm asking you.
3  A   No, I'm not to define what's right and
4  wrong in that statement. I can tell you what I believe
5  I was doing, not whether that is right or wrong.
6  Sorry.
7  Q   Do you believe that that statement is
8  accurate or not?
9  A   I'm not answering that question.
10 Q   Well, I'm afraid you have to.
11 A   No, I don't. I won't. Because what I
12 don't want to do -- and I feel kind of anxious about
13 right now -- is to say all of a sudden that they said
14 something wrong; and all of a sudden, because they said
15 something wrong, these guys are going to do -- with the
16 SEC get in trouble. I'm not doing that because that
17 has nothing to do with what I'm doing here.
18 MR. McGUIRE: Can we go off the record?
19 MR. MILLER: As long as he's going to answer
20 the question, yeah.
21     (A discussion was held off the record.)
22 BY MR. MILLER:
23 Q   Let me ask my question now.
24 A   No problem. I'm sorry for -- okay.
25 Q   That paragraph that I read, which is the

24 (Pages 90 to 93)

Page 94

```
 1 second from the bottom on page the lower No. 50 of
 2 Exhibit 13, is that an accurate statement?
 3     A    It seems like an accurate statement.
 4     Q    Okay.
 5     A    That I was -- is this as it relates --
 6 can I ask you a question back?
 7     Q    I don't know if I'll answer it, but go
 8 right ahead.
 9     A    Was this as it relates to Source or as
10 it relates to Yucaipa?
11     Q    This is a Source document. It is
12 Form S-4 for the Source Interlink Companies, and it was
13 published before the companies were merged. I think we
14 can all agree to that, because you see the date at the
15 top is January 18, 2005.
16     A    I don't remember --
17     Q    I understand.
18     A    You're asking me for --
19     Q    I don't think there would be an
20 objection the merger --
21     A    My --
22     Q    Let me finish. Hold on one second.
23          I don't think there's any disagreement
24 that the merger actually was finalized on February 28,
25 2005. I understand you don't recall that date. That's
```

Page 95

```
 1 fine. So this is a Source Interlink Companies
 2 document.
 3     A    My understanding is I was a consultant
 4 for Yucaipa.
 5     Q    Okay. Why do you say that?
 6     A    Because that's what I believe.
 7     Q    Why? Could you spell that out for me?
 8     A    Because I did this -- I was acting on
 9 behalf of -- from my perspective, on behalf of Yucaipa
10 in this; and my million-and-a-half was always a
11 conversation with Ron Burkle and Erika Paulson.
12     Q    Okay.
13          So if I understand correctly, you're
14 saying that this is not an accurate statement in this
15 document?
16     A    I'm not saying any -- I'm not -- I'm not
17 doing that. I'm not answering those questions. I'm
18 just telling you what my belief is. You're asking my
19 belief, and that's my belief.
20     Q    Okay.
21          Have you, as a board member, been
22 notified or been told at all that there is anything
23 inaccurate in any of the company's SEC filings?
24     A    I'm not answering any of these questions
25 because I don't know what you're talking -- you're
```

Page 96

```
 1 asking me something that I'm not sophisticated enough
 2 to know about.
 3     Q    Well, I don't think that's a
 4 sophisticated question. You're a member of the board
 5 of Source; correct?
 6     A    Correct.
 7     Q    Okay. As a member of the board of
 8 directors of Source, have you been told by anyone that
 9 there might be inaccurate --
10     A    No.
11     Q    -- statements in any of Source's filings
12 with the SEC?
13     A    No.
14     Q    Okay.
15          Have you been told that general counsel
16 for Source has stated that there is at least one
17 inaccurate statement --
18     A    No.
19     Q    -- in its filing with the SEC?
20     A    No.
21     Q    Are you aware, as a member of the board,
22 that the general -- if the answer is no, that's fine;
23 but I've got to ask the questions.
24     A    I get it. I'm not frustrated. I'm
25 just -- go on.
```

Page 97

```
 1     Q    Are you aware that the general counsel,
 2 Mr. Bates, for Source -- general counsel for Source,
 3 Mr. Bates, has stated or is asserting a materiality
 4 defense to any misstatement in SEC filings regarding
 5 this matter?
 6          MR. STERN: Objection to the form;
 7 mischaracterizes his testimony.
 8          THE WITNESS: I don't know anything about that.
 9          MR. MILLER: Okay.
10     Q    So the board has not been notified about
11 anything like that?
12     A    No, I don't recall. I don't know.
13     Q    Were you, in your role in this merger --
14     A    Uh-huh.
15     Q    -- between Alliance and Source, were you
16 acting in the interest of one side as opposed to the
17 other?
18     A    I think I've already stated that.
19          MR. McGUIRE: You can answer the question
20 again.
21          THE WITNESS: Yes.
22          MR. MILLER: Okay.
23     Q    Whose side?
24     A    Ron Burkle's and Erika Paulson's.
25     Q    Okay. And that was Alliance's side,
```

25 (Pages 94 to 97)