IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN LEDECKY d/b/a<br>IRONBOUND PARTNERS,<br><br>    *Plaintiff*,<br><br>v.<br><br>SOURCE INTERLINK COMPANIES, INC.,<br><br>    *Defendant*. | Civil Action No. 1:05CV01039 (JGP) |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE

Defendant Source Interlink Companies, Inc. ("Source") filed eight motions in limine. Through these motions, its Pretrial Statement, and its extensive objections to Plaintiff's deposition designations, Source is attempting to keep the jury from hearing and judging the evidence in this case. Indeed, some of Source's arguments border on the frivolous. For example, Source claims that its $1.5 million payment to The Endeavor Agency, LLC ("Endeavor") is irrelevant, notwithstanding the fact that this payment proves that Source engaged in a business relationship with Endeavor, the central issue in this case. Additionally, Source seeks to prevent the Plaintiff, Mr. Ledecky, from testifying regarding his understanding of the meaning of the term "business relationship," as that term is used in the Referral Agreement, while at the same time providing the Court with proposed jury instructions that state that the jury may consider "the statements of the parties abut their understanding of the contract." (Def.'s Pretrial Statement, App. F, at 34).

In addition to seeking to exclude relevant, admissible evidence from consideration by the jury, Source is attempting to side-step the necessity of offering evidence regarding disputed

issues by misrepresenting to the Court that certain disputed facts are undisputed. For example, in its Pretrial Statement, Source represents that it is "undisputed" that Endeavor's Ariel Emanuel was not retained as a consultant to Source. (Def.'s Pretrial Statement at 7.) Source's own SEC filings directly contradict this supposed "undisputed" fact. Source's Amendment No. 1 to Form S-4 ("S-4") states, "Ariel Emanuel, one of our directors, will be paid $1.5 million upon consummation of the merger as compensation for consulting services provided to us in connection with the merger." (Ex. A, Excerpt from S-4, at IB 00032). Also, one of Source's many motions in limine addresses this very evidence. (*See* Def.'s Mot. in Limine to Preclude any Arguments Relating to the Effect of Any Misstatements or Inaccuracies in Def.'s Public Filings with the United States Securities and Exchange Commission). Source's claim that it is "undisputed" that Mr. Emanuel did not serve as a consultant to Source, when its own SEC filings state the opposite and it has full knowledge that Plaintiff intends to rely on those documents, is baseless.

    In order to accomplish its mission to shield relevant evidence from consideration by the jury, Source is asking the Court to preclude vast amounts of admissible evidence now, prior to trial, without knowing in what context that evidence may be offered. Some of the evidence Source is attempting to exclude may not even be raised at trial, depending on the circumstances. The appropriate and correct course of action is to wait until trial to determine whether the evidence at issue should be admitted. The Court is capable of making evidentiary rulings within

- 3 -

the context of trial when the purpose for which the evidence may be offered becomes clear.[1]  For these reasons, and for the reasons set forth below, Source's motions in limine should be denied, and the Court should reserve the opportunity to determine the admissibility of evidence if and when that evidence is offered at trial.

I.  Source's Motion in Limine to Exclude Evidence Concerning the Payment of Bonuses, Fees and/or the Awarding of Employment <u>Contracts in Connection with the Alliance Merger</u>

In its Motion in Limine to Exclude Evidence Concerning the Payment of Bonuses, Fees and/or the Awarding of Employment Contracts in Connection with the Alliance Merger, Source seeks to exclude evidence directly relevant to the question of whether Source and Endeavor entered into a business relationship, the central issue in this case.  Specifically, Source seeks to exclude evidence that it paid Endeavor $1.5 million for consulting services rendered by Endeavor's Mr. Emanuel.  That payment is both a business relationship itself and direct evidence that Source and Endeavor engaged in a larger business relationship and, thus, is directly relevant to Plaintiff's breach of contract claims.

Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  In this case, one of the key issues is whether Source and Endeavor entered into a business relationship, thus entitling Mr. Ledecky to compensation based on net income earned as a result of that

---

[1] In two of its motions, Source objects to evidence on Rule 403 grounds. (Def.'s Mot. in Limine to Exclude Evidence Concerning the Payment of Bonuses, Fees and/or the Awarding of Employment Contracts in Connection with the Alliance Merger at 3; Def.'s Mot. in Limine to Preclude Any Arguments Relating to the Effect of Any Misstatements or Inaccuracies in Def.'s Public Filings with the United States Securities and Exchange Commission at 6).  That objection requires the Court to determine whether the probative value of relevant evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.  Fed. R. Evid. 403. The Court should conduct this balancing test if and when this issue is raised at trial so that it can consider Source's objections in the proper context.

relationship, pursuant to the Referral Agreement.  Source has denied that such a business relationship ever existed.  Thus, Source's payment of $1.5 million to Endeavor is directly relevant to a central fact issue in this case, and Source's motion to exclude that evidence should be denied.

Source tries to confuse the issue by claiming that the $1.5 million payment to Endeavor was relevant to Plaintiff's equitable claims that the Court dismissed.  (*See* Def.'s Mot. in Limine to Exclude Evidence Concerning the Payment of Bonuses, Fees and/or the Awarding of Employment Contracts in Connection with the Alliance Merger at 4; Def.'s Motion in Limine to Exclude Evidence and/or Arguments Concerning Pl.'s Now-Dismissed Equitable Claims at 3 (arguing that the dismissal of Plaintiff's equitable claims "means it is no longer even arguably relevant what payments . . . were received by . . . Endeavor . . . in connection with the Alliance merger")).  In fact, the bases for Plaintiff's equitable claims were the valuable benefits Source received from its merger with Alliance, not its payment to Endeavor.  Further, even if Source's $1.5 million payment to Endeavor were relevant to Plaintiff's equitable claims, that is no reason to exclude the evidence from consideration at trial where it is also directly relevant to Plaintiff's breach of contract claim.

Source also seeks to exclude testimony regarding compensation paid to Source's employees in connection with the Alliance merger.  Such evidence is relevant to the bias and credibility of Source's witnesses, as it shows that they had a pecuniary interest in the merger that resulted and will continue to result in net income to Source.  Moreover, because Source's witnesses have not yet offered their direct testimony, it would be premature to exclude such evidence in advance of trial without knowing in what context these issues may arise.  For these reasons, Source's motion should be denied.

II.    Source's Motion in Limine to Preclude Any Arguments Relating
to the Effect of Any Misstatements or Inaccuracies in Defendant's
<u>Public Filings with the United States Securities and Exchange Commission</u>

In its Motion in Limine to Preclude Any Arguments Relating to the Effect of Any Misstatements or Inaccuracies in Defendant's Public Filings with the United States Securities and Exchange Commission, Source opposes any argument that Source violated securities laws or misled investors in its S-4, which Source filed with the SEC in connection with the Alliance merger.[2]  At present, Plaintiff does not expect to argue that Source's S-4 was inaccurate or misled investors with respect to Source's compensating Endeavor's Mr. Emanuel for his merger-related consulting services.  Plaintiff believes Source's S-4 is accurate and expects to argue as such at trial.  Rather, it is *Source* that has claimed that its S-4 included inaccurate information.  Although the S-4, which was filed contemporaneously with the merger, states that Source paid Mr. Emanuel $1.5 million for consulting services rendered to Source (Ex. A, Excerpt from S-4, at IB 00032), Source's General Counsel, Douglas Bates, says that Source's S-4 disclosure "is wrong."  (Ex. B, Bates Dep., 5/5/06 at 106:25).  Source's story now, as opposed to then, is that Mr. Emanuel performed no services for Source.  (Ex. C, Flegel Dep., 5/4/06, at 16:7-18:3; Ex. B, Bates Dep., 5/5/06, at 106:15-107:14).   Hence, it is Source, not Plaintiff, that must argue that Source's S-4 contained an inaccurate disclosure of a vital, material fact in this litigation.

Additionally, as foundation for the S-4, Plaintiff has the right to elicit testimony from Source's witnesses tending to prove the accuracy and reliability of that document, including the facts that (1) by law, Source is required to provide accurate information to the SEC, 15 U.S.C. 78j(b); 17 C.F.R. § 240.10b-5, so it would be against Source's pecuniary and penal interests to

---

[2] Source also notes in its motion that Plaintiff has not disclosed any expert witness regarding whether Source's S-4 violates the securities laws.  Plaintiff has no intention of calling an expert witness on this issue, nor, indeed, would an expert witness be appropriate, as any question regarding whether Source violated the securities laws would be an issue of law.

file inaccurate information with the SEC, (2) the S-4 contains the proxy statement provided to investors in connection with the merger, which is required to be accurate under the securities laws, 15 U.S.C. 78n(a); 17 C.F.R. § 240.14a-9, and (3) Source's own President, James Gillis, testified that the S-4 was accurate (Ex. D, Gillis Dep., 5/3/06, at 177:7-8). The fact that the law requires Source to provide accurate information to the SEC and investors is relevant to show, *inter alia*, that the S-4 is accurate, that Source would have taken care to ensure that the S-4 was not misleading, and to impeach the credibility of Source's senior officers.[3]

Plaintiff does not intend this trial to be a case against Source for violations of the securities laws. However, if Source's officers and directors contradict the statements made in Source's own SEC filings during their testimony at trial, as they did in their depositions, Plaintiff has the right to impeach these witnesses. Fed. R. Evid. 607. In order to impeach their testimony, Plaintiff may use the S-4, and Plaintiff has the right to argue that the S-4 is truthful and reliable because it is required to be accurate by the securities laws.

In a further attempt to exclude evidence regarding the accuracy of its S-4, Source references Rule 3.4 (e) of the ABA Model Rules of Professional Conduct. That rule states that during trial, an attorney shall not "allude to any matter that the lawyer does not reasonably believe is relevant . . . or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant, or the guilt or innocence of an accused." Source's implication is beneath comment. Source went beyond the pale invoking Rule 3.4(e) of the Model Rules to try to prevent the impeachment of its witnesses, clearly permitted by Rule 607 of the Federal Rules of Evidence. Credibility of a witness is always relevant. *United States v. Abel*,

---

[3] The prospect that in impeachment an implication may arise that Source violated the securities laws is not Plaintiff's intent, but it is not grounds for exclusion anymore than the fact that, upon a witness being impeached with his deposition, the prospect might arise that the witness committed perjury.

469 U.S. 45, 52 (1984) ("Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony"); *United States v. Yaughn*, 493 F.2d 441, 443 (5th Cir. 1974) (holding, "[A]nything having a legitimate tendency to throw light on the accuracy, truthfulness and sincerity of a witness may be shown and considered in determining the credit to be accorded his testimony"); *United States v. Zouras*, 497 F.2d 1115, 1118 n.8 (7th Cir. 1974) (holding, "[I]t is well-settled that the credibility of any witness is in issue when he testifies and, therefore, is subject to impeachment"); *Sanders v. Buchanan*, 407 F.2d 161, 162 (10th Cir. 1969) (quoting *Creekmore v. Crossno*, 259 F.2d 697, 698 (10th Cir. 1958) to hold, "The credibility of the witness is always relevant in the search for truth"); *Hampton v. Dillard Dept. Stores*, 18 F. Supp. 2d 1256, 1265 n.4 (D. Kan. 1998) ("The credibility of a witness is always an issue at trial").  Model Rule 3.4(3) does not prohibit an attorney from impeaching a witness' credibility, but, rather, merely forbids an attorney from stating his "personal opinion" on the matter.

III.  Source's Motion in Limine to Exclude Lay Opinion Testimony

In its Motion in Limine to Exclude Lay Opinion Testimony, Source seeks to prevent Mr. Ledecky from testifying as to his understanding of the meaning of the term "business relationship," as that term is used in the Referral Agreement by and between Source and Mr. Ledecky, or whether Source and Endeavor entered into a "business relationship" as contemplated by that agreement.  Mr. Ledecky is a party to the Referral Agreement.  As would anyone in his position, he will not be offering "lay opinion testimony," but, to the extent warranted, will simply be offering his understanding of a contract to which he is a party.[4]  Under Florida law, the

---

[4] During their depositions, Source's officers testified as to their understanding of the term "business relationship." (Ex. B, Bates Dep., 5/5/06, at 37:3-41:18; Ex. C, Flegel Dep., 5/4/06, at 67:6-71:6).  If Source's motion is

- 7 -

intent of the parties to a contract governs. *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Florida, Inc.*, 140 F.3d 898, 911 (11th Cir. 1998) ("[T]he foremost goal of contract construction is to give effect to the intent of the parties"); *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.,* 203 F.R.D. 677, 683 (S.D. Fla. 2001) ("Under Florida law, courts are to interpret a contract so as to give effect to the intent of the parties"); *Am. Home Assurance Co. v. Larken Gen. Hosp., Ltd.*, 593 So.2d 195, 197 (Fla. 1992) ("The intent of the parties to the contract should govern the construction of a contract"); *Barone v. Rogers*, 930 So.2d 761, 764 (Fla. Dist. Ct. App. 2006) ("Contracts are to be construed in accordance with the intentions of the parties"). Mr. Ledecky's understanding as to the meaning of the term "business relationship" and whether the relationship between Source and Endeavor is the type of business relationship that was contemplated by the Referral Agreement is, to the extent such testimony from the parties is warranted, usual and ordinarily admissible, evidence of the parties' intent, not excludable lay opinion testimony.

Furthermore, Source's argument on this point is contradicted by its proposed jury instructions, which state that the jury "may consider . . . the statements of the parties about their understanding of the contract." (Def.'s Pretrial Statement, App. F, at 34). It is disingenuous for Source to seek to exclude the testimony of a party regarding his understanding of the contract while at the same time proposing a jury instruction informing the jury that it may consider precisely such evidence.

Source also erroneously argues that under Florida law, a business relationship exists only "if the parties have existing or prospective legal or contractual rights against each other."

---

successful, and Mr. Ledecky is precluded from testifying regarding the meaning of that term, Source's own witnesses must be prohibited from offering any testimony regarding what constitutes a "business relationship" on the same grounds.

Source's Motion in Limine to Exclude Lay Opinion Testimony at 4 (citing *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1995)).  The case on which Source relies to support this claim makes no such holding.  *Ethan Allen, Inc. v. Georgetown Manor, Inc.* is a case involving a claim for tortious interference with business relationship.  647 So.2d at 814.  The court in that case held that "'the alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights'" in order for the plaintiff to maintain a valid tortious interference claim.[5]  *Id.* (quoting *Register v. Pierce*, 530 So.2d 990, 993 (Fla. Dist. Ct. App. 1988)).  The court did *not* hold that no business relationship may exist absent "existing or prospective legal or contractual rights between the parties," but merely that a tortious interference with business relationship claim requires that the plaintiff have such rights.  *Id.*  Because the instant case does not involve any claims for tortious interference with business relationship, *Ethan Allen, Inc. v. Georgetown Manor, Inc.* and the other tortious interference cases cited in Source's Pretrial Statement are not relevant, nor do they provide any ground for excluding Mr. Ledecky's testimony regarding the meaning of the term "business relationship."  In any event, the words of the Referral Agreement and the parties' intent are determinative.

IV.     Source's Motion in Limine to Preclude Plaintiff From Asserting an Estoppel Claim

Source's Motion in Limine to Preclude Plaintiff From Asserting an Estoppel Claim is nothing more than a summary judgment motion disguised as a motion in limine.  The deadline for filing such motions has long passed.  By order dated May 30, 2006, the Court set June 27, 2006, as the deadline for filing dispositive motions in this case.  The Court should reject Source's attempt to circumvent that order by filing a dispositive motion more than three months after that deadline.  *See, e.g., United States  v. 1948 S. Martin Luther King Dr.*, 270 F.3d 1102, 1108, 1110

---

[5] The court also held, "A protected business relationship need not be evidenced by an enforceable contract." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1995).

(7th Cir. 2001) (affirming the district court's denial of the defendant's motion to dismiss on the grounds that "it was filed well after the dispositive motion deadline and is therefore late" and holding, "Courts have a legitimate interest in ensuring that parties abide by scheduling orders to ensure prompt and orderly litigation"); *Barraza v. Hous. Auth. of City of Seattle*, 2006 WL 1663702, at *6 (W.D. Wash. Jun. 15, 2006) (denying the plaintiff's request for summary judgment as untimely "because it was filed after the deadline for filing dispositive motions in this case").

Even if Source's motion were timely, it should be denied because Plaintiff adequately has alleged an estoppel claim. Under the doctrine of equitable estoppel, "'a party with full knowledge of the facts, which accepts the benefits of a transaction, contract, statute, regulation, or order may not subsequently take an inconsistent position to avoid the corresponding obligations or effects.'" *First Am. Discount Corp. v. Commodity Futures Trading Comm'n*, 222 F.3d 1008, 1016 (D.C. Cir. 2000) (quoting *Kaneb Servs., Inc. v. FSLIC*, 650 F.2d 78, 81 (5th Cir. 1981)). *See also Mick's at Pennsylvania Ave., Inc. v. BOD, Inc.*, 389 F.3d 1284, 1289 (D.C. Cir. 2004); *DeShong v. Seaboard Coast Line R.R. Co.*, 737 F.2d 1520, 1522 (11th Cir. 1984). The record shows that Source had full knowledge that Mr. Ledecky expected to be compensated for net income earned by Source as a result of its relationship with Endeavor. (Ex. C, Flegel Dep., 5/4/06, at 44:8-19, 48:23-49:3, 54:8-25). Source accepted Mr. Ledecky's introduction and accepted all the resulting benefits, including the Alliance merger. Having accepted the benefits of its contract with Mr. Ledecky, and having acknowledged in its public filings that Mr. Ledecky's introduction to Endeavor was the first event leading to the Alliance merger (Ex. A, S-4, at IB 00058; Ex. D, Gillis Dep., 5/3/06, at 95:17-97:19, 98:16-99:1), Source is estopped from denying its obligations under that contract.

V. Source's Motion in Limine to Exclude Evidence and/or
<u>Arguments Concerning Plaintiff's Now-Dismissed Equitable Claims</u>.

Despite its title, Source's Motion in Limine to Exclude Evidence and/or Arguments Concerning Plaintiff's Now-Dismissed Equitable Claims is not limited to evidence that is solely relevant to Plaintiff's equitable claims. Rather, it also seeks to exclude evidence relevant to Plaintiff's breach of contract claims. First, Source argues that any benefits or value obtained by Source from the Alliance merger are no longer relevant to this case. Plaintiff concedes that the *measure* of the value Source received from the Alliance merger is not relevant to the liability phase of this bifurcated case but rather is an issue to be addressed during the damages phase. However, pursuant to the Referral Agreement, the fact that Source earned net income as a result of the Alliance merger is relevant to the liability phase to show that Source earned net income as a result of Source's relationship with Endeavor. Thus, while the *amount* of net income earned is not relevant to the liability phase of this case, the *fact* that net income was earned is relevant.

Next, Source claims that the dismissal of Plaintiff's equitable claims precludes the admission of evidence regarding "payments, bonuses, contracts or other benefits . . . received by Source, Alliance, Endeavor, and/or any employees of Source or Alliance in connection with the Alliance merger." (Def.'s Mot. in Limine to Exclude Evidence and/or Arguments Concerning Plaintiff's Now-Dismissed Equitable Claims at 3). To the extent that Source intends this motion to preclude evidence of the $1.5 million payment to Endeavor, that payment is relevant to Plaintiff's breach of contract claim because it proves the existence of a business relationship between Source and Endeavor. (*See* Section I above). To the extent that Source is referring to any other payments, bonuses, contracts, or other benefits, its motion is too vague for Plaintiff to respond in any meaningful fashion. There are payments, bonuses, contracts, etc. that could be relevant to this case depending on how trial proceeds. For example, as discussed in Section I

above, evidence of a payment received by an employee of Source as a result of the Alliance merger may be relevant to the credibility of a recipient's testimony. Because Source fails to identify which payments, bonuses, contracts or other benefits it is seeking to preclude with any measure of particularity, and because the circumstances under which such evidence may be relevant will not become clear until trial, Source's motion should be denied. The Court should address questions regarding the admissibility of such evidence on a case-by-case basis at trial.

Source also argues that the dismissal of the equitable claims precludes Plaintiff from arguing that the jury may find in Plaintiff's favor even if it finds that no written agreement existed between Source and Endeavor, a circumstance that Source claims is a condition precedent to Plaintiff's recovery. The written agreement term is a contract term. Source chooses, for tactical reasons, to categorize it as a condition precedent. If the written agreement provision is a contract term, then the issue merely is one of the necessity of compliance and materiality. It is for the jury to determine these matters. Precluding them in a motion in limine essentially grants Source a Rule 50(a) motion before Plaintiff can put on his case, an unsupportable result.

For the purposes of addressing this argument that the written agreement is a condition precedent, Source's argument conflates Plaintiff's equitable claims with his contract claims. Under Florida contract law, a party to a contract cannot wrongfully refuse to perform a condition precedent and then use its own failure to perform that condition as justification for failing to perform its obligations under the contract. *N. Am. Van Lines v. Collyer*, 616 So.2d 177, 179 (Fla. Dist. Ct. App. 1993) (holding that "a party who, by his own acts, prevents performance of a contract provision cannot take advantage of his own wrong"); *Hart v. Pierce*, 125 So. 243, 243 (Fla. 1929) (holding, "One who prevents happening of condition precedent cannot avail himself

of his own wrong to relieve himself of liability on contract"); *Walker v. Chancey*, 117 So. 705, 707 (Fla. 1928) (holding, "[H]e who himself prevents the happening or performance of a condition precedent, upon which his liability, by the terms of the contract, is made to depend, cannot avail himself of his own wrong and relieve himself from his responsibility to the obligee") (internal quotation marks and citation omitted). Thus, based on Florida law, the jury may find in Plaintiff's favor even if it finds that a written agreement between Source and Endeavor was a condition precedent to Plaintiff's recovery under the contract and that no such written agreement existed.

Plaintiff does not intend to argue his equitable claims at trial, but he certainly has the right to argue his breach of contract claims, which have not been dismissed. As a consequence, Source's motion should be denied.

VI.    Source's Motion in Limine to Exclude Evidence of
       <u>And Statements Made in Settlement Discussions</u>.

In its Motion in Limine to Exclude Evidence of and Statements Made in Settlement Discussions, Source seeks to exclude the testimony of Plaintiff's former lead counsel, Matthew Schwartz, regarding statements made by Source's General Counsel, Douglas Bates, that Source was in the process of finalizing a written commission agreement with Endeavor shortly before the filing of the Complaint in this matter. As Plaintiff explained in his Pretrial Statement, this fact is not inadmissible merely because it was mentioned while Mr. Schwartz and Mr. Bates were discussing Mr. Ledecky's claim for compensation. Rule 408 of the Federal Rules of Evidence provides, "This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations." *See also In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F. Supp. 2d 201, 210-11 (D.D.C., 2005) (quoting Fed. R. Evid. 408). The evidence that Endeavor and Source were in the

process of entering into a written commission agreement was discoverable, and has been discovered, through written drafts of agreements between Source and Endeavor (Exs. E, F, and G). Moreover, Source's own meeting minutes provide evidence that on April 4, 2005, Source's Board of Directors authorized its Nominating and Corporate Governance Committee to "authorize and approve an agreement with The Endeavor Agency and to direct its execution and delivery by the appropriate officers of the Company." (Ex. H, Minutes of the Quarterly Meeting of the Board of Directors of Source, at D-0436). The mere fact that the proposed agreement between Source and Endeavor was mentioned to Mr. Schwartz at the same time he and Mr. Bates were discussing Mr. Ledecky's compensation does not preclude Mr. Schwartz from testifying on this issue.

Even if Rule 408 did preclude Plaintiff from offering the foregoing evidence to show Source's liability to Mr. Ledecky, it is still admissible for purposes of impeachment. Rule 408 specifically states, "This rule . . . does not require exclusion when the evidence is offered for another purpose . . . ." This Court has held that Federal Rule of Evidence 408 is not an absolute ban on all evidence regarding settlement negotiations and that it permits evidence offered for a purpose other than establishing liability. *Indep. Petrochemical Corp. v. Aetna Cas. and Surety Co.*, 1988 WL 877629, *8 (D.D.C., 1988) (citing *Breuer Elec. Mfg. Co. v. Tornado Sys. Of Am., Inc.*, 687 F.2d 182, 185 (7th Cir. 1982); *Council for the Nat'l Register of Health Serv. Providers in Psychology v. Home Assurance Co.*, 632 F. Supp. 144, 146 n.1 (D.D.C. 1985); *NAACP Legal Defense and Educ., Inc. v. United States Dep't of Justice*, 612 F.Supp. 1143, 1146 (D.D.C. 1985)). Federal courts recognize impeachment as one of those other purposes. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 689 (7th Cir. 2005); *Cochenour v. Cameron Sav. & Loan*, 160 F.3d 1187, 1190 (8th Cir. 1998); *O'Hearon v. Castleview Hosp.*, 156 F.3d 1244 (10th Cir.

1998); *County of Hennepin v. AFG Indus., Inc.*, 726 F.2d 149, 152-53 (8th Cir. 1984); *Smith v. Lowe's Home Ctrs., Inc.*, 2005 WL 1533108, *7 (W.D. Tex. June 29, 2005); *Playboy Enters. Int'l, Inc. v. On Line Entm't, Inc.*, 2004 WL 626807, *5 (E.D.N.Y. Mar. 29, 2004); *Ausherman v. Bank of Am. Corp.*, 212 F. Supp. 2d 435, 454-55 (D. Md. 2002). *Tijerina v. Josefiak*, 1988 WL 161291, *6 n.11 (D.D.C. Apr. 29, 1988). *Cf. Coles v. Perry,* 217 F.R.D. 1, 8 (D.D.C. 2003). Thus, Mr. Bates' statements to Mr. Schwartz may be admitted for the purpose of impeachment. Similarly, testimony by Mr. Ledecky regarding statements made by Mr. Flegel during an April 2005 lunch meeting during which Mr. Flegel told Mr. Ledecky that Source owed Mr. Ledecky "something" for his role in bringing about the merger may also be admitted for purposes of impeachment. (Ex. I, Ledecky Dep., 3/29/06, at 263:9-264:19; *see also* Ex. C, Flegel Dep., 5/4/06, at 165:6-166:16).

VII.   Source's Motion in Limine to Exclude Matthew D. Schwartz and Any Other Trial Witnesses Not Listed in Plaintiff's Initial Disclosures or Supplements Thereto

By its Motion in Limine to Exclude Matthew D. Schwartz and Any Other Trial Witnesses Not Listed in Plaintiff's Initial Disclosures or Supplements Thereto, Source attempts to preclude the testimony of Mr. Schwartz on the ground that Plaintiff first identified Mr. Schwartz as a witness on his trial witness list. However, Local Rule 16.5 (b)(5) provides:

> No objection shall be entertained to a witness or to testimony on the ground that the witness or testimony was disclosed for the first time in a party's Pretrial Statement, unless the party objecting has unsuccessfully sought to learn the identity of the witness or the substance of the testimony by discovery, and the court or magistrate judge finds the information to have been wrongfully withheld.

Mr. Schwartz was disclosed as a potential witness in Plaintiff's Pretrial Statement. (Pl.'s Pretrial Statement at 28). Additionally, Mr. Schwartz submitted a declaration in this case nearly three months earlier. (Pl.'s Opp'n to Def.'s Mot. for Summ. J., Ex. N). Moreover, when Plaintiff deposed Source's General Counsel, Douglas Bates, in early May of this year, he was questioned

regarding his conversations with Mr. Schwartz, thus putting Source on notice that Mr. Schwartz possessed potentially discoverable information. (Ex. B, Bates Dep., 5/5/06, at 129:4-130:11). Source has offered no evidence that it unsuccessfully sought to learn Mr. Schwartz' identity or that Plaintiff wrongfully withheld that information. Thus, based on Local Rule 16.5(b)(5), Source's motion should be denied.

VIII.  Source's Motion in Limine to Preclude Plaintiff From
       <u>Testifying About Any Out-of-Court Statements from John Chiles</u>

Plaintiff acknowledges that any potential testimony about the out-of-court statements of John Chiles is hearsay if offered to prove the truth of the matter asserted. It may be admissible for other purposes, however, such as impeachment. For this reason, Source's motion should be denied at this time and the Court should rule on the admissibility of such testimony if and when it is offered during the context of trial.

                                    Respectfully submitted,

                                      /s/  Harvey A. Levin
                                    Jan Paul Miller
                                     THOMPSON COBURN LLP
                                     One U.S. Bank Plaza
                                     St. Louis, Missouri  63101-1611
                                     (314) 552-6365 (telephone)
                                     (314) 552-7365 (facsimile)

                                  Harvey A. Levin (D.C. Bar No. 203869)
                                  Allison Manger (D.C. Bar No. 482593)
                                    THOMPSON COBURN LLP
                                    1909 K. Street, N.W. Ste. 600
                                    Washington, D.C.  20006-1167
                                    (202) 585-6900 (telephone)
                                    (202) 585-6969 (facsimile)

                                  *Attorneys for Plaintiff Jonathan Ledecky d/b/a
                                   Ironbound Partners*

- 17 -

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of October, 2006, a true and correct copy of the foregoing Plaintiff's Opposition to Source's Motions in Limine, was mailed electronically through CM/ECF to:

>Kevin E. Stern
>C. Allen Foster
>Geoffrey Greeves
>Maria Hallas
>GREENBERG TRAURIG, LLP
>800 Connecticut Ave., N.W.
>Suite 500
>Washington, D.C.  20006

/s/  Allison Manger