DRAFT Created on 3/2/2005 8:29 AM
SUBJECT TO REVISION

## ENGAGEMENT AGREEMENT

THIS ENGAGEMENT AGREEMENT (the "**Agreement**") is made and entered into as of _____, 2005 by and between Source Interlink Companies, a Delaware corporation (the "**Company**") having its principal executive offices at 27500 Riverview Center Blvd., Bonita Springs, Florida 34134 and The Endeavor Agency, LLC, a____ limited liability company ("**Endeavor**") having its principal executive offices at _____.

WHEREAS, the Company is engaged in the business of (i) designing, manufacturing and marketing front-end fixtures, shelving and other display equipment and accessories for use by retail stores; (ii) designing, manufacturing and marketing custom wood fixtures, furnishings and millwork for use by commercial enterprises, (iii) distribution and fulfillment of magazines, books, pre-recorded music, video and video games, computer software and other merchandise, (iv) rendering third party billing and collection services with respect to claims for manufacturer rebates and incentive payments payable to retailers respecting the sale of magazines, books, pre-recorded music, video and video games, computer software and other merchandise, and (v) providing sales and marketing data and analyses to retailers and vendors of products distributed by the Company (the "**Products and Services**"); and

WHEREAS, the Company desires to engage the Endeavor to assist in the promotion, marketing and solicitation of sales of Products and Services on behalf of the Company throughout the world (the "**Territory**") on the terms and conditions set forth in this Agreement; and,

WHEREAS, Endeavor desires to accept such engagement on the terms and conditions set forth in this Agreement.

NOW THEREFORE, in consideration of the engagement of the Endeavor by the Company, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is hereby mutually agreed as follows:

1.   **Recitals.**   The recitals set forth above shall constitute and be construed to be an integral part of this Agreement.

2.   **Engagement and Acceptance.** The Company hereby engages the Endeavor to serve as a non-exclusive sales representative in the Territory upon the terms and conditions set forth in this Agreement. The Endeavor hereby accepts such engagement and agrees (a) to devote reasonable commercial efforts to the marketing, promotion and solicitation of purchases of the Products and Services in the Territory, (b) to comply with all policies which, from time to time, may be adopted by the Company, and, where appropriate, communicate the same to the Company's existing and prospective customers, and (c) to furnish to the Company any information which it may have from time to time relative to the creditworthiness or credit or financial standing of any of the Company's customers.

3.   **Approval of Transactions.**   The Endeavor shall solicit opportunities the Company to purchase or sell for Products and Services at prices, and subject to terms and conditions, which the Company, in its sole and absolute discretion, shall from time to time determine. Any opportunity developed by Endeavor is subject to acceptance or rejection by the Company at its chief executive offices in Bonita Springs, Florida. Acceptance shall be manifest only by the

preparation and execution of a definitive agreement by the Company and the other party or parties.

4. **No Conflict.** The Endeavor represents and warrants to the Company that it is not now under any obligation to any person or entity, nor does it have any other interest, which is inconsistent with or in conflict with this Agreement, or which would prevent, limit or impair in any way the performance by it of any of the covenants herein, or any duties or responsibilities of the engagement hereunder.

5. **Term.** The period of Endeavor's engagement hereunder shall commence on _____, 2005 and continue until midnight, _____, 2007. Endeavor understands that this Agreement is an at-will agreement for personal services, and that it will continue only so long as the Company and the Endeavor mutually agree. Notwithstanding and not in limitation of the foregoing, either party may terminate the period of Endeavor's engagement under this Agreement upon the material breach by the other of any term of this Agreement.

6. **Compensation.** As compensation for the services to be performed by the Endeavor under this Agreement, during the term of Endeavor's engagement hereunder, the Company agrees to pay to Endeavor, and the Endeavor agrees to accept Commission Compensation (defined in Section 6.1) and Equity Compensation (defined in Section 6.2).

> 6.1 As used in this Agreement, the term "**Commission Compensation**" means 10% of the Incremental Operating Income (defined in Section 6.3) recorded by the Company as a result of any transaction or series of transactions in which the Company and Endeavor agree that (a) Endeavor materially contributed to the transaction's consummation and (b) the terms and conditions of the transaction are more favorable to the Company than generally prevail in the applicable industry (individually, a "**Transaction**" and collectively, the "**Transactions**").
>
> 6.2 As used in this Agreement, the term "**Equity Compensation**" means 30 Warrants (defined in Section 6.4) for each $1,000 of Incremental Operating Income recorded by the Company as a result of Transactions after deduction of the Commission Compensation paid by the Company as a result of such Transactions.
>
> 6.3 As used in this Agreement, the term "**Incremental Operating Income**" means, as to any Transaction or series of Transactions, operating income recorded in the Company's books and records as a result of such Transaction (and, in the case of a series of Transactions, all such operating income recorded during the 12 months immediately following the first Transaction in such series) minus the amount of operating income that the Company and Endeavor agree would have been recorded by the Company if the terms and conditions of the Transaction(s) had been equivalent to the prevailing terms and conditions in the applicable industry.
>
> 6.4 As used in this Agreement, the term "**Warrants**" means the right to purchase up to one share of the Company's common stock, $0.01 par value, on terms and conditions set forth in a warrant certificate, the form of which is attached hereto as **EXHIBIT A**.

**CONFIDENTIAL**                                                              D-0412

6.5    Upon expiration or earlier termination of its period of engagement (the "**Termination Date**"), the Endeavor will be entitled to Commission Compensation and Equity Compensation in respect of all received, confirmed and accepted by the Company prior to the date which is six months after effective date of such termination; provided, however, that no such Commission Compensation shall be due or owing to Endeavor unless and until the Company receives payment for such orders from customers of the Company.

Payment of Commission Compensation and Equity Commission to the Endeavor shall be subject to offset by future adjustment for any subsequent returns, allowances, discounts, credits or adjustments in respect of the applicable Transaction, as determined by the Company. Commission Compensation and Equity Commission shall be payable on the tenth (10th) business day of the month following the calendar month in which the Company receives payment in full with respect to the Transactions for which Endeavor is entitled to Compensation hereunder.

7.    **Confidential Information.**

7.1    Endeavor will not, except as authorized by the Company, during or at any time after the termination or expiration of Endeavor's engagement with the Company, directly or indirectly, use for himself or others, or disclose, communicate, divulge, furnish to, or convey to any other person, firm, or corporation, any secret, proprietary or confidential information, knowledge or data of the Company, any of its subsidiaries or that of third parties obtained by Endeavor during the period of its employment or engagement with the Company and such information, knowledge or data includes, without limitation, the following:

(a)    Secret, proprietary or confidential matters of a technical nature such as, but not limited to, methods, know-how, formulae, compositions, processes, discoveries, manufacturing techniques, inventions, computer programs, and similar items or research projects involving such items;

(b)    Secret, proprietary or confidential matters of a business nature such as, but not limited to, information about costs, purchasing, profits, market, sales or lists of customers; or

(c)    Secret, proprietary or confidential matters pertaining to future developments such as, but not limited to, research and development or future marketing or merchandising.

7.2    Endeavor, upon termination of its engagement with the Company, or at any other time upon the Company's written request, shall deliver promptly to the Company all drawings, blueprints, manuals, letters, notes, notebooks, reports, sketches, formulae, computer programs and similar items, memoranda, lists of customers, and all other materials and copies thereof relating in any way to the Company's business which contain confidential or proprietary information and which were in any way obtained by Endeavor during the term of its engagement with the Company which are in its possession or under its control; and Endeavor will not make or retain any copies of any of the foregoing and will so represent to the Company upon termination of its engagement.

7.3    The Company may notify any person, firm, or corporation employing Endeavor or evidencing an intention to employ Endeavor as to the existence and provisions of this Agreement.

7.4    Endeavor understands and acknowledges that such confidential or proprietary information or other commercial ideas mentioned herein are unique and that the disclosure or use of such matters or any other secret, proprietary or confidential information other than in furtherance of the business of the Company would reasonably be expected to result in irreparable harm to the Company. In addition to whatever other remedies the non-breaching party and/or its successors or assigns may have at law or in equity, each party specifically covenants and agrees that, in the event of default under or breach of this Agreement, the non-breaching party and/or its successors and assigns shall be entitled to apply to any court of competent jurisdiction to enjoin any breach, threatened or actual, by the breaching party, and/or to sue to obtain damages for default under or any breach of this Agreement. In the event of default under or breach of this Agreement, each of the Company and Endeavor hereby agrees to pay all costs of enforcement and collection of any and all remedies and damages under this Agreement incurred by the non-breaching party, including reasonable attorneys' fees as determined by a court of competent jurisdiction.

8.    **Relationship of Company and Endeavor**

8.1    This Agreement does not create, either directly or indirectly, any partnership, joint venture, employment or agency relationship between Endeavor and the Company. Endeavor is acting solely as an independent contractor to the Company. The Company has not authorized Endeavor to, and Endeavor acknowledges that it has no authorization to, commit, bind or speak for the Company, and Endeavor shall not do any act which might result in any third party believing Endeavor has the power to contract or incur any commitment on behalf of the Company, or that Endeavor is a partner, joint venturer, employee or agent of the Company. The Company may engage others to perform services which are the same as or similar to those which the Endeavor performs under this Agreement.

8.2    As an independent contractor, Endeavor acknowledges that neither Endeavor nor any of Endeavor's employees or contractors will be eligible for or receive any benefits for which any of the employees of Endeavor are eligible.

8.3    The Compensation enumerated in Section 6, includes all taxes, assessments or other governmentally authorized or required charges and expenses that are or may be assessed against the Compensation or the services performed by Endeavor hereunder (collectively, the "*Taxes*"). Endeavor shall collect all Taxes that applicable law requires to be collected in connection with Endeavor's services and shall remit all such Taxes to the proper governmental authorities on or before the date applicable law requires such Taxes to be paid to such authority. If the Company has been notified by an applicable governmental authority of or has otherwise determined an obligation to withhold Taxes from any payment due Endeavor under the Agreement, the Company may withhold such Taxes from any payment due Endeavor under the Agreement. The Company's payment of amounts so withheld to the applicable governmental authority

**CONFIDENTIAL**                                                         D-0414

will be deemed made on behalf of Endeavor and shall relieve the Company's of any further obligation to Endeavor for the amount withheld.

**8.4** Since Endeavor is an independent contractor, the Company will not withhold any state or federal FICA or other withholding taxes, social security taxes, Medicare taxes, disability or other insurance payments or any other taxes, assessments or payments (collectively, "*Employment Taxes*"), except as the Company may withhold pursuant to Section 8.3. The Company will issue Endeavor an Internal Revenue Service Form 1099 at the time, in the manner and containing the information required by the Internal Revenue Code of 1986, as amended (the "*Code*"). Endeavor is solely responsible for the payment of any and all Employment Taxes or any other taxes, assessments or payments owed in connection with its receipt of the Commission Compensation or Equity Compensation or any other compensation paid by the Company hereunder including, without limitation, any sales or other similar taxes.

9.  **General Provisions**

**9.1(a)** Any controversy, claim or dispute of whatever nature arising between the parties out of or relating to this Agreement or the breach, termination, enforceability, scope or validity of this Agreement (a "**Dispute**") shall be resolved by mediation or, failing mediation, by binding arbitration. The agreement to mediate and arbitrate contained in this Section shall continue in full force and effect despite the expiration, rescission or termination of this Agreement.

(b)   Neither party shall commence an arbitration proceeding pursuant to the provisions set forth below unless such party shall first give a written notice (a "**Dispute Notice**") to the other party setting forth the nature of the Dispute. The parties shall attempt in good faith to resolve the Dispute by mediation under the CPR Institute for Dispute Resolution ("**CPR**") Model Mediation Procedure for Business Disputes in effect at the time of this Agreement. If the parties cannot agree on the selection of a mediator within twenty (20) days after receipt of the Dispute Notice, the mediator will be selected in accordance with the CPR Procedure.

(c)   If the Dispute has not been resolved by mediation as provided above within sixty (60) days after receipt of the Dispute Notice, or if a party fails to participate in a mediation, then the Dispute shall be determined by binding arbitration in Lee County, Florida. The arbitration shall be conducted in accordance with such rules as may be agreed upon by the parties, or failing agreement within thirty (30) days after arbitration is demanded, in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("**AAA**") in effect on the date of the Dispute Notice, subject to any modifications contained in this Agreement. The Dispute shall be determined by one arbitrator, unless the Dispute involves an amount in excess of $1,000,000 (exclusive of interest and costs), in which case three arbitrators shall be appointed.

(d)   Persons eligible to serve as arbitrators shall be members of the AAA Large, Complex Case Panel or a CPR Panel of Distinguished Neutrals, or who have professional credentials similar to those persons listed on such AAA or CPR panels. The arbitrator(s) shall base the award on the applicable law and judicial precedent which would apply if the Dispute were decided by a United States District Judge, and

**CONFIDENTIAL**                                                                                              D-0415

the arbitrator(s) shall have no authority to render an award which is inconsistent therewith. The award shall be in writing and include the findings of fact and conclusions of law upon which it is based.

(e)     Discovery will be permitted as and to the extent determined by the arbitrator(s). The arbitrator(s) shall resolve any discovery disputes. The arbitrator(s) and counsel of record will have the power of subpoena process as provided by law. The parties knowingly and voluntarily waive their rights to have any Dispute tried and adjudicated by a judge or a jury.

(f)     The arbitration shall be governed by the substantive laws of the State of Florida, without regard to conflicts-of-law rules, and by the arbitration law of the Federal Arbitration Act (Title 9, U.S. Code). Judgment upon the award rendered may be entered in any court having jurisdiction. Notwithstanding the foregoing, upon the application by either party to a court for an order confirming, modifying or vacating the award, the court shall have the power to review whether, as a matter of law based on the findings of fact determined by the arbitrator(s), the award should be confirmed, modified or vacated in order to correct any errors of law made by the arbitrator(s). In order to effectuate such judicial review limited to issues of law, the parties agree (and shall stipulate to the court) that the findings of fact made by the arbitrator(s) shall be final and binding on the parties and shall serve as the facts to be submitted to and relied upon by the court in determining the extent to which the award should be confirmed, modified or vacated.

(g)     Except as otherwise required by law, the parties and the arbitrator(s) agree to keep confidential and not disclose to third parties any confidential information or documents obtained in connection with the arbitration process. If either party fails to proceed with arbitration as provided in this Agreement, or unsuccessfully seeks to stay the arbitration, or fails to comply with the arbitration award, or is unsuccessful in vacating or modifying the award pursuant to a petition or application for judicial review, the other party shall be entitled to be awarded costs, including reasonable attorney's fees, paid or incurred in successfully compelling such arbitration or defending against the attempt to stay, vacate or modify such arbitration award and/or successfully defending or enforcing the award.

(h)     Each party hereby waives any and all rights it may have to receive exemplary or punitive damages with respect to any Dispute it may have against the other party, it being agreed that no party shall be entitled to receive money damages in excess of its actual compensatory damages related to that Dispute, notwithstanding any contrary provision contained in this Agreement.

9.2     In any Dispute the non-prevailing party in such matter (whether determined based on a final adjudication of the issue at court, arbitration or from the terms of a settlement) shall pay to the prevailing party all costs, attorneys' fees and paralegals' fees (whether incurred before trial, at trial or on appeal) incurred by prevailing party in connection with such controversy, interpretation or implementation.

9.3     Neither party may assign this Agreement or assign or delegate any of its rights, duties or obligations under this Agreement without obtaining the other's prior written

**CONFIDENTIAL**                                                                                            **D-0416**

consent, which, as to a requested assignment of rights but not as to a requested delegation of duties, shall not be unreasonably withheld. Any such assignment or delegation in violation of this Subsection is void.

9.4    Notices and other communications under this Agreement must be in writing and are effective upon the sooner to occur of (i) the business day actually received (or if such date is not a business day, on the next business day thereafter), (ii) on the next business day after placing such written notice or communication with a reputable overnight delivery service for overnight (next morning) delivery, or (iii) on the third (3rd) business day following the date on which such written notice or communication was deposited with the United States Postal Service with postage prepaid and marked as certified or registered mail, return receipt requested, so long as, in each case, such written notice or communication was address to the party to whom it was intended at such party's address set forth above, or to such other address as that party may from time to time provide in a writing pursuant to this Section to the others.

9.5    This Agreement represents the entire agreement between and amongst the parties concerning the subject matter hereof, and may not be modified except in a writing signed by all parties. The unenforceability of any provision of this Agreement shall not affect the remaining provisions or any portions thereof.

9.6    This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. The exchange of copies of this Agreement and of signature pages by facsimile transmission shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes. Signatures of the parties transmitted by facsimile shall be deemed to be their original signatures for all purposes.

9.7    The captions or headings in this Agreement are for convenience only and in no way limit the scope or intent of any provision of this Agreement. The words *"hereof"*, *"hereby"*, *"hereto"*, *"herein"*, *"hereunder"* and the like refer to this Agreement in its entirety. The words *"person"* and *"persons"* shall include any individual, association, joint venture, partnership, corporation, joint stock company, trust, unincorporated organization, or government or any agency or political subdivision thereof. The language used herein shall be deemed to be the language chosen by the parties to express their mutual intent and no rule of strict construction shall be applied against any party. Words of the neuter gender shall mean and include correlative words of the masculine and feminine genders and words importing the singular number shall mean and include the plural number and vice versa. The term *"including"* means, unless specifically limited herein, "including, without limitation" those items specifically enumerated following such term.

9.8    No delay or omission in exercising any right or power will impair such right or power. The Parties will not construe such delay or omission as a waiver of any breach or default or as acquiescence thereto. One or more waivers of any covenant, term or condition of this Agreement shall not be construed as a waiver of a continuing or subsequent breach of the same covenant, provision or condition. The consent or

CONFIDENTIAL

DRAFT Created on 3/2/2005 8:29 AM
SUBJECT TO REVISION

approval to or of any act of a nature requiring consent or approval shall not be deemed to waive or render unnecessary consent to or approval of any subsequent similar act.

9.9   The parties do not intend for this Agreement to (i) confer any rights or remedies on any persons other than the parties and their respective permitted successors and assigns, (ii) relieve or discharge the obligation or liability of any third parties to any party, or (iii) give any third persons any right of subrogation or action over or against any party.

*[Signature page follows]*

**CONFIDENTIAL**

D-0418

DRAFT Created on 3/2/2005 8:29 AM
SUBJECT TO REVISION

IN WITNESS WHEREOF, the parties hereto have caused this Engagement Agreement to be executed by their duly authorized representatives as of the day and year first above written.

The Company:                                Endeavor:

**SOURCE INTERLINK COMPANIES, INC.**        **THE ENDEAVOR AGENCY, LLC**


By:_____        By:_____

Print Name:_____       Print Name:_____

Title:_____       Title:_____

CONFIDENTIAL

D-0419

DRAFT Created on 3/2/2005 8:29 AM
SUBJECT TO REVISION

CONFIDENTIAL

D-0420