IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN LEDECKY d/b/a<br>IRONBOUND PARTNERS,<br><br>    *Plaintiff*,<br><br>v.<br><br>SOURCE INTERLINK COMPANIES, INC.,<br><br>    *Defendant*. | Civil Action No. 1:05CV01039 (JGP) |

**PLAINTIFF'S TRIAL BRIEF**

Pursuant to the Court's Order for Pretrial Conference, Plaintiff submits the following Trial Brief:

**Statement of Facts**

Plaintiff Jonathan Ledecky is an entrepreneur, private investor, venture capitalist, and merchant banker. At all times relevant to this case, he was a significant shareholder of Defendant Source Interlink Companies, Inc. ("Source"). In late 2003 or early 2004, a business acquaintance introduced Ledecky to Rick Rosen of The Endeavor Agency, LLC ("Endeavor"), a California talent agency and consultant in the entertainment industry. In meetings at Endeavor, Ledecky met Ariel Emanuel, one of Endeavor's founders. Ledecky told Emanuel about Source, at that time engaged primarily in providing magazine distribution and fulfillment services to retail stores. Emanuel and Ledecky discussed the possibility of Endeavor's and Source's doing business together, with the aim of expanding Source's business into distributing DVDs and CDs. Ledecky agreed to introduce Endeavor and Emanuel to Source.

On or about April 22, 2004, Ledecky contacted James Gillis, President of Source. Ledecky told Gillis that he, Ledecky, had discovered a huge business opportunity for Source. He would not disclose the opportunity, however, until Source agreed to compensate him. On or about April 25, 2004, Ledecky spoke with Leslie Flegel, Chairman and CEO of Source. Ledecky discussed the opportunity with Flegel but did not disclose its nature or the name of the company involved. Flegel promised Ledecky that Source would compensate him if a deal took place. Ledecky told Flegel that he, Ledecky, wanted a written agreement setting forth his right to a referral fee before he disclosed the opportunity to Source. Ledecky exchanged a series of emails with Doug Bates, Source's general counsel, negotiating the terms of that agreement.

On or about April 27, 2004, Ledecky and Source entered into a written Referral Agreement. Ledecky agreed to introduce Source to his "Client," Endeavor. Source agreed to pay Ledecky "compensation equal to 5% of the net income recorded by Source as a result of its relationship with [Endeavor] during the five-year period following the date . . . on which the business relationship is established between Source and [Endeavor]." At that time, Ledecky and Source did not know what form the business relationship between Source and Endeavor would take. The Referral Agreement deliberately did not define or restrict the form of that relationship.

Another term of the Referral Agreement provided that Source's acceptance of a business relationship with the Client would be "manifest only by execution of a written agreement between Source and the Client." This term did not require or involve any performance or other action by Ledecky; in fact, this term was outside his contractual obligations to Source and as between Ledecky and Source was within Source's sole control. Almost immediately after

Ledecky and Source executed the Referral Agreement, Source and Endeavor entered into the first of at least five written agreements, a Mutual Non-Disclosure Agreement.[1]

Fulfilling his obligation under the Referral Agreement, Ledecky introduced Flegel and Gillis to Emanuel in a conference call on the same day that Ledecky and Source executed the Referral Agreement. Source had no relationship with Endeavor or Emanuel prior to that introduction. Shortly after that introductory call, Ledecky arranged a meeting among Source, Endeavor and Ledecky in New York City on May 12, 2004. Ledecky, Emanuel, Flegel and Gillis attended. They discussed potential opportunities for Source to obtain and to distribute DVDs and CDs. They also discussed the possibility of a merger or acquisition and considered potential investors. Emanuel raised the possibility of a deal with Ron Burkle. Burkle was the controlling shareholder of Yucaipa Companies, LLC that indirectly controlled Alliance Entertainment Corporation ("Alliance"). Alliance was a leading provider of DVDs, CDs, video games and related merchandise.

On May 13, the day after the New York meeting, Emanuel messengered a letter to Burkle at Yucaipa regarding "leveraging [Source's] unique position" for marketing DVDs. On May 14, Emanuel informed Ledecky about initiating the process with Burkle, and Ledecky in turn informed Source's Flegel and Bates, "Burkle is in process." Source did not demur to Emanuel's contacting Burkle, did not suggest that a deal with Burkle was outside the scope of the Referral Agreement and did not indicate that Source would not compensate Ledecky under the Referral Agreement if his Endeavor/Source introduction led to a deal involving Burkle and his interests.

---

[1] Other written agreements include (i) Source's agreement to pay, and payment to Endeavor of, the $1.5 million consulting fee; (ii) Source's appointment of Endeavor's Emanuel to the Source Board; (iii) Source's award of stock options to Emanuel; and (iv) the Source/Alliance/Emanuel Voting Agreement.

In late June 2004, Flegel and Gillis met with Emanuel at Endeavor's offices in Los Angeles. Emanuel brought in, and introduced Flegel and Gillis to, Erika Paulson, a director of Alliance and a partner with Yucaipa. Source had not had any dealings with Alliance prior to that introduction. Paulson raised the possibility of a merger between Source and Alliance, and Flegel indicated he was interested. Following on the Los Angeles meeting, Source and Alliance entered into discussions regarding a business combination of the two companies. Alliance's acting CEO Tony Schnug and Paulson met Flegel and Gillis and later visited Source's headquarters in Florida.

By mid-July, the prospects were sufficiently advanced that Flegel summarized Alliance's business and discussed the possible merger of the two companies at Source's annual meeting of its Board of Directors. Source and Alliance continued negotiations to the point that within less than two weeks after the annual meeting, Source called a Special Meeting of its Board so Flegel could update the Board on the progress with Alliance.

Over the next several months, representatives of Source and Alliance continued with visits to facilities, exchanged business and financial information, discussed the basic terms and structure of a transaction and retained legal counsel and accountants to conduct due diligence. Flegel updated Ledecky regarding Source's progress with Alliance without any indication that Source believed the merger with Alliance was not covered by the Referral Agreement. On November 18, 2004, Source and Alliance entered into a merger agreement and, as an integral part of the transaction, appointed Emanuel to Source's Board of Directors.

As required by federal securities law, Source provided a proxy statement to its shareholders (and the Securities and Exchange Commission) in preparation for a vote on the merger. In a chronology of events leading to the merger, Source's proxy statement listed

Ledecky's introduction of Source to Emanuel (whom the proxy statement ) as the first event in the chronology.

In the proxy statement, Source also informed its shareholders that Emanuel was "our advisor" in the merger transaction and disclosed Source's agreement to pay Emanuel $1.5 million for consulting services rendered to Source in connection with the merger (as set forth below, Source actually paid Endeavor).

The merger between Source and Alliance closed on February 28, 2005. On the day after the merger closed, Flegel personally thanked Ledecky for his support, emailing Ledecky, "[Y]ou are the one who got this started."

Two days after the merger closed, Endeavor invoiced Source for $1.5 million for a "Consultant Fee" in connection with the merger and Source promptly paid Endeavor the $1.5 million. Shortly thereafter, Source also awarded Emanuel options to purchase Source stock.

As a result of the merger, Source earned net income in the millions of dollars in the first year alone.

Notwithstanding that:

(i) Acting under the Referral Agreement, Ledecky set the process leading to the merger in motion with his introduction of Endeavor and Source;

(ii) Source and Endeavor had no relationship prior to the Ledecky introduction;

(iii) Source and Endeavor entered into as many as five agreements manifested by writings (including but not limited to the Mutual Non-Disclosure Agreement);

(iv) Endeavor put Source together with Alliance as a direct result of the Source-Endeavor connection that Ledecky initiated under the Referral Agreement;

(v) Source and Alliance merged as a direct result of their meeting through Endeavor;

(vi) Source compensated Endeavor and Emanuel with cash and stock options for and as a consequence of the merger; and

(vii) Source realized millions of dollars in net income from the merger,

Source refuses to compensate Ledecky under the Referral Agreement.

### Jury Issues

In brief, the fundamental issue for the jury to determine is this: Is Ledecky entitled to compensation under the Referral Agreement as a result of the Source-Alliance merger and/or Source's agreements with and compensation to Endeavor and Emanuel?

### Legal Issues

The Court addressed all pre-trial legal issues in its order and decision denying Source's motion for summary judgment and in its final Pretrial Order, with one exception. Plaintiff filed its Motion Requesting the Court to Take Judicial Notice of the Definitions of "Manifest" and "Execution" after the Pretrial Order. This motion is the only outstanding motion. Plaintiff does not have other legal issues to raise at this time. Plaintiff will raise any objections he has regarding evidentiary issues as those issues arise in the context of trial.

Respectfully submitted,

   /s/ Harvey A. Levin
Harvey A. Levin (D.C. Bar No. 203869)
Allison Manger (D.C. Bar No. 482593)
THOMPSON COBURN LLP
1909 K. Street, N.W. Ste. 600
Washington, D.C. 20006-1167
(202) 585-6900 (telephone)
(202) 585-6969 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of February, 2007, a true and correct copy of the foregoing Plaintiff's Trial Brief was served electronically through CM/ECF on:

>Kevin E. Stern
>C. Allen Foster
>Geoffrey Greeves
>Maria Hallas
>GREENBERG TRAURIG, LLP
>800 Connecticut Ave., N.W.
>Suite 500
>Washington, D.C.  20006

/s/ Allison Manger